JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

WILLIAM V. ANTONELLI, JR.

**DEFENDANTS**

IKEAHoldings, US, Inc. d/b/a IKEA; IKEA US Retail, LLC f/k/a IKEA US East, LLC d/b/a IKEA; IKEA North America Services, LLC d/b/a IKEA

**(b)** County of Residence of First Listed Plaintiff    Allegheny
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    MONTGOMERY
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
BRIAN C FARRELL, ESQ., CONSOLE MATTIACCI LAW
1525 LOCUST ST., 9TH FL.
PHILADELPHIA, PA 19102, (215) 545-7676

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product    Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument |    Liability   ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &    Pharmaceutical | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
|    & Enforcement of Judgment |    Slander    Personal Injury | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'    Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted |    Liability   ☐ 368 Asbestos Personal | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and |
|    Student Loans | ☐ 340 Marine    Injury Product | | |    Corrupt Organizations |
|    (Excludes Veterans) | ☐ 345 Marine Product    Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment |    Liability   **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
|    of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 370 Other Fraud |    Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) |    Exchange |
| ☐ 190 Other Contract |    Product Liability   ☐ 380 Other Personal |    Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal    Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise |    Injury   ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | ☐ 362 Personal Injury -    Product Liability |    Leave Act | | ☐ 895 Freedom of Information |
| |    Medical Malpractice | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** |    Act |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** |    Income Security Act |    or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party |    Act/Review or Appeal of |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment   ☐ 510 Motions to Vacate | |    26 USC 7609 |    Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/    Sentence | | | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability |    Accommodations   ☐ 530 General | | |    State Statutes |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -   ☐ 535 Death Penalty | **IMMIGRATION** | | |
| |    Employment   **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities -   ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| |    Other   ☐ 550 Civil Rights |    Actions | | |
| | ☐ 448 Education   ☐ 555 Prison Condition | | | |
| |    ☐ 560 Civil Detainee - | | | |
| |      Conditions of | | | |
| |      Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 U.S.C. § 621, et seq. ("ADEA"); 29 U.S.C. § 626(b); 29 U.S.C. § 216(b)

Brief description of cause:

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ in excess of $150,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions)*

JUDGE   ANITA BRODY    DOCKET NUMBER   18-0599; 18-3261 18-3651; 19-0723

DATE   03/27/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Coraoplis, PA _____

Address of Defendant: _____ 420 Alan Wood Road, Conshohocken, PA 19428 _____

Place of Accident, Incident or Transaction: _____ Conshohocken, PA 19428 _____

---

**RELATED CASE, IF ANY:**

Case Number: 18-0599; 18-3261; 18-3651; 19-0723    Judge: Anita Brody    Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

| | | | |
|---|---|---|---|
| 1. | Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? | Yes ☐ | No ☑ |
| 2. | Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? | Yes ☑ | No ☐ |
| 3. | Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? | Yes ☐ | No ☑ |
| 4. | Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? | Yes ☐ | No ☑ |

I certify that, to my knowledge, the within case ☑ **is** / ☐ **is not** related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 03/27/2019    _____ *Attorney-at-Law / Pro Se Plaintiff* _____    319145
    *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**    *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.**    *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Brian C. Farrell, Esq , counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☒ Relief other than monetary damages is sought.

DATE: 03/27/2019    _____ *Attorney-at-Law / Pro Se Plaintiff* _____    319145
    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| WILLIAM V. ANTONELLI, JR. *on behalf of himself individually and on behalf of those similarly situated* | : | CIVIL ACTION |
| v. | : | |
| IKEA HOLDINGS US, INC. *d/b/a IKEA, et al.* | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. ( x )

| | | |
|---|---|---|
| 03/27/2019 | *[signature]* | Plaintiff, William V. Antonelli, Jr. |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-565-2855 | farrell@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WILLIAM V. ANTONELLI, JR.**<br>  **Coraoplis, PA  15108**<br>  *on behalf of himself individually*<br>  *and on behalf of those similarly situated,*<br><br>         **Plaintiff**<br><br>    **v.**<br><br>**IKEA HOLDING US, INC.**<br>  **d/b/a IKEA**<br>  **420 Alan Wood Road**<br>  **Conshohocken, PA 19428,**<br><br>**IKEA US RETAIL, LLC**<br>  **f/k/a IKEA US EAST, LLC**<br>  **d/b/a IKEA**<br>  **420 Alan Wood Road**<br>  **Conshohocken, PA 19428,**<br><br>      **and**<br><br>**IKEA NORTH AMERICA SERVICES, LLC**<br>  **d/b/a IKEA**<br>  **420 Alan Wood Road**<br>  **Conshohocken, PA 19428 ,**<br><br>      **Defendants** | **C.A. No. \_\_\_\_**<br><br><br><br>**ADEA COLLECTIVE ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

