**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FRANK DONOFRIO, on behalf of himself individually and on behalf of those similarly situated,<br>Plaintiff,<br>v.<br>IKEA US RETAIL, LLC,<br>Defendant. | CIVIL ACTION NO. 18-599-AB |
| WILLIAM V. ANTONELLI, JR., on behalf of himself individually and on behalf of those similarly situated,<br>Plaintiff,<br>v.<br>IKEA HOLDING US, INC., IKEA US RETAIL, LLC, and IKEA NORTH AMERICA SERVICES, LLC,<br>Defendants. | CIVIL ACTION NO. 19-1286-AB |
| BRANDON PAINE, on behalf of himself individually and on behalf of those similarly situated,<br>Plaintiff,<br>v.<br>IKEA HOLDING US, INC., IKEA US RETAIL, LLC, and IKEA NORTH AMERICA SERVICES, LLC,<br>Defendants. | CIVIL ACTION NO. 19-723-AB |

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS AGAINST DEFENDANTS FOR SPOLIATION OF EVIDENCE**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS....i

TABLE OF AUTHORITIES....ii

I. INTRODUCTION....1

II. STATEMENT OF FACTS....2

A. MISCOMMUNICATION LED TO THE INADVERTENT DELETION OF CERTAIN CUSTODIANS' EMAIL ACCOUNTS....2

B. DESPITE THE MISTAKE, EMAILS FROM THESE EMPLOYEES HAVE BEEN PRODUCED FROM OTHER SOURCES....5

C. PLAINTIFFS DISTORT THE FACTS TO SUPPORT THEIR MOTION....7

III. ARGUMENT....8

A. APPLICABLE STANDARD....8

B. UNDER THE FIRST STEP OF THE RULE 37 SPOLIATION ANALYSIS, THERE IS NO SPOLIATION BECAUSE IXTABALAN, BRODY, STEIN, AND OLAFSSON'S EMAILS EXIST IN OTHER LOCATIONS....10

C. UNDER THE SECOND STEP OF THE RULE 37 SPOLIATION ANALYSIS, APPLICATION OF THE THIRD CIRCUIT'S THREE-FACTOR TEST DEMONSTRATES THAT NO SANCTIONS SHOULD BE IMPOSED....12

1. IKEA INADVERTENTLY DELETED THE MAILBOXES OF THREE CUSTODIANS....12

2. PLAINTIFFS HAVE SUFFERED NO PREJUDICE....13

3. THERE IS NO EVIDENCE OF BAD FAITH AND SANCTIONS ARE NOT WARRANTED....17

VI. CONCLUSION....17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alexce v. Shinseki*,
447 F. App'x 175 (Fed. Cir. 2011) ....................12, 13

*Bistrian v. Levi*,
448 F. Supp. 3d 454 (E.D. Pa. 2020) .................... *passim*

*Bull v. U.P.S.*,
665 F.3d 68 (3d Cir. 2012)....................12

*Cianci v. Phoenixville Area Sch. Dist.*,
No. 20-4749, 2022 WL 824026 (E.D. Pa. Mar. 18, 2022) ....................20

*Contour Data Solutions v. Gridforce Energy Mgmt.*,
No. 20-3241, 2021 WL 5541787 (E.D. Pa. Jan. 19, 2021)....................13

*Davis v. Quaker Valley Sch. Dist.*,
No. 13-1329, 2016 WL 912297 (W.D. Pa. Mar. 10, 2016), *aff'd*, 693 F. App'x 131 (3d Cir. 2017)....................21

*Erhart v. Bofl Holding*,
No. 15-2287, 2016 WL 5110453 (S.D. Cal. Sept. 21, 2016)....................13

*Flanders v. Dzugan*,
No. 12-1481, 2015 WL 5022734 (W.D. Pa. Aug. 24, 2015)....................16, 21

*Ford Motor Co. v. Edgewood Props, Inc.*,
257 F.R.D. 418 (D.N.J. 2009)....................16

*Giuliani v. Springfield Twp.*,
No. 10-7518, 2015 WL 3604343 (E.D. Pa. June 9, 2015)....................16

*GN Netcom, Inc. v. Platronics, Inc.*,
930 F.3d 76 (3d Cir. 2019)....................14

*Martin v. Wetzel*,
No. 18- 00215, 2020 WL 6948982 (W.D. Pa. Nov. 25, 2020)....................15

*McAdams v. United States*,
297 F. App'x 183 (3d Cir. 2008) ....................14

*McCadden v. Nat'l R.R. Passenger Corp.*,
2002 WL 32342483 (E.D. Pa. Oct. 29, 2002)....................13

*Percella v. City of Bayonne*,
No. 14-3695, 2020 WL 6559203 (D.N.J. Nov. 9, 2020), *aff'd*, 2022 WL 2207832 (3d Cir. June 21, 2022) ....17

