**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FRANK DONOFRIO,<br>*on behalf of himself individually and on behalf of those similarly situated,*<br>Plaintiff,<br><br>v.<br>IKEA US RETAIL, LLC<br>Defendant. | : | CIVIL ACTION<br>No. 2:18-cv-00599-AB |
| WILLIAM V. ANTONELLI, JR.,<br>*on behalf of himself individually and on behalf of those similarly situated,*<br>Plaintiff,<br><br>v.<br>IKEA HOLDING US, INC.,<br>IKEA US RETAIL, LLC, and<br>IKEA NORTH AMERICA SERVICES, LLC,<br>Defendants. | : | CIVIL ACTION<br>No. 2:19-cv-01286-AB |
| BRANDON PAINE,<br>*on behalf of himself individually and on behalf of those similarly situated,*<br>Plaintiff,<br><br>v.<br>IKEA HOLDING US, INC.,<br>IKEA US RETAIL, LLC, and<br>IKEA NORTH AMERICA SERVICES, LLC,<br>Defendants. | : | CIVIL ACTION<br>No. 2:19-cv-00723-AB |

**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS AGAINST DEFENDANTS FOR SPOLIATION OF EVIDENCE AND VIOLATION OF THE COURT'S APRIL 29, 2022 COURT ORDER (ECF NO. 295)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………………..ii

I. INTRODUCTION……………………………………………………..…...1

II. ARGUMENT………………………………………………………….......2

A. There is no question that IKEA deleted e-mails that it had a duty to preserve, and that IKEA was *aware* of its duty to preserve the emails *before* IKEA deleted them……………………………………………………………………..2

B. IKEA has offered no evidentiary support for the assertion in its Opposition Brief that the deletion of the e-mails was inadvertent, and no explanation whatsoever as to the who/what/where/when/how of the supposed "miscommunication" to which IKEA attributes the breach of its duty to put into place a sufficient litigation hold………………..…………………………………………………………...4

C. As IKEA has admittedly deleted them, IKEA has no basis to say that the deleted emails existed in duplicates that have been produced…………………………...7

D. If what IKEA says about its supposed "standard practice "of deletion and supposedly mistaken belief about the issuance of litigation holds were true, then there is a *several years long gap* when IKEA breached its duty to have in place a sufficient litigation hold and preserve relevant evidence and a greater deletion of relevant emails other than those of Ixtabalan, Brody, Stein and Olafsson…………………………………………………………………...9

E. The idea that Plaintiffs are required to demonstrate prejudice and that they must do so by identifying particular deleted emails and their specific contents is absurd and would have an obvious consequence of benefiting IKEA for the admitted breach of its duties…………………………………………………………………….10

F. IKEA has offered no explanation as to when or how it supposedly learned of the emails' deletion, nor any explanation as to its obfuscation thereafter…………….15

G. IKEA has not actually stated that it searched emails as required by the Court's April, 2023 Order (*i.e.,* without limitation as to location where kept) and its Opposition Brief is intentionally opaque as to whether the emails do not now exist…………………………………………………….............................16

III. CONCLUSION…………………………………………………………………18

# TABLE OF AUTHORITIES

**Cases**

Fromm v. MVM, Inc.,
371 Fed. App'x 263 (3d Cir. 2010) .......... 4

GN Netcom, Inc. v. Plantronics, Inc.,
930 F.3d 76 (3d Cir. 2019) .......... 11

Knickerbocker v. Corinthian Colleges,
298 F.R.D. 670 (W.D. Wash. 2014 ) .......... 6

Major Tours, Inc. v. Colorel,
2009 U.S. Dist. LEXIS 68128 (D.N.J. Aug. 4, 2009) .......... 6, 9

Micron Tech., Inc. v. Rambus Inc.,
917 F. Supp. 2d 300 (Del. 2013) .......... 12

Nixon v. Family Dollar Stores of Pa.,
2021 U.S. Dist. LEXIS 95826 (M.D. Pa. May 20, 2021) .......... 7

Palmer v. Cognizant Tech. Sols. Corp.,
2021 U.S. Dist. LEXIS 252061 (C.D. Cal. Dec. 29, 2021) .......... 3, 13

Zubulake v. UBS Warburg,
220 F.R.D. 212 (S.D.N.Y. 2003) .......... 6

## I. INTRODUCTION.

IKEA's Opposition to Plaintiffs' Motion for Sanctions for Violation of the Court's Order and Spoliation Of Evidence (*Donofrio*, ECF 319)[1] is stunning in its failure to explain its actions. It simply does not meet the seriousness of the situation. Even when called upon to answer before this Court, IKEA does not address the most basic questions as to how it came to be that IKEA deleted critical emails when it was aware that it had a duty to preserve them and its counsel had a duty to ensure that IKEA did so. There is no sworn affidavit from anyone at IKEA saying that the deletions were "inadvertent," no details whatsoever as to the unspecified "miscommunication" to which IKEA attributes the breach of its duty to put into place a proper litigation hold, and not even a representation that IKEA actually searched emails as required by the Court's April 29, 2023 Order (*Donofrio*, ECF 295). As set forth more fully below:

- There is no question that IKEA deleted e-mails that it had a duty to preserve, and that IKEA was aware of its duty to preserve the emails before IKEA deleted them.

