**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FRANK DONOFRIO,<br>*on behalf of himself individually*<br>*and on behalf of those similarly situated,*<br>Plaintiff,<br><br>v.<br>IKEA US RETAIL, LLC<br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br>No. 2:18-cv-00599-AB |
| WILLIAM V. ANTONELLI, JR.,<br>*on behalf of himself individually*<br>*and on behalf of those similarly situated,*<br>Plaintiff,<br><br>v.<br>IKEA HOLDING US, INC.,<br>IKEA US RETAIL, LLC, and :<br>IKEA NORTH AMERICA SERVICES, LLC,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br>No. 2:19-cv-01286-AB |
| BRANDON PAINE,<br>*on behalf of himself individually*<br>*and on behalf of those similarly situated,*<br>Plaintiff,<br><br>v.<br>IKEA HOLDING US, INC.,<br>IKEA US RETAIL, LLC, and<br>IKEA NORTH AMERICA SERVICES, LLC,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br>No. 2:19-cv-00723-AB |

**PLAINTIFFS' REPLY TO DEFENDANTS'**
**RESPONSE TO PLAINTIFFS' POST-HEARING BRIEF (*DONOFRIO ECF 372)***

## TABLE OF CONTENTS


INTRODUCTION ............ 1

ARGUMENT ............ 4

A. IKEA's Failure To Answer Even The Most Basic Questions Is Reasonable Basis To Infer That IKEA Deleted And/Or Withheld Material Evidence In Violation Of Court Order With The Intent To Deprive Plaintiffs Of Its Use ............ 4

1. How could it be that only Nabeela Ixtabalan, Sari Brody, Kirstie Olafsson, and Christof Stein did not have a litigation hold completed when every other purportedly intended custodian did? ............ 4

2. Why did no one from IKEA or Ogletree Take Even A Single Step To See That The Purported Expanded Litigation Hold Was Actually Issued And In Place And How Could It Be That No One From IKEA Or Ogletree Was Aware Of The Deletions Until May 16, 2022? ............ 5

3. Why was the FY16 US D&I Recap with 2018 Age Goals (Exhibit A) – new smoking gun evidence of IKEA's company policy of age discrimination during the time period at issue and applicable to all US store employees – produced by IKEA on December 12, 2023 and not by September 7, 2018, April 4, 2022, or December 31, 2022 as required by the Courts Orders (Ex. B- ECFs 29, 279, 295)? ............ 8

a. The fact that IKEA admittedly deleted the emails of Ixtabalan in July, 2020 does not explain IKEA's failure to produce the smoking gun evidence of IKEA's policy of age discrimination in violation of the Court's Orders............ 10

i. Production In December, 2023, Violated August 22, 2018 Order ............ 10

ii. Production in December, 2023, Violated February 4, 2022 Order ............ 12

iii. Production in December, 2023, Violated April 29, 2022 Order ............ 14

b. IKEA's assertion that the December 2023 evidence is cumulative fails to explain its violation of the Court's Orders and is false ............ 14

4. If the email deletions were first discovered in May, 2022, why did IKEA not bring the issue to the immediate attention of Plaintiffs and the Court and why did it try to hide the deletions from Plaintiffs' counsel? ............ 16

5. Why did IKEA wait until May, 2023 to begin the search that resulted in its December, 2023 production? ............ 18

6. What is the explanation for the discrepancy of the identified custodians for the December, 2023 production? ............ 19

B. The New And Unsupported Assertions In IKEAS's Opposition Regarding What IKEA Was Ordered To Search, Especially When Coupled With The Troubling And Still Unresolved Questions Regarding The Discrepancy In The Identification Of Custodians In Connection With IKEA's December, 2023 Production Of Documents, Is Reasonable Grounds To Infer That IKEA Has Deleted Or Withheld Even More Evidence Than Previously It Disclosed ........ 22

C. IKEA's Opposition Itself Tries To Benefit From Its Having Deprived Plaintiff's Of The Evidence Of Its Policy Of Age Discrimination, And in Doing So Is Further Basis From Which To Infer IKEA's Bad Faith ........ 25

## INTRODUCTION

IKEA's Opposition asserts that there has been no violation of any Court Order. This is not so. To clearly and vividly demonstrate this by way of example so as not to get lost in the weeds, Plaintiffs focus on Nabeela Ixtabalan's January 4, 2016 email distributing the FY16 US D&I Recap (IKEA-101714 with, *e.g.,* IKEA-101724, attached hereto as Exhibit A[1]), which states in a comprehensive and understandable way IKEA's company policy of age discrimination and its goal during the time period at issue and applicable to all US store employees to "increase the percentage of coworkers under 34 in salaried exempt positions…" IKEA's production for the first time of this document on December 12, 2023, violated at least three of the Court's discovery Orders: August 29, 2018 (*Donofrio* ECF 29); February 4, 2022 (*Donofrio* ECF 279); and April 29, 2022 (*Donofrio* ECF 295)(which are attached hereto as Exhibits B 1, 2 and 3).[2]

Although accompanied by at least four new declarations, scores of exhibits, and hundreds of pages of deposition testimony never referenced in prior filings or at the hearing, IKEA's Opposition fails to answer the most basic questions about its admitted deletion of emails from "key players" in the middle of several age discrimination collective actions and its production of smoking gun evidence after more than five years of litigation following the close of discovery:

1. How could it be that only Nabeela Ixtabalan (former Head of US Human Resources), Sari Brody (former Head of Global Diversity & Inclusion), Kirstie Olafsson (former US Human Resources Operation Manager and US Recruitment Manager), and Christof Stein (former Store Manager at store where named Plaintiff Brandon Paine worked) did not have a litigation hold completed when every other purportedly intended custodian did? The Court asked IKEA about this point and told IKEA counsel that it "better find out" the answer. If IKEA Counsel found it, IKEA's Opposition does not report it.

2. Why did <u>no one</u> from IKEA or Ogletree take even a single step to see that the purported "expanded" legal hold was actually issued and in place and how could

[1] Ex. A includes 1 of three attachments to the email.
[2] All references herein to ECF numbers are to the *Donofrio* collective action.

it be that no one from IKEA or Ogletree was aware of the deletion of emails until May 16, 2022? Notwithstanding their direct involvement, representations made to the Court during the course of discovery, and presence at the hearing, not a single Ogletree attorney stepped up to explain the gross dereliction of duty.

