**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FRANK DONOFRIO,<br>*on behalf of himself individually*<br>*and on behalf of those similarly situated,*<br>Plaintiff,<br><br>v.<br>IKEA US RETAIL, LLC<br>Defendant. | : | CIVIL ACTION<br>No. 2:18-cv-00599-AB |
| WILLIAM V. ANTONELLI, JR.,<br>*on behalf of himself individually*<br>*and on behalf of those similarly situated,*<br>Plaintiff,<br><br>v.<br>IKEA HOLDING US, INC., *et al.*<br>Defendants. | : | CIVIL ACTION<br>No. 2:19-cv-01286-AB |
| BRANDON PAINE,<br>*on behalf of himself individually*<br>*and on behalf of those similarly situated,*<br>Plaintiff,<br><br>v.<br>IKEA HOLDING US, INC., *et al.*<br>Defendants. | : | CIVIL ACTION<br>No. 2:19-cv-00723-AB |

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE**
**TO PLAINTIFFS' ESTIMATED BREAKDOWN OF ATTORNEY'S FEES (ECF 374)**

Reading Defendants' Response To Plaintiffs' Estimated Breakdown Of Attorneys' Fees (ECF 374)[1], one might get the mistaken impression that it was *Plaintiffs* who were somehow engaged in wrongdoing and must bear an onerous burden and endure even further delay as a result. Of course, it was <u>Defendants who were caught cheating</u> trying to hide the proof of their now admitted, facially age discriminatory policy. IKEA's unremorseful finger pointing and scorched earth tactics should not divert attention from the simple facts of what we now know that IKEA has done here, and which the Court should not condone.

**1. IKEA's Response <u>now effectively admits</u> that it had an openly declared, facially age discriminatory policy to which all IKEA US store employees were subjected during the "class" period (January 20, 2016 – June 1, 2019).** The Response admits:

> Plainly it has been far from a secret that, as IKEA-101724-63 cumulatively reflects, high ranking HR professionals at IKEA tracked diversity metrics in connection with a goal to increase representation of younger people in management, among other dimensions of diversity. Plaintiffs' counsel channel Captain Renault in Casablanca when they feign "shock" to find that throughout the class period IKEA adopted 'age-based personnel goals.' (ECF 374, p. 8.)
>
> IKEA-101724-63 reflects what so many previously produced documents do and what so many witnesses testified to. It charts statistics showing millennials were underrepresented in management roles and concludes that '[w]e need to spot and prioritize potential and move them fast through our development pipeline' so as to 'increase the number of coworkers under 34 in exempt management.' (ECF 374 at p. 21.)

The "age-based personnel goals" that IKEA as a company admittedly adopted throughout the "class" period as stated in IKEA-101724-63 are not only to increase the <u>number</u> of younger workers in management positions, but to "[i]ncrease the **percentage** of coworkers under 34 in

[1] References are to the ECF numbers in the *Donofrio* case. References to ECF page numbers are to the ECF number, not to the internal document page numbers.

salaried exempt positions to be more reflective of the under 34 coworker population in our stores." ECF 374-1 at IKEA-101757)(emphasis added).

IKEA-101724-63 reflects a decision by IKEA to pursue a systematic, company-wide policy of intentional discrimination against co-workers older than 34 in staffing selections for management positions. To increase the percentage of employees younger than 34 in management positions necessarily means to decrease the percentage of employees older than 34 in management positions.

**2. IKEA's Response now admits that "throughout the class period IKEA adopted 'age-based personnel goals'" (ECF 374, p. 8), yet simultaneously, and incredibly, contends that it was "under no Court order to produce" them (see ECF 374, p. 12).** In their 2018 responses to discovery, IKEA stated that it had no documents concerning and/or that state and/or reflect IKEA personnel goals in terms of age. IKEA certainly did not tell Plaintiffs or the Court during the August, 2018 conference that IKEA adopted "age-based personnel goals," and indisputably did not produce by September 7, 2018, IKEA-101724-63 (or the other documents their Response now asserts (*albeit* falsely) are "more of the same thing" or "says essentially the same thing." See ECF 374, pp. 4- 6[2]. It is simply incredible for IKEA to contend that it was under no Court order to produce IKEA-101724-63, when the Court Order (ECF 29) explicitly calls for IKEA "to produce any documents relating to IKEA Group's age-based personnel goals that apply to U.S. employees" and IKEA now admits that this was one such document (apparently among many, which were also not produced in 2018).

[2] The exhibits referenced in IKEA's Response (Ex. 8 through 11), were all produced by IKEA in 2022.

IKEA's accusation that Plaintiffs are being "disingenuous … to pretend they thought IKEA had conducted a search in 2018 equivalent to the ESI Protocol negotiated in 2022" or "to pretend they thought that IKEA had in 2018 performed a global email search equivalent to the voluntary supplemental production in 2023" (see ECF 374, pp. 8-9) is odd, frankly. That has never been Plaintiffs' position. It is implausible for IKEA to suggest that such a search would have been required to locate and produce IKEA-101724-63, when it was distributed to many high ranking HR professionals (including inhouse counsel directly involved in the *Donofrio* litigation) by the US Head of Human Resources with responsibility for diversity (whose deposition was then under discussion by IKEA's outside counsel).

**3. The smoking gun evidence first produced by IKEA on December 12, 2023, is not cumulative.** IKEA did produce a lot of documents in this case, but the best examples they can come up with to argue that IKEA-101714-14 attaching IKEA-101724-63 is cumulative do not support their contention. To characterize the cover email itself as revealing "nothing more than the scheduling of a D&I kickoff" (see ECF 374 at p. 3) is an obvious strawman. The cover email in fact reveals: the date of distribution to be 2016 (and not earlier); the description of the document (FY16 US D&I Recap), which many of the documents produced by IKEA lack; that it was from IKEA's Head of Human Resources; that it was distributed to IKEA high ranking HR professionals across the United States including in-house counsel; that IKEA's Head of HR was instructing the recipients to read the "Global Approach to D&I;" that IKEA's Head of HR was instructing the recipients to read the FY16US D&I Recap, which contains IKEA's openly declared, facially age discriminatory policy; and also that the email and attached materials to be read were further distributed by its initial recipients.

The attached FY16US D&I Recap, as IKEA now effectively admits, contains IKEA's openly declared, facially age discriminatory policy to which all IKEA US store employees were subjected during the "class" period. Among other things: the document does not precede 2016, but was admittedly in effect during the "class" period. The document is not merely descriptive, but normative. It not only "tracks" age demographics as reflected in a chart, but ties the demographics to an age discriminatory goal. The document speaks the goal in plain English – increase the percentage of employees under 34 in management positions -- not IKEA lingo.[3] It is of great legal significance under Third Circuit law, as it is alone sufficient to establish a "pattern or practice" of age discrimination.

**4. IKEA is wrong and way off base when it tells the Court that Plaintiffs' counsel expects the cases will be decertified and they will lose their "improvident investment."** (See ECF 372, p. 2.) Plaintiffs have been confident since the beginning that IKEA engaged in systemic age discrimination and that these cases should proceed as ADEA collective actions under a pattern or practice framework. Plaintiffs' concern is with IKEA's <u>deletion and withholding of evidence to prove it</u>.

One way to establish a pattern or practice of discrimination is by the existence of an openly declared, discriminatory policy. *See, e.g., United States v. Bd. of Educ. of School Dist. of*

[3] In contrast, the example chart (p. 5, Ex. 8) is a chart without identification of what it is or to whom it was distributed, does not appear on its face to be tied to a goal, and is from 2014. Likewise, Defendants' Ex. 9 has charts without identification of what they are or to whom they were distributed, do not appear on their face to be tied to a goal, have unexplained entries to "local market" and also precede 2016. IKEA's Response calls its Ex. 10 (IKEA-026529) "essentially the same thing" as IKEA-101724-63 but does not tie the demographics to a goal and precedes 2016. Likewise, Defendants' Ex. 11 precedes 2016, is not tied to a goal, and uses language of "generational diversity." When Ixtabalan was questioned at deposition on whether a goal to "increase generational diversity" meant more younger people in salaried exempt positions, she testified that it did not. See ECF 373, p. 19, n.16 (Plaintiffs' Reply to Defendants' proposed Findings of Fact, citing Ixtabalan testimony).

*Phila.*, 911 F.2d 882, 892-93 (3d Cir. 1990)(holding in a Title VII case that an openly declared policy of discrimination is sufficient to establish a pattern or practice of discrimination); *Sperling v. Hoffman-LaRoche,* 924 F. Supp. 1346, 1358 (D.N.J. 1996)(explaining that an openly declared discriminatory policy is sufficient to establish a pattern or practice of age discrimination in an ADEA collective action); *United States v. Garden Homes Mgmt. Corp.*, 156 F. Supp 2d 413, 423 (D.N.J. 2001)(proof that a party adopted a discriminatory policy satisfies the Fair Housing Act's pattern and practice requirement). *See generally*, *Karlo v. Pittsburgh Glass*, 849 F.3d 61, 85 (3d Cir. 2017)("Being similarly situated means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA.") As admittedly characterized in IKEA's Response, IKEA-101724-63, is alone sufficient to establish a pattern or practice of age discrimination entitling plaintiffs to injunctive relief and creating a rebuttable presumption that IKEA discriminated against each plaintiff. The prejudice to Plaintiffs is from IKEA depriving them of this evidence at the start of litigation in 2018 when it was first requested and ordered by the Court to be produced.

Further, IKEA has it backwards when it tries to skip over the issue of whether IKEA engaged in a pattern or practice of age discrimination and go straight to what is to be decided at the second stage of trial proceedings – *i.e.*, whether, despite IKEA's policy of discriminating against workers older than 34 in staffing selections for management positions, IKEA rejected a particular plaintiff for promotion to a management level position for a reason other than age.

**5. It would be imprudent and grossly unfair to Plaintiffs to presume that IKEA has not deleted or withheld evidence that would make a material difference in the outcome of this case.** It is Plaintiffs' position that IKEA-101724-63 (the FY16 US D&I Recap), coupled with the admissions in IKEA's Response, proves that IKEA engaged in a pattern or practice of

age discrimination entitling plaintiffs to summary judgment on this point. However, there is a chance of course that Plaintiffs' pattern or practice claim will go to trial and Plaintiffs will lose.

IKEA has demonstrated a willingness to make false representations to the Court and Plaintiffs' counsel, that it has deleted evidence of obviously material witnesses while under a duty to preserve it and under Court order to produce it, and that it has kept from Plaintiffs and the Court, and has tried to conceal, its destruction of evidence. IKEA did not admit to the deletions until caught and repeatedly pressed by Plaintiffs. IKEA did not disclose the smoking gun evidence until the Court scheduled a hearing and their in-house and outside counsel faced the prospect of having to testify under oath. As set forth in Plaintiffs' Reply to Defendants' Proposed Findings of Fact and Conclusions of Law (ECF 373), there are goods grounds to conclude that IKEA did not "reconstitute" fully the emails it admittedly deleted, and good grounds from which to infer that IKEA has deleted or withheld even more evidence than it has disclosed.

The Court should not simply presume that Plaintiffs have now been provided with the material evidence that might make a difference in the outcome of this case.

**6. It would be highly onerous, an infringement upon privileged information and work product in the middle of litigation, and grossly unfair to Plaintiffs if, in order to grant monetary relief to Plaintiffs for *IKEA's admitted* deletion and indisputable withholding of evidence, the Court were to do as IKEA requests.** IKEA's demand that it is entitled to discovery of the drafts of our firm's documents used in the litigation, our firm's internal strategy emails, and depositions of all relevant timekeepers including our firm's current and former attorneys, as well as its assertion that IKEA is likely to involve experts, will require our firm to expend enormous additional resources and will drag this case on for even longer. It essentially

amounts to punishing Plaintiffs for catching IKEA's misconduct and bringing it to the attention of this Court. The Court should not condone IKEA's scorched earth tactics.

7. **The difficulties presented by a remedy in which it is presumed that Plaintiffs now have the benefit of all material evidence that should have been produced and the enormous additional resources and delay presented by IKEA's demand for additional discovery highlight that the most appropriate remedy, particularly in light of the admissions now made in IKEA's Response, is for the Court to enter judgment against IKEA and in favor of each Plaintiff, and proceed to an assessment of individual damages.** Short of that, and in the alternative, the Court should enter a finding that IKEA engaged in a pattern or practice of age discrimination to which all plaintiffs were similarly subjected, finally certify the case as an ADEA collective action, and proceed to the second stage of trial proceedings.

Respectfully submitted,

**CONSOLE MATTIACCI LAW, LLC**
/s/ Susan M. Saint-Antoine
Stephen G. Console
Laura C. Mattiacci
Susan M. Saint-Antoine
Caren N. Gurmankin
Evelyn Kallenbach
Madison Provorny
1525 Locust Street, 9th Fl.
Philadelphia, PA 19102
(215) 545-7676 (phone)
(215) 545-8211 (fax)
Attorneys for Named Plaintiffs,
Frank Donofrio, Brandon Paine and William Antonelli (*on behalf of themselves individually and on behalf of those similarly situated*)

March 18, 2024