**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FRANK DONOFRIO, on behalf of himself individually and on behalf of those similarly situated,<br>Plaintiff,<br>v.<br>IKEA US RETAIL, LLC,<br>Defendant. | CIVIL ACTION NO. 18-599-AB |
| WILLIAM V. ANTONELLI, JR., on behalf of himself individually and on behalf of those similarly situated,<br>Plaintiff,<br>v.<br>IKEA HOLDING US, INC., IKEA US RETAIL, LLC, and IKEA NORTH AMERICA SERVICES, LLC,<br>Defendants. | CIVIL ACTION NO. 19-1286-AB |
| BRANDON PAINE, on behalf of himself individually and on behalf of those similarly situated,<br>Plaintiff,<br>v.<br>IKEA HOLDING US, INC., IKEA US RETAIL, LLC, and IKEA NORTH AMERICA SERVICES, LLC,<br>Defendants. | CIVIL ACTION NO. 19-723-AB |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' DOCUMENTED, ITEMIZED REQUEST FOR FEES AND EXPENSES INCURRED IN CONNECTION WITH THEIR MOTION FOR SANCTIONS**

## I. INTRODUCTION

Console Mattiacci Law, LLC ("CML") represents to this Court that on November 8, 2023, it took Susan Saint-Antoine four hours to: (i) read a one-page ECF notice (consisting of fewer than

100 substantive words), (ii) send emails to Plaintiff Frank Donofrio "regarding evidentiary hearing" and (iii) "emails regarding meeting on evidentiary hearing." *Donofrio* ECF 387-5 at 4. It defies common sense to believe that such basic activities would take an attorney with more than 25 years of experience, who seeks to be compensated at a rate of $860 per hour, four hours to complete. No reasonable client would pay $3,440 for such work.[1]

As is the case with the majority of CML's time entries submitted to support its Fee Petition, Saint-Antoine's November 8, 2023 time entry is an amorphous block-billed narrative with no reasonable correlation between the various activities listed and the time spent performing those tasks. In nearly all instances, CML's method of recording tasks makes it impossible for the Court to evaluate the reasonableness of time spent on each task. But in *this* instance, Defendants are able to deduce that it took Saint-Antoine an astonishing four hours to complete these three rudimentary activities because a fourth activity is included in her November 8, 2023 entry: a Zoom video conference meeting with Stephen Console and Laura Mattiacci "regarding evidentiary hearing on motion for sanctions." But Console billed only one hour of time on November 8, 2023, for "FaceTime with SSA regarding sanctions hearing."[2] ECF 387-5 at 4. Time entries such as this—which are rife in Plaintiffs' Fee Petition—suggest one of two things: (i) the time entries are incorrect and not an accurate representation of the time expended by CML attorneys or (ii) evidence CML's gross inefficiencies with regard to time management. IKEA should not be required to pay legal fees based on inaccurate time entries or CML's inadequacies.

---

[1] The time entry is even more shocking because on February 1, 2024, it purportedly took Ms. Saint-Antoine only 0.2 hours to read ECF entries and orders on Defendants' Motions and "emails regarding briefs/exhibits." *See* ECF 387-5 at 9. And as noted in footnote 16 below, courts often find it inappropriate for attorneys to bill for reading auto-generated ECF notices.

[2] Because Console's entry makes no mention of Mattiacci and Mattiacci has not submitted a time entry for this meeting, it is unclear whether Mattiacci even attended such a meeting or for how long.

It is not surprising that CML's time entries raise so many concerns because CML admits that its time entries were retrospectively manipulated. In their Fee Petition, CML states that Saint-Antoine "carefully reviewed the time entries and exercised billing judgment to **edit the entries** to reflect only the time for which CML seeks reimbursement" because **"[s]ome of the block entries for time spent on these IKEA cases included work that was not incurred in connection with the Motions for sanctions.**" ECF 387 at 3. CML further admits that "Ms. Saint-Antoine **edited those descriptions from the block entries and,** using her judgment and experience working on these cases, **apportioned the time recorded to charge for only the sanctions related matters.**" ECF 387 at 3-4. In other words, Saint-Antoine is, at best, guessing. And, while those guesses may be made in good faith and based on her years of experience, no attorney is capable of accurately reconstructing 938.1 hours billed by nine different timekeepers over a 14-month period.[3] Plaintiffs' attempt to classify their billing records as "contemporaneous" are farcical.

It is inexplicable that a law firm with CML's experience would keep such shoddy incomplete records—particularly with regard to a sanctions motion they filed on May 4, 2023, specifically seeking a Court order directing "IKEA to pay to Plaintiffs reasonable attorneys' fees for services performed by Console Mattiacci Law to negotiate the ESI search and bring this Motion, with an application for fees to follow." ECF 312-1 at 39. Plaintiffs' attorneys ***knew*** that if

[3] In her Declaration, Saint-Antoine describes the process she utilized to review and edit billing records. ECF 387-8 at ¶¶ 17-22. At absolutely no point does Saint-Antoine indicate she conferred with any of the eight other timekeepers regarding their time entries. The Third Circuit frowns upon utilizing such a process. *See Clemens v. N. Y. Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 400 (3d Cir. 2018) ("Even worse, the responsibility of reconstructing the time records was left to a single attorney, who retrospectively estimated not only the length of time she herself had spent on each individual task, but also the amount of time others had spent on particular tasks, including colleagues who could not be consulted because they had left the firm by the time the fee petition was filed.") To Defendants' knowledge, all of the attorneys seeking fees in this matter are still employed by CML and were presumably available to Saint-Antoine.

they were successful on the sanctions motion, they would be required to accurately account for their time with regard to only that motion *and* submit an application for fees.

CML basically asks this Court to merely trust them because "Plaintiffs' Motions for Sanctions required a lot of work." ECF 387 at 2 (emphasis in original). However, it is incumbent upon plaintiffs seeking attorneys fees "to prove that [their] request . . . is reasonable by 'submit[ting] evidence supporting the hours worked and rates claimed.'" *Giedgowd v. Cafaro Grp., LLC*, No. 20-6184, 2021 U.S. Dist. LEXIS 205882, at *8 (E.D. Pa. Oct. 26, 2021) (citing *Clemens*, 903 F.3d at 400). Defendants' Opposition to Plaintiffs' Petition brings to mind the Cold War-era Russian maxim made famous in the 1980s by President Ronald Reagan: "Trust, but verify." While Defendants do not doubt that CML put work into the sanctions motion and incurred attorneys' fees, IKEA is also entitled to un-doctored records to verify the reasonableness of time spent on each task. **Plaintiffs refused to provide these records to Defendants when requested**.

To that end, and as discussed in more detail below, the Court ***should not*** award Plaintiffs $644,212 in attorneys' fees because CML has provided insufficient proof to demonstrate the billing records they have provided are accurate or that the hours expended were reasonable. IKEA respectfully requests the Court reduce CML's attorneys' fees because, as outlined in this Opposition and based on available records: (i) CML has failed to provide sufficient evidence to demonstrate the accuracy of their records; (ii) the total time incurred by CML is excessive and/or unwarranted; and (iii) the hourly rates requested by the CML attorneys are unreasonably high. In the alternative, IKEA requests that the Court issue an order requiring CML to provide IKEA with their unedited, contemporaneous time entries and then grant IKEA the opportunity to respond to Plaintiffs' Petition based upon those unedited entries.[4]

[4] IKEA sent a letter to Plaintiffs on June 11, 2024, addressing some of the issues raised herein requesting "Plaintiffs provide us with the unedited, contemporaneous time entries to permit IKEA to challenge specific items, if necessary,

## II. ARGUMENT

### A. Standard for Determining Attorneys' Fees

Under Rule 37, courts utilize the lodestar method to calculate an award of expenses and attorney's fees. *See, e.g.*, *Ganoe v. Austin*, No. 20-663, 2023 U.S. Dist. LEXIS 104571, at *5 (M.D. Pa. June 15, 2023). Under the lodestar method, "[t]he party seeking attorney's fees has the burden to prove that its request . . . is reasonable." *Clemens*, 903 F.3d at 400 (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)). "Courts have a positive and affirmative function in the fee fixing process, not merely a passive role. In calculating the hours reasonably expended, a court should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Id.* (quotations & citations omitted). Fee requests must "be subjected to a thorough and searching analysis" and "it is necessary that the Court 'go line, by line, by line' through the billing records supporting the fee request." *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001).

The party opposing a fee petition has a burden to challenge (by affidavit and/or brief) the reasonableness of the requested fee. *Rode*, 892 F.2d at1183. "Once the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections." *Id.* "If the adverse party's ability to challenge the motion for fees is impeded, it may be prevented from raising meritorious objections to the fees and/or the hours

---

and to permit the Court to make thoughtful determinations as to whether the hours claimed are reasonable or unreasonable for the work performed and whether the hours claimed relate to the sanctions motion." **Ex. A**. IKEA made clear that it did not object to Plaintiffs redacting any attorney-client privileged information from those materials. *Id.* By letter dated June 13, 2024, Plaintiffs denied Defendants' request. **Ex. B.** In a follow-up letter on June 18, 2024, IKEA once again requested CML's unedited, contemporaneous time entries and provided over four dozen examples of Defendants' concerns regarding CML's modified time entries. **Ex. C.** On June 20, 2024, Plaintiffs once again denied Defendants' request and incorrectly claimed they already provided "contemporaneous time entries that specifically describe the work our firm did in connection with the Motion for Sanctions." **Ex. D.**

requested." *Rapp v. Cameron*, No. 00-1376, 2002 U.S. Dist. LEXIS 2801, at *21 (E.D. Pa. Feb. 20, 2002).

### B. An Unknown Number of Plaintiffs' Billing Entries are Reconstructed and Non-Contemporaneous, Impeding Defendants' Ability to Raise Objections

As a threshold matter, and despite Plaintiffs' assertions to the contrary, CML's records are reconstructed, non-contemporaneous records.[5] Such incomplete and inaccurate records impede the ability of IKEA to adequately challenge Plaintiffs' fee petition. As CML admits:

> Some of the block entries for time spent on these IKEA cases ***included work that was not incurred in connection with the Motions for sanctions***. Ms. Saint-Antoine **edited** those descriptions from the block entries and, using her judgment and experience working on these cases, **apportioned** the time recorded to charge for only the sanctions related matters per the Court's Order.

ECF 387 at 3-4 (emphasis added). In other words, "some"—perhaps 2% or maybe 98%—of the time entries utilized by CML were reconstructed.[6] As IKEA understands it, Plaintiffs' attorneys contemporaneously generated block-billed time entries of ***all tasks*** related to the collective actions and then on *another* date (perhaps nearly 1.5 years later in some instances), Saint-Antoine modified those records based on her professional judgment (rather than the actual amount of time a particular task took). By definition, the modified records submitted to the Court are not contemporaneous because they were not created and did not exist at the same time the work took place. While Saint-Antoine may have a good memory, she cannot credibly claim that all the time records submitted by CML are wholly accurate or that she is appropriately retrospectively apportioning the amount of time it took to complete a certain task.

---

[5] Merriam-Webster defines "contemporaneous" as "existing, occurring, or originating during the same time." *See* "contemporaneous." *Merriam-Webster.com,* https://www.merriam-webster.com/dictionary/contemporaneous (June 24, 2024).

[6] As noted in footnote 4, IKEA cannot possibly know which records were modified because Plaintiffs refuse to provide copies of the unmodified records.

Reconstructed time records present a uniquely difficult challenge for courts. *See, e.g.*, *Rapp*, 2002 U.S. Dist. LEXIS 2801, at *19 n.3 ("The failure to maintain contemporaneous time records in a case like this is almost inexcusable, and makes the court's task herein, described by the Third Circuit Court of Appeals as 'a disagreeable and tedious task,', even more difficult.") (citing *Maldonado v. Houstoun*, 256 F.3d 181, 182 (3d Cir. 2001)). As noted by Judge Rueter in *Rapp*:

> Courts have often emphasized the need for counsel to exercise good billing judgment in their fee requests. Without contemporaneous records, it is difficult to ascertain whether counsel, in preparing a fee petition, chose not to bill for certain fruitless hours for which a commercial client would not be billed. **Retrospective estimates necessarily produce inaccuracy in the number of hours billed. While manifest unreasonableness is easy to discover, slight but consistent overstatement is not.** Even with the assistance of correspondence files and dockets to refresh attorneys' recollections of tasks performed, some of the requested hours may be misclassified. Should a particular category of fees be denied, misclassification could yield an erroneous fee. Finally, reconstructed records impede the adverse party's ability to satisfy its burden of challenging fee petitions in detail.

*Id.* at *20 (citations omitted) (emphasis added). *See also Fletcher v. O'Donnell*, 729 F. Supp. 422, 428 (E.D. Pa. 1990) (Cahn, J.) (holding the same). As astutely noted by Judges Rueter and Cahn, it would be fairly easy for IKEA and this Court to determine if CML grossly exaggerated its attorneys' fees.[7] However, it is nearly impossible for IKEA and the Court to "discover the slight but inconsistent overstatement"—the extra 30 minutes on a brief here or the extra two hours on a research project there—when CML's time entries are primarily made up of vague, reconstructed block-billed entries. CML submitted 215 separate time entries totaling 938.1 hours. If even 10%

[7] For the avoidance of doubt, IKEA is not alleging CML has intentionally or grossly exaggerated its fees. Rather, CML admits there is no real way to determine whether its records are accurate.

of the hours in these time entries were inadvertently inflated, such inflation would represent a miscalculation of nearly 94 hours—or $80,840 at Saint-Antoine's requested rate.[8]

It is not difficult to maintain sufficiently detailed contemporaneous time records on a task-by-task basis.[9] The undersigned attorneys do it on a daily basis and a substantial number of Ogletree Deakins clients' prohibit and simply ***will not pay*** invoices consisting of vague block-billed entries like the ones submitted to this Court by CML. It is beyond comprehension that a firm that takes the overwhelming majority of its cases on a contingency fee basis and relies upon petitioning courts to award them fees in order to be paid would keep such vague time entries—and then when that same firm specifically seeks fees related to a sanctions motion, does nothing to segregate its time entries until after-the-fact and bases them on speculation.

Plaintiffs' failure to maintain actual contemporaneous and specific records undermines the integrity of the fee petition process. As noted by Judge O'Neill:

> it bears noting that courts in this jurisdiction have warned counsel that reconstructed records would not be accepted or would be subject to a substantial fee reduction because they may create the perception of unaccountability and unfairness and because of the potential for systematic, albeit unintended, overstatement or misclassification of hours. Moreover, in an action such as this in which counsel know from the beginning that they may recover fees, there is no excuse for failure to keep contemporaneous records from the start.

*Smith v. Int'l Total Servs.*, No. 95-2038, 1997 U.S. Dist. LEXIS 16236, at *15 n.11 (E.D. Pa. Oct. 9, 1997) (citation omitted). It is worth repeating that it is mindboggling that Plaintiffs' attorneys

---

[8] IKEA uses the 10% figure as an example. IKEA does not have the data to make a more accurate assessment of Plaintiffs' fees.

[9] The concept of task-based billing is not completely foreign to CML as demonstrated by Evelyn Kallenbach's entry on December 18, 2023, wherein she made an effort to note how much time she spent on each block-billed entry: "Coding new docs in Everlaw for SSA regarding duplication issue (6 hours) and starting work on research for our response to IKEA's motion to quash our subpoenas for Wednesday's evidentiary hearing (3 hours)." ECF 387-5 at 6. She practiced the same good task-based billing practice on January 31, 2024. ("Work on evidentiary hearing memo (including call with SSA for .6)"). ECF 387-5 at 8.

did not bother to record their time by task (as opposed to vaguely block billing) when they were specifically seeking fees with regards to a sanctions motion and very well knew that if they were successful on such a motion, they would only be entitled to fees related to the sanctions motion and not *all* attorneys' fees incurred with regard to the collective actions.

While the submission of reconstructed records does not completely bar a party from obtaining attorneys' fees, courts frown upon the practice—and for good reason because it makes the job of the Court and opposing counsel significantly harder. "[A]lthough reconstructed records in and of themselves do not justify complete disallowance of a fee award, they may warrant more exacting scrutiny than we would bring to contemporaneous and detailed records." *Clemens*, 903 F.3d at401 (citations omitted). If this Court chooses to consider CML's reconstructed records, it should follow the Third Circuit's, Judge Rueter's, and Judge O'Neill's advice, "scrutinize them carefully," and not hesitate to substantially reduce the amount awarded. *Rapp* at *23; *Smith* at *15.

### C. The Court Should Not Award Attorneys' Fees of $644,212 Because it is Unreasonably Excessive and/or Unwarranted.

With the background of CML's altered time entries in mind, and despite the overarching problems presented by those time entries, IKEA is still able to identify a number of specific issues with the existing records warranting a reduction in fees. Those issues are discussed below and presented in a chart enclosed as **Exhibit E**.[10]

[10] The chart at **Exhibit E** includes a reproduction of ECF 387-5, the chronologically ordered billing spreadsheet submitted by CML with their fee petition. The document has been modified by IKEA to include a column on the far left identifying the "Entry Number" and a column on the far right noting the objection of IKEA to the time entry (where warranted). In an effort to save space, make this response as readable as possible, and avoid needlessly reproducing every single time entry to which IKEA objects, when referring to a particular time entry in this response, IKEA generally refers to the Entry Number in **Exhibit E** rather than reproducing the entire entry herein.

### 1. CML's Fees Should Be Reduced Because Many Time Entries Are Block-Billed in an Impermissible Manner and There is No Reasonable Correlation Between the Various Activities Listed in Plaintiffs' Block Billing Entries and the Time Spent Completing Those Tasks

Block billing is "the practice of recording multiple tasks in one, non-itemized entry." *Middlebrooks v. Teva Pharms. USA, Inc.*, No. 17-412, 2019 U.S. Dist. LEXIS 30530, at *15 (E.D. Pa. Feb. 26, 2019). Approximately 122 of CML's 215 time entries (56.7%) are "block billed" by combining (sometimes seemingly unrelated) distinct tasks into a single time entry. Approximately 607.3 of the 938.1 hours (64.7%) and approximately $461,440 of the $644,212 (71.6%) sought by CML as attorneys' fees are the result of block-billed entries. Courts are permitted to award time for block billing "so long as 'there is a reasonable correlation between the various activities listed in the block and the time spent completing those tasks.'" *Id.* (citing *Pasternack v. Klein*, No. 14-2275, 2017 U.S. Dist. LEXIS 171319 (E.D. Pa. Oct. 17, 2017)). But other courts in this district have declined to consider block-billed entries. *See, e.g.*, *Minehan v. McDowell*, No. 21-5314, 2023 U.S. Dist. LEXIS 223383, at *14 n.3 (E.D. Pa. Dec. 15, 2023) (Kenney, J.) ("[T]he block billing practice prevents the Court from ascertaining precisely how much of the time in the block-billed entries was spent doing clerical versus non-clerical work. Therefore, the Court will exclude these entries in their entirety.").

Block billing disadvantages clients because it gives them no insight into how long it took a particular attorney to complete a particular task or whether the task was performed in an efficient matter. Block billing is particularly disadvantageous to all parties here because CML admits that it created contemporaneous block-billed entries related to *all* of the collective actions but then for purposes of this fee petition, made backdoor revisions to block-billed entries based on Saint-Antoine's "judgment and experience" so that those entries only reflected what Saint-Antoine believed were hours attributable to the sanctions motion. ECF 387 at 3-4.

CML's decision to block bill in this case is a textbook example of why attorneys should not block bill—there is no way to determine how much time was spent on a discrete task. *See, e.g.*, *United States v. NCH Corp.*, No. 98-5268, 2010 U.S. Dist. LEXIS 94486, at *22, 24 (D.N.J. Sep. 10, 2010) (finding problems with parties' block-billed entries in fee petition because of party's "failure to task bill because the parties now have to estimate, after the fact, how much time was spent on a particular task within a block billing description" and reducing the party's requested fees "by an appropriate percentage" on that basis). This is even more problematic when Plaintiffs refuse to inform the Court and IKEA what portion of the contemporaneous billing entries were deleted or modified.

"Courts within this Circuit have held that a party '**block bills at his own peril.**'" *NCH Corp.*, 2010 U.S. Dist. LEXIS 94486, at *24 (citing *Estate of Schultz v. Potter*, No. 05-1169, 2010 WL 883710, at *7 n.14 (W.D. Pa. Mar. 5, 2010)) (emphasis added). In *NCH Corp.*, Judge Wigenton wrote:

> **when there is confusion due to block billing, the blame lies on the party seeking fees because they were in the best position to mitigate any confusion by task billing**. . . . [T]he Court does not expect minute by minute entries by counsel. However, the significant amount of "block billing" employed by [party seeking fees], in this instance, thwarts the Court in the performance of its review obligations and does not reasonably meet [party seeking fee's] obligation to provide "some fairly definite information as to the hours devoted to various general activities" and by whom.

*Id.*, 2010 U.S. Dist. LEXIS 94486, at *24 (citing *Keenan v. City of Phila.*, 983 F.2d 459, 473 (3d Cir. 1992)) (emphasis added). Here, the confusion generated by CML's block billing and their post-facto modification of time records is solely due to CML's actions and was foreseeable from—at the latest—the moment they submitted their sanctions motion in early May 2023. While all of CML's block-billed entries pose challenges, Entry Numbers 12, 21, 23, 24, 29, 33, 40, 45, 48, 51,

68, 69, 71, 74-77, 80, 82, 84-86, 88, 90, 92-95, 101, 104, 107, 110-112, 116, 124, 126, 130, 139, 147-48, 153, 157, 160, 165, 167-68, 171, 182, 190-91, 201, and 215 are particularly problematic. Ex. E. For each entry, there is no reasonable correlation between the various activities listed in the block-billed entry and the time spent performing the listed tasks, making it difficult (if not impossible) for the Court to evaluate the reasonableness of time spent on each task.

When the listed activities do not reasonably correspond to the number of hours billed, a court is unable to determine whether the amount spent on the entries is reasonable. *See, e.g.*, *Shane T. v. Carbondale Area Sch. Dist.*, No. 16-964, 2021 U.S. Dist. LEXIS 188850, at *13-*14 (M.D. Pa. Sep. 30, 2021) (disallowing entries where paralegal block billed .63 hours for "Review of emails; Review of file materials regarding Motion; Preparation of Certificate of Service; Finalize motion" and .25 hours for "Review of emails; Review of file materials regarding Order" for, among other reasons, it was "unclear to this court how much time reasonably corresponds to the 'Preparation of Certificate of Service' and 'Finalize motion' as opposed to review of emails and certain file materials").

The entries struck by Judge Mannion in *Shane T.* were relatively slight and sporadic across the $118,881.70 in attorneys' fees sought in that case. Here, unclear block-billing entries permeate CML's fee petition. By way of example and certainly not limitation:

- In Entry 215, Saint-Antoine seeks $11,352 for 13.2 hours of work on March 18, 2024, for "Draft and file reply to IKEA response to attorney fee breakdown; emails Frank Donofrio regarding update call; email CWM regarding saving research." Ex. E. This time entry creates more questions than answers. Did Saint-Antoine spend .2 hours or five hours engaging in the purely clerical task of asking a paralegal to save research? Why is she billing for this task at all? Neither IKEA nor this Court can tell.

- In Entry 201, Saint-Antoine seeks $6,020 for seven hours of work on March 1, 2024, for "Review IKEA Opposition brief/proposed findings of fact and conclusions of law; research and review other complaints against IKEA/documents produced; emails MZP, EK regarding IKEA's filings." Ex. E. Again, this time entry leaves IKEA with countless questions. How much time did Saint-Antoine spend emailing her associates about IKEA filings and what was

the subject matter? Why is Saint-Antoine researching and reviewing "other complaints against IKEA/documents produced" and how does it pertain to the sanctions motion?

- In Entry 171, Saint-Antoine seeks $9,116 for 10.6 hours of work on February 10, 2024, for "Review metadata issues/select best documents; pull facts from transcript; draft proposed findings of fact; review LCM draft email to Lighthouse counsel; telephone conference with LCM regarding same; Read email response from Lighthouse counsel; e-mail LCM regarding same." Ex. E. There are seven distinct tasks listed in this entry and neither IKEA nor the Court has any idea how long each task took in order to properly assess whether the time taken to complete each task was reasonable.

- In Entry 165, Ms. Saint-Antoine seeks $10,148 for 11.8 hours of work on February 8, 2024. This entry includes an astonishing eleven distinct tasks, including a task apparently completed by a paralegal the same day. *See* Ex. E, Entry 161. Saint-Antoine seeks payment of approximately five figures per day for similar block-billed entries in Entries 160, 157, 153, 148, 140, 130, and 111. Ex. E.

- In Entry 126, Saint-Antoine seeks $6,966 for 8.1 hours of work on January 27, 2024 to "Prepare for Day 2 of sanctions hearing, email J. Betts regarding email exhibits, review Naseef documents." Ex. E. A review of this entry gives no indication as to what Saint-Antoine actually *did* to prepare for Day 2 of the sanctions hearing.

- In Entry 104, Saint-Antoine seeks $8,170 for 9.5 hours of work on December 19, 2023, to "Finalize exhibit list; prepare for evidentiary hearing at home and in NJ office with LCM; email Frank Donofrio; emails team; review IKEA's revised exhibit list." Ex. E. How much time did Saint-Antoine take to engage in the clerical task of generating an exhibit list? Why is Saint-Antoine mentioning that she prepared for the hearing at home and in the New Jersey office? Did she inappropriately bill for travel time between her home and office? We do not know.

- In Entry 101, Ms. Saint-Antoine seeks $10,750 for 12.5 hours of work on December 18, 2023, to "Review the new documents produced by IKEA; review duplication issue; emails EK regarding identifying duplicates; review new exhibits produced by IKEA; try to figure out the 'Archived User data details;' prepare for hearing; review IKEA motions." Ex. E. How much time did Saint-Antoine engage in all of these tasks? Did she ever succeed in figuring out the "Archived User data details," was it even appropriate for her to be the individual reviewing this technical data, and how much time did she spend on it?

- In Entry 93, Saint-Antoine seeks $10,320 for 12 hours of work on December 14, 2023, to "Zoom with LCM, SGC regarding new documents produced on 12-12-23; select documents to include in letter to Court; check to make sure documents are not duplicates; draft letter to Court to alert it regarding IKEA 12-12-23 production of documents." Ex. E. How much time did Saint-Antoine spend on each of these tasks? Did she spend 10 hours doing the job of a paralegal or legal assistant to "check to make sure documents are not duplicates?" Plaintiffs' 2.5 page letter and six exhibits are at ECF 343.

The entries listed above are just a smattering of the issues identified in **Exhibit E**. If CML expects to be paid for its work, it needs to state with specificity to this Court the tasks that it engaged in. Courts are permitted to award fees for block-billing "so long as 'there is a reasonable correlation between the various activities listed in the block and the time spent completing those tasks.'" *Middlebrooks*, at *15. Here, it is impossible to determine whether such a correlation exists because there is no way of knowing how much time was spent on each specific activity. "[P]arties who engage in repeated block billing in such a way that makes it impossible for a court to determine whether the time billed to a particular task is reasonable bear the risk of having their time reduced." *Arlington Indus. v. Bridgeport Fittings, Inc.*, No. 02-134, 2016 U.S. Dist. LEXIS 83493, at *37 (M.D. Pa. June 28, 2016) (citing *Dixon-Rollins v. Experian Info. Sols., Inc.*, No. 09-646, 2010 U.S. Dist. LEXIS 100013 at *14-*15 (E.D. Pa. Sept. 23, 2010) ("If a block entry is confusing or makes it difficult to allocate a reasonable time to a specific task, the blame lies on the party seeking fees because they were in the best position to mitigate any confusion.")).

Neither the Court nor IKEA are responsible for properly allocating time to CML's activities. That is CML's job. IKEA requests that CML's petition for attorneys' fees be reduced by the 331 hours contained in the particularly problematic blocked billed fees highlighted above: 12, 21, 23, 24, 29, 33, 40, 45, 48, 51, 68, 69, 71, 74-77, 80, 82, 84-86, 88, 90, 92-95, 101, 104, 107, 110-112, 116, 124, 126, 130, 139, 147-48, 153, 157, 160, 165, 167-68, 171, 182, 190-91, 201, and 215.[11] Ex. E. Alternatively, IKEA requests that the Court issue an across the board 30% reduction of all of CML's claimed hours as a reasonable approximation of the amount of potential inflation existing in CML's time entries because CML's block-billed time entries have frustrated meaningful review of the reasonableness of those hours. *See, e.g.*, *Arlington Indus.*, 2016 U.S. Dist

[11] Should the Court accept CML's proposed hourly rates (it should not), this would result in a reduction of $275,895.

LEXIS 83493, at *39 (reducing hours sought by attorney by one-third because attorney engaged in block billing in a manner that did not allow the court to determine how much time was actually expended); *Hines v. City of Albany*, 613 F. App'x 52, 55 (2d Cir. 2015) (concluding that the district court did not abuse its discretion in making an across-the-board thirty percent (30%) reduction of requested attorney'' fees because the attorneys' block-billed time entries "frustrated meaningful review of the reasonableness of the claimed hours").

**2. CML's Fees Should Be Reduced Because Their Time Entries Are Impermissibly Vague**

When submitting a fee petition, "[t]ime entries must be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Giedgowd*, 2021 U.S. Dist. LEXIS 205882, at *9.[12] Judge Kearney has previously struck time entries for CML attorneys who bill time without identifying what they are actually doing. *See, e.g.*, *Giedgowd* at *12-13 (striking billing entries of attorney Stephen Console when those entries were uncertain, ambiguous, and failed to identify what Mr. Console was actually doing); *Middlebrooks*, 2019 U.S. Dist. LEXIS 30530, at *23-25 (striking CML's time entries for internal communications with no subject matter from their fee petition and noting "[w]e cannot find an email or internal conference is properly billed to this case when the billing professional does not take the time to describe the subject matter"). Furthermore, "hours billed for 'review of files' are not reasonable without further explanation of its necessity." *Shane T.*, 2021 U.S. Dist. LEXIS 188850, at *13-*14. In this matter,

[12] The Third Circuit "defines the requisite degree of specificity required of a party seeking attorney's fees as 'some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates. However, it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *Giedgowd*, 2021 U.S. Dist. LEXIS 205882, at *9 (citing *Washington v. Phila. Cty. Court of Common Pleas*, 89 F.3d 1031, 1037-38 (3d Cir. 1996)). While IKEA recognizes this general principle, time entries for nine timekeepers that are based on one attorney's after-the-fact judgment cannot be "fairly definite."

Stephen Console block-billed for various vague "file reviews" and communications where no subject matter was described. Compensation sought for these tasks should all be stricken:

| Entry | Date | Description | Staff | Rate | Time | Billable |
|---|---|---|---|---|---|---|
| 89 | 12/13/2023 | Internal conference with LCM | SGC | 960 | 0.50 | $480 |
| 92 | 12/14/2023 | Zoom meeting with LCM + SSA; telephone conference with LCM; file review | SGC | 960 | 2.00 | $1,920 |
| 184 | 2/15/2024 | Telephone conference with LCM; file review | SGC | 960 | 1.00 | $960 |

The following entries are also impermissibly vague. For example, Mattiacci asks this Court to award her $3,600 for four hours of "Documents and metadata. Emails to and from SSA regarding new information and briefing" on February 4, 2024. *See* Ex. E, Entry 150. Simply stating "Documents and metadata" gives neither the Court nor IKEA an insight into what she was doing. Likewise, in entries 118 and 119, Kallenbach seeks compensation for 7.2 hours of preparing for a preparation meeting—leaving IKEA agape at what tasks could she could have been engaged in for such a long period of time. Ex. E. As explained in **Exhibit E**, the following vague tasks should all be stricken:

| Entry | Date | Description | Staff | Rate | Time | Billable |
|---|---|---|---|---|---|---|
| 43 | 5/4/2023 | Working with SSA on motion for spoliation sanctions | EK | 230 | 5.00 | $1,150 |
| 102 | 12/19/2023 | Evidentiary hearing prep (research) | EK | 230 | 7.30 | $1,679 |
| 105 | 12/20/2023 | In person evidentiary hearing and research at night to prep for tomorrow | EK | 230 | 8.90 | $2,047 |
| 109 | 12/22/2023 | Follow up post-hearing | EK | 230 | 0.40 | $92 |
| 118 | 1/24/2024 | Preparing for preparation meeting tomorrow for spoliation hearing | EK | 230 | 3.10 | $713 |
| 119 | 1/25/2024 | Preparing for hearing preparation meeting/reviewing case law | EK | 230 | 4.10 | $943 |
| 150 | 2/4/2024 | Documents and metadata. Emails to and from SSA regarding new information and briefing | LCM | 900 | 4.00 | $3,600 |
| 173 | 2/12/2024 | Fact-related tasks for SSA for post-hearing brief | EK | 230 | 7.90 | $1,817 |
| 188 | 2/16/2024 | Looking through index for post-brief email to the Court and opposing counsel | EK | 230 | 0.50 | $115 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 200 | 3/1/2024 | Tasks for SSA for evidentiary hearing reply brief | EK | 230 | 4.40 | $1,012 |

It should not be a heavy lift for counsel seeking compensation for 938.1 hours of work at an average hourly rate of $686.72 to provide detail as to what they are actually doing to justify those payments. When CML fails to provide the requisite "fairly definite" explanation of what they were doing, those entries should be struck.

**3. CML's Fees Should Be Reduced Because They Are Excessive and Hours Worked Were Not Reasonably Expended**

It is the duty of the party requesting attorneys' fees to "make a good faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Clemens*, 903 F.3d at 403 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). While difficult to discern due to block-billing, it appears that:

- Plaintiffs spent approximately 138.7 hours (and seek approximately $83,880 in fees) for preparing the initial Motion for Sanctions filed on May 4, 2023. Stated differently, if CML worked eight hours per day exclusively on this sanctions motion, they purport to have spent over 17 days preparing the Motion.

- Giving Plaintiffs all benefit of the doubt, Plaintiffs' block-billed time records indicate they spent an astounding 287.3 hours (and seek approximately $212,065 in fees) to prepare for and attend two days of in-person sanction hearings.[13] Stated differently, if CML worked eight hours per day exclusively on preparing for and attending the hearing, they purport to have spent nearly 36 days engaged in such activity.

- Plaintiffs spent approximately 163.5 hours (and seek approximately $86,792 in fees) to prepare their post-hearing brief, findings of fact and conclusions of law. Stated differently, if CML worked eight hours per day exclusively on preparing their post-hearing brief, they purport to have spent over 20 days preparing the brief.

[13] In Entries 131-133 and 136, Plaintiffs' attorneys and paralegal indicate they spent **six hours** at the Evidentiary Hearing on January 29, 2024. According to the official transcript, however, the hearing started at 10:08am and concluded at 2:39pm. Even arriving an hour early does not account for this inflation of time. These entries cast doubt on the process utilized by CML for tracking and submitting its time to this Court.

CML claims to have incurred 938.1 hours in bringing this single (albeit complex) sanctions motion. It is not uncommon for CML to try cases, win cases, and be awarded attorneys' fees. For example, in 2019, CML sought $639,778 for 1,130.4 hours work after a trial victory in which they conducted seven depositions, defended three depositions, reviewed over 4,300 documents produced by the defendant, reviewed and produced over 2,200 documents from the plaintiff, defeated the defendant's motion for summary judgment, developed a trial strategy, and represented their client at a four-day trial in a case where there was testimony from 14 witnesses and the introduction of 81 exhibits. Pl.'s Motion for Attorneys' Fees and Costs, *Middlebrooks v. Teva Pharms. USA, Inc.*, No. 17-412 (E.D. Pa. Jan. 28, 2019) (ECF 153). While the Court eventually determined that CML was only entitled to $403,947.27, it is curious that CML was able to engage in such a substantial amount of work from complaint to jury verdict but only needed to spend 192.3 more hours than it purports to have spent on the single instant sanctions motion.

Similarly, CML prevailed at trial in 2021 and sought $243,124 in attorneys' fees for 732.6 hours. In this case, CML took three depositions, defended one deposition, took two trial depositions, defeated a summary judgment motion, and secured victory after a three-day trial including testimony from six witnesses. Pl.'s Motion for Attorneys' Fees and Costs, *Giedgowd v. Cafaro Grp., LLC*, No. 20-6184 (E.D. Pa. Sep. 14, 2021) (ECF 80). IKEA is once again perplexed how CML only needed 732.6 hours to take a case from complaint to jury verdict but needed 205.5 ***more*** hours to address just one sanctions motion.

While IKEA cannot say with certainty, it presumes that a contributing cause to this hours discrepancy is that when submitting its hours to the Court after a trial victory, CML can more easily rely on their block billing entries because they are seeking fees related to the *entire* matter and those block-billed entries have an increased likelihood of being accurate. Here, they cannot

rely on such entries and were forced to estimate the time allotted to the sanctions motion which could have resulted in an unintentional inflation of the hours reported to the Court.

There are issues with CML's expenditure of hours on both a macro and micro level—particularly for Saint-Antoine's hours. For example:

- Saint-Antoine seeks $4,300 for five hours of work performing five distinct tasks including "review file regarding timeline of events related to custodians" on April 6, 2023. The very next day she seeks $3,440 for four hours of work to "Review file and timeline on discovery issues and spoliation issues; emails to team with update." The very next business day she seeks $6,020 for seven hours of "Review file on discovery issues/deletion of emails and spoliation chronology." *See* Ex. E, Entries 21, 23, 24. And then just days later, Saint-Antoine seeks $4,300 for five hours of work performing block-billed tasks including "review file/chronology regarding spoliation of ESI issue." *See* Ex. E, Entry 33. It is difficult to understand how it could have taken Saint-Antoine more than 11 hours to review a timeline. CML should produce this timeline so the Court can assess whether it was reasonable for Plaintiffs to spend close to a dozen hours (if not more) reviewing it. Alternatively, the Court should strike time from these entries for review of the timeline.

- Kallenbach seeks $4,968 for 21.6 hours on generic "spoliation research" over the course of five days. *See* Ex. E, Entries 22, 27, 30-32.[14] Without knowing what Kallenbach researched, it is indeterminable whether the amount of time expended on these tasks was necessary or appropriate. CML should produce the fruits of Kallenbach's research and/or provide greater specificity as to what she was researching to determine whether an appropriate number of hours was expended. Alternatively, the Court should reduce the number of reimbursable hours to an amount it deems appropriate for relatively basic research.

- Saint-Antoine seeks $8,170 for 9.5 hours of work to draft a six-page letter to the Court (where nearly two pages are copied and pasted deposition testimony). *See* Ex. E, Entry 63; ECF 335. This is especially egregious as Saint-Antoine seeks $7,052 for 8.2 hours of work the day before in order to read materials needed to draft the letter. *See* Ex. E, Entry 62. It is excessive to seek reimbursement of $15,222 for 17.7 hours of work related to the drafting of a relatively brief letter. Entry 63 should be stricken or the hours billed for Entries 62 and 63 should be cut in half.

- As noted in the introduction, Saint-Antoine seeks $4,300 for five hours of work for "Read ECF regarding notice of evidentiary hearing; Zoom with SGC, LCM regarding evidentiary hearing on motion for sanctions; emails to Frank Donofrio regarding evidentiary hearing; emails regarding meeting on evidentiary hearing." *See* Ex. E, Entry 68. Console seeks compensation for one hour of time for the same video call with Saint-Antoine. *See id.*, Entry 67. As such, this

[14] Kallenbach actually seeks $6,164 for 26.8 hours of research, however, as addressed in Section II.C.8 below, Entry 28 appears to be a clear instance of double billing. While likely unintentional, it casts even further doubt on the process utilized by CML for tracking and submitting its attorney time to this Court.

means it took Saint-Antoine four hours to (i) read a 100-word ECF notice; (ii) email her client about the evidentiary hearing; and (iii) emails regarding the evidentiary hearing. Without more information, spending four hours on these three rudimentary tasks is patently unreasonable and is a quintessential example of why this Court must apply exacting scrutiny to each and every one of CML's time records in this matter. Entry 68 should be struck from the fee petition.

- Caren Gurmankin seeks $1,860 for three hours of work for "Prepare for IKEA meeting regarding sanctions hearing; IKEA meeting regarding sanctions hearing." *See* Ex. E, Entry 70. There is no reasonable basis for Gurmankin to bill her time for this meeting as there is no indication she played any role in preparing for the sanctions hearing (other than attending this one meeting), and Gurmankin did not sit at counsel's table or speak at the sanctions hearing. Entry 70 should be struck from the fee petition.

- Kallenbach seeks $460 for two hours for "Team meeting about upcoming oral argument" on November 14, 2023. *See* Ex. E, Entry 72. On that same day, Saint-Antoine seeks $1,720 for two hours for "Review motion for sanctions pleadings; draft Requests for Admissions; Zoom meeting with IKEA team to discuss strategy and approach in connection with evidentiary hearing on motion for sanctions; emails LCM regarding same." *See id.*, Entry 74. The fact that both Kallenbach and Saint-Antoine each billed two hours for attending the same meeting but Saint-Antoine also completed three separate tasks suggests that either Kallenbach's time was unintentionally inflated or the amount of time the meeting actually took is unknown. Entry 72 should be struck from the fee petition.

- Saint-Antoine seeks $5,762 for 6.7 hours of work on "Letter to J. Betts regarding evidentiary hearing; email to counsel regarding same; telephone conference with LCM regarding response to Jenn Betts/plan for evidentiary hearing; emails and telephone conference with CWM regarding service of subpoenas, outstanding issues." *See* Ex. E, Entry 80. The letter sent to Ogletree attorney Jennifer Betts was only three pages long and would not take an attorney with Saint-Antoine's experience more than two hours to draft. It is attached as **Exhibit F**. Because of the block-billed entry, the Court has insufficient information to make a determination as to whether it was reasonable for the other described tasks to take 4.7 hours of Saint-Antoine's time. 4.7 hours should be struck from Entry 80.

- Saint-Antoine seeks $10,320 for 12 hours of work for "Zoom with LCM, SGC regarding new documents produced on 12-12-23; select documents to include in letter to Court; check to make sure documents are not duplicates; draft letter to Court to alert it regarding IKEA 12-12-23 production of documents." *See* Ex. E, Entry 93. This time entry is deficient for two reasons. First, the letter sent to the Court on December 15, 2023, was only 2.5 pages long and contained six exhibits. *See* ECF 343. It should not have taken anywhere near 12 hours to prepare such a letter (especially since Saint-Antoine spent additional time revising/finalizing the letter and checking exhibits the following day). *See* Ex. E, Entry 95. Furthermore, checking to make sure documents are not duplicates is a task that can be completed by a junior associate, paralegal, or secretary.

- Saint-Antoine seeks $1,290 for "Revise subpoenas; e-mail LCM." *See* Ex. E, Entry 98. Saint-Antoine is not entitled to reimbursement for an email to Mattiacci because she has failed to

identify the subject matter. Furthermore, it is unreasonable for an experienced practitioner like Saint-Antoine (who purports to command an hourly rate of $860) to take 1.5 hours to revise a subpoena—a task typically assigned to paralegals. Entry 98 should be disallowed.

- Saint-Antoine seeks $8,600 for 10 hours of work for "Legal research on spoliation sanctions/expert testimony issues; draft letter to Court regarding Redgrave declaration and testimony." *See* Ex. E, Entry 122. As an initial matter, the letter drafted to the Court was only four pages long. Because of the nature of this time entry, there is no way of knowing how long it purportedly took Saint-Antoine to draft this letter. Second, legal research is more efficiently completed by associates with lower billing rates—and the time entries fail to explain how the research conducted here was any different than the 20+ hours of spoliation sanctions research previously conducted by Kallenbach. At a minimum, the hours attributed to Entry 122 should be cut in half.

- Gurmankin seeks $3,720 for six hours of "work" attending the evidentiary hearing on January 29, 2024. *See* Ex. E, Entry 132. While attending the hearing was no doubt interesting for Gurmankin, there was no legitimate reason for her to bill her time for this activity. Gurmankin did not participate in or speak at the hearing. Gurmankin did not even sit at counsels' table. IKEA should not be required to pay for spectators and this time entry should be struck from the fee petition.

- Saint-Antoine seeks $7,396 for 8.6 hours of work including "Research and Emails regarding contents of Third Party Administrator website/materials available to potential opt-ins" and "Research recent discrimination complaints against IKEA." *See* Ex. E, Entry 148 Although IKEA has no way of knowing how long Saint-Antoine spent on either of these tasks, neither is related to the sanctions motion. As such, all of Entry 148 should be stricken.

- Saint-Antoine seeks $10,148 for 11.8 hours of block-billed work including "draft subpoena to Lighthouse." *See* Ex. E, Entry 165. The task of drafting a subpoena to Lighthouse appears to be duplicative as it was already completed by a paralegal two days prior. *See id.*, Entry 161. Entry 165 should be stricken.

- Kallenbach seeks $3,036 for 13.20 hours for "Post hearing brief; calls with SSA and MZP about the brief." *See* Ex. E, Entry 179. It is unclear what more Kallenbach could have been doing for 13.20 hours on this date as (a) she had already spent over 50 hours working on the post-hearing brief materials (*id.*, Entries 140, 146, 158, 163, 166, 169, 172-73); (b) Saint-Antoine had already spent 62 hours on post-hearing brief materials (*id.*, Entries 169, 165, 168, 171, 175, 177); and (c) Mattiacci had already spent eight hours on post-hearing brief materials (Entry 70). Entry 179 should be stricken.

- Kallenbach seeks $713 for 3.1 hours for "Reading through IKEA's reply brief and looking through Wagner/DeSanto docs." *See* Ex. E, Entry 197. The Wagner/DeSanto documents were subpoenaed after Plaintiffs filed their Motion for Sanctions and the documents from their cases have absolutely nothing to do with Plaintiffs' Motion for Sanctions. Entry 197 should be stricken.

### 4. CML's Fees Should Be Reduced Because Tasks That Should Have Been Completed by Junior Attorneys Were Completed by Senior Attorneys

Courts in this Circuit do not "approve the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates." *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983). *See also Becker v. ARCO Chem. Co.*, 15 F. Supp. 2d 621, 632 (E.D. Pa. 1998) (reducing rate for a senior attorney who "performed a number of tasks which normally would be performed by junior level associates or paralegals and clerical staff"); *United States ex rel. Menold v. Lotus Family Med.*, No. 17-1728, 2022 U.S. Dist. LEXIS 20397, at *11 (D.N.J. Feb. 3, 2022) (reducing an award for attorneys' fees because "the record indicates large portions of the billed hours indeed could have been more efficiently performed by an associate or trained paralegal, such as document review");[15] *Zhongli Sci. & Tech. Grp. Co. v. Fir Tree Partners*, No. 22-02795, 2024 U.S. Dist. LEXIS 23466, at *8 (S.D.N.Y. Feb. 8, 2024) (holding that the petitioner "should not bear the cost of Respondent's counsel's inefficient use of resources" when respondent heavily relied on partner/counsel hours instead of associate hours for document review).

CML bills itself "as a preeminent plaintiffs' employment law firm that does outstanding work." ECF 387 at 3. CML identifies the primary associate working on this case, Evelyn Kallenbach, as "a skilled legal writer and researcher" with a stellar reputation for excellent work, ECF 387 at 9-10, 12, which makes it all the more mystifying that CML did not utilize her skills to

---

[15] In *United States ex rel. Menold v. Lotus Family Medicine*, Judge Sheridan wrote that "[i]n *Missouri v. Jenkins*, the Supreme Court recognized paralegals as capable of many tasks, including "factual investigation, . . . , document production . . . [and] compilation of statistical and financial data[.]" (noting that "where factual investigation and compilation could be accomplished by non-lawyers but is completed by an attorney, the non-legal work can warrant a lower rate). *Id.* at *11 n.4 (citation omitted).

complete tasks typically completed by junior attorneys such as document review and research. IKEA should not bear the responsibility of CML's staffing inefficiencies.

- In Entries 2 and 3, Saint-Antoine seeks compensation of $8,514 for 9.9 hours of "Review documents by custodian" and "Review documents/custodians and search issues." Ex. E. While these entries are deficient in their own right because they fail to identify the types of documents reviewed, the number of documents reviewed, or the custodians in any type of manner that would allow the Court to determine whether the time expended was reasonable, there is no indication why it was reasonable or necessary for a senior partner with over 25 years of employment law experience to spend two days reviewing documents.

- In Entry 29, Saint-Antoine seeks compensation of $2,580 for three hours of block-billed tasks including "internet research on email custodians" and emailing a legal assistant "regarding LinkedIn profiles of email custodians." Ex. E. It is unclear how much time Saint-Antoine spent on these tasks. In any event, they appear to be administrative in nature and could have been completed by clerical staff, a paralegal or junior associate.

- In Entry 48, Saint-Antoine seeks compensation of $5,590 for 6.5 hours of block-billed tasks including "research employment status of custodians." Ex. E. It is unclear how much time Saint-Antoine spent on this task or why a more junior attorney or paralegal could not handle it.

- In Entry 51, Saint-Antoine seeks compensation of $6,880 for eight hours of block-billed work including "Legal research for Reply Brief." Ex. E. IKEA cannot tell whether Saint-Antoine spent three hours or seven hours on this research. Furthermore, and without any knowledge as to what was being researched, research taking such an extensive amount of time should have been conducted by a junior associate.

- In Entry 52, Saint-Antoine seeks $10,320 for 12 hours of "Draft and revise Reply Brief; legal research for Reply Brief." Ex. E. IKEA cannot tell whether Saint-Antoine spent five hours or nine hours on research. Furthermore, and without any knowledge as to what was being researched, research taking such an extensive amount of time should have been conducted by a junior associate.

- In Entry 75, Saint-Antoine seeks $2,150 for 2.5 hours of work for "Legal research ability to subpoena corporate representative/remote testimony; draft requests for admission for evidentiary hearing." Ex. E. Because this entry is block-billed, there is no way of knowing how much time was spent on each task, however, a senior attorney like Saint-Antoine who purports to command a rate of $860 an hour should not have to conduct basic research on subpoenaing a corporate representative. To the extent research needed to be completed, it should have been done by a junior associate.

- In Entry 88, Saint-Antoine seeks $6,966 for 8.1 hours of work including "legal research regarding crime-fraud exception." Ex. E. Because this is a block-billed entry, there is no way

of knowing how long Saint-Antoine spent researching this topic. To the extent research needed to be completed, it should have been done by a junior associate.

- In Entry 147, Mattiacci seeks $3,600 for four hours of work that includes "Work on comparison of data." Ex. E. It is an inefficient use of resources for a trial attorney who purportedly bills at $900/hour to be spending time comparing data—a task that can likely be completed by a junior associate or paralegal.

- In Entry 149, Saint-Antoine seeks $3,870 for 4.5 hours of work to "Analyze metadata/custodians of the December, 2023 production." Similarly, in Entry 151, Saint-Antoine seeks $9,976 for 11.6 hours of block-billed time including "Analyze metadata/custodians of the December, 2023 production." Ex. E. It is an inefficient use of resources for a senior attorney who purportedly bills at $860/hour to be spending time analyzing metadata—a task that can likely be completed by a junior associate or paralegal.

While the Court could strike many of these entries for being vague, at a bare minimum it should apply Kallenbach's hourly rate of $230 for all tasks that could have been completed by Kallenbach. *See Spitzer v. Lincoln Nat'l Life Ins. Co.*, No. 12-5910, 2014 U.S. Dist. LEXIS 194097, at *5 (E.D. Pa. Mar. 5, 2014) (Goldberg, J.) (reducing senior attorney's rate to the junior associate's rate for tasks performed by senior attorney that could have been assigned to a more junior associate).

### 5. CML's Fees Should Be Reduced Because They Impermissibly Seek Fees for a Motion that was Never Filed and Unnecessary to Prepare.

Between March 15 and March 31, 2023, CML spent 26.2 hours and purportedly incurred $8,469 in fees working on a Motion to Compel Discovery that was never filed and seemingly unnecessary to prepare. On March 9, 2023, Saint-Antoine sent an email to counsel for IKEA asking for additional information about certain custodians and warning that Plaintiffs would file a motion with the court if they did not receive a response by March 17, 2023. *See* **Ex G.** Despite setting their own self-imposed deadline for IKEA to respond, Kallenbach spent 8.3 hours drafting a Motion to Compel before the deadline even expired. *See* Ex. E, Entries 8 & 9. IKEA timely responded to Saint-Antoine on March 17, 2023. *See* **Ex. H**. Puzzlingly, Saint-Antoine and

Kallenbach spent an additional 15 hours working on the Motion to Compel *after* IKEA responded. *See* Entries 11-16. In their Fee Petition, CML does not provide a copy of the draft Motion to Compel, does not explain the subject matter of the Motion to Compel, and does not explain why they could not use this Motion to Compel rather than drafting a new motion for sanctions.

Hours expended on unnecessary work are not entitled to be compensated. *See, e.g.*, *Sampson v. Embassy Suites*, No. 95-7794, 1998 U.S. Dist. LEXIS 16646, at *8 (E.D. Pa. Oct. 16, 1998) (striking time billed for preparation of motion for default as unnecessary because "defense counsel had announced defendants' willingness to accept process by mail"). *See also Feldman v. Phila. Hous. Auth.*, No. 91-5861, 1995 U.S. Dist. LEXIS 11536, at *11 (E.D. Pa. Aug. 9, 1995) (Yohn, J.) (striking time spent by the plaintiff's counsel preparing for oral argument before counsel even received the defendant's reply brief and before oral argument was scheduled as unreasonable and unnecessary). Like the enthusiastic attorney in *Feldman* who began preparing for oral argument much too soon, CML acted unreasonably by prematurely putting hours into the preparation of a motion to compel and then continuing to work on that motion once IKEA responded to its concerns. All 26.2 hours related to the unnecessary and unfiled motion to compel should be struck from CML's fee petition.

**6. CML's Fees Should Be Reduced Because Attorneys and Paralegals Impermissibly Seek Compensation for Tasks That Are Administrative in Nature and/or Could Effectively Be Performed By Clerical Staff.**

The Third Circuit confirms that courts "should not approve attorney's fees for tasks 'easily delegable to non-professional assistance.' It is unreasonable to bill attorney time for tasks which can effectively be performed by administrative assistants, paralegals, or secretaries." *M3 USA Corp. v. Hart*, No. 20-5736, 2021 U.S. Dist. LEXIS 128899, at *33-34 (E.D. Pa. July 9, 2021) (citing *Tenafly Eruv Ass'n v. Borough of Tenafly*, 195 F. App'x 93, 101 (3d Cir. 2006)). For purposes of awarding attorney's fees, hours that would not generally be billed to one's own client

are not properly billed to an adversary. *Clemens*, 903 F.3d at 401 (citing *Pub. Interest Research Grp. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)). "The fact that private lawyers may perform tasks other than legal services for their clients, with their consent and approval, does not justify foisting off such expenses on an adversary under the guise of reimbursable legal fees." *Nitkin v. Main Line Health*, No. 20-4825, 2022 U.S. Dist. LEXIS 120925, at *20 (E.D. Pa. July 7, 2022) (citing *Halderman ex rel. Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942 (3d Cir. 1995)). Quite simply, administrative tasks "should not be compensated." *Id.*[16] Receiving and reviewing invoices are non-billable administrative tasks. *Id.* at *30. "It is well-established that time expended to perform clerical work is not recoverable, especially at an experienced attorney's high hourly rate or even paralegal rates. Clerical work is instead considered to be part of an attorney's hourly rate as office overhead." *Walker v. Gruver*, No. 11-1223, 2013 U.S. Dist. LEXIS 158219, at *41 (M.D. Pa. Nov. 5, 2013) (citing *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10) (1989)(Conner, J.).

---

[16] Judge Marston cited significant case law for this proposition in *Nitkin*, at *21-*22: *See Moffitt v. Tunkhannock Area Sch. Dist.*, No. 13-1519, 2017 WL 319154, at *7 (M.D. Pa. Jan. 20, 2017) ("Filing documents, whether in person or electronically, requires no legal skill and is a purely clerical or administrative task."); *Roccisano v. Township of Franklin*, No. 11-6558, 2015 WL 3649149, at *9 (D.N.J. June 11, 2015) ("I find that tasks such as mailing letters, forwarding documents by email, checking a calendar, and receiving documents are purely clerical tasks which should not be billed to clients."); *L.J. ex rel. V.J. v. Audubon Bd. of Ed.*, No. 06-5350, 2009 WL 995458, at *14 (D.N.J. Apr. 13, 2009) ("Mr. Epstein filed a submission on the docket, received an automatic email confirmation of his own filing, and billed 0.1 hours of work at his desired rate of $400 per hour for having read the automatic form email. . . . As one court recently observed in the face of an attorney's effort to bill for reviewing email confirmations of ECF filing receipts, '[n]ot only would these tasks normally consume a matter of seconds, but they would ordinarily be performed by secretarial or non-legal staff, not a $275 per hour attorney.") (citation omitted); *see also H.W. v. N.Y.C. Dep't of Educ.*, No. 20-10591, 2022 WL 541347, at *4 (S.D.N.Y. Feb. 23, 2022) ("Further, several billing entries indicate that time was billed for the mere receipt and filing of electronic or paper documents and the review of ECF notifications. Such activities, which are purely administrative in nature, are generally not compensable."); *Qureshi v. OPS 9, LLC*, No. 14-1806, 2020 WL 1910344, at *4 (D.N.J. Apr. 20, 2020) ("The scrutinized tasks often fall into the category of administrative or clerical, such as sending emails that merely forwarded a document."); *Westberry v. Commonwealth Fin. Sys., Inc.*, No. 11-4387, 2013 WL 435948, at *7 (D.N.J. Feb. 4, 2013) (reducing attorney's time by 0.2 hours where "it appear[ed] that [she] did nothing more than look at the Answer and forward it to [another attorney at the firm to review]" and reducing attorney's time further where the attorney "Received ECF notice setting initial status conference" because there is "no reason why Plaintiff should recover 0.2 hours of [the attorney's] time for simple receipt of a notice when no other action was taken").

The following time entries appear to be purely clerical and/or administrative and unworthy of reimbursement:

| Entry | Date | Description | Staff | Rate | Time | Billable |
|---|---|---|---|---|---|---|
| 54 | 6/6/2023 | Correspondence to Court enclosing Reply Brief | SSA | 860 | 0.10 | $86 |
| 59 | 7/11/2023 | Emails and telephone conference with TNM regarding filing; draft letter to Court regarding filing | SSA | 860 | 0.20 | $172 |
| 64 | 9/13/2023 | Email TNM regarding filings | SSA | 860 | 0.10 | $86 |
| 127 | 1/28/2024 | Preparation of documents for Sanctions hearing | AMR | 100 | 3.00 | $300 |
| 154 | 2/6/2024 | Prepared exhibits for letter to Court | AMR | 100 | 0.10 | $10 |
| 155 | 2/6/2024 | Finalize letter with exhibits to Judge; Emailed same and filed letter to Paine, Antonelli and Donofrio matters and updated file with filed items | AMR | 100 | 0.60 | $60 |
| 162 | 2/8/2024 | Finalize letter with attachment to Judge; Emailed same and filed letter to Paine, Antonelli and Donofrio matters and updated file with filed items | AMR | 100 | 0.30 | $30 |
| 178 | 2/14/2024 | Pulled exhibits for Finding of Facts filing | AMR | 100 | 0.20 | $20 |
| 182 | 2/14/2024 | Draft coversheet, proposed order, COS, TOC and TOA. Assist gathering of exhibits, format brief, prepare and file | TNM | 100 | 8.00 | $800 |
| 183 | 2/15/2024 | Reviewed brief for exhibits identified; updated the exhibit list; finalized exhibit package to judge; updated letter to judge; email to team re. same | AMR | 100 | 3.40 | $340 |
| 185 | 2/15/2024 | TM saving emails from previous night. TM saving ecfs filed. work on getting out letter and exhibits to judge | TNM | 100 | 1.30 | $130 |
| 186 | 2/16/2024 | Finalize letter, exhibit list and package of exhibits to Judge Brody; email to Brody as well | AMR | 100 | 1.20 | $120 |
| 187 | 2/16/2024 | Telephone conference with EK regarding Brief exhibits | AMR | 100 | 0.20 | $20 |
| 190 | 2/22/2024 | Emails with SSA and team regarding attys' fees and costs and follow up to Pltfs' motion for sanctions; review files; review billing/cost history; emails with court reporters regarding invoices. | CWM | 195 | 2.00 | $390 |
| 192 | 2/23/2024 | Emails with SSA and team regarding attorneys' fees and costs and follow up to Pltfs' motion for sanctions; review files; review billing/cost history; emails with court reporters regarding invoices. | CWM | 195 | 2.20 | $429 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 199 | 2/29/2024 | Download and save Defts Findings of Fact and Conclusions of Law | TNM | 100 | 2.30 | $230 |
| 203 | 3/4/2024 | Work on exhibits for reply brief | TNM | 100 | 2.30 | $230 |
| 207 | 3/6/2024 | Draft index of exhibits, cover page, COS and TOC. Gather exhibits. File | TNM | 100 | 7.00 | $700 |
| 208 | 3/8/2024 | Email to Court enclosing courtesy copy of Reply Brief. | SSA | 860 | 0.10 | $86 |
| 209 | 3/12/2024 | Download and save Defendant's Response to Motion for Attorny [sic] Fees | TNM | 100 | 1.30 | $130 |
| 214 | 3/18/2024 | Emails with SSA; save Lexis research | CWM | 195 | 0.20 | $39 |

Additional issues present themselves in many of Saint-Antoine's gargantuan block billed-entries. For example:

- In entry 12, Saint-Antoine seeks $2,150 for 2.5 hours completing six different tasks including speaking with legal assistants about "format issues." Ex. E. While there is no way to determine how much time she spent on "format issues," billing for such clerical tasks is inappropriate.

- In entry 44, she seeks $8,600 for 10 hours to "Finalize and file motion for sanctions and supporting paperwork." Ex. E. While finalizing a motion is no doubt a billable task, the act of filing it most certainly is not—and this time entry gives no indication as to how long Saint-Antoine spent filing the Motion for Sanctions and the 53 exhibits thereto. Presumably it took a few hours—hours that should not be charged to IKEA.

- In entry 53, Saint-Antoine seeks $6,880 for eight hours to "Gather exhibits; draft Declaration and check supporting papers; Finalize and file Reply Brief." Ex. E. Gathering exhibits and filing briefs are without a doubt, non-reimbursable clerical tasks.

- In entry 116, she seeks $3,870 for 4.5 hours of work that includes "ECF." Ex. E. There is no indication as to what ECF means in this context or how long she spent on "ECF."

Although CML is a mid-sized law firm, that is no excuse for its attorneys to charge IKEA for overhead. *Nitkin*, 2022 U.S. Dist. LEXIS 120925, at *30 n.17 ("Although the Court 'recognized the constraints placed on smaller law firms,' the Court still deducted the full amount attributable to those [clerical] tasks because they 'represent[ed] normal administrative overhead typically undertaken by clerical staff, not legal personnel.'") (quoting *Pigford v. Vilsack*, 89 F. Supp. 3d 25, 33 (D.D.C. 2015). In *Walker v. Gruver*, Judge Conner noted that the petitioner "often

block-billed multiple tasks under one time entry." As a result, the Court exercised its discretion to "eliminate fees for all block-billed entries, as well as the [] hours spent by his legal assistants and 50% of [petitioners'] hours spent on clerical work." *Id.*, 2013 U.S. Dist. LEXIS 158219, at *42. Here, the Court should exercise its discretion and eliminate fees for all block-billed entries containing clerical tasks and prohibit reimbursement for any entry that is purely clerical in nature.

### 7. CML's Fees Should Be Reduced Because Plaintiffs Seek Reimbursement for Fees Associated with Submitting and then Correcting An Incorrect Declaration

On July 12, 2023, counsel for IKEA contacted Saint-Antoine to advise her that the sworn declaration she filed in support of Plaintiffs' sanctions motion contained inaccuracies. *See* **Exhibit I**. Saint-Antoine drafted a letter to the Court dated July 17, 2023, correcting that error. *See* ECF 327. Saint-Antoine seeks compensation of $1,720 for two hours of work related to the correction of her own false declaration. *See* Ex. E, Entries 60 & 61. No reasonable attorney would pass on the costs of their own mistakes to their client and no reasonable client would pay for such services. As such, IKEA should not be required to pay for such mistakes and entries 60 and 61 should be stricken from the fee petition. *See Hesham Ismail v. IHI Power Servs. Corp.*, No. 20-4801, 2023 U.S. Dist. LEXIS 92406, at *14-*15 (E.D. Pa. May 25, 2023) (Brody, J.) (reducing the amount of time billed by attorneys for correcting mistakes made in exhibit binders).

### 8. CML's Fees Should Be Reduced Because Plaintiff Seeks Compensation for "Double-Billed" Time.

Entries 27 and 28 are identical entries seeking compensation of $1,196 for the exact same 5.2 hours of work on "Research on spoliation sanctions" on April 12, 2023. Ex. E. While IKEA presumes this double time entry was submitted by CML in error, Entry 28 should be stricken from CML's fee request.

### D. The Proposed Attorney Rates for Console, Mattiacci, and Saint-Antoine are Unreasonably High and Must Be Lowered to Reflect the Reality of the Philadelphia Employment Law Market.[17]

Console seeks $12,480 for 13 hours of work at a rate of $960/hour. Mattiacci seeks $106,200 for 118 hours of work at a rate of $900/hour. Saint-Antoine seeks an eye-popping $467,754 for 543.9 hours at a rate of $860/hour. Plaintiffs are not entitled to recover fees at these outrageous rates and they should be reduced to reflect the prevailing rates within the Philadelphia ***employment law*** community for attorneys of their caliber, reputation, and skill.[18]

"An attorney's usual billing rate is the starting point for determining reasonableness, after which the court then assesses the experience and skill of the prevailing party's attorneys and compare[s] their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Minehan*, 2023 U.S. Dist. LEXIS 223383, at *4 (citations omitted). "The prevailing party bears the burden of establishing by way of satisfactory evidence, in addition to [the] attorney's own affidavits . . . that the requested hourly rates meet this standard." *Maldonado*, 256 F.3d at 184 (quotations omitted).

CML claims that the rates sought by CML today are "actual rates CML has used to bill the clients it represents on an hourly fee basis, and which have been paid by hourly clients." ECF 387 at 12. But it provides no evidence of this assertion other than Mr. Console's vague say-so. If this is in fact the case, CML should produce evidence as to how many clients have been billed this rate,

---

[17] For the record, IKEA does not dispute these attorneys' qualifications or that CML maintains an excellent reputation in the Philadelphia employment law community. IKEA only objects to the unreasonable manner in which they recorded their time and their excessively high rates. A Court should not "rubber stamp" a fee petition simply because of the attorneys' demonstrated skills. *Middlebrooks*, 2019 U.S. Dist. LEXIS 30530, at *22.

[18] IKEA does not dispute the hourly rates of Caren Gurmankin because for reasons explained in Section II.C.3, Gurmankin is not entitled to any compensation for the nine hours she billed to this matter. IKEA does not dispute the hourly rates of Kallenbach, Provorny, or the three paralegals (when those individuals were actually performing non-clerical *legal* work) because based on their knowledge of the market, IKEA finds these rates to be a reasonable reflection of Philadelphia-area rates for employment law work.

how many clients have paid this rate, how many hours have been billed at this rate, and how many hours have been paid at this rate. If necessary, CML should produce redacted invoices and remittances to back up its claims.

The undersigned attorneys have their doubts that Console is able to charge and collect nearly $1,000 an hour for his work on any type of regular basis. Ogletree Deakins is one the world's largest and most well-respected law firms representing management in all types of employment-related legal matters. Ogletree is not a general practice law firm and, for better or worse, individuals seeking legal services are willing to pay less for employment law services than they are for other types of legal work like financial services or healthcare. As such, the attorney fees schedule published by Community Legal Services of Philadelphia (and "based on Philadelphia law firm market survey data") is not an accurate representation for rates charged by law firms practicing exclusively in the area of employment law—like CML and Ogletree.[19] For example, in 2024, the senior attorney with the highest standard billing rate in Ogletree's Philadelphia office charges $640 per hour. In 2024, the senior attorney with the highest standard billing rate working on the instant matter charges $665 per hour.

In *Giedgowd*, Judge Kearney rejected Console's requested hourly rate of $960 and set it at an appropriate rate of $650/hour finding that there was no basis for Console's "requested hourly rate being reasonable as a consultant in this case." *Id*. at *14. Just like in this case, the vague time entries submitted by Console make clear that he only served in a consulting manner—at least with regard to the sanctions motion. In considering the appropriate fee in *Giedgowd*, Judge Kearney also examined the highest rate charged by defendant's attorneys ($615/hour), Littler Mendelson.

---

[19] If the Court is inclined to consider the CLS fee schedule, Mattiacci's hourly rate should be reduced to $672.50, the average amount for an attorney of her experience level.

*Id.* at *16. Like Ogletree, Littler Mendelson is also a well-respected law firm representing management in employment-related legal matters.

Judge Kearney also noted in *Giedgowd* that well-regarded plaintiffs' employment attorney Sidney Gold submitted a petition in support of Console's fee but that Gold only "charges $650 an hour and has, in the view of many, a substantial employment rights docket in our Court as well." *Id.*[20] In setting Console's rate at $650, Judge Kearney also noted that Gold has more years of experience than Console but charges less and that if Console's "specific time entries confirmed a more central involvement in the strategies," he may be entitled to a higher rate. *Id.* at *16.

In *Ray v. AT&T Mobility Servs., LLC*, No. 18-3303, 2022 U.S. Dist. LEXIS 73948, at *19 (E.D. Pa. Apr. 22, 2022), Judge Rice rejected the rate of $900 sought by Console, $730 sought by Mattiacci, and $730 sought by Saint-Antoine and awarded hourly rates of $700 to all three attorneys. IKEA believes that Judge Rice's analysis is sensible and applicable here. Judge Rice noted that at looking at cases cited by CML, "a closer look at the cases reveals that CML's rates often were not challenged, were less than those sought here, or were reduced by the court. *See Mammen v. Thomas Jefferson Univ., et al.*, E.D. Pa., No. 20-127, 10/13/2021 Order (doc. 74) (awarding CML attorney fees based on rate of $450.00 for a partner with 16 years of experience where no objections were filed); *Middlebrooks*, 2019 U.S. Dist. LEXIS 30530, 2019 WL 936645, *14 (reducing Console's requested rate of $940.00 to $660.00 and Mattiacci's requested rate of $750.00 to 570.00); *Giedgowd*, 2021 U.S. Dist. LEXIS 205882, 2021 WL 4963532, *6 (challenges filed only to Console's proposed rate of $960.00 and reducing rate to $650.00)."

As opposed to prior cases, CML does not submit comparator affidavits to swear that CML's rates are reasonable. It provides no evidence that its rates are comparable to those of other similarly

---

[20] Mr. Gold's rate was still $650 as late as 2022. *Ray v. AT&T Mobility Servs., LLC,* No. 18-3303, 2022 U.S. Dist. LEXIS 73948, at *23 (E.D. Pa. Apr. 22, 2022)

situated law firms other than Console's "personal knowledge"—but pay no mind to judicial opinions like the one in *Giedgowd* where Judge Kearney noted that the comparator affidavits submitted all reflected attorney rates well below CML's, even when those attorneys had more experience. ECF 387-6 ¶ 35. And other than the *Meigs* case, which is distinguishable, CML provides no evidence of their requested rates other than their own declarations.[21] In fact, CML provides *no evidence* of its fee arrangement with its clients in these cases.

For the reasons stated above and recognizing (i) Console served as a consultant with regard to the sanctions motion, (ii) the impact of inflation, and (iii) the fact that CML is seeking fees for prevailing on a Rule 37 motion (and not, for example, convincing a jury of the merits of its claims), IKEA requests that the Court set the hourly rate for Mr. Console, Ms. Mattiacci, and Ms. Saint-Antoine at no more than $715 per hour—an amount that is well above the regular hourly rate charged by the most senior of attorneys at employment law firms like Ogletree.

"In setting a reasonable hourly rate, the Court may also examine whether a less senior attorney could have performed the same work performed by counsel in this case in a competent manner." *Becker v. ARCO Chem. Co.*, 15 F. Supp. 2d 621, 632 (E.D. Pa. 1998). As noted in Section II.C.4 above, much of the work completed by the senior partners in this case could have been completed by junior associates and/or paralegals with significantly lower billing rates. As such, IKEA requests that the Court also apply Kallenbach's $230/hour rate to all tasks completed by senior partners that could have been completed by more junior attorneys.

[21] IKEA is aware that Judge Slomsky recently approved rates of $960 for Console and $870 for Mattiacci. *See Meigs v. Care Providers Ins. Servs., LLC*, No. 21-867, 2024 U.S. Dist. LEXIS 91 (E.D. Pa. Jan. 2, 2024). Respectfully, IKEA posits that Judge Slomsky failed to conduct the exacting analysis required by the Third Circuit and practiced by other judges in this district.

## III. CONCLUSION

"Having determined that the hours requested are unreasonable, [a] Court is left to determine how the hours should be reduced, a determination requiring a certain amount of judgment calling and evading mathematical certitude." *Becker*, 15 F. Supp. 2d at 633-34. (citations omitted). For the reasons stated above, IKEA requests that this Court issue an Order:

(i) reducing the number of hours requested to be paid by IKEA as outlined herein or, if too cumbersome to delve into each and every block-billed entry, exercised its discretion in making an across-the-board reduction of at least 30% for Plaintiffs' failure to maintain clear and contemporaneous time entries regarding the sanctions motion;

(ii) strike Plaintiffs' requests for unreasonable fees as identified in Section II(C) of this response; and

(iii) reduce CML's hourly rates to amounts commensurate with those paid by clients of employment law firms in the Philadelphia area.

In the alternative, IKEA requests that the Court (i) stay Plaintiffs' Fee Petition and (ii) issue an Order requiring CML to provide IKEA with their unedited time entries (with any attorney-client privileged material redacted), and grant IKEA the opportunity to respond to Plaintiffs' Fee Petition based upon those unedited entries.

Respectfully submitted,

*/s/ Brandon R. Sher*
**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, PC.**

Paul Lancaster Adams, Esq.
Brandon R. Sher, Esq.
Jennifer Betts, Esq.
Emily Santoro, Esq.
Chris R. Pace, Esq. (Admitted *Pro Hac Vice*)
John G. Stretton, Esq. (Admitted *Pro Hac Vice*)
Thomas A. Lidbury, Esq. (Admitted *Pro Hac Vice*)
1735 Market Street, Suite 3000
Philadelphia, PA 19103
(215) 995-2840 Telephone
(215) 995-2801 Facsimile
pladams@ogletree.com
brandon.sher@ogletree.com
jenn.betts@ogletree.com
emily.santoro@ogletree.com
chris.pace@ogletree.com
john.stretton@ogletree.com
thomas.lidbury@ogletree.com

Dated: June 24, 2024