### I.   PRELIMINARY STATEMENT.

IKEA is a multinational company that openly expresses a preference in favor of young employees as the company's future leaders – including in its operations in the United States. IKEA US openly and publicly violates US law prohibiting age discrimination, has a corporate

1

culture of age discrimination, and has engaged in a pattern and practice of age discrimination against its older employees, including Plaintiff, William V. Antonelli, Jr. (currently age 48). Without limitation, IKEA US: has openly expressed age-based personnel goals in favor of young employees; has openly expressed a preference for the advancement of younger individuals as the company's future leaders; flouts US age discrimination law by publishing job ads openly seeking "young talent;" has a promotion selection process that tracks and considers employee ages; and complaints of age discrimination are not remediated. The company's age bias from the top down infuses and infects every aspect of the employment decision-making process.

Plaintiff, William V. Antonelli, Jr. has been adversely affected by IKEA's pattern and practice of age discrimination and its policy of favoring young employees for promotion. He was passed over for promotion in favor of younger employees who were said to be "on the radar to move up," and was explicitly told by his store manager that IKEA was not going to consider older employees for promotion and wanted people in their twenties instead. IKEA passed over and rejected Plaintiff because of his age for promotion into open and available positions for which he was well qualified. Plaintiff now brings this action against Defendants for violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA"), as a collective action pursuant to the ADEA, 29 U.S.C. § 626(b), incorporating section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), on behalf of himself individually and on behalf of those similarly situated: *i.e.,* all those current and former employees of IKEA in the United States (a/k/a IKEA US) who, since February 24, 2018, were age 40 or over and denied promotion ("Older Workers") (Counts I, II). In that regard, Plaintiff seeks an Order providing that Notice of this lawsuit be given to each Older Worker. In addition, Plaintiff seeks injunctive and

declaratory relief, damages, including compensatory and liquidated damages, attorney's fees and costs, and all other relief under the ADEA and any other relief this Court deems appropriate.

In addition, Plaintiff brings this action on an individual basis only for Defendants' retaliation against him in violation of the ADEA (Count III).

## II.   PARTIES.

1.      Plaintiff, William V. Antonelli, Jr. is an individual and citizen of the state of Pennsylvania, residing therein in Caraopolis, PA 15108.

2.      Plaintiff was born in October, 1970 and is currently forty-eight (48) years old.

3.      Plaintiff is a current US employee of "IKEA" who works at the IKEA store located in Pittsburgh, Pennsylvania, and receives his form W-2 from defendant IKEA US Retail, LLC.

4.      "IKEA" is a multinational company that presents and promotes itself publicly as a centrally controlled entity known as the "IKEA Group."

5.      The IKEA Group operates in the United States through various owned and controlled subsidiary entities all of which do business as and present themselves as "IKEA," including, without limitation, defendants IKEA Holding US, Inc., IKEA US Retail, LLC, and IKEA North America Services, LLC.

6.      Defendant IKEA Holding US, Inc. is a Delaware corporation with headquarters and a principal place of business located in Conshohocken, Pennsylvania.

7.      Defendant IKEA Holding US, Inc., through its subsidiary entities, owns defendant IKEA US Retail, LLC, and its subsidiary, IKEA North America Services, LLC.

8.      Defendant IKEA US Retail, LLC is a limited liability company with headquarters and a principal place of business located in Conshohocken, Pennsylvania.

3

9.     Defendant IKEA North America Services, LLC is a limited liability company with headquarters and a principal place of business located in Conshohocken, Pennsylvania.

10.    Defendants share common ownership, management, human resources and employment policies.

11.    The IKEA Group, through its various owned and controlled subsidiary companies, including Defendants, holds itself out to the public and its employees in the United States as one company, referred to hereinafter as "IKEA US" or "Defendants."

12.    The employees of IKEA US, regardless of the payroll company from which their form W-2 is issued, are subject to the same centrally controlled policies regarding human resources and employment matters.

13.    IKEA US is interconnected such that the entities that comprise it are considered a "single" and/or "integrated" employer, and/or "joint" employer.

14.    Defendants are alter-egos of each other, IKEA US and/or the IKEA Group.

15.    Defendants are interconnected such that each entity, individually or collectively, contributed to, caused and/or is responsible for the age discrimination alleged herein.

16.    IKEA US employs over 15,000 people.

17.    At all times material hereto, Defendants, individually and/or collectively, have been engaged in an industry affecting interstate commerce and have acted as an "employer" within the meaning of the ADEA.

18.    At all times material hereto, Defendants, individually and/or collectively, employed more than twenty (20) people.

19.    At all times material hereto, Defendants, individually and/or collectively, acted by and through their authorized agents, servants, workmen, and/or employees within the course and scope of their employment with Defendants and in furtherance of the business of Defendants.

20.    At all times material hereto, Plaintiff has been an employee of Defendants, individually and/or collectively, within the meaning of the ADEA.

## III.    JURISDICTION AND VENUE.

21.    The causes of actions alleged herein arise under the ADEA, as amended, 29 U.S.C. §621, *et seq.*

22.    The District Court has jurisdiction over the claims (Counts I, II, III) pursuant to 29 U.S.C. §626(c) and 29 U.S.C. §1331.

23.    The District Court has personal jurisdiction over Defendant IKEA US Retail, LLC because, *inter alia,* defendant maintains its headquarters and/or a principal place of business in Pennsylvania, maintains systematic and continuous activity such that it is at home in Pennsylvania, the actions giving rise and/or related to this suit occurred in Pennsylvania, and/or it has consented to the jurisdiction of this Court through, among other things, its appointment of an authorized agent in Pennsylvania to accept service of process.

24.    The District Court has personal jurisdiction over Defendant IKEA North America Services, LLC because, *inter alia,* defendant maintains its headquarters and/or a principal place of business in Pennsylvania, maintains systematic and continuous activity such that it is at home in Pennsylvania, the actions giving rise and/or related to this suit occurred in Pennsylvania, and/or it has consented to the jurisdiction of this Court through, among other things, its appointment of an authorized agent in Pennsylvania to accept service of process.

5

25.     The District Court has personal jurisdiction over Defendant IKEA Holding US, Inc. because, *inter alia,* defendant maintains its headquarters and/or a principal place of business in Pennsylvania, maintains systematic and continuous activity such that it is at home in Pennsylvania, the actions giving rise and/or related to this suit occurred in Pennsylvania, and/or it has consented to the jurisdiction of this Court through, among other things, its appointment of an authorized agent in Pennsylvania to accept service of process.

26.     Venue is proper under 28 U.S.C. § 1391(b) because, without limitation, Defendants are residents in this judicial district and/or a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

27.     On or about December 21, 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was dual filed with the Pennsylvania Human Relations Commission, and which complained of the matters set forth herein and was brought on behalf of Plaintiff individually and on behalf of a class of current or former employees age 40 or over who have been discriminated against by Defendants because of age.

28.     More than 60 days have passed since Plaintiff filed his Charge of Discrimination with the EEOC.

29.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.    FACTUAL ALLEGATIONS SUPPORTING CLAIMS.

### *IKEA US's Policy of Favoring Younger Employees and its Pattern and Practice of Age Discrimination*

30.     The IKEA Group is a multinational company that has a corporate culture of age bias.

31.     The IKEA Group openly expresses a preference in favor of young employees as the future leaders of the company.

32.     The IKEA Group has, among other things, directed IKEA US to set age-based personnel goals for management level employees.

33.     The IKEA Group has, among other things, directed IKEA US to consider age in its employment decisions.

34.     The IKEA Group has, among other things, directed IKEA US to prefer younger individuals in management positions.

35.     The IKEA Group owns and controls IKEA US.

36.     IKEA US maintains headquarters that are located in Conshohocken, Pennsylvania.

37.     IKEA refers to its U.S. headquarters as the "Service Office."

38.     Upon information and belief, the Service Office is staffed by employees who receive their W-2 forms from defendant North America Services, LLC, but whose areas of responsibility cover the entirety of IKEA US.

39.     IKEA US utilizes centralized human resources and employment policies and strategies that are promulgated in and disseminated from the Service Office in Conshohocken, Pennsylvania.

40.     IKEA US's centralized human resources, personnel and employment policies and strategies are implemented in connection with the job application/selection for promotion process through, among other things, the involvement of its Recruiting Department, which is based out of the Service Office.   Among other things, the Recruiting Department pre-screens

applicants, interviews candidates, makes recommendations, and finally approves successful candidates for promotion.

41.     IKEA US has a corporate culture of age bias.

42.     IKEA US has had in place a goal to create a younger management base.

43.     IKEA US has had in place a long term strategy of having young people in management positions.

44.     IKEA US has communicated its strategy of having young people in management positions to the entirety of IKEA US.

45.     IKEA US has had in place a policy to favor young employees in management positions.

46.     IKEA US openly expresses a preference in favor of young employees as the future leaders of the company.

47.     IKEA US has set age-based personnel goals for management level employees.

48.     IKEA US has communicated its age-based personnel goals throughout the entirety of IKEA US.

49.     IKEA US has communicated its preference for young people in management positions throughout the entirety of IKEA US.

50.     IKEA US considers age in its employment decisions, and favors younger employees when making promotions decisions and selecting individuals for management positions.

51.     IKEA US's age bias from the top-down infuses and infects the employment decision-making process throughout the entirety of IKEA US.

52.     Since February 12, 2018, at least five current or former employees of IKEA US have filed age discrimination lawsuits against Defendants in the United States District Courts, alleging, among other things, that IKEA operating in the US considers age in its employment decisions and acts upon its openly expressed preference in favor of younger employees to the detriment of its older employees.  The captions of these lawsuits are as follows:

a.   *Donofrio v. IKEA US Retail, LLC* (E.D. Pa. No. 2:18-cv-00599-AB) (Feb. 12, 2018);

b.   *Parker v. IKEA North America Services, LLC* (E.D. Pa. 2:18-cv-03261-AB) (Aug. 1, 2018);

c.   *Gorbeck v. IKEA North America Services, LLC, et al.* (E.D. Pa. 2:18-cv-00599-AB) (Aug. 27, 2018);

d.   *Nasci v. IKEA North America Services, LLC* (W.D. Pa. 2:18-cv-01643-CB) (Dec. 10, 2018); and

e.   *Paine v. IKEA Holding, Inc., et al.*, (E.D. Pa. 2:19-cv-00723) (Feb. 21, 2019).

53.     IKEA US has engaged in systemic age discrimination against its Older Workers.

54.     IKEA US has engaged in a pattern and practice of age discrimination.  Upon information and belief, and without limitation:

a.      IKEA US has had in place long term goals to have a younger management base and a certain number of younger individuals in management level positions. Specific goals of having a certain number of younger employees in management positions were stated in writing by the US Strategic Human Resources Committee and communicated to every store throughout the United States.  The goals have been spoken of and communicated in different ways, such as in terms of "age distribution goals," "succession," "potential," being "on the radar" to move up, or "diversity."

b.      IKEA US has tracked, monitored and reported on its age-based personnel goals.

c.      IKEA US has had in place a long term strategy for recruiting and promoting younger people into management positions.

d.      IKEA US has had in place leadership development programs as part of a strategy to advance young employees into management positions.

e.      IKEA US has had in place a policy of identifying the "potential" of its employees as a proxy to assess promotability in an age-biased manner.

f.      IKEA US has undertaken recruiting efforts aimed at recruiting young individuals into management positions.

g.      IKEA US has implemented "reorganization" efforts, including one entitled "Organization for Growth" (a/k/a "04G"), to remove older employees from management positions.

h.      IKEA US has had a promotions policy and/or practice that calls for the consideration of data on internal applicants for management positions, including their age.

i.      IKEA US has had a job selection process by which older qualified applicants seeking promotion are precluded from consideration without due consideration.

j.      IKEA US has had a job selection process by which older qualified applicants seeking promotion are precluded from consideration in favor of younger applicants.

k.      IKEA US managers openly express age bias in favor of younger employees.

l.      IKEA US managers openly express and act upon age-biased stereotypes.

10

      m.     IKEA US fails to remediate complaints of age discrimination, and thus promotes a culture in which discrimination against older employees is tolerated and encouraged.

      n.     IKEA US has had in place programs explicitly aimed at promoting "young" talent and/or "young" potentials.

      o.     IKEA US has expressly stated to all of its employees – including decision-makers, applicants, potential applicants, and those charged with complying with its stated anti-discrimination policies – that it is "looking for young talents."

      p.     IKEA US openly flouts the ADEA by, without limitation, publicizing advertisements for expressing a preference for "young" candidates, such as for its "Global Young Potentials Program."

      q.     IKEA US intentionally fails to promote older employees because of their age.

      r.     IKEA US fails to promote older employees for promotion because of their age.

55.    IKEA US's employment policies and/or practices are infected with age bias from the top down and infuse all aspects of its employment decisions.

56.    IKEA US's employment policies and/or practices, such as, without limitation, its identification of "potential," and/or identification of "high potential" employees, and/or its promotion policy, and/or its consideration of age in connection with diversity, and/or its consideration of age in employment decisions, and/or its leadership development programs, and/or its policies and practices in connection with mobility, requiring relocation and/or offering

relocation support, and/or its application and job selection policies, practices, and/or processes have resulted in a statistically significant disparity in the promotion rates of its Older Workers.

57.     IKEA US passes over for promotion qualified Older Workers in favor of substantially younger individuals.

58.     IKEA US's policies infected with age bias, its corporate culture of age bias, its open expression of considering age in employment decisions, and/or its openly expressed preference for developing and/or selecting younger employees as its future leaders, affect the employment decisions made by IKEA US and adversely affect IKEA US's older employees.

59.     IKEA US's polices infected with age bias, its corporate culture of age bias, its open expression of considering age in employment decisions, and/or its openly expressed preference for developing and/or selecting younger employees as its future leaders, among other things, have deterred older employees from applying for leadership development opportunities or programs and/or for promotion.

60.     IKEA US has since at least February 24, 2018, engaged in a pattern and practice of age discrimination against its Older Workers, including Plaintiff.

61.     IKEA US has by its actions since at least February 24, 2018, intentionally discriminated against Older Workers, including Plaintiff.

62.     IKEA US's policies and/or practices have since at least February 24, 2018, resulted in a disparate impact against Older Workers, including Plaintiff.

63.     IKEA US has since at least February 24, 2018, denied promotion to Older Workers, including Plaintiff, because of age.

## Plaintiff William V. Antonelli, Jr.

64.    IKEA US hired Plaintiff on or about June 16, 2015, to work as a returns "co-worker" in Customer Service/Returns in its Pittsburgh store.

65.    In or about May, 2016, Plaintiff began working as a sales co-worker in the Pittsburgh store's Work IKEA and Dining department, reporting up to Shopkeeper Amy Litterini.

66.    Plaintiff expressed and made it clear to store management his interest in advancing his career with IKEA and also, in particular, his desire to do so by working in the Kitchen area of the store (which was also managed by Ms. Litterini).

67.    Plaintiff on his own initiative worked to develop his skills beyond his Work IKEA/Dining sales co-worker job, including in "sales steering" and in the kitchen area, with the shared understanding that he was being groomed by Ms. Litterini for a position in kitchens.

68.    In or about Fall, 2016, IKEA US announced that it was going to undertake a "reorganization" effort.

69.    In connection with the reorganization effort, IKEA US administered tests to its employees.

70.    During a reorganization meeting that occurred in or about January, 2017, Pittsburgh Store Manager, Terri Noble, overtly and explicitly expressed the company's bias against older employees and policy favoring younger employees for promotion.

71.    During the January, 2017 reorganization meeting, in response to a question from Plaintiff asking whether there was room in the new organization for someone in their mid-40s to move up, Ms. Noble responded that they were not going to consider employees in their forties or fifties for promotion and wanted instead people in their twenties.

72.     During the January, 2017 reorganization meeting, Ms. Noble expressed words to the effect that older employees were "going through the motions" and people in their twenties had "fresh ideas."

73.     During the January, 2017, reorganization meeting, Ms. Noble expressed words to the effect that being mobile would be helpful for upward advancement and that this was a good thing for younger employees.

74.     Following the January, 2017 reorganization meeting, Plaintiff complained about age discrimination and the age discriminatory statements made by Store Manager Noble to several people, including, without limitation, his then-supervisors, Ms. Speck and Ms. Litterini, his current manager's manager, Jason Tylenda, and other management level employees.

75.     Several of the managers to whom Plaintiff complained told him that they had previously heard Store Manager Noble make age discriminatory statements. For example, and without limitation, Ms. Litterini told Plaintiff that Store Manager Noble had stated several times during management meetings that management at the store was "getting too old." Mr. Tylenda told Plaintiff that Store Manager Noble acknowledged to him that she had made the age discriminatory statements.

76.     IKEA US failed to take any remedial or preventative action in response to Plaintiff's complaints of age discrimination.

77.     To the contrary, IKEA US managers at the highest level continued to openly express age bias, ageist stereotypes, and a preference for younger employees in management level positions. For example, and without limitation, in Spring, 2017, there was an article appearing on Defendants' intranet (referred to as "IKEA Inside") in which an IKEA US

corporate level manager (i.e., above store level) stated that the company wanted its leadership to become younger during the reorganization.

78.     Following the January, 2017, reorganization meeting and Plaintiff's subsequent complaints of age discrimination, IKEA US repeatedly passed over and/or rejected Plaintiff in favor of substantially younger employees for several positions for which Plaintiff was qualified and which would have been either a promotion for Plaintiff and/or would have helped him advance in his career with IKEA US.

79.     In February and April, 2017, IKEA US passed over Plaintiff in favor of employees in their early twenties for positions in the kitchen department reporting to Ms. Litterini for which Plaintiff was qualified and that would have been either a promotion for Plaintiff and/or would have helped him advance in his career with IKEA US, and in which the hiring manager was aware of Plaintiff's interest.

80.     IKEA did not post these positions before identifying and approaching certain individuals to fill them.

81.     IKEA passed over Plaintiff for these positions because of his age and/or his complaints of age discrimination.

82.     In or about October, 2017, IKEA US announced the "reorganization" it called "Organization for Growth" also known as "O4G."

83.     O4G was an effort by IKEA US to eliminate older employees from management positions by, without limitation, terminating them, demoting them, or effectively forcing them out.

84.     O4G was an effort by IKEA US to favor younger employees over older employees by offering younger employees better jobs with higher pay.

85.     Through O4G, employees were assigned "new" roles within the company. These "new" roles guaranteed base pay protection for IKEA employees through December 31, 2018. However, following December 31, 2018, if the "new" assigned position came with a lower pay grade, the employee's pay would then be reduced accordingly.  Upon information and belief, this was a scheme intended to harm older employees by removing them from management positions while lulling and/or deceiving them into foregoing their rights to pursue age discrimination claims past the 300 day federal charge filing deadline.

86.     In November, 2017, IKEA US interviewed Plaintiff in connection with his application for one of three open and available positions as a Sales Steering and Support Specialist, a newly created position, for which he was qualified and which would have been a promotion.

87.     In or about December 15, 2017, Plaintiff learned that he had been rejected for the Sales Steering and Support Specialist position.

88.     IKEA failed to promote Plaintiff to the Sales Steering and Support Specialist position because of his age and/or his complaints of age discrimination.

89.     IKEA US selected three individuals other than Plaintiff for the positions of Sales Steering and Support Specialist, including two employees in their early twenties.

90.     Plaintiff asked the Sales Steering and Support Manager, Damon Victor, if Plaintiff's age played a role in Defendants' failure to promote him to the Sales Steering and Support Specialist position.

91.     Mr. Victor did not specifically address or deny Plaintiff's question as to whether age played a role in Defendants' failure to promote him to the Sales Steering and Support Specialist position, and told him words to the effect that if he wanted to move into management,

he would have a lot of competition because there were several people "on the radar" to move up. The people "on the radar" to move up were substantially younger than Plaintiff.

92.     On or about December 17, 2017, Plaintiff complained to his manager, Ms. Litterini, that he was not selected for the Sales Steering and Support Specialist position because of his age.

93.     IKEA US failed to take any remedial or preventative action in response to Plaintiff's complaints of age discrimination.

94.     Shortly after Plaintiff's complaint of age discrimination, in or about December, 2017, IKEA US approached Plaintiff and offered to him the position of Site Administration Coordinator.

95.     One of Plaintiff's managers, to whom he had previously complained of Store Manager Noble's age discriminatory remarks, told Plaintiff words to the effect that if he took the position, his worrying about age discrimination needs to go away, which Plaintiff understood to mean that he should stop complaining about age discrimination.

96.     In or about February, 2018, Plaintiff applied for an open and available Sales Leader position in the Sales department in IKEA US's Pittsburgh store.

97.     Plaintiff was qualified for the Sales Leader position.

98.     In or about March, 2018, Plaintiff complained of age discrimination to Jenna Tracy, Onboarding Specialist.

99.     On or about April 16, 2018, Plaintiff learned that he had been rejected for the Sales Leader position.

100.     IKEA US selected for the Sales Leader position an employee substantially younger than Plaintiff.

101.   Plaintiff was at least as, if not more, qualified for the Sales Leader position than the substantially younger employee selected.

102.   IKEA US has rejected Plaintiff's applications for promotion without due consideration.

103.   IKEA US failed to promote Plaintiff to the Sales Leader position because of his age and/or his complaints of age discrimination.

104.   Upon information and belief, Plaintiff was never really in the running for positions that would have advanced his career.  For example, and without limitation, before the start of any formal application process, managers have approached substantially younger employees said to be "on the radar to move up" and suggested that they apply for positions, some of which had not even been posted.  Further, the interviews conducted in connection with Plaintiff's applications seemed to be just going through the motions and not intended to actually assess Plaintiff's ability to perform the job.

105.   After IKEA US became aware in December, 2018, that Plaintiff had filed a charge or age discrimination and retaliation with the EEOC, IKEA US has failed to take remedial or preventive measures.

106.   After IKEA US became aware in December, 2018, that Plaintiff had filed his EEOC charge, IKEA US has taken away some of his previously assigned responsibilities that had expanded his current position to include on-board training that might have helped advance his career.

107.   Throughout his employment with IKEA US, Plaintiff has demonstrated excellent performance and dedication, he has performed his duties in a highly competent manner, and has received positive feedback.

108.     Defendants have failed to promote Plaintiff because of his age and/or his complaints of age discrimination.

109.     Defendants have intentionally taken actions against Plaintiff that would tend to dissuade a reasonable employee from complaints of discrimination because Plaintiff opposed age discrimination by Defendants.

110.     As a direct and proximate result of the age discriminatory and retaliatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering including emotional distress, and other injuries, the full extent of which is not known at this time.

## COUNT I
## AGE DISCRIMINATION IN VIOLATION OF THE ADEA
## DISPARATE TREATMENT
### (by Plaintiff individually
### and on behalf of similarly situated Older Workers)

111.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

112.     The ADEA claim of age discrimination – disparate treatment as alleged herein is brought by Plaintiff individually and on behalf of similarly situated employees ("Older Workers").

113.     Defendants have intentionally discriminated against Plaintiff and Older Workers because of their age.

114.     Defendants have engaged in a pattern and practice of age discrimination against Plaintiff and Older Workers.

115.     Defendants have denied promotions to Plaintiff and Older Workers because of their age.

116.     Age was a determinative factor in Defendants' passing over Plaintiff and Older Workers for training and leadership development programs and opportunities.

117.     Age was a determinative factor in Defendants' failure to promote Plaintiff and Older Workers.

118.     As a direct result of Defendants' discriminatory conduct, Plaintiff and Older Workers have in the past incurred, and will in the future incur, a loss of earnings and/or earnings capacity, loss of benefits, and other injuries, the full extent of which is not known at this time.

119.     Defendants, by the discriminatory acts set forth herein, have violated the ADEA.

120.     Defendants' violation of the ADEA was intentional and willful under the circumstances and warrants the imposition of liquidated damages.

121.     As a direct and proximate result of Defendants' violation of the ADEA, Plaintiff and Older Workers have sustained the injuries, damages, and losses set forth herein.

122.     Plaintiff and Older Workers are now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' age discriminatory and unlawful acts unless and until the Court grants the relief requested herein.

### COUNT II
### AGE DISCRIMINATION IN VIOLATION OF THE ADEA –
### DISPARATE IMPACT
### (by Plaintiff individually
### and on behalf of similarly situated Older Workers)

123.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

124.     The ADEA claim of age discrimination – disparate impact/promotion rates as alleged herein is brought by Plaintiff individually and on behalf of similarly situated employees ("Older Workers").

125. Defendants utilize practices, policies, and procedures that disparately impact Older Workers, including Plaintiff.

126. Upon information and belief, Defendants' identification of "potential," and/or its identification of "high potential" employees, and/or its promotion policy, and/or its consideration of age in connection with diversity, and/or its consideration of age in employment decisions, and/or its leadership development programs, and/or its policies and practices in connection with requiring relocation and/or offering relocation support, and/or its testing administered in connection with O4G, and/or its application and job selection policies, practices, and/or processes have resulted in a statistically significant disparity in the promotion rates of its Older Workers.

127. The foregoing policies, individually and/or collectively, have had a disparate impact on the promotion rates of Older Workers, including Plaintiff.

128. Defendants, by their policies and/or practices, have violated the ADEA.

129. As a direct and proximate result of Defendants' violation of the ADEA, Older Workers, including Plaintiff, have sustained the injuries set forth herein.

130. Plaintiff and Older Workers are now suffering and will continue to suffer irreparable injury as a result of Defendants' age discriminatory and unlawful acts unless and until the Court grants the relief requested herein.

## COUNT III
## RETALIATION IN VIOLATION OF THE ADEA
### (by Plaintiff individually)

131. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

132.     The ADEA claim of retaliation as alleged herein is brought by Plaintiff on behalf of himself individually.

133.     Plaintiff has engaged in protected activity under the ADEA.

134.     Defendants have intentionally retaliated against Plaintiff because he complained of age discrimination by, without limitation, failing to promote him to the Sales Leader position and taking away previously assigned responsibilities that might have helped in advancing his career.

135.     Defendants' retaliatory actions against Plaintiff would tend to dissuade a reasonable employee from raising discrimination complaints against Defendants.

136.     Defendants, by the retaliatory acts set forth herein, have violated the ADEA.

137.     Defendants' violation of the ADEA was intentional and willful under the circumstances and warrants the imposition of liquidated damages.

138.     Defendants' violation of the ADEA was outrageous and warrants the imposition of punitive damages.

139.     As a direct result of Defendants' unlawful conduct, Plaintiff has in the past incurred, and will in the future incur, a loss of earnings and/or earnings capacity, loss of benefits, pain and suffering, and other injuries, the full extent of which is not known at this time.

140.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' age discriminatory and unlawful acts unless and until the Court grants the relief requested herein.

## **RELIEF**

WHEREFORE, Plaintiff, William V. Antonelli, Jr., respectfully requests that this Court enter judgment in his favor and against Defendants, IKEA Holding US, Inc. d/b/a IKEA, IKEA US Retail, LLC d/b/a IKEA; and IKEA North America Services, LLC, and enter an Order:

      a.     declaring this action to be an ADEA collective action properly maintained under 29 U.S.C. § 216(b);

      b.     requiring Defendants to provide to Plaintiff the names, date of birth, addresses (including e-mail addresses), current positions, and telephone numbers of all current and former employees of Defendants who, since February 24, 2018, were age 40 or over;

      c.     requiring that notice and opportunity to opt-in be given to all current or former employees of Defendants who, since February 24, 2018, were age 40 or over and denied or rejected for promotion;

      d.     declaring the acts and practices complained of to be a violation of the ADEA;

      e.     declaring the acts and practices complained of by Plaintiff on an individual basis to be a violation of the ADEA;

      f.     enjoining and restraining permanently the violations alleged herein;

      g.     awarding compensatory damages to Plaintiff and Older Workers to make Plaintiff and Older Workers whole for all past and future lost earnings, benefits, and earnings capacity which Plaintiff and Older Workers have suffered and will continue to suffer as a result of Defendants' discriminatory conduct;

h.      awarding compensatory damages to Plaintiff to make Plaintiff whole and to compensate him for pain and suffering, loss of life's pleasures, and emotional distress he has suffered and will continue to suffer as a result of Defendants' retaliatory conduct;

i.      awarding liquidated damages to Plaintiff and Older Workers;

j.      awarding punitive damages to Plaintiff;

k.      awarding to Plaintiff and Older Workers the costs of this action, together with reasonable attorney's fees;

l.      awarding Plaintiff and Older Workers such other damages as are appropriate under the ADEA; and

m.      granting such other and further relief as this Court deems appropriate.

**CONSOLE MATTIACCI LAW, LLC**

BY:

Stephen G. Console
Laura C. Mattiacci
Susan M. Saint-Antoine
Brian C. Farrell
Emily R. Derstine Friesen
Julie A. Uebler
1525 Locust Street, 9th Floor
Philadelphia, PA  19102
(215) 545-7676
(215) 565-2855 (fax)
console@consolelaw.com
mattiacci@consolelaw.com
santanto@consolelaw.com
farrell@consolelaw.com
derstinefriesen@consolelaw.com
uebler@consolelaw.com
Attorneys for Plaintiff,
William V. Antonelli, Jr.
(*on behalf of himself individually
and on behalf of those similarly situated*)

Dated:  March 27, 2019