*Rhein-Hawes v. Vanguard Group, Inc.*,
No. 05-665, 2005 WL 3441228 (E.D. Pa. Dec. 14, 2015)....13, 16

*Volk v. U.S.*,
111 Fed.Cl. 313 (2013) ....13

*Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*,
No. 15-6480, 2020 WL 3498161 (E.D. Pa. June 20, 2020)....16

*Zubulake v. UBS Warburg*,
220 F.R.D. 212 (S.D.N.Y. 2003) ....12

**Other Authorities**

Fed. R. Civ. P. 37....12, 14, 16

Fed. R. Civ. P. 37(e) ....12, 14, 17

## I. INTRODUCTION

IKEA successfully preserved the email accounts of 73 separate custodians from which it produced over 75,000 pages of ESI documents. But IKEA inadvertently deleted the email accounts of three individuals.[1] This resulted from human error that occurred more than three years before the Court's April 29, 2022 Order, but was not known until well after. Nevertheless, IKEA has produced emails and documents authored and received by these individuals on numerous topics such as hiring; the IKEA US HR Approach; the IKEA Group People Strategy 2.0; the National Diversity & Inclusion Council; diversity and inclusion workshops, updates, and next steps; business plans for succession; and management reviews.

The touchstone for an award of sanctions in this Circuit is a central question that Plaintiffs ignore, let alone attempt to answer: Has there been prejudice to the non-producing party? In this case, the answer clearly is "no." Despite the absence of prejudice, Plaintiffs ask the Court to respond to this human error by issuing seven separate severe sanctions—including conclusively finding a pattern or practice of age discrimination—based on mischaracterizations and speculation. Under controlling Third Circuity authority, no sanctions, let alone the draconian "win by default" sanctions Plaintiffs seek here, are warranted.

Plaintiffs' own admissions show there is no prejudice. To the contrary, according to Plaintiffs' Motion, "ESI documents produced by IKEA . . . [are] damning in their evidence of systemic age bias . . ." Had IKEA *intentionally* sought to hide evidence, as Plaintiffs repeatedly

[1] IKEA believes the email account of K.C. Olafsson was properly deleted in the ordinary course of business in April 2018 and there was no duty to preserve at that time, which is why IKEA refers to three individuals and not four.

claim, it would not have produced this allegedly "damning" evidence. Regardless, Plaintiffs' statement inherently admits they already possess the supposedly "damning" documents they imagine exist in the email accounts of the three individuals whose accounts were inadvertently not preserved. Thus, there is no prejudice to Plaintiffs.

Moreover, were it true, as Plaintiffs theorize, that IKEA "had in place age-based personnel goals favoring younger employees for leadership development and management level positions" there would, inherently, need to be distribution of such goals across the country. But, despite production of over 75,000 pages (over 17,500 ESI documents) from 73 custodians (many of whom would have been the recipients of such directives Plaintiffs imagine exist) and five shared drives, there is no evidence of such distribution—systemic age-based personnel goals could not exist in the inboxes of only three individuals. In short, the evidence shows that IKEA is not a bad actor and Plaintiffs have suffered no prejudice.

As a result, the Court should decline to issue a spoliation inference or impose any other sanction.

## II. STATEMENT OF FACTS

### A. MISCOMMUNICATION LED TO THE INADVERTENT DELETION OF CERTAIN CUSTODIANS' EMAIL ACCOUNTS.

In Fall 2016, the litigation hold process was the responsibility of the IKEA Co-worker Relations Department[2]. (Declaration of Amanda Quillen ("Quillen Decl.") ¶ 2, attached hereto as Exhibit A.) IKEA Co-worker Relations collected the relevant information for a litigation hold and emailed its global partners for approval. Once approved, the data requested to be preserved would

[2] The IKEA Co-worker Relations Department is responsible for investigating problems/complaints, such as working conditions, reviewing corrective actions and co-worker appeals, and providing guidance and recommendations for problem resolution to management team members.

be secured by IKEA Information Technology ("IT"). (*Id.*) On November 15, 2016, Plaintiff Frank Donofrio ("Donofrio") filed a Charge of Discrimination ("Charge") with the EEOC. Based on the narrative in the Charge, in December 2016, IKEA successfully issued a litigation hold to 11 employees. Nothing in the Charge, however, would reasonably require IKEA to issue a litigation hold to the individuals identified in Plaintiffs' Motion, Nabeela Ixtabalan, Sari Brody, K.C. Olafsson, or Christof Stein; therefore, these individuals were not subject to the December 2016 hold.

Fourteen months later, on February 12, 2018, Donofrio filed in this Court a Complaint on behalf of himself individually and on behalf of those purportedly similarly situated. Sari Brody, K.C. Olafsson, and Christof Stein are not referenced in the Complaint. The only reference to Nabeela Ixtabalan is contained in Paragraph 63 of the Complaint, which ambiguously alleges that in October 2016 complaints of age discrimination in connection with development opportunities and promotions were made to managers at the highest level of the company, including Ixtabalan. Donofrio did not allege he made such complaints to Ixtabalan or that such complaints related to Donofrio's failed promotion.

Less than a month later, on March 6, 2018, Olafsson's employment with IKEA was terminated. Pursuant to standard IKEA practice for former employees who are not on a legal hold, Olafsson's email account was deleted from the Microsoft Exchange/Outlook system approximately 30 days later.[3] On September 11, 2018, after depositions of IKEA witnesses relating to conditional certification discovery revealed Plaintiffs' theory of the case, outside counsel for IKEA drafted updated litigation holds. The intended recipients of the September 2018

[3] Ms. Olafsson filed a Charge of Discrimination against IKEA North America Services, LLC in August 2018—more than four months ***after*** her emails were deleted.

litigation holds included, among others, Nabeela Ixtabalan, Sari Brody, all Store Managers (which would include Christof Stein), and all Human Resources Business Partners. On September 12, 2018, IKEA Co-worker Relations was informed of the need to distribute the updated litigation holds. (Quillen Decl. ¶¶ 3-4.) Unfortunately, unbeknownst to the IKEA Legal Department, IKEA Co-worker Relations did not distribute the September 2018 litigation holds due to a miscommunication. (Quillen Decl. ¶ 5.) Based on their termination dates, and because they were inadvertently not on legal hold, Ixtabalan, Brody, and Stein's email accounts were deleted pursuant to IKEA standard practice. Below is a chart summarizing the timeline regarding their email accounts. (Declaration of Sudharsan Kannan ("Kannan Decl.") ¶ 4, attached hereto as Exhibit B.)

| Individual | Termination Date | Deletion of Mailbox |
|---|---|---|
| Ixtabalan | July 1, 2020 | July 31, 2020 |
| Brody | January 1, 2021 | March 9, 2021 |
| Stein | May 16, 2019 | June 15, 2019 |
| Olafsson | March 6, 2018 | Approximately April 5, 2018 |

In 2020, IKEA distributed multiple subsequent litigation holds for these matters. (Quillen Decl. ¶ 6.) Demonstrating its good faith efforts, IKEA distributed a litigation hold for ***500+ custodians***; however, because of the mistaken belief the intended recipients of the September 2018 litigation hold had already been preserved, they were not added in the subsequent litigation holds.[4] (*Id.*)

When IKEA negotiated the scope of ESI collection with Plaintiffs, IKEA was unaware that the email accounts of Ixtabalan, Brody, Stein, and Olafsson had been deleted. The review

[4] With no corroboration, Plaintiffs argue it is not credible for IKEA to argue the emails were deleted based on the individuals' dates of departure because Simon Lowes' emails were not deleted and he departed after Ixtabalan, Brody, and Olafsson. Pl. Br. at 31. Lowes' data was preserved from litigation holds unrelated to these matters. *See also Bistrian v. Levi*, 448 F. Supp. 3d 454, 476-77 (E.D. Pa. 2020) ("But the mere fact that some information was preserved and some was not does not necessarily amount to suspicious elective preservation.").

conducted for these negotiations was limited to the aggregate costs of collecting, processing, hosting, and producing documents for over 97 custodians that Plaintiffs requested and did not include an analysis of whether certain custodians' emails had been inadvertently not preserved.

In an effort to further address Plaintiffs' concerns, IKEA is currently running an email-system-wide search relating to Ixtabalan, Brody, Stein, and Olafsson. IKEA will produce a hit report and any responsive documents.

**B. DESPITE THE MISTAKE, EMAILS FROM THESE EMPLOYEES HAVE BEEN PRODUCED FROM OTHER SOURCES.**

Emails do not exist solely in the accounts of the author. They also exist in the accounts of the recipients. Plaintiffs' theory in this case is that a handful of very senior leaders, including individuals whose email accounts were not preserved, hatched a plan for IKEA stores to promote only, or mostly, "young" employees into positions of leadership. For this plan to come to fruition, however, it had to be disseminated to others—others whose email accounts ***were*** preserved, ***were*** searched, and from which IKEA produced responsive materials. This production shows there is no evidence to conclude that unique, important documents were not preserved in the accounts of other custodians.

Among the 73 custodians whose emails were searched, the median number of email chains or "threads" authored or received by a custodian is 48. The number of threads authored or received by the custodians at issue here is very consistent with this median:

| Custodian | Email Threads |
|---|---|
| Ixtabalan | 211 |
| Brody | 36 |
| Olafsson | 145 |
| Stein | 26 |

Nothing about the number of emails authored or sent by these individuals and preserved in the accounts of one or more of the 73 preserved custodians suggest that key emails involving the

three individuals at issue here regarding HR practices in IKEA stores were not located in other custodians' account and produced in this case.

Moreover, the substance of the emails that were preserved illustrate that the type of emails that Plaintiffs are after—emails about HR practices authored by the three custodians at issue here and distributed to others—were preserved in *other* custodians' accounts and produced in this case. For instance, relating to Ixtabalan IKEA produced:

- a January 26, 2016 email from Ixtabalan to Store Managers and Human Resources Managers about the US HR Approach to all stores;
- a December 19, 2016 email from Ixtabalan to three high-level HR colleagues (including Olafsson) about the IKEA Group People Strategy 2.0;
- a March 16, 2016 email from Ixtabalan to D&I Ambassadors and D&I Coaches about the launch of the National D&I Council and the purpose of a FY16 US D&I meeting; and
- a June 13, 2017 email from Ixtabalan to the CEO, Regional Manager, and her successor with notes for topics to discuss at their upcoming meeting.

And IKEA produced relating to Brody:

- a March 2, 2012 email from Brody to five colleagues explaining she had to work on an updated business plan for FY13 for performance, succession, and building business competence;
- a March 22, 2012 email from Brody to those same individuals attaching the US People Strategy FY13 – Business Plan Process and a People Strategy FY13 PowerPoint;
- a September 29, 2014 email addressed to Brody and someone else attaching materials from the US Diversity and Inclusion Workshop; and
- a January 23, 2017 email from Brody to the Leadership and Competence Development Manager regarding leadership programming.

IKEA similarly produced relating to Stein documents that demonstrate he was included on emails that other Store Managers received:

- a June 9, 2014 email to Stein and many others relating to the Pre-Work Diversity & Inclusion Workshop;

- a January 4, 2016 email from Rachel Lucas, U.S. Recruitment & Succession Responsible, in which all Store Managers, including Stein, were copied relating to the FY17 Management Review;
- a March 23, 2017 email to all Store Managers (with Ixtabalan among those copied) with the subject line "Hiring and Migration"; and
- a February 1, 2019 email to Stein and the HR Manager of IKEA New Haven regarding a summary of good and high potential co-workers.

The message threads described above are only examples; there are many other instances of emails by, to, or copying the three custodians at issue here regarding HR-related topics that "hit" against agreed search terms and which were produced in this case. Nevertheless, as an exercise in additional diligence, IKEA ***removed*** the search terms and date restrictions governing the scope of production in this case and memorialized in the Court's April 20, 2022 Order (*Donofrio* ECF 295), and reviewed all documents that were not previously produced in which Ixtabalan, Brody, Olafsson, and Stein were on the email chain in the From/To/Cc/Bcc fields. As a result of this further search, IKEA produced 166 additional documents on March 17, 2023. Again, none of these additional documents, on their face, suggest that relevant emails are missing. ***Nor do Plaintiffs contend that there are any specific missing emails.*** On April 6, 2023, IKEA counsel asked Plaintiffs' counsel to identify any emails they believed were missing from the at-issue individuals that had not already been produced. They have identified none, including in their pending motion.

**C. PLAINTIFFS DISTORT THE FACTS TO SUPPORT THEIR MOTION.**

Plaintiffs' Motion is filled with inaccurate factual assertions. For example, Plaintiffs allege "Elizabeth Spencer, the identified decision-maker in Named Plaintiff Donofrio's individual case, deleted her handwritten notes of his job interview *after* IKEA was admittedly aware that he filed a charge of discrimination." Pl. Br. at p. 32. Plaintiffs do not cite to the actual deposition testimony, and instead cite to a blank paragraph of Attorney Saint-Antoine's Declaration, for good

reason—that is not what Spencer said. The deposition testimony reveals what actually occurred: Spencer took handwritten notes in a notebook during her interview with Donofrio on September 21, 2016; in 2017, Spencer typed the notes into a Microsoft Word document and sent them to Kishorn Henry, the local HR Manager; Spencer lost the notebook but did not know when in relation to Donofrio's Charge of Discrimination; and Spencer was adamant she does not throw out notebooks, but she moved to a different apartments and could not locate it. *(See* Spencer Dep. Tr. at 246:16-250:7, attached hereto as Exhibit C.)

## III. <u>ARGUMENT</u>

### A. APPLICABLE STANDARD

Since Federal Rule of Civil Procedure 37 was amended in 2015, courts have applied a two-step, uniform standard governing spoliation sanctions for losing ESI. *Bistrian*, 448 F. Supp. 3d at 464. Rule 37(e) now "provides the exclusive remedy for spoliation of" ESI. *Id.* (citing Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment). The first step of the analysis involves an inquiry into whether spoliation has actually occurred. As explained by the advisory committee's notes to the 2015 amendments, the elements of spoliation of ESI are: (1) "the spoliating party was under a duty to preserve when the loss occurred"; (2) "the lost ESI was within the scope of the duty to preserve"; (3) the ESI was lost "because the party failed to take reasonable steps to preserve it"; and (4) "because ESI 'often exists in multiple locations,' spoliation occurs *only where the information is truly lost and not recoverable elsewhere.*" *Id.* at 465 (emphasis added).

The fundamental prerequisite of spoliation is the loss of "unique, relevant evidence that might be useful to an adversary." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003). Loss of originals can "theoretically" constitute spoliation, such as where "authenticity" is at issue and the loss prevents "forensic analysis." *Bull v. UPS*, 665 F.3d 68, 73 (3d Cir. 2012).

But, outside of such unusual circumstances, there "is no force to the argument that the destruction of duplicative materials constitutes spoliation of evidence." *Alexce v. Shinseki*, 447 F. App'x 175, 178 (Fed. Cir. 2011). *See also Volk v. United States*, 111 Fed.Cl. 313, 328 n. 13 (2013) (following *Alexce*); *Erhart v. Bofl Holding*, No. 15-2287, 2016 WL 5110453, at *4 (S.D. Cal. Sept. 21, 2016) ("[B]ecause Erhart provided to BofI a duplicate of the only file on this flash drive that has been destroyed, the spoliation inquiry ends here for this electronic device."); *Contour Data Solutions v. Gridforce Energy Mgmt.*, No. 20-3241, 2021 WL 5541787, at *4 (E.D. Pa. Jan. 19, 2021) (no "spoliation" where "copies of the information" are available); *McCadden v. Nat'l R.R. Passenger Corp.*, No. 01-4286, 2002 WL 32342483, at *7 (E.D. Pa. Oct. 29, 2002) ("Plaintiff would not be prejudiced because he has been provided copies.").

***Mere speculation that something might be missing is insufficient to establish spoliation.*** *See Rhein-Hawes v. Vanguard Group, Inc.*, No. 05-665, 2005 WL 3441228, at *3 (E.D. Pa. Dec. 14, 2015) ("it is completely unknown whether any other pages of the [destroyed] spiral notebook" besides those copied "related to" the case, and therefore, movant "has failed to establish that any relevant evidence was destroyed and cannot establish that she suffered any prejudice"). And, even where there is some loss of unique evidence, there is no spoliation worthy of sanction where it represents only a "fraction" of the relevant materials and the plaintiff otherwise has "hundreds of files," the "trail has been blazed", and the plaintiff "need only follow it instead of seeking sanctions." *Erhart*, 2016 WL 5110453, at *7.

If spoliation has occurred, then the second step of the analysis requires an application of the Third Circuit's three-factor test to determine whether sanctions are warranted. *Bistrian*, 448 F. Supp. 3d at 466. The court must consider: (1) the degree of the fault of the party who altered or destroyed the evidence; (2) prejudice suffered by the opposing party; and (3) whether a lesser

sanction will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will deter such conduct by others. *GN Netcom, Inc. v. Platronics, Inc.*, 930 F.3d 76, 82 (3d Cir. 2019).

Ultimately, however, Rule 37(e) makes explicit that an adverse inference is appropriate only upon finding that the party responsible for the destruction of the lost information ***acted with the intent*** to deprive another party of access to the relevant information. *See* Fed. R. Civ. P. 37(e)(2)(A) (emphasis added). Indeed, it is well acknowledged that an adverse inference is an extreme and unusual remedy for the alleged spoliation of evidence and should not be imposed for mere inadvertent destruction. *McAdams v. United States*, 297 F. App'x 183, 187 (3d Cir. 2008).

Here, under the first step of the analysis there is no spoliation as Defendants' production demonstrates the electronically stored information exists in multiple locations and duplicate emails can be found from multiple sources and custodians. The inquiry should stop there. Even if the Court proceeds to the second step, however, there should be no sanctions ordered because the deletion was inadvertent and there is no prejudice. If, nevertheless, the Court is inclined to order any type of sanction, it should be minor, such as a monetary fine or paying for the depositions of Ixtabalan, Brody, and Stein.

**B. UNDER THE FIRST STEP OF THE RULE 37 SPOLIATION ANALYSIS, THERE IS NO SPOLIATION BECAUSE IXTABALAN, BRODY, STEIN, AND OLAFSSON'S EMAILS EXIST IN OTHER LOCATIONS.**

There can be no finding of spoliation because emails involving Ixtabalan, Brody, Stein, and Olafsson have been produced. As the federal rules appropriately recognize, electronically stored information usually exists in multiple locations and duplicate emails are (as is the case here) often found from multiple sources, including from more than one custodian. And, indeed, the parties' Joint Stipulation for an Order Governing Procedures of Electronically Stored Information permits de-duplication of electronic documents stored in different locations. (*Donofrio* ECF 263.)

Plaintiffs' initial concern appears to be that none of the produced emails identify Ixtabalan, Brody, Stein, or Olafsson as the "custodian"; however, even if IKEA were in possession of those emails, it did not have to produce *duplicates* of ESI associated both with other custodians *and* with Ixtabalan, Brody, Stein, or Olafsson. IKEA has produced hundreds of electronically stored documents with Ixtabalan, Brody, Stein, and Olafsson identified as recipients or senders. Plaintiffs concede that they have documents authored by Brody and Ixtabalan but lament they came from a different custodian, even if that custodian, such as Jacqueline DeChamps, had the same exact position as Ms. Ixtabalan. Because the ESI at issue exists in multiple locations and has been produced, there should be no finding of spoliation. *See Bistrian*, 448 F. Supp. 3d at 465; *Martin v. Wetzel*, No. 18- 00215, 2020 WL 6948982, at *4 (W.D. Pa. Nov. 25, 2020) (no prejudice where video footage was automatically deleted after 30 days because defendant produced separate video of the incident from another angle; thus the information was made available through other means).

Moreover, Plaintiffs' own argument undermines what they are seeking from the Court. Plaintiffs argue Ixtabalan and Brody are "top-level people" who would have communicated and implemented age "diversity" goals to each other and to other top-level management employees. Pl. Br. at p. 25. But if Ixtabalan and Brody only communicated something to each other—and such a communication is pure speculation—then it cannot be the "smoking gun evidence" that establishes IKEA circulated age-based goals or policy favoring younger employees for management-level positions to its scores of stores throughout the country.

Axiomatically, such goals and policy would require communication to all store and hiring managers in order to implement. Plaintiffs do not contest this premise. They cannot simply speculate that some unique, relevant documents *must* exist (albeit only, and conveniently, in the accounts of the four people at issue in their Motion) to obtain a sanction. Speculation is not enough

to establish spoliation. *Rhein-Hawes*, 2005 WL 3441228, at *3. Rather, Plaintiffs must actually show their claim that relevant documents were not preserved and produced. *See Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, No. 15-6480, 2020 WL 3498161, at *3 (E.D. Pa. June 20, 2020) (holding the plaintiffs' must produce some evidence to support a claim that unproduced responsive documents exists); *Ford Motor Co. v. Edgewood Props, Inc.*, 257 F.R.D. 418, 428 (D.N.J. 2009) ("The notion that a document production is insufficient based on a belief that documents must exist simply is not enough to grant a motion to compel."). Their failure to do so here dooms their motion.

### C. UNDER THE SECOND STEP OF THE RULE 37 SPOLIATION ANALYSIS, APPLICATION OF THE THIRD CIRCUIT'S THREE-FACTOR TEST DEMONSTRATES THAT NO SANCTIONS SHOULD BE IMPOSED.

For the reasons set forth above, there has been no spoliation of evidence, and Plaintiffs' Motion for Sanctions fails at the first step. However, if there is a finding of spoliation, the Third Circuit's three-factor test demonstrates there should be no sanctions.

#### 1. IKEA Inadvertently Deleted the Mailboxes of Three Custodians.

IKEA regrettably failed to preserve the email accounts (but not actual emails) of Ixtabalan, Brody, and Stein. This resulted from human error involving a miscommunication relating to the distribution of the updated litigation holds. Plaintiffs have offered no basis for the Court to conclude there was a concerted effort to deprive Plaintiffs of access to the information. At best, Plaintiffs can only suggest IKEA was negligent. ***Defendants are aware of no case in the Third Circuit in which a court has granted a spoliation inference due to negligence in implementing a litigation hold.*** *Flanders v. Dzugan*, No. 12-1481, 2015 WL 5022734, at *6 (W.D. Pa. Aug. 24, 2015) (holding failure to institute a litigation hold without a showing of bad faith not sufficient despite foreseeability of litigation)*; see also Giuliani v. Springfield Twp*., No. 10-7518, 2015 WL

3604343, at *8 (E.D. Pa. June 9, 2015) ("Because a finding of spoliation requires more than mere negligence I cannot here conclude that there has been spoliation of evidence given the absence of evidence that there was some bad intent or ill motive behind defendants' failure to preserve the requested evidence."). Thus, under Rule 37(e), Plaintiffs have failed to demonstrate they are entitled to any adverse inference.

**2. Plaintiffs Have Suffered No Prejudice.**

Prejudice to opposing parties requires a showing that the spoliation materially affected the substantial rights of the adverse party and is prejudicial to the presentation of the case. This requires offering "plausible, concrete suggestions" of what the missing evidence would have shown. *Bistrian*, 448 F. Supp. 3d at 478; *see also Percella v. City of Bayonne*, No. 14-3695, 2020 WL 6559203, at *11 (D.N.J. Nov. 9, 2020) (finding no prejudice when moving party failed to explain what lost text messages would show or how they would disprove the plaintiff's claims), *aff'd*, 2022 WL 2207832 (3d Cir. June 21, 2022).

Plaintiffs contend "the ESI produced by IKEA in 2022, while damning in its evidence of systemic age bias, included documents indicating that the email files of custodians Ixtabalan, Brody, Olafsson, and Stein contained a trove of additional material evidence probative of IKEA's systemic age bias." Pl. Br. at p. 20. But *what* trove? And *what documents*? Plaintiffs offer no "plausible, concrete" descriptions of what they claim to be missing. Instead, they offer only speculation.

**Plaintiffs Have Offered Nothing But Speculation Relating to "Missing" Emails from Custodian Brody.** Plaintiffs offer two hypotheses about purportedly missing emails from Brody, but neither are the "plausible, concrete" suggestions necessary to show *missing* documents. First, Plaintiffs reference a PowerPoint document produced by IKEA that was *authored* by Brody

created on April 20, 2011, and last modified on September 7, 2014. Pl. Br. at p. 21. Plaintiffs complain this document was culled from Jacqueline DeChamps' email account (the former Chief Human Resources Officer from 2013-2015) but authored by Brody. Of course, *Plaintiffs already have this document.* And the fact that it was contained in DeChamps' email supports Defendants' position here, not Plaintiffs'. Documents of this nature were (and would inherently need to have been) distributed to other custodians whose accounts were preserved and searched. Identifying a document that was contained in another custodian's email account, preserved, and produced does not help Plaintiffs offer "plausible, concrete" evidence that other documents of a similar nature must not have been preserved. Instead, it shows the opposite is true.

Second, Plaintiffs identify a .pdf file entitled "Recruitment with diversity in mind IT [Information Technology] Delivery FY14" produced by IKEA that was again authored by Brody. Again, Plaintiffs have this document. And nothing about this document suggests there would be underlying emails about it that other members of the Equality, Diversity & Inclusion ("ED&I") team would not have received. Moreover, as Plaintiffs neglect to explain to the Court, the IKEA Information Technology organization is not part of the retail store, so this document is not even relevant to their claims.

**Plaintiffs Have Offered Nothing But Speculation Relating to "Missing" Relevant Emails from Custodian Ixtabalan.** Plaintiffs' argument for why there must be missing emails from Ixtabalan is equally unpersuasive. Plaintiffs contend IKEA produced an email from Store Manager Frank Briel that contained in the underlying email string a November 2, 2015 email from Ixtabalan. Once more, *Plaintiffs have this email* from Ixtabalan. They complain, however, that Ixtabalan's email in the produced form "does not contain a 'to' line, which would show those employees who received the communication from Ixtabalan regarding diversity." Pl. Br. at p. 22.

This is misleading; IKEA produced a different version of this exact email in which all of the recipients are included. Indeed, this email was widely distributed to three separate listservs along with 26 individuals. (*See* November 2, 2015 email attached hereto as Exhibit D.) This document does not evince Plaintiffs' claim of missing emails, it shows that the opposite is true. Plaintiffs also reference this email to speculate there are missing related communications as part of the recap of FY14 diversity efforts and regarding what remained to be done. Pl. Br. at p. 23. This email speaks for itself and does not indicate what Plaintiffs claim.

In reality, Plaintiffs are in possession of other ESI documents relating to the recap of FY14 diversity efforts. For instance, IKEA produced a November 19, 2014 email from Jacqueline DeChamps to more than 100 recipients with the subject line "Diversity & Inclusion—Update". In this email, Ms. DeChamps asserted, "We want to take a moment and update you on the progress made with our Diversity and Inclusion direction for IKEA Retail. As stated in an earlier email (attached) the USMT took the direction that our key areas of focus for coming years will be Ethnicity and Gender." Later in the email, Ms. DeChamps indicates "[a]ttached you will find the PMA Data from Valasis that provides you with a snapshot for your location. Please consider this as you build your areas of focus for FY 15." (*See* November 19, 2014 email attached hereto as Exhibit E.)

Similarly, Plaintiffs reference another email that IKEA *produced*, which includes an email *sent* by Ms. Ixtabalan and make an uncorroborated blanket statement that it is "reasonable to assume that other smoking gun evidence of systemic company age bias would be in Ms. Ixtabalan's emails." Pl Br. at 23. But the standard for an award of sanctions is not "assumption." Mere speculation cannot establish the requisite prejudice. And that is particularly true here when IKEA

has produced *hundreds* of emails from or to these custodians, including emails Plaintiffs claim are "smoking guns."

**Plaintiffs Have Offered Nothing But Speculation Relating to "Missing" Relevant Emails from Custodian Stein.** Stein was an IKEA Store Manager at IKEA New Haven. Plaintiffs do not even try to explain why Stein would have any email that other store managers (or store HR personnel) at IKEA would not be on. Instead, they reference an email produced by IKEA authored by the HR Manager of IKEA New Haven and sent to Stein and other leadership in the store regarding how their "teams are trending against the deadline of 1.15.19." In short, this document relates to the talent review process of only the IKEA New Haven store. Certainly such a document cannot relate to any "smoking gun evidence of systemic company age bias" if it only relates to IKEA New Haven. Regardless, Plaintiffs fail to explain why this document, *which was preserved and produced,* means that *other* documents were not. Speculation is not enough; concrete evidence is required. And the only thing that this document shows is that emails to and from Stein were preserved and produced.

**IKEA Had No Duty to Preserve Olafsson's Emails Before Regular Deletion According to the Company's Normal Business Practices.** As noted above, there was no reasonable basis for IKEA to preserve Olafsson's emails following her termination in March 2018. *See Cianci v. Phoenixville Area Sch. Dist*., No. 20-4749, 2022 WL 824026, at *9 (E.D. Pa. Mar. 18, 2022) (no basis for finding of bad faith where data was deleted in accordance with district's record retention policy). Even if there was, Plaintiffs once again dodge the issue that other email accounts such as DeChamps' would have received the same emails as they were in similar roles.

In sum, there is no "plausible, concrete suggestion[]" that there is missing, relevant evidence of the at-issue custodians let alone what the missing evidence would have shown. For this reason, too, Plaintiffs are not entitled to sanctions. *See Bistrian*, 448 F. Supp. 3d at 477.

**3. There is No Evidence of Bad Faith and Sanctions are Not Warranted.**

While IKEA attempted, but mistakenly failed, to preserve the email accounts of the three custodians at issue in this matter, there is no evidence of bad faith, only human error. IKEA acted in good faith when it distributed its December 2016 and 2020 litigation holds. There was an inadvertent error made in between when the September 2018 litigation holds were not distributed. Plaintiffs attempt to create a smokescreen by arguing IKEA should have informed them earlier of the deleted email accounts. While IKEA could have alerted Plaintiffs earlier, Plaintiffs knew from the ESI data that none of the produced ESI documents were retrieved directly from the email accounts of Ixtabalan, Brody, Stein, or Olafsson, and IKEA produced hundreds of ESI documents that these individuals authored or received. IKEA took the same position in its letters to Plaintiffs that it argues here, and Plaintiffs would have brought the exact same motion regardless of when IKEA disclosed this information. There is no evidence of bad faith. Accordingly, the Court should decline to issue a spoliation inference or to impose any other sanction. *Flanders*, 2015 WL 5022734, at *6 (W.D. Pa. Aug. 24, 2015); *Davis v. Quaker Valley Sch. Dist.,* No. 13-1329, 2016 WL 912297, at *9 (W.D. Pa. Mar. 10, 2016) (no spoliation inference where requesting party failed to demonstrate bad faith), *aff'd*, 693 F. App'x 131 (3d Cir. 2017).

## IV. CONCLUSION

Vague speculation as to whether evidence has been destroyed or even whether evidence was relevant does not rise to the specificity level required by the Third Circuit to impose sanctions or even make a finding of spoliation. There is certainly no prejudice or bad faith, and the Court

should respectfully deny Plaintiffs' Motion and decline to issue a spoliation inference or to impose any other sanction at this time.

Respectfully submitted,

*<u>/s/ Brandon R. Sher</u>*
Paul Lancaster Adams, Esq.
Brandon R. Sher, Esq.
Emily Santoro, Esq.
Chris R. Pace, Esq. (Admitted *Pro Hac Vice*)
John G. Stretton, Esq. (Admitted *Pro Hac Vice*)
Thomas A. Lidbury, Esq. (Admitted *Pro Hac Vice*)
**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, PC.**
1735 Market Street, Suite 3000
Philadelphia, PA 19103
(215) 995-2840 Telephone
(215) 995-2801 Facsimile
pladams@ogletree.com
brandon.sher@ogletree.com
emily.santoro@ogletree.com
chris.pace@ogletree.com
john.stretton@ogletree.com
thomas.lidbury@ogletree.com