- IKEA has offered no evidentiary support for the assertion in its Opposition Brief that the deletion of the e-mails was inadvertent, and no explanation whatsoever as to the who/what/where/when/how of the supposed "miscommunication" to which IKEA attributes the breach of its duty to put into place a sufficient litigation hold.

- As IKEA has admittedly deleted them, IKEA has no basis to say that the deleted emails existed in duplicates that have been produced.

- If what IKEA says about its supposed "standard practice" of deletion and supposedly mistaken belief about the issuance of

[1]Plaintiffs' Opening Brief was filed in redacted form on May 4, 2023, at *Donofrio*, ECF 312; a corrected and unredacted form was given to Chambers by email from undersigned counsel on May 15, 2023. As in Plaintiffs' Opening Brief, unless specified otherwise, citations are to ECF numbers in *Donofrio* only. Citations to the parties' briefs are to internal (not ECF) page numbers.

litigation holds were true, then there is a *several years long* gap when IKEA failed to preserve relevant evidence and a greater deletion of relevant emails than those of Ixtabalan, Brody, Stein and Olafsson.

- The idea that Plaintiffs are required to demonstrate prejudice and that they must do so by identifying particular deleted emails and their specific contents is absurd and would have an obvious consequence of benefiting IKEA for the admitted breach of its duties.

- IKEA has offered no explanation as to when or how it supposedly learned of the emails' deletion nor any explanation as to its obfuscation thereafter.

- IKEA has never actually represented that it searched emails as required by the Court's April, 2023 Order (*i.e.*, without limitation as to storage locations) and its Opposition Brief is intentionally opaque as to whether those emails now exist or not.

## II. ARGUMENT.

### A. There is no question that IKEA deleted e-mails that it had a duty to preserve, and that IKEA was *aware* of its duty to preserve the emails *before* IKEA deleted them.

Cases involving email spoliation often focus on a party's duty to preserve: When was it triggered and whose email did it cover? Other than in connection with Kristie Olafsson, those issues are not at play here.

While Plaintiffs contend that IKEA's duty to preserve arose when IKEA received in November, 2016, Plaintiffs' EEOC Charge alleging systemic age discrimination on behalf of a nationwide class, IKEA's Opposition Brief does not dispute that it had a duty to preserve evidence as of no later than September 11, 2018 -- which was indisputably before IKEA

admittedly deleted emails of Nabeela Ixtabalan (July 31, 2020), Sari Brody (March 9, 2021), and Christof Stein (June 15, 2019).[2]

IKEA's Opposition Brief also does not dispute that the duty to preserve evidence that was triggered no later than September 11, 2018, encompassed the emails of Nabeela Ixtabalan (US Human Resources Manager), Sari Brody (Global Head of Diversity, Equity & Inclusion), and Store Manager Christof Stein.

Further, it is not simply the case that IKEA does not dispute *for purposes of the present Motion* that it had a duty to preserve these emails. IKEA's Opposition Brief admits that IKEA, and its counsel, were **aware of IKEA's duty** to preserve the emails of Ixtabalan, Brody, all Store Managers, and all Human Resources Business Partners as of September 12, 2018.[3] This is not the usual case of a party contending that it did not know that litigation would arise and/or that emails of certain employees would be subject to a duty to preserve later found by a court to have been reasonably foreseeable (*i.e.*, the determination of duty of preservation is made *after* a party had deleted emails). On the contrary, this is the unusual case in which a party and its counsel were admittedly and indisputably aware of the party's duty to preserve emails **before** the party admittedly deleted those emails in the midst of litigation.

Moreover, IKEA's Opposition Brief contends that at the time of their deletion, it was the company's "standard practice" to automatically "hard delete" e-mailboxes 30 days after their soft

---

[2] See Declaration of Kannan Sudharsan (Exhibit B to Defendants' Opposition Brief) at *Donofrio* ECF 319-1, ¶4.
[3] *See* Defendants' Opposition Brief, ECF 319, p. 4 (asserting that IKEA outside counsel on September 11, 2018, drafted litigation holds for "intended recipients" including Ixtabalan, Brody, all Store Managers, and all Human Resources Business Partners); Declaration of Amanda Quillen (Exhibit A to Defendants' Opposition Brief, *Donofrio,* ECF 319) ¶¶3, 4 ("On September 12, 2018, the IKEA Co-worker Relations Department was informed of the need for distributing updated litigation holds for the lawsuit brought by Frank Donofrio. The September 12, 2018 updated litigation holds' intended recipients included, among others, Nabeela Ixtabalan, Sari Brody, and all Store Managers (such as Christof Stein).").

deletion upon termination of employment. IKEA does not dispute its awareness of what it contends is its "standard practice" of the company's willful and intentional deletion of emails.

In sum, IKEA's Opposition Brief does not dispute that, notwithstanding its admitted awareness of its duty to preserve the emails of Ixtabalan, Brody and Stein, IKEA deleted them. IKEA's Opposition Brief does not dispute that, notwithstanding the Court's April 29, 2022 Order to review documents contained in the emails files of Ixtabalan, Brody, Olafsson, and Stein, and to produce ESI responsive to Plaintiffs' requests from those documents, IKEA did not do so.

**B. IKEA has offered no evidentiary support for the assertion in its Opposition Brief that the deletion of the e-mails was inadvertent, and no explanation whatsoever as to the who/what/where/when/how of the supposed "miscommunication" to which IKEA attributes the breach of its duty to put into place a sufficient litigation hold.**

IKEA's Opposition Brief argues that the deletion of the emails was "inadvertent." Fundamentally, though, arguments are not evidence; a party's position must be supported by record evidence. *See, e.g., Fromm v. MVM, Inc.*, 371 Fed. App'x 263, 270 (3d Cir. 2010)(rejecting a party's argument in opposition to a motion for summary judgment because "arguments are not evidence," and the party's position was not supported by the record evidence). Where are the sworn affidavits actually saying that the deletions were inadvertent and explaining why that is the case? Where is a sworn affidavit from anyone with personal knowledge of IKEA's supposed "standard practice" regarding document retention/destruction during the relevant time periods?[4] Where is IKEA's applicable document retention/destruction

[4] Sudharsan Kannan was not even employed by IKEA until February, 2023. *See* June 5, 2023, Saint-Antoine Declaration (attached hereto as Ex. B) ¶4; Ex. B-55 (Kannan LinkedIn profile). His Declaration notably addresses IKEA's "standard practice" in the present tense. Mr. Kannan's Declaration does not speak to IKEA's "standard practice" regarding document retention/destruction during the period since Plaintiff Donofrio filed his Charge in November, 2016, through IKEA's admitted deletion of the emails (deletion of Brody emails in July, 2021).

policy? Where is the support for the employee termination dates stated in IKEA's Brief?[5] Where is the analysis to which Mr. Kannan's Declaration refers?[6] Where is a sworn affidavit from anyone at IKEA with personal knowledge of the issuance and implementation – or not – of litigation holds in these collective action cases?[7] Where is a sworn affidavit explaining the process by which IKEA IT preserves emails or the connection between "intended" recipients of a litigation hold, its "distribution," and actions by IT? What were the instructions of the 2016 litigation holds and what did they cover? What were the instructions of the apparently drafted but never implemented September 11, 2018 litigation holds and what did they cover? What were the instructions of the 2020 litigation holds and what did they cover?

What the record evidence submitted by IKEA actually establishes is this: 1) IKEA as of no later than September 12, 2018, was aware of its duty to preserve the emails of Ixtabalan, Brody, Stein and others; and 2) IKEA's counsel as of no later than September 11, 2018, was aware of IKEA's duty to preserve the emails of Ixtabalan, Brody, Stein and others, and the need

---

[5] IKEA's Opposition Brief lists without evidentiary support January 1, 2021, as the date when Sari Brody, IKEA Group Global head of Equality, Diversity and Inclusion, terminated employment with IKEA. Ms. Brody's own LinkedIn profile (Ex. A-37), however, states that she was self-employed at that time and indicates that she terminated employment with IKEA in June, 2020. According to Mr. Kannan, Ms. Brody's emails were "hard deleted" in March 9, 2021. Kannan Declaration (*Donofrio*, ECF 319-1), ¶4. This was more than nine months – not 30 days -- after she terminated employment, and notably, **one week after** Plaintiffs served upon Defendants Plaintiffs' Joint and Consolidated Document Requests (Set One), which specifically requested communications regarding, *e.g.*, age goals in connection with "diversity." *See* June 5, 2023 Saint-Antoine Declaration ¶5.

[6] The only information of which Mr. Kannan appears to have personal knowledge is his analysis of when the mailboxes of Olafsson, Stein, Ixtabalan, and Brody were deleted. *See* Kannan Declaration (*Donofrio*, ECF 319-1), ¶4. The analysis itself is not attached to the Declaration.

[7] The Quillen Declaration attributes responsibility for a litigation hold process going back to Fall, 2016, to the IKEA Co-worker Relations Department. Ms. Quillen asserts that she "previously was IKEA Co-worker Relations Manager and IKEA HR Policy & Compliance Specialist." This appears to be technically true; however, Ms. Quillen did not become the IKEA Co-worker Relations Manager until April, 2019, which is notably *after* the September, 2018 supposed litigation hold letters "intended" to be – but not actually – distributed. *See* June 5, 2023 Saint-Antoine Declaration ¶6; Amanda Quillen LinkedIn (Ex. B-54) Further, her Declaration does not even purport to address any of the unanswered questions noted herein.

for IKEA to implement a far reaching litigation hold that included Ixtabalan, Brody, Stein, all Store Managers, and all Human Resources Business Partners.

Thus, IKEA was indisputably on notice that it was required to suspend its routine email destruction practices and had a duty to institute a sufficient litigation hold. Further, IKEA's counsel had an obligation to **oversee IKEA's compliance with the litigation hold**, including monitoring IKEA's efforts to retain admittedly relevant documents including the emails of Ixtabalan, Brody, Stein, all Store Managers, and all Human Resources Business Partners. *See, e.g., Zubulake v. UBS Warburg*, 220 F.R.D. 212, 432 (S.D.N.Y. 2003)(stating that "Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched."); *Major Tours, Inc. v. Colorel*, 2009 U.S. Dist. LEXIS 68128, *9 (D.N.J. Aug. 4, 2009)(citing *Zubulake* in support of its recognition of counsel's continuing obligation to oversee and monitor its client's compliance with a sufficient litigation hold, and requiring production of litigation hold letters following preliminary finding of spoliation); *Knickerbocker v. Corinthian Colleges*, 298 F.R.D. 670, (W.D. Wash. 2014 )(sanctioning an offending party and its counsel for party's failure to implement a litigation hold).

So how did it come to be that IKEA, under the continuing oversight of counsel, took no steps to put into place a sufficient litigation hold for *several years* (admittedly from the latest of September 11, 2018, through at least March 9, 2021, and possibly to this day) and delete these emails? Was IKEA's experienced litigation counsel derelict in its duties? Did IKEA intentionally disregard its counsel's instructions? IKEA's Opposition Brief does not say.

Instead, IKEA's Opposition Brief attributes the breach of its admitted duty to put into place a sufficient litigation hold to an unspecified "miscommunication." But IKEA offers no evidentiary support whatsoever regarding the supposed "miscommunication." What was the

substance of the "miscommunication"? What is the basis for IKEA's characterization of it as a miscommunication? Who made it? Through what medium? Who heard or received it? When was it communicated? What specifically was done, or not done, by IKEA in response? What other communications were made? What affirmative steps, if any, were taken by IKEA's counsel to ensure and monitor compliance with the litigation hold? Did IKEA's counsel request and receive an acknowledgement by IKEA of receipt of the litigation holds? There is not a single sworn Declaration supporting the Opposition Brief's statement that it was unbeknownst to IKEA Legal Department that IKEA co-worker Relations did not distribute September 2018 litigation holds. **Where is the sworn affidavit from someone with responsibility for what happened actually describing what happened?**

IKEA's Opposition Brief's lack of any evidentiary support for its argument that IKEA's deletion of the emails was inadvertent is a good basis from which to conclude that IKEA's deletion of emails was not inadvertent: IKEA deleted critical emails with the intent to deprive Plaintiffs of their use in litigation. *See generally, e.g., Nixon v. Family Dollar Stores of Pa.*, 2021 U.S. Dist. LEXIS 95826, * (M.D. Pa. May 20, 2021)(drawing inference of bad faith failure to preserve evidence by a party who was put on notice and requested to preserve critical evidence, and had no justification for its failure to do so).

**C. As IKEA has admittedly deleted them, IKEA has no basis to say that the deleted emails existed in duplicates that have been produced.**

IKEA argues: "There can be no finding of spoliation because emails involving Ixtabalan, Brody, Stein and Olafsson have been produced." IKEA Opposition Brief at p. 10. Of course, while it is technically true that emails (*some* emails) involving Ixtabalan, Brody, Stein and Olafsson have been produced, it is obviously **not** true that **all** responsive emails involving Ixtabalan, Brody, Stein and Olafsson have been produced.

IKEA does not – and cannot -- possibly support any argument in its Opposition Brief that all responsive emails to or from these former employees existed as duplicates that have been produced when IKEA has admittedly deleted the emails. We are not talking about a few specific evidentiary items here such as surveillance video made from different angles or a handful of original documents whose authenticity is at issue. IKEA admittedly deleted the e-mailboxes of these key custodians *in their entirety* and has produced no index, log, or other indication of their identification or number.

Further, IKEA claims to have produced emails from 73 custodians,[8] but IKEA cannot possibly claim that all responsive emails involving Ixtabalan, Brody, Stein and Olafsson were sent only to these 73 custodians and produced by IKEA as duplicates.

First, all duplicates of communications between or among only Ixtabalan, Brody, Stein and Olafsson were admittedly deleted by IKEA.

Second, Sari Brody was the only "Global" (as distinct from "US") employee among the list of custodians whose emails IKEA was ordered to search.[9] Any duplicates of communications between or among Ixtabalan, Brody, Olafsson, or Stein and IKEA "Global" personnel were not produced. This is a critical and gaping hole in light of the commitment by IKEA US to implement IKEA Global's "diversity" goal to focus on young potentials.

Third, all duplicates of communications between or among Ixtabalan, Brody, Stein, Olafsson, and the highest level of IKEA management were not produced. The Court denied Plaintiffs' request to include the emails of Lars Petersson, US Country Retail Manager from

---

[8] Some of the 73 custodians have a **suspiciously** low number of emails produced. For example, and without limitation, IKEA produced **1** document from custodian Michael DeSanto, an IKEA Recruiting Manager who sued IKEA for retaliation in violation of the ADEA age discrimination for complaining of age discrimination. *See* June 5, 2023 Saint-Antoine Declaration at ¶7; *DeSanto v. IKEA North America Services, Inc.*, E.D. Pa. 2:21-cv-01533-JHS.

[9] See *Donofrio*, ECF 295.

approximately January 1, 2014 to March 1, 2019; Javier Quinones, US Country Retail Manager from approximately March 1, 2019 to June 1, 2019; and Michael Ward, Regional Retail Manager, IKEA North America from January 1, 2014 to June 1, 2019. This is also a critical gap in light of the roles of the heads of US Human Resources and US Management in shaping IKEA US policies.

Plainly, just because IKEA claims to have produced a lot of emails from other custodians does not mean that it produced all relevant emails from these critical custodians. *See, e.g., Major Tours*, 2009 U.S. Dist. LEXIS 68128, *14-15 (rejecting defendants' argument that even if not all emails were saved, those emails may not be lost because of the possibility that they may be found in other people's mailboxes). "Just because some of [a custodian's] emails may be recoverable does not suggest that others have not been spoliated." *Id.*

**D. If what IKEA says about its supposed "standard practice" of deletion and supposedly mistaken belief about the issuance of litigation holds were true, then there is a *several years long gap* when IKEA breached its duty to have in place a sufficient litigation hold and preserve relevant evidence and a greater deletion of relevant emails other than those of Ixtabalan, Brody, Stein and Olafsson.**

We know now from IKEA's Opposition Brief that IKEA contends that it had a "standard practice" of email deletion upon an employee's termination of employment and that IKEA admittedly failed to put into place a proper litigation hold for *several years* (admittedly from the latest of September 11, 2018 through at least March 9, 2021). According to IKEA's Opposition Brief, IKEA outside counsel on September 11, 2018, drafted litigation holds for "intended recipients" including Ixtabalan, Brody, all Store Managers, and all Human Resources Business Partners. IKEA's Opposition Brief contends that because of the supposed "mistaken belief" that the emails of these individuals had been subject to litigation holds, they were not subject to a notification hold after September 11, 2018, including the supposed 2020 litigation holds.

If what IKEA's Opposition Brief says about its "standard practice" and "miscommunication" were true (and there are good reasons to doubt it),[10] many other former employees whose email boxes were mistakenly believed to have been subject to a litigation hold in September, 2018 (*i.e.*, all Store Managers and Human Resources Business Partners) would also have been deleted following termination and not produced. The existence of a lengthy gap during which there was no sufficient litigation hold in place is basis to infer that relevant emails have been deleted. *See Major Tours,* 2009 U.S. Dist. LEXIS 68128, *13 (finding that it was probable that relevant evidence was lost during a 21 month period in which the offending party had not issued a litigation hold).

**E. The idea that Plaintiffs are required to demonstrate prejudice and that they must do so by identifying particular deleted emails and their specific contents is absurd and would have an obvious consequence of benefiting IKEA for the admitted breach of its duties.**

---

[10] In their opening Brief, Plaintiffs pointed out that IKEA had apparently not deleted the emails of Simon Lowes (who replaced Ixtabalan as head of US Human Resources) even though he terminated employment with IKEA before Ms. Ixtabalan did. IKEA's Opposition addresses this by saying – without any support or detail – that the Lowes' emails were subject to a separate litigation hold. IKEA does not say when the separate litigation hold was issued, or if it was before or after the 30 day "hard deletion" date per its supposed standard practice.

Mr. Lowes is not the only example. Without limitation, IKEA was ordered to search documents from the email files of the Store Managers from East Palo Alto for the time period of January 1, 2016 to June 1, 2019. (*Donofrio,* ECF 295.) Ms. Varela was the East Palo Alto Store Manager during this time. *See* February 11, 2022 Letter from Traer Cundiff (attached hereto as Ex. B-56). Ms. Varela terminated employment with IKEA on October 2, 2021. *See* June 5, 2023, Saint-Antoine Declaration ¶9; Monica Varela LinkedIn Profile (Ex. B-57). Ms. Varela was a Store Manager as of September, 2018, so presumably would have been among the "intended recipients" of the of the supposed September, 2018 litigation hold and thus not have been added to the subsequent 2020 litigation holds, and her emails would have been deleted in approximately July, 2019. However, IKEA's ESI production included documents from Ms. Varela as a custodian. *See* June 5, 2023, Saint-Antoine Declaration p10.

The inconsistencies in IKEA's explanation suggest that it is not credible, which is additional basis to draw the inference that IKEA's deletion of certain emails was not inadvertent and was done in bad faith.

IKEA's Opposition Brief argues that Plaintiffs have not demonstrated that they have suffered any prejudice and that "the draconian 'win by default' sanctions plaintiffs seek here, are warranted." IKEA's Opposition Brief p. 1. IKEA's Opposition is wrong on several fronts.

First, as a preliminary matter, Plaintiffs do not seek case dispositive sanctions.

Second, a finding of prejudice is not required for the Court to impose sanctions here under Fed.R.Civ.P. 37(e). **Fed.R.Civ.P. 37(e)(2)** does not include a requirement that the court find prejudice to the party deprived of the deleted ESI. *See* Fed.R.Civ.P. Advisory Committee Notes, Fed.R.Civ.P. 37(e)(2); *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 83 (3d Cir. 2019)(explaining that under Rule 37(e) and its subsections, a court must find **either** prejudice to the moving party (entitling the party to the sanctions of 37(e)(1)) **or** that the offending party acted with the intent to deprive the moving party of the ESI's use in litigation (entitling the moving party to sanctions of 37(e)(2)). "This is logical because 'once spoliation is shown, the burden of proof logically shifts to the guilty party to show that no prejudice resulted from the spoliation because that party is in a much better position to show what was destroyed and **should not be able to benefit from its wrongdoing**." *OmniGen Research, LLC v. Wang*, 321 F.R.D. 367, 372 (D. Or., 2017)(emphasis added, citations omitted). Similarly, **Fed.R.Civ.P. 37(b)(2)(A)** does not include a requirement that the court find prejudice to the moving party as a result of the offending party's failure to obey a court order. Plaintiffs have demonstrated that IKEA acted with the intent to deprive Plaintiffs of the ESI's use in litigation; showing prejudice is not required.

Third, IKEA has the burden to show that Plaintiffs did not suffer prejudice if the court considers sanctions under its inherent authority (as distinct from under Rule 37(e)). *See, e.g., Micron Tech., Inc. v. Rambus Inc.*, 917 F. Supp. 2d 300, 319 (Del. 2013)(explaining that "[a] bad

faith spoliator carries a heavy burden to show lack of prejudice because [a] party who is guilty of intentionally [destroying documents … should not easily be able to excuse the misconduct by claiming that the vanished documents were of minimal import."). IKEA does not meet its burden of proving that Plaintiffs did not suffer prejudice from IKEA's bad faith deletion of emails by pointing to evidence that it did produce documents evidencing IKEA's age biased preferences for younger managers. Plainly, the fact that IKEA has produced damning evidence of its age bias does not mean that it has produced <u>all</u> evidence of IKEA's age bias. *See also Palmer v. Cognizant Tech. Sols. Corp.*, 2021 U.S. Dist. LEXIS 252061, *44 (C.D. Cal. Dec. 29, 2021)(rejecting defendant's argument that its production of over 270,000 documents provides evidence of their good faith search for and collection of responsive documents, and does not demonstrate that plaintiffs were not prejudiced by defendant's failure to produce all responsive documents).

Unless IKEA is willing to stipulate that IKEA had in place a corporate policy and/or standard operating procedure, to which all of its retail employees were subject, of favoring younger people in leadership development and management level positions, which was considered by IKEA in selection decisions for management level positions, including applications for promotion, then IKEA has suffered prejudice as a result IKEA's deletion of these emails.

Fourth, to the extent that Plaintiffs must show prejudice in order to warrant sanctions, they have done so. For IKEA to suggest that Plaintiffs must be able to identify particular emails it believes is missing and state what was in them – when IKEA has deleted them and Plaintiffs have never gotten the opportunity to see them – is absurd. The emails are <u>admittedly</u> relevant; indeed, IKEA's Opposition contends that they were "intended" to be the subject of a litigation

hold. And there is no "speculation" involved here; IKEA admittedly deleted these admittedly relevant emails.

Further, IKEA's Opposition Brief actually contends that it failed to put into place a proper litigation hold for *several years* (admittedly from the latest of September 11, 2018 through at least March 9, 2021). Given this gap, it is not purely speculative, but reasonable, to infer that relevant evidence was lost. *See, e.g.*, *Major Tours*, 2009 U.S. Dist. LEXIS 68128, *13.

Moreover, Plaintiffs offered in their opening Brief several examples demonstrating that Ixtabalan (US Head of Human Resources), Brody (Global Head of Diversity), Olafsson (US Recruitment Manager), and Store Manager Stein were engaged in communications in which IKEA expressly communicated the company's preference for younger employees in leadership and management positions and, in particular, the effort by US Human Resources to implement throughout the stores the overtly biased "Global" diversity goal of "focusing on young potentials." It is a "plausible and concrete" suggestion that similar or even more compelling "smoking gun" documents existed that IKEA deleted when it admittedly deleted the entire mailboxes of the head of US Human Resources, the Global Head of Diversity, and the US HR Recruiting Manager. *See Palmer*, 2021 U.S. Dist. LEXIS 252061, * 45(pattern or practice employment discrimination case in which the loss of documents from a critical ESI custodian, the global lead of the "Talent Supply Chain," potentially deprives plaintiffs of "smoking gun evidence of illegality from the files of the corporate policy maker himself").

In addition, since filing their Opening Brief, Plaintiffs have deposed a former IKEA Store Manager whose testimony clearly demonstrates, among other things, a very specific and concrete example of the way in which IKEA's deletion of the emails has caused them prejudice. Former IKEA Store Manager Terry Noble testified about a "shift in the focus in the company around

2015, 2016" to a focus on diversity and a focus on young people. *See* May 18, 2023, Noble Deposition Transcript at 32:21-35:23.[11] She identified Nabeela Ixtabalan, former US HR corporate manager, and Lars Petersson, former US Country Manager, in particular as the "ringleaders" responsible for the shift:

> THE WITNESS: So it is my opinion that the, the sentiment and all of the, the strategy pretty much changed when we had our new country HR manager Nabeela. So anybody that fell under her after that pretty much that, you know, that – that was the ring ringleader along with our new country manager at the time.
> BY MR STRETTON:
> Q. Okay So –
> A. Okay.
> Q. -- with Nabeela, did you ever hear her make an implicit directive to consider age when hiring or promoting?
> A. Absolutely.
> Q. Okay. And then other than Nabeela, any other names that we could – you have?
> [Objections omitted.]
> ***
> Q. You testified in response to one of Mr. Stretton's questions that Nabeela Ixtabalan was the, to use your term, the ringleader of that HR strategy that we talked about about focusing on young talent for the future of the company along with the new country manager at that time. Who was that?
> A. Lars. Don't remember his last name.
> Q. Okay. When you say – when you use the term 'country manager,' are you referencing the US manager?
> A. US country manager, the guy in charge of everything here, um-hum.

Noble Deposition at 139:2-18; 154:17-155:6 . IKEA has not produced <u>any</u> communications between Ms. Ixtabalan and Mr. Petersson. It is not speculation to suggest that their communications discussed IKEA's corporate strategy of age discrimination.

Fifth, IKEA's Opposition ignores the <u>other</u> types of prejudice Plaintiffs have suffered. *See* Plaintiffs' Opening Brief at p. 33 (attorney time and resources negotiating the parameters of

[11]Cited excerpts from the May 18, 2023 Noble deposition transcript are attached hereto as Ex. B-58.

the ESI search for emails IKEA deleted, case being delayed awaiting production of emails IKEA deleted, attorney time and resources trying to get a straight answer from IKEA regarding whether IKEA whether actually searched the emails and in preparing the Motion for sanctions).

**F. IKEA has offered no explanation as to when or how it supposedly learned of the emails' deletion, nor any explanation as to its obfuscation thereafter.**

Remarkably, IKEA does not even state when it supposedly learned that IKEA deleted admittedly relevant emails in the midst of litigation. IKEA's Opposition Brief acknowledges only that "IKEA could have alerted the Plaintiffs earlier." Why wasn't this immediately disclosed? The argument set forth in IKEA's Opposition Brief that IKEA's failure to do so is somehow explained by the fact that Plaintiffs' counsel on their own discovered in January, 2023 that no ESI documents were retrieved directly from the email accounts of Ixtabalan, Brody, Stein, or Olaffson does not address why IKEA had not voluntarily disclosed the deletions earlier, nor explain why IKEA would not even confirm in January, 2023, that IKEA had completed its production, nor explain IKEA's efforts to try to hide from Plaintiffs the fact that IKEA had not actually searched emails as ordered by the Order.

IKEA states in support of its argument that there was no bad faith because "IKEA took the same position in its letters to Plaintiffs that it argues here". This is false. In his April 6, 2023 letter to Plaintiffs' counsel, IKEA counsel tried to explain away the deletion of emails by asserting: "At the time of their [Sari Brody, Nabeela Ixtabalan, Kristie Olaffson, and Christof Stein] departure, IKEA had no reasonable basis to believe it needed to preserve their email files." This is directly contrary to the position taken by IKEA in its Opposition Brief, at least with regard to Brody, Ixtabalan and Stein. IKEA now asserts, on the contrary, that its counsel recognized its duty to preserve these emails and even drafted litigation hold letters, and IKEA

itself was informed of the need to distribute litigation hold letters. IKEA's obfuscation and inconsistent positions are evidence of its bad faith.

**G. IKEA has not actually stated that it searched emails as required by the Court's April, 2023 Order (*i.e.*, without limitation as to location where kept) and its Opposition Brief is intentionally opaque as to whether the emails do not now exist.**

E-mails may be kept in many locations; they do not reside only in a custodian's Outlook mailboxes (a/k/a .pst file or email account). They may, for example, be stored in overseas archives or in backup. *See Palmer,* 2021 U.S. Dist. LEXIS 252061, *49 (discussing the various locations where emails may be stored, and finding that an inference of defendants' intent to deprive plaintiffs the use of documents may be based, in part, upon the fact that "it appears that defendants have gone out of their way to interpret their discovery obligations in as narrow a way as possible: for instance, by construing ESI to consist only of emails residing in a custodians' .pst file on their computer (without accounting for offline storage locations)).

The Court's April 29, 2023, required IKEA to produce documents from the ESI files from the emails of, *e.g.*, Ixtabalan, Brody, Olafsson and Stein. <u>The Court's April 29, 2023 Order was not limited to the mailboxes of these individuals</u>, or any other particular location where emails were kept. On the contrary, IKEA's counsel represented to this Court on several occasions that IKEA email existed and was stored in overseas, archived data. The argument made by IKEA counsel to the Court during the April, 2023 conference was that it was unduly burdensome because of costs to IKEA to require IKEA to search email data that is stored, archived overseas. (See Plaintiffs' Opening Brief at p. 9.) The Court <u>rejected</u> IKEA's argument that it was unduly burdensome and <u>ordered IKEA to search and produce the emails without any qualification as to their location</u>.

As noted in Plaintiffs' Opening Brief, IKEA's March 17, 2023 letter from IKEA's counsel stating that IKEA conducted a review of "reasonably accessible email files" suggests that the email <u>does</u> exist in other locations, but that IKEA simply did not search it as was required by the Court's April 29, 2023 Order. IKEA's Opposition Brief ignores this issue. Nowhere in its Opposition Brief or Declarations does IKEA claim that emails that were required to be searched do not exist in locations other than the mailboxes that IKEA deleted. On the contrary, IKEA's Opposition Brief seems intentionally opaque on this issue. For instance, IKEA's Opposition Brief actually states as the header for Section B: "UNDER THE FIRST STEP OF THE RULE 37 SPOLIATION ANALYSIS, THERE IS NO SPOLIATION BECAUSE IXTABALAN, BRODY, STEIN, AND OLAFSSON'S EMAILS EXIST IN OTHER LOCATIONS." It further states: "IKEA regrettably failed to preserve the email accounts (but not actual emails) of Ixtabalan, Brody, and Stein." IKEA Opposition Brief at p. 12. To be sure, IKEA's Brief certainly makes it seem like it is asserting that the emails exist in other locations based on its argument that duplicates of the emails exist in the mailboxes of *custodians* other than Ixtabalan, Brody, Olafsson, and Stein, rather than in different storage locations. But that is not what it technically states.

If the emails do not now exist in any storage location, IKEA must say so unequivocally. If the emails do exist – for example, in the overseas "archived data" referenced by IKEA counsel that the Court required IKEA to search -- IKEA should explain to the Court's satisfaction why IKEA should not be held in contempt for disobeying the Court's Order to search and produce (a

point raised by Plaintiffs in their Opening Brief and ignored by IKEA in its Opposition Brief) and must produce all responsive documents immediately.[12]

## III. CONCLUSION.

No party is going to come right out and admit that it destroyed evidence with the intent to deprive its adversary of its use in a lawsuit against it. At some point, though, it is the only reasonable inference to be drawn from the circumstances.

Plaintiffs' Opening Brief laid out in compelling detail why the only reasonable inference to be drawn under these circumstances is that IKEA intentionally deleted critical emails because they contained material evidence that would undermine IKEA's arguments that these cases should not proceed as collective actions under a pattern or practice framework. Rather than refute Plaintiffs' arguments, IKEA's Opposition Brief bolsters them. Without limitation:

- IKEA now actually contends that it was specifically put on notice and requested to preserve the emails before IKEA deleted them.
- IKEA's attribution of the deletions to an unspecified "miscommunication" is supported by no record evidence.
- IKEA has not stated when it learned of the supposed deletion and has not explained its obfuscation regarding its admitted deletion.
- IKEA has given directly contradictory statements about its duty to preserve emails. It represented to Plaintiffs' counsel it had no reasonable basis to believe it needed to preserve emails, and then completely changed its position when confronted in motion practice before the Court with compelling evidence demonstrating the incredibility of its representation.

---

[12]If the emails exist in other storage locations, IKEA's representation that "IKEA is running an email-system-wide search relating to Ixtabalan, Brody, Stein, and Olafsson" and that it "will produce a hit report and any responsive documents" is **illusory.** It is not a satisfactory substitute for IKEA's search of emails in all storage locations as was already ordered. An "e-mail-system-wide" search will not capture emails that do not exist in the "system" but are stored in locations *other than* the "system," such as overseas, archived data or in backup.

- IKEA still has not given a straight answer as to whether the emails exist and whether it searched them in all locations, including its overseas archives, as required by the Court's Order.

For all of the reasons stated herein and in its Opening Brief, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion For Sanctions Against Defendants For Spoliation Of Evidence And Violation Of The Court's April 29, 2022 Court Order (ECF 295).

Respectfully submitted,

**CONSOLE MATTIACCI LAW, LLC**
/s/ Susan M. Saint-Antoine
Stephen G. Console
Laura C. Mattiacci
Susan M. Saint-Antoine
Caren N. Gurmankin
Colin Saltry
Evelyn Kallenbach
1525 Locust Street, 9th Fl.
Philadelphia, PA 19102
(215) 545-7676 (phone)
(215) 545-8211 (fax)
Attorneys for Named Plaintiffs,
Frank Donofrio, Brandon Paine and William Antonelli (*on behalf of themselves individually and on behalf of those similarly situated*)

June 5, 2023