3. Why was the FY16 US D&I Recap with 2018 Age Goals (Exhibit A) produced by IKEA on December 12, 2023 and not by September 7, 2018, April 4, 2022, or December 31, 2022 as required by the Courts Orders (Ex. B- ECFs 29, 279, 295)?

- It is a document "relating to IKEA Group's age-based personnel goals that apply to U.S. employees" as called for by the Court's August 22, 2018 Order and for which the Court told IKEA "to look and look and look…"

- It is a diversity report that relates "to diversity of employees of US retail stores in general and/or [was] specific to the topic of age from 2011 through the end of the class period (RPD 52)" – a request for documents that the Court called the "core of the case" -- and was distributed or communicated in connection with a scheduled diversity meeting after July 2014 (RPD 41), as called for by the Court's Order of February 4, 2022 and for which IKEA counsel confirmed that it conducted a reasonable search (see April 4, 2022, email from Brandon Sher, Exhibit C hereto).

- It meets the date and search term parameters for required custodians whose emails IKEA said existed and were searched by December, 2022, as required by the Court's April 29, 2022 Order.

The fact that IKEA deleted Nabeela Ixtabalan's emails in July, 2020 does not explain why IKEA did not produce the email or attachment in 2018 when IKEA says Ixtabalan's emails *did* exist, or in 2018 or 2022 from a common source such as the common drive or EDI Sharepoint, or other easily identifiable recipient (any member of the D&I network) or from the documents of recipient Kishorn Henry (former HR Manager directly involved in the selection decision for the management position to which Named Plaintiff applied, whose documents should have been subject to the 2016 litigation hold) or required custodian other than Ixtabalan whose emails IKEA says existed.

4. If the email deletions were first discovered in May, 2022, why did IKEA not bring the issue to the immediate attention of Plaintiffs and the Court? What is the possible justification for an admitted "litigation strategy" of making statements known to be false and hiding the fact of deletion for approximately one year?

5. Why did IKEA wait until May, 2023 before it even began the search that resulted in its December, 2023 production? If, as IKEA says, the documents were collected from custodians and repositories as indicated by the "corrected" metadata produced for the first time in February, 2024 (such as from required

custodians Cathy Blair or Jacqueline DeChamp), then IKEA has admittedly violated the Court's order to search the email files of these custodians before December, 2022.

6. What is the explanation for the discrepancy of the identified custodians in connection with IKEA's December, 2023 production? This question was posed by the Court to IKEA's counsel at Day 2 of the hearing. IKEA's February 2, 2024 production of "corrected metadata" and declarations falls short of what the Court ordered (see ECF 362) and itself raises troubling questions which IKEA has not addressed: a) What is the mysterious and still unidentified location where the Udrives of Ixtabalan and Stein were found; and b) how did it come to pass that the FY16 US D&I Recap with 2018 Age Goals was produced as part of a forwarded email chain from a custodian whose emails were not required to be searched rather than as the underlying email from a required custodian whose emails IKEA says existed? IKEA has resisted Plaintiffs' efforts to get to the bottom of these questions.

The most reasonable inference to be drawn from IKEA's failure to provide plausible answers to the most fundamental of questions is that IKEA deleted and/or withheld material evidence in violation of Court order with the intent to deprive Plaintiffs of its use in these lawsuits.

Moreover, IKEA's Opposition makes new and unsupported assertions regarding what IKEA was required to search. IKEA asserts now without any support that then (now former) Ogletree's e-discovery specialist attorney made a "mistake" as to IKEA's burdensome argument to the Court, that another then (now former) Ogletree attorney did not mean what she said in referencing emails existing in archived data, and that the Court's April 29, 2022 Order was limited to requiring IKEA to "search the M365 mailboxes of 43 custodians…" These new and unsupported assertions, especially when coupled with the troubling and still unresolved questions raised by the discrepancy in the identified custodians of the December, 2023 documents, is reasonable grounds to infer that IKEA has deleted or withheld even more evidence than previously disclosed.

Finally, IKEA's Opposition itself is further basis from which to infer IKEA's bad faith. Rather than trying to explain plausibly IKEA's admitted deletion of emails of key players and

dereliction of duty as well as its clear failure to comply with the Court's discovery Orders, and to assure the Court that it has finally and fully produced what the Court has required, IKEA's Opposition tries to benefit from its having deprived Plaintiffs of the evidence of its policy of age discrimination in support of its argument that these age discrimination cases are not suitable to proceed as collective actions.

## ARGUMENT

### A. IKEA's Failure To Answer Even The Most Basic Questions Is Reasonable Basis To Infer That IKEA Deleted And/Or Withheld Material Evidence In Violation Of Court Order With The Intent To Deprive Plaintiffs Of Its Use.

#### 1. How could it be that only Nabeela Ixtabalan, Sari Brody, Kirstie Olafsson, and Christof Stein did not have a litigation hold completed when every other purportedly intended custodian did?

IKEA's General Counsel, Stephani Lewis, testified under oath that IKEA issued a purported "expanded" litigation hold that was completed for every intended custodian except for Nabeela Ixtabalan, Sari Brody, Kirstie Olafsson,[3] and Christof Stein. (1 Tr. 70:18-72:1.) IKEA's Opposition does not dispute that she testified to this, but asserts that her testimony was a "mistake. " (ECF 371, IKEA FOF ¶4.4.) If that is the case, why didn't IKEA call Ms. Lewis back to the stand on Day 2 to correct her prior testimony on this important point? Although IKEA's Opposition offers four new declarations, why did they not offer another one from Ms. Lewis?

The Court was particularly interested in this point at the hearing and asked IKEA's counsel if anyone else on the required custodian list left IKEA but was nonetheless subject to litigation hold. IKEA's Counsel told the Court that there were people on the required custodian

[3] IKEA can't seem to get its story straight regarding Olafsson. IKEA's Opposition Brief says that she was included on an expanded litigation hold, but the Declaration from General Counsel Lewis omits identifying her. See IKEA FOF ¶1.11; Lewis ECF 348-3:2-3 (Lewis Decl.) ¶2.

list who had left the company for various reasons but were on legal hold, but that he couldn't speak to specific individuals. The Court instructed IKEA's counsel as follows:

> THE COURT: Well, you better find out.
> MR. LIDBURY: I will, Your Honor, but no one told me I needed to answer that question today. The point is all of these people were – their boxes existed and were found. There is not a problem.
> THE COURT: Well, isn't that wonderful, except for the four? Go on.

1 Tr. 92:25-93:4.

IKEA's counsel never reported that he did so. IKEA's Opposition asserts: "The 43 other custodians either did not leave IKEA (thus their emails were not deleted through customary deletion practices) or were on legal hold for another matter when they left IKEA." IKEA FOF ¶45 (citing ECF 348-1, Naseef Decl. at ¶5). The evidence cited in support of this statement does not specify who these individuals are, what any other matter is, does not address anyone other than Stein, Ixtabalan, and Brody and in no way even supports the general assertion regarding anyone else.

**2. Why did no one from IKEA or Ogletree Take Even A Single Step To See That The Purported Expanded Litigation Hold Was Actually Issued And In Place And How Could It Be That No One From IKEA Or Ogletree Was Aware Of The Deletions Until May 16, 2022?**

IKEA's General Counsel, Stephani Lewis, testified under oath, and IKEA's Opposition does not dispute, that the only thing she did to ensure that an "expanded" litigation hold was put into place was to hand it over to Co-Worker Relations, and never followed up again to make sure that the purported holds were in place. She offered no explanation as to why nothing else was done. IKEA Co-worker Relations employee, Kristen Naseef, offered no explanation as to why she took no steps to issue an expanded litigation hold. IKEA's Opposition offers no explanation

as to why no one from IKEA took any steps to see that the purported expanded litigation hold was actually issued and in place.

Further, while IKEA pointed to an email from Ogletree as evidence of IKEA's efforts to implement a litigation hold around September 12, 2018, General Counsel Lewis testified at the hearing that she was not aware of <u>any efforts</u> by Ogletree to make sure that the litigation holds were put into effect. Around the time these expanded litigation holds were purportedly intended to be issued (September 11-12, 2018), Ogletree, *e.g.:* a) had received a request to waive service of Laurie Gorbeck's complaint (sent September 4, 2018) which Ms. Lewis acknowledged would have triggered the duty to preserve Ms. Ixtabalan's emails; b) had received on September 6, 2018, letter from Plaintiff's counsel raising the issue of spoliation and asking them to confirm steps taken to preserve documents; c) and had presumably made efforts to respond by the deadline for production (September 7, 2018) stated in the Court's August 22, 2018 Order in *Donofrio* (ECF 29) to produce "any documents relating to IKEA Group's age-based personnel goals that apply to U.S. employees, such as the US Goals" document attached to Plaintiff's Motion.

Setting aside the issue of why IKEA did not even intend to issue an expanded litigation hold until <u>after</u> the deadline for production of age-based personnel goals per the Court's Order had passed, Ogletree has offered no explanation for its own failure to take any steps at any time to meet <u>its</u> obligations in this case. Brandon Sher and Paul Lancaster Adams were present during the evidentiary hearing and could have testified as to steps Ogletree took or why they failed to take any steps, but did not do so.

Further, IKEA's Opposition asserts that "prior to May 18, 2022, the legal teams at IKEA and Ogletree were unaware that the mailboxes were deleted." IKEA FOF ¶43 (citing testimony

of Lewis at 1 Tr. 128:10-15.) As a preliminary matter, how could that possibly be the case in connection with Olafsson? Whether she was an intended recipient of the purported hold or not (see n.3), Olafsson in 2018 brought an EEOC charge of age discrimination against IKEA, to which IKEA submitted a Position Statement, and the EEOC in 2020 issued a Notice of Right to Sue. IKEA was represented by Ogletree. How could it be that at no time prior to May 18, 2022, IKEA and Ogltree did not check as to whether the emails of this high level HR manager alleging discrimination by IKEA existed or not?

Further, Lewis' testimony only states when Lewis first learned that the Stein, Brody, Ixtabalan and Olafsson's email accounts were gone, and does not address the rest of the IKEA legal "team," nor anyone from Ogletree. No one from Ogletree has stated that they were unaware of the deletions prior to May 18, 2022. And if it were true, no one from Ogletree has explained how that could be so in light of their involvement with every aspect of discovery in this case (and several other discrimination cases against IKEA) since 2018, and how they could, consistent with their duties of professional responsibility, make representations to the Court and Plaintiffs' counsel regarding the burden of the ESI search? How could Ogletree review and approve an Order requiring the search of email files without knowledge as to whether the emails existed or not?

IKEA's Opposition's fails to address head on Ogletree's clear dereliction of duties. In a footnote addressing spoliation, IKEA states only abstract propositions about a lawyer's duty, due process, and a client defining the scope of representation – but not what has actually transpired in this case. See 372-1, IKEA FOF p. 66, n. 366. Ogletree took on a role in connection with IKEA's preservation, collection and production of documents; Ogletree has made representations to the Court regarding IKEA's preservation, collection and production of documents; IKEA has

pointed to its communication with Ogletree to support its position that it intended to issue litigation holds; IKEA's Opposition makes affirmative representations as to what Ogletree knew and said regarding IKEA's preservation and collection of ESI, and its representations to the Court. IKEA cannot use Ogletree's involvement as both a sword and a shield; cannot claim privilege in connection with matters of fact, not legal advice, or confidentiality over matters already disclosed. Certainly, IKEA cannot define an attorney's duties to be contrary to the rules of professional responsibility, to violate a Court order, or to aide it in committing an unlawful act or fraud.

**3. Why was the FY16 US D&I Recap with 2018 Age Goals (Exhibit A) – new smoking gun evidence of IKEA's company policy of age discrimination during the time period at issue and applicable to all US store employees -- produced by IKEA on December 12, 2023 and not by September 7, 2018, April 4, 2022, or December 31, 2022 as required by the Courts Orders (Ex. B-ECFs 29, 279, 295)?**

IKEA can't or won't explain why it failed until December 12, 2023, to produce smoking gun evidence of its **company policy of age discrimination** applicable to all U.S. store employees during the time period at issue in these ADEA collective actions.[4] While IKEA had produced prior to December, 2023, damning evidence of IKEA's age discrimination (*see generally* the documents cited by IKEA's Opposition), it was, as Ms. Saint-Antoine testified during the hearing, largely produced in pieces of an overall puzzle, often without an explanatory or identifying transmittal communication. Much was outside the period of opt-in eligibility, and

[4]At Day 2 of the evidentiary hearing, Plaintiffs' counsel and the Court focused on IKEA's production for the first time in December, 2023 of the 2016 email from IKEA's then US Head of Human Resources distributing the FY16 US D&I Recap; see 2Tr. 46:22-66:4). Plaintiffs also highlighted the document in their Proposed Findings of Fact, see ECF 370, ¶159, as well as in their Breakdown of Attorney's Fees Time (see ECF 371).

many documents appeared to be from IKEA Group/Global and used lingo that seemed unique to IKEA.

**Ixtabalan's 2016 email with FY16 US D&I Recap including 2018 Age Goals is the keystone, and finally puts the pieces of the puzzle together**. It lays out in a document distributed by IKEA's U.S. Head of Human Resources to recipients nationwide and in a universally understood way IKEA's company policy of age discrimination. It:

- Discusses the IKEA global D&I approach, and integrating D&I within the US;
- States the "new reality" that the "aging population … requires accommodations in the workplace to meet the needs that come with age," and discusses the challenges of a "multigenerational workplace;"
- Provides a summary explanation of steps taken in FY14 and FY15 in the US to integrate "D&I," including to "establish the mindset;"
- States as a Key Takeaway: "Millennials continue to dominate our coworker base accounting for 60% of coworkers but only 30% of exempt managers…….We need to spot and prioritize potential and move them faster through our development pipeline, increase the number of coworkers under 34 in exempt management;"
- Includes as part of the Step 2/analyze co-workers' diversity: "1) Add D&I metrics to existing HR Scorecard with monthly reporting; and 2) share national D&I KPI's 1x per tertial;" and
- States among the US Goals by 2018: "Increase the percentage of coworkers under 34 in salaried exempt positions to be more reflective of the under 34 coworker population in our stores."

The 2016 email with FY16 US D&I Recap was sent by **Nabeela Ixtabalan**, then IKEA's Head of US HR, to many recipients nationwide, including:

- **Cathy Blair,** then the US Talent and Succession Manager who was also identified as a witness in the parties' May, 2018 Joint Discovery Plan, was deposed on August 31, 2018, and a custodian whose emails IKEA was admittedly required to preserve, and whose emails IKEA says were in fact successfully preserved, searched for, and produced.

- **Rich D'Amico**, then Leadership and Competence Development Manager, whose emails IKEA says were in fact successfully preserved and searched for production.

- **Kishorn Henry,** then a Human Resources Business Partner at IKEA's Conshohocken store who in 2016 interviewed the 34 year old successful candidate for the management position to which Named Plaintiff Donofrio had applied and been rejected. IKEA on August 23, 2018, produced notes from Henry's interview of the successful candidate. [5]

- **Stephani Conner (Lewis),** then a Labor Specialist in the Employee Relations Department (the department IKEA says was charged with document retention) who was also a member of the Diversity & Inclusion Council, who worked closely with outside counsel on the Donofrio case and is now IKEA's General Counsel who testified at Day 1 of the hearing.

**a. The fact that IKEA admittedly deleted the emails of Ixtabalan in July, 2020 does not explain IKEA's failure to produce the smoking gun evidence of IKEA's policy of age discrimination in violation of the Court's Orders.**

**i. Production In December, 2023, Violated August 22, 2018 Order**

The fact that IKEA admittedly deleted the emails of Ixtabalan in July, 2020, does not explain IKEA's failure to produce her 2016 email and FY16 US D&I Recap with 2018 Age Goals by September 7, 2018, as required by the Court's August 22, 2018 Order. On August 22, 2018, the Court instructed IKEA to "look and look and look" and ordered it to produce documents "relating to IKEA Group's age-based personnel goals that apply to U.S. employees…" The FY16 US D&I Recap with 2018 US Age goal to increase the percentage of coworkers under 34 in salaried exempt positions is clearly and obviously responsive to the Court's Order. General Counsel (Conner) Lewis herself received this document and was presumably aware of the identity of other recipient members of the D&I Council. Surely, Nabeela Ixtabalan, Cathy Blair and Kishorn Henry, and the documents and information they had

[5] See generally, e.g., ECF 45 (Plaintiffs' Statement of Additional Fact in Opposition to IKEA's Motion for Summary Judgment).

regarding age goals, would have been top of mind to IKEA, Lewis, and Ogletree when the Court entered its August 22, 2018 Order. Without limitation:

- The scheduling of Ixtabalan's deposition was being discussed;
- Cathy Blair was scheduled to be deposed on August 31, 2018; and
- IKEA had just produced on August 23, 2018 notes from Kishorn Henry's interview of the 34 year old successful candidate for the management position to which Plaintiff Donofrio had applied.

There is no good reason whatsoever – and IKEA has offered none – why IKEA did not look for and produce to Plaintiffs the 2016 email with FY16 US D&I Recap by September 7, 2018, as required by the Court's Order. IKEA has never identified the individuals subject to IKEA's 2016 litigation hold, but presumably it would have (and definitely should have) covered documents from Henry, who was involved in the decision-making process for the management position to which Plaintiff Donofrio had applied. No massive email search would have been required to locate and produce the evidence; not even much of a "look and look and look." All IKEA or IKEA's counsel had to do was make a minimum inquiry, even simply asking Lewis, Ixtabalan or Blair – with whom they were dealing at the time on the *Donofrio* case – if they were aware if such a document existed and where it could be found.

Not only did IKEA fail to produce the smoking gun evidence as required by the Court's Order, IKEA around that time in Fall, 2018, made affirmative and false representations to the Court that the "diversity goals" were stale and had been retracted, and *accused Plaintiffs of misrepresenting the evidence*.

- In its November 8, 2018, Opposition to Plaintiff's Motion for Conditional Certification (ECF 40), IKEA told the Court that IKEA had abandoned its diversity goals by 2012 and had retracted them without taking any action to implement them. "Facts matter," IKEA repeatedly told the Court, and accused

Plaintiff of presenting a "fanciful" narrative of an "abstract policy of discrimination – that [IKEA] *wanted* to increase the number of younger managers" -- based on "stale documents and stark misrepresentation of what the *actual* evidence says." ECF 41, Introduction at pp. 2-5 (emphasis in original).

- In its November 8, 2018, Reply Brief in support of its Motion for Summary Judgment (ECF 48), IKEA called Plaintiff's allegations of a pattern or practice of age discrimination a "mirage" and doubled down on its assertion that the "age goals" were stale and retracted.

Certainly, IKEA's assertion that Plaintiffs won conditional certification is not a justification for its violation of the Court's Order. Further, the fact that the Court denied without opinion Donofrio's Motion for Sanctions when it granted Plaintiff Donofrio's motion for conditional certification does not mean that it should not be held to account for what we now know was not only IKEA's *late* production of responsive documents, but its failure to produce what had to be known was smoking gun evidence clearly responsive to the Court's Order.

**ii. Production in December, 2023, Violated February 4, 2022 Order**

The fact that IKEA admittedly deleted the emails of Nabeela Ixtabalan in July, 2020 does not explain IKEA's failure to produce her 2016 email with FY16 US D&I Recap and 2018 Age Goals by April 4, 2022, as required by the Court's February 4, 2022 Order (ECF 279).

On March 3, 2021 (less than a week before Sari Brody's mailbox was purportedly deleted inadvertently), Plaintiffs issued "merits" discovery and served the First Set of Joint and Consolidated document requests upon IKEA. At the October 2, 2021 conference to address Plaintiffs' Motion to Compel responses to the discovery, the Court not only ordered the parties to address certain disputes by an ESI search, it also made rulings that IKEA was required to produce other documents independent of the ESI search. During the conference, Plaintiffs' counsel expressed that Plaintiffs' Request No. 52 for "equality, diversity and/or inclusion

reports" went to the "guts" of Plaintiffs' case. The Court agreed, saying it was the "core of the case," and ordered their production. See ECF 312, Ex. A-8, October 2, 2021Tr. 76:20-81:15.

Plaintiffs had to follow up with the Court, essentially to ask for an Order that IKEA comply with the Court's earlier rulings. On February 4, 2021, the Court ordered IKEA not only to meet certain deadlines with regard to ESI negotiations, but also ordered that no later than April 4, 2022, IKEA either:

> a) produce… (3) Equality, diversity and/or inclusion reports, analyses, or plans that relate to diversity of employees of US retail stores in general and/or were specific to the topic of age from 2011 through the end of the class period (RPD 52); …and (7) documents that evidence any scheduled conferences, workshops, or meetings on the topic of diversity generally or specific to age diversity after July 2014, and all documents that were distributed, published, generated, shown or communicated in connection therewith (RPD 41); or
> b) Confirm in writing that Defendants have conducted a reasonable search for the responsive documents relating to the above-referenced Requests consistent with the Federal Rules of Civil Procedure, and have been unable to locate additional documents.

ECF 279.

IKEA on April 4, 2022, produced many documents, including documents from IKEA's EDI Sharepoint as well as documents from custodians whose emails IKEA would also be required to searched, but not the FY16 US D&I Recap. IKEA's counsel, Brandon Sher, confirmed "that Defendants have conducted a reasonable search for non-privileged responsive documents relating to the document requests identified in the Order consistent with the Federal Rules of Civil Procedure and have been unable to locate additional documents." (See April 4, 2022 email, attached hereto as Ex. C.)

The Ixtabalan 2016 email with FY16 US D&I Recap and 2018 Age Goals is an easily identifiable document that is clearly and obviously responsive to both very particularly defined

requests and should have been easy to find, likely on the EDI Sharepoint or other common drive as it is identified as a "Diversity Recap," and distributed in connection with a D&I meeting. It should have been produced by IKEA by April 4, 2022, as required by the Court's February 4, 2022 Order. IKEA's Opposition states that it has violated no Order, but offers no explanation for how it could have performed a reasonable search yet failed to produce the FY US D&I Recap and 2018 Age Goals no later than April 4, 2022 as ordered.

**iii. Production in December, 2023, Violated April 29, 2022 Order**

The fact that IKEA admittedly deleted the emails of Nabeela Ixtabalan in July, 2020, does not explain IKEA's failure to produce by December 31, 2022 the FY16 US D&I Recap and 2018 Age Goals from some other required custodian, as required by the Court's April 29, 2022 Order (ECF 279). Cathy Blair and Rich D'Amico were both recipients of the FY16 US D&I Recap and 2018 Age Goals. The document falls within the search time frame applicable to both, hits on the search terms, is unique, and is obviously highly relevant. IKEA has represented that their emails *were* subject to litigation holds, collected and searched. IKEA has not explained why it did not produce the smoking gun evidence from either Blair or D'Amico.

**b. IKEA's assertion that the December 2023 evidence is cumulative fails to explain its violation of the Court's Orders and is false.**

IKEA does not dispute that the January 2016 Ixtabalan email with FY16 US D&I Recap was not produced to Plaintiffs until December 12, 2023. Like many other unique documents not produced as ordered, IKEA's assertion that the evidence is cumulative fails to explain its violation of the Court Orders and is false.

First, IKEA does not dispute that the evidence is unique.

Second, IKEA does not get to decide whether Plaintiffs have sufficient evidence to litigate their cases.

Third, IKEA does not get to defy a Court Order because it thinks that responsive evidence is cumulative.

Finally, IKEA's assertion that the evidence produced in December, 2023, was cumulative is false. IKEA argues that FY16 US D&I Recap and 2018 Age Goals was cumulative, and that "none of the attachments introduce any new information that Plaintiff did not already have in its possession". ECF 372 at p. 52, ¶8.46. IKEA's Opposition addresses attachment 101716 (not one of the documents in issue), attachment 101764 (again, not one of the documents in issue), and focuses on only part of the key attachment,101724, and states that the "exact chart has been produced several times." This statement is not supported by the evidence IKEA cites. IKEA wholly **ignores** the US Goals by 2018: "Increase the percentage of coworkers under 34 in salaried exempt positions to be more reflective of the under 34 coworker population in our stores."

IKEA has maintained throughout this entire six+ year litigation that its age-based personnel goals to increase the number of younger managers were from "Global" and not the US, were abandoned in 2012 and retracted without taking any steps to implement them, applied to only certain stores and thus did not impact all IKEA US employees similarly, and most recently that its verbiage of generational diversity was only about "inclusion" and not increasing the number of younger managers (something it knew to be unlawful in the United States). The US FY16 Diversity & Inclusion Recap proves otherwise. It spells out in plain English that the Global age-based personnel goals were to be integrated into the US; that the age-based personnel goals were not stale or retracted and in fact existed into the post-2016 period; that D&I metrics were measured and a part of the "HR scorecard" and that there were D&I KPIs; that the goals did in fact still focus on "young potentials;" and that the focus on 50+ was about "accommodation"

and meeting the "needs that come with age" while the focus on young potentials was about increasing the number/percentage of co-workers under 34 in management positions.

Moreover, the deposition testimony cited by IKEA supports Plaintiffs' position, as testified to by Ms. Saint-Antoine at the hearing, that the document is new and crucial to confront IKEA witnesses who, like Ixtabalan, testified that they did not "recall" documents not identified as attachments to a transmittal email or tried to explain away references to "young potential" as a focus of "Global" but irrelevant in the U.S. or spoke about personnel goals in IKEA lingo like reflecting the market/location or "generational diversity." [6] Defendants have deprived Plaintiffs of the opportunity to follow up on the smoking gun including confronting IKEA witnesses with the evidence of what the IKEA lingo of age diversity or "increase generational diversity" means when stated in plain English as FY16 US D&I Recap does: We need to increase the number/percentage of coworkers under 34 in exempt management positions.

**4. If the email deletions were first discovered in May, 2022, why did IKEA not bring the issue to the immediate attention of Plaintiffs and the Court and why did it try to hide the deletions from Plaintiffs' counsel?**

IKEA's Opposition states that it first learned that the emails of Ixtabalan, Brody, Olafsson and Stein by email from its vendor on May 12, 2022. Even if the Court were to accept this date rather than an earlier one, IKEA's Opposition still does not explain why in the world IKEA did not immediately notify Plaintiffs' counsel and the Court. The Court on April 29, 2022 had just

[6] Indeed, Ixtabalan testified to a different document that had been produced by IKEA with a goal of "Age distribution and engagement, including focusing on young potential and on 50 plus" and the "Fiscal year 18 Goal" stated as "Increase the generational diversity in our salaried exempt positions to be more reflective of the majority of our co-worker population." When she was specifically asked if that meant more younger people in salaried exempt positions, she testified that it did not, and that: "It doesn't mean more of a specific generation." Ex. 372, ex. 7 (Ixtabalan deposition) Tr. 267:3-270:4.

entered the Order requiring IKEA to search the email files of these custodians and IKEA had not yet even made the first of what was to be an eight month rolling production. The idea that IKEA needed to launch a year long investigation and confirm that the emails could not be recovered is both implausible and does not address why IKEA would not also still inform Plaintiffs and the Court while undertaking an investigation.

Moreover, IKEA's Opposition does not plausibly explain why, when confronted by Plaintiffs' counsel, IKEA and Ogletree tried to hide the fact of the deletions. Instead, it makes several unsupported and false statements. IKEA's Opposition appears to suggest that Plaintiffs' counsel knew by early January, 2023, that the emails had been deleted. This is false. As Plaintiffs' counsel testified and the correspondence states, Plaintiffs' counsel in early January, 2023, determined through the metadata that IKEA had not produced any documents from custodians Ixtabalan, Brody, Olafsson and Stein and asked IKEA's counsel to confirm that IKEA had completed its production and to explain the discrepancy.

IKEA's Opposition states: "In a telephonic meet-and-confer on February 13, 2023, counsel for IKEA advised that IKEA was still "working on" its investigation into the deleted mailboxes." IKEA FOF ¶6.3, n. 169. This is not supported by the citation (which is to Ms. Saint-Antoine's sworn Declaration) and is false. IKEA's counsel indicated words to the effect that IKEA was still working on a response to Plaintiffs' inquiry. He did not tell Plaintiffs' counsel that IKEA had deleted any emails and was working on an investigation into the deleted emails.

IKEA's Opposition states that the March 17, 2023 letter from IKEA counsel Paul Lancaster Adams "argued that the mailboxes of these four witnesses had been reasonably reconstituted from the mailboxes of others." IKEA FOF ¶6.4 This is false. The letter does not

answer the question of whether the emails were searched; it clearly suggests that no emails were produced from the custodians because the results were duplicates of emails from other custodians. There is no suggestion that the mailboxes in fact had been deleted and thus necessitated "reconstitution."

IKEA's Opposition states that the April 6, 2023 letter from IKEA Paul Lancaster Adams stating that IKEA had no duty to preserve the emails of Ixtabalan, Brody, Olafsson and Stein was an "overstatement," and that the "imprecision" in his letter was as to a position of IKEA, not a "material fact" within the meaning of 201 Pa. Code Rule 3.3. IKEA FOF ¶183. It does not address at all the fact that IKEA General Counsel Lewis testified under oath that she knew the statements in the letter to be false and that she agreed with what she called a "litigation strategy."

IKEA's Opposition accuses Plaintiffs of twisting the words in IKEA's June 12, 2023 Brief, which state that it had "searched all repositories of email and excluded none," by calling out its falsity. While the "metadata" produced to Plaintiffs in December, 2023 in connection with its December, 2023 production of documents masks this fact, the "corrected" metadata produced by IKEA in February, 2023, reveals that some of the documents were not produced from other custodians, but from the U-drives of Ixtabalan and Stein.

**5. Why did IKEA wait until May, <u>2023 to begin</u> the search that resulted in its December, 2023 production?**

General Counsel Lewis testified at the hearing that it took IKEA approximately <u>18 months</u> to determine that the emails could not be found in any other possible repository, that IKEA left "no stone unturned" and searched areas such as "back ups, archives, etc." This is on its face an implausibly long time.

Further, If, as IKEA says, the documents that were produced in December, 2023, were found in a search that IKEA <u>did not begin until May, 2023</u>, and were collected from custodians

and repositories as indicated by the "corrected" metadata produced for the first time in February, 2024 (such as from custodians Cathy Blair and Jacqueline DeChamp, or the "Udrives" of Ixtabalan and Stein), then IKEA has admittedly violated the Court's order to search for the email files of these custodians before December, 2022.

**6. What is the explanation for the discrepancy of the identified custodians for the December, 2023 production?**

The December 15, 2023 letter from Plaintiffs' counsel, Laura Mattiacci (ECF 343), highlighted six emails with attachments containing material evidence that were not produced by IKEA until December 15, 2023. She noted, as well, that of the 830 documents produced by IKEA on December 12, 2023, 396 were from Nabeela Ixtabalan as the identified cusotidan, 183 documents were from Sari Brody as identified custodian, 130 documents were from Kirstie Olafsson as identified custodian, and 112 were from Christof Stein as the identified custodian.

At Day 1 of the hearing, Ms. Saint-Antoine testified that she had filtered on the "custodian" field in the metadata that was **produced** by IKEA with its December 12, 2023 production, and the custodians were identified as stated in the December 15, 2023 letter. The identification in the metadata of Ixtabalan, Brody, Olafsson and Stein as "custodians" of these emails was contrary to IKEA's admission that it had deleted their emails.

On Day 2 of the hearing, the Court asked IKEA's counsel to explain the apparent discrepancy. IKEA represented to the Court that it would provide metadate and bring Bob Hatley from Lighthouse in to testify if requested, and the Court authorized the deposition of a Lighthouse person in connection with the issues of this case. On January 29, 2024, the Court ordered IKEA to provide Plaintiffs "with the load file containing unaltered metadata corresponding to Defendants' December 2023 production **on or before February 2, 2024**." (*Donofrio* ECF 362, emphasis in original; Ex. D, hereto.) On February 2, 2024, IKEA counsel

emailed Plaintiffs with what was described as a load file overlay with the corrected custodian information and declarations from Omar Benbouazza (IKEA IT) and Matthew Korst (email of Lighthouse, IKEA's e-discovery vendor) explaining the process undertaken. The Korst Declaration disclosed for the first time that, unbeknownst to Plaintiffs IKEA had advised Lighthouse to assign to the metadata "custodian" field an individual identified by IKEA, which was not contained in the original system metadata. It further explained that for the documents found in the Udrives, Lighthouse created an overlay to replace the originally assigned "custodian" with the corrected custodian metadata and that, for some of the emails, the mailbox owners were "included" in the custodian field.

As Plaintiffs' counsel explained in her February 6, 2024 letter to the Court (ECF 366), IKEA 1) had failed to provide the complete and unaltered metadata as ordered by the Court (ECF 362), notwithstanding two follow-up requests by Plaintiffs' counsel that it do so; and 2) IKEA revealed for the first time that many of the documents that IKEA did not produce until December, 2023, were from sources that IKEA had in its possession and control at all times during the litigation and which IKEA had been ordered to search.

IKEA also revealed for the first time that, contrary to IKEA's repeated representations to Plaintiffs and this Court, several of the documents produced in December, 2023, were not from the mailboxes of other employees whose data had not yet been deleted, but from the U-drives (a/k/a Personal Storage Network system of IKEA) of Nabeeela Ixtablana and Christof Stein. IKEA's General Counsel Lewis testified under oath that for *about a year*, IKEA searched every possible repository – indeed, left no stone unturned – and that the emails were gone and could not be recovered, leaving only the option of trying to "reconstitute" them from other custodians. IKEA to this day has not stated exactly when or where these U Drives were somehow found. The

corrected metadata provided on February 2, 2024 also revealed for the first time that nearly 200 of the documents that IKEA did not produce until December, 2023, were found in the e-mailboxes of several "key player" custodians whose email files Defendants had been ordered to produce by December, 2022.

Plaintiffs' counsel asked the Court to order IKEA to provide Plaintiffs with the load file containing full (all fields) and unaltered metadata and to confirm that there were no other instances (including prior productions) of metadata being altered, manually or otherwise. On February 8, 2024, Plaintiffs' counsel wrote the Court to explain that, because of time constraints, it was sending to IKEA counsel that day a subpoena for the deposition of Lighthouse and the production of unaltered metadata corresponding to IKEA's December, 2023 production, including file path.

Plaintiffs' counsel sent to Mr. Lidbury a subpoena for a representative of Lighthouse to testify and for the production of full and unaltered metadata, including file path. On February 9, 2024, Plaintiffs' counsel asked IKEA's counsel to confirm the deposition of the Lighthouse representative and that it would provide us with the load file unaltered metadata by the end of the day. IKEA's counsel wrote back, stating that he was not authorized to accept service of a subpoena on Lighthouse and that Plaintiffs' counsel should "not expect a new load file today or ever." In the meantime, an attorney for Lighthouse surfaced and said that Lighthouse had not been served with the subpoena and thus would not be appearing for deposition or producing documents. Plaintiffs' counsel has explained to counsel for IKEA and Lighthouse that IKEA counsel told the Court that IKEA would make Lighthouse available for a deposition and that the Court ordered IKEA to provide to Plaintiffs the full and unaltered metadata (i.e., not limited in any way by ECF 263, the parties' prior agreement as to the format for production). To date,

Plaintiffs have not received the unaltered metadata for the documents produced by IKEA in December, 2023, and have not been able to depose a witness from Lighthouse.

The metadata has already been collected for these documents and it should be a matter of hours, if not minutes, for IKEA to provide it as ordered. The file path will provide information to help Plaintiffs get to the bottom of critical unanswered questions, like what custodians had these documents that should have been, but were not, produced before December, 2023. For example, who had the FY16 US D&I Recap and 2018 Age Goals, when did they have it, and why wasn't it produced as required by the three discovery Orders?

The fact that, notwithstanding that the Court asked IKEA to address these questions regarding the metadata and authorized a deposition, and IKEA is resisting Plaintiffs' efforts to try to get to the bottom of these issues, suggests that whatever information the file path will reveal will hurt IKEA's position. The reasonable inference to be drawn is that the metadata, including file path, will reveal that evidence that IKEA was required by the Court to produce was withheld with the intent to deprive Plaintiffs of its use.

**B. The New And Unsupported Assertions In IKEA's Opposition Regarding What IKEA Was Ordered To Search, Especially When Coupled With The Troubling And Still Unresolved Questions Regarding The Discrepancy In The Identification Of Custodians In Connection With IKEA's December, 2023 Production Of Documents, Is Reasonable Grounds To Infer That IKEA Has Deleted Or Withheld Even More Evidence Than Previously It Disclosed.**

IKEA's Opposition now asserts that the Court on April 29, 2022 "entered an order directing IKEA to search the M365 mailboxes of 47 mailbox custodians (including Olafsson, Nabeela Ixtabalan, Sari Brody, and Christof Stein) and run searches within certain date ranges utilizing specific search terms." IKEA's FOF ¶3.1. The Court's Order is not limited in this way. The Order, issued "consistent with the discussion on the record at the Status Conference on April

14, 2022," requires IKEA "to produce[7] electronically stored information ("ESI") in response to Plaintiffs' Consolidated, Joint Document Requests (Set One)…by conducting a review of the documents contained in the email files" of custodians identified on Ex. A and search terms on Ex. B. There is no mention in the Order, or in IKEA's briefs, of "M365 mailboxes." The basis for the 47 number is not stated.

As far as the Order stating that it is issued "consistent with the discussion on the record at the Status Conference," IKEA's Opposition tries to change that discussion without any evidentiary support. IKEA had argued in its letters that it would be too costly to search and produce the data, citing to Fed.R.Civ.P. 26(b)(2)(B). IKEA's counsel argued during the April status conference: "And for each individual we're talking about email data that is stored, archived overseas…..The question is do we have to pull archived data from well before the class period when these decisions weren't being made." (See ECF 312, A-14 Tr. at 18:9-18, 27:3-11.) The Court rejected IKEA's argument and ordered IKEA to search and produce the data. See ECF 312, A-14 Tr. 29:13-17. ("I will see that it's done consistent with what we jus said, that this is a decision that has been made the Court and will be followed. So that's where I am. I know you want – you don't like it, Ms. Miller, and that's just too bad." )

IKEA now states that when its counsel, Traer Cundiff then Ogletree's E Discovery Counsel, asserted in her February 14, 2022 letter to Plaintiffs' Counsel (ECF 313, A-12) that it would be too burdensome for IKEA to collect and search the email, she *mistakenly* cited to Fed.R.Civ.P. 26(b)(2)(B), which addresses limitations on ESI from sources that the party

[7] The Order directs that IKEA "shall make their ESI production in a format consistent with the agreement among the parties contained in" the Joint Stipulation for an Order Governing Procedures for Production of Electronically Stored Information filed on December 14, 2022 (ECF 263).

identifies as not reasonably accessible because of undue burden or cost. IKEA FOF¶ 3.5. IKEA's Opposition now asserts that her cost argument was based on breadth and not on any unusual difficulty in accessing the ESI, and that she really meant to cite to Fed.R.Civ.P. 26(b)(1). *Id.* There is no evidentiary support for this. If true, why didn't IKEA put Ms. Cundiff on the stand and have her testify to this or submit a sworn Declaration from her? Why didn't Ogletree attorneys Sher or Lancaster Adams, both of whom were copied on the letter, testify under oath to this?

IKEA's Opposition now asserts that when its counsel, Wendy Miller then of Ogletree, argued to the Court during the April 14, 2022 conference that it would be too burdensome to pull "email data that is stored, archived overseas," she was using the term "colloquially to refer to the long term storage of "older" email on M365, rather than as not reasonably accessible within the meaning of Fed.R.Civ.P. 26(b)(2)(B). IKEA FOF ¶ 3.9. There is no evidentiary support for this. Why didn't IKEA put Ms. Miller on the stand and have her testify to this or submit a sworn declaration from her? Why didn't Ogletree attorneys Sher or Lancaster Adams, both of whom were present during the April 14, 2022, conference, testify under oath to this?

IKEA's Opposition also asserts repeatedly that its "reconstitution effort" which resulted in the December 12, 2023, production was undertaken "voluntarily" and not required by Court Order. This is not so. At least according to the "corrected metadata" produced by IKEA on February 2, 2024, some of these documents were produced from the Udrives of custodians Ixtabalan and Stein. "Udrives" are identified among the data collected to respond to the Court's Order (see ECF348-9 at p. 1, which lists emails, onedrive, chat, udrive). Many other documents were produced from the files of several other required custodians such as Cathy Blair, Jacqueline DeChamps, whose emails IKEA said it searched.

IKEA admits that the "reconstituted" emails of the admittedly deleted were produced as a result of a global search, but the global search would only reach custodians whose emails have not been deleted. In light of IKEA's purported automatic upon termination practice, a large number of emails would not be captured.

Further, in light of IKEA's newly asserted limitations on what the Court's Order required it to search, it is reasonable to infer that IKEA's search of the required custodians other than Ixtabalan, Brody, Olafsson and Stein was less than as ordered and that many of their emails have been deleted or withheld. Moreover, IKEA's assignment of custodians could easily be used to mask this fact.

Finally, IKEA's resistance to providing the file path for the December 12, 2023 documents suggests that they still have something to hide.

In sum, the reasonable inference to be drawn is that IKEA has intentionally deprived Plaintiffs of the use of far more material evidence than it has disclosed and, like before, is trying to hide it.

**C. IKEA's Opposition Itself Tries To Benefit From Its Having Deprived Plaintiffs Of The Evidence Of Its Policy Of Age Discrimination, And In Doing So Is Further Basis From Which To Infer IKEA's Bad Faith.**

IKEA's Opposition itself is further basis from which to infer IKEA's bad faith. Rather than trying to explain plausibly its admitted deletion of emails and withholding of evidence or assuring the Court that it has finally and fully produced what was ordered, IKEA's Opposition is devoted in part to arguing that these age discrimination cases are not suitable to proceed as collective actions. Yet IKEA for six years now has deprived Plaintiffs of the use and ability to develop the evidence of IKEA's policy of age discrimination applicable to the time periods at issue and to all US store employees, which establishes IKEA's pattern or practice of age

discrimination and sets the framework for these cases of systemic discrimination to proceed as collective actions. It is astounding, frankly, that IKEA cites in support of its argument deposition testimony it elicited from opt-in plaintiffs as to why they believed they didn't get the promotions they sought, while having deprived them of the evidence that IKEA as a company and across US stores expressly wanted to increase the percentage of employees under 34 in salaried exempt positions. Plainly, the Court should not permit IKEA to <u>benefit</u> in any way from its deletion and withholding of smoking gun evidence of IKEA's policy of age discrimination.

Respectfully submitted,

**CONSOLE MATTIACCI LAW, LLC**
<u>/s/ Susan M. Saint-Antoine</u>
Stephen G. Console
Laura C. Mattiacci
Susan M. Saint-Antoine
Caren N. Gurmankin
Evelyn Kallenbach
Madison Provorny
1525 Locust Street, 9th Fl.
Philadelphia, PA 19102
(215) 545-7676 (phone)
(215) 545-8211 (fax)
Attorneys for Named Plaintiffs,
Frank Donofrio, Brandon Paine and William Antonelli (*on behalf of themselves individually and on behalf of those similarly situated*)

March 6, 2024