**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FRANK DONOFRIO, on behalf of himself individually and on behalf of those similarly situated,<br>Plaintiff,<br><br>v.<br><br>IKEA US RETAIL, LLC,<br>Defendant. | CIVIL ACTION<br>NO. 18-599-AB |
| WILLIAM V. ANTONELLI, JR., on behalf of himself individually and on behalf of those similarly situated,<br>Plaintiff,<br>v.<br>IKEA HOLDING US, INC., IKEA US RETAIL, LLC, and IKEA NORTH AMERICA SERVICES, LLC,<br>Defendants. | CIVIL ACTION<br>NO. 19-1286-AB |
| BRANDON PAINE, on behalf of himself individually and on behalf of those similarly situated,<br>Plaintiff,<br>v.<br>IKEA HOLDING US, INC., IKEA US RETAIL, LLC, and IKEA NORTH AMERICA SERVICES, LLC,<br>Defendants. | CIVIL ACTION<br>NO. 19-723-AB |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND EQUITABLE RELIEF**

## I. INTRODUCTION

Plaintiffs' Motion for Partial Summary Judgment and Equitable Relief hinges on the false premise that the Court previously concluded IKEA had a facially discriminatory diversity policy

that played a role in any hiring or promotion selection decision. Their motion must be denied for two reasons. First, in moving for sanctions, Plaintiffs sought but did not obtain a finding that IKEA had in place a corporate policy in which "all of its retail employees were subject, of favoring young people in leadership development and management level positions, ***which was considered by IKEA in selection decisions for management level positions, including applications for promotions***." *Donofrio* ECF 378, at 35, n.35-4 (emphasis added). The Court rejected this request. Instead, only for purposes of second-stage certification (not liability), the Court entered the following finding as a sanction:

> that IKEA had in place a common employer practice, or standard operating procedure, to which ~~all of~~ its U.S. retail employees were subject, of favoring [not *"selecting",* as Plaintiffs had requested] younger employees for leadership development and management level positions ~~which was considered by IKEA in selection decisions for its management level positions, including applications for promotions~~.

*Donofrio* ECF 379 (struck-through text was requested by Plaintiffs but not accepted by the Court[1]). The Court also declined Plaintiffs' request to issue a finding that IKEA "had in place age-based personnel goals." ECF 378, at 35, n.35-3.

Second, the Court ***never*** concluded IKEA had any discriminatory policy that was considered in any employment decision[2]. Federal anti-discrimination laws prohibit "discriminatory employment practices, not an abstract policy of discrimination." *Gen. Tel. Co.*

---

[1] ECF 378 at 35-36, n.3-5.

[2] Plaintiffs attempt to weaponize a phrase from the Court's Sanctions Motion Memorandum by taking it out of context. There, the Court merely stated that the "documents IKEA belatedly produced in December 2023 reflected a practice of age discrimination by IKEA that was in effect during the class period, and it is therefore appropriate for the facts established by those documents to form the basis for the sanctions here." *Donofrio* ECF 378, at 65. Documents, however, do not make hiring decisions. Instead, hiring managers make such decisions, and no manager—including managers that are Plaintiffs—indicated they applied (or even knew about) any practice or policy that disfavored employees age 40+ in making decisions about who to promote.

*v. Falcon*, 457 U.S. 147, 159 n.15 (1982). Plaintiffs dodge this issue by inviting the Court to make new law by holding that it simply needs to find a policy facially discriminatory based on age to prevail on summary judgment. The Supreme Court, however, has held "'[w]hatever the employer's decisionmaking process,' a plaintiff alleging disparate treatment cannot succeed unless the employee's age '*actually played a role in that process and had a determinative influence on the outcome*.'" *Ky. Ret. Sys. v. EEOC*, 554 U.S. 135, 142 (2008) (emphasis in original). Plaintiffs have offered no evidence that any practice or policy "played a role" in their promotion rejections or "had a determinative influence". To the contrary, the record—including admissions from the Plaintiffs themselves—show the opposite is true. Moreover, under Rule 56 all reasonable factual inferences must be drawn in favor of Defendants[3]. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Court must deny Plaintiffs' motion.

## II. LEGAL ARGUMENT

As a matter of law, documents that identify a "stated goal of a [] diverse [] workforce . . . that reflects the demographics" of the population are not evidence of discriminatory decisions. *See Pierce v. City of Phila.*, No. 17-05539, 2018 WL 6832093, at *1, *11 (E.D. Pa. Dec. 28, 2018). The plaintiff's claims in *Pierce* were rejected by the court because, like here, there was no evidence connecting the goal of having the City's workforce mirror the City's demographics to the actual employment decision at issue in that case. *Id.* at *11. Here, the document that Plaintiffs claim "openly expressed, and actually documented in writing, its intent to discriminate against its older employees" (ECF 388-1, at 5) is almost identical to type of goal to reflect the diversity of a population that the *Pierce* court found to be lawful. There is no evidence that a single decision

[3] Defendants attach Defendants' Responses to Plaintiffs' "Statement of Undisputed Material Facts" to this Opposition.

maker at a single IKEA store, let alone any of the decision makers involved in the promotion decisions Plaintiffs identify in these collective actions, considered any general statement about workforce demographics when making promotion decisions. Moreover, the Court must draw all reasonable inferences in the non-moving party's favor. *See Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586.

Plaintiffs themselves testified that they never saw or acted upon any purported practice or policy. Plaintiffs' witness, Nicholas O'Donnell, a former manager at IKEA Conshohocken, acknowledges receiving **no** instruction regarding implementing any such goals, that IKEA Conshohocken did not implement them, and that "as a general rule at IKEA, managers sought to promote the most qualified employees." Ex. 1, O'Donnell Dep., 74:12-17 (acknowledging he never received instruction to implement goals related to age); *Id.* at 136:19-138:6 (confirming he and the other Store Steering Group ("SSG") managers at IKEA Conshohocken did not violate age discrimination laws or policies); *Id.* at 151:23-152:4 (conceding IKEA managers sought to promote the most qualified employees). The testimony of Plaintiff Eedah Link, who held a senior management position at IKEA Las Vegas reporting directly to the Store Manager, also exposes the irrationality of Plaintiffs' argument. When asked if her store had any prohibition on promoting employees over age 40, Link replied "Oh, no. Nothing that someone's talked to me about." Ex. 2, Link Dep., 134:4-14. *See also* Ex. 3, Rausert Dep., 39:4-7 (Plaintiff testifying that IKEA expects its leaders to hire the most qualified person for the job). In each case, when actual hiring managers in actual stores are asked if they interpreted diversity goals as a direction to hire younger employees over more qualified older employees, they deny it. Plaintiffs offer no evidence to the contrary. Terri Noble, a former Store Manager at IKEA Pittsburgh whose employment was terminated by

IKEA in March 2017, confirmed it would be "impossible" for IKEA Pittsburgh to consider age when making hiring decisions. Ex. 4, Noble Dep., 47:7-24.

Only one witness with responsibility for store personnel decisions testified to even an *awareness* of a corporate document regarding young employees, and his testimony illustrates the *absence* of any store goal during the relevant time period. Christof Stein was the Store Manager of IKEA Bolingbrook from 2006 to 2014. Ex. 5, Stein Dep., 55:5-20. Stein testified that for only one year, *sometime prior to 2014*, his store received a goal of hiring one—only one—person under 30 onto the Store Steering Group, which is a group of the most senior managers in the store. *Id.* at 73:11-24, 177:4-15. Stein never based a hiring decision on this goal. *Id.* at 73:11-75:4.

The scant authority Plaintiffs cite does not support their motion. In *Trans World Airlines, Inc. v. Thurston*, it was undisputed that TWA had a transfer policy in which 60-year old captains were actually denied a "privilege of employment" on the basis of age. 469 U.S. 111, 120 (1985). More specifically, captains disqualified from working because of their age were not afforded the same "bumping" privileges as those disqualified for other reasons (e.g. disability). *Id.* This was not some abstract policy—it actually affected Captain Harold Thurston, as he was denied an opportunity to "bump" to a less senior flight engineer position and was forced to retire. Here, not only does the abstract practice Plaintiffs rely on have no connection to any actual employment decisions, *Plaintiffs admit that it played no role in promotion decisions*. *See* Defendants' Motion for Decertification, *Donofrio* ECF 383; *Paine* ECF 334; *Antonelli* ECF 306.

*EEOC v. County of Allegheny* is similar. There, it was undisputed that the county maintained a policy prohibiting individuals over the age of 35 to take its police examination (a prerequisite for individuals wanting to become county police officers). 705 F.2d 679, 680 (3d Cir. 1983). That lawsuit was brought by three individuals who were not allowed to take the county's

police examination because they were over 35 years old. Here, no Plaintiffs were excluded for consideration for a management or management-level position due to their age.

Nor does the evidence show that corporate documents discussing the goal of increasing age diversity at the company focus only on "young" employees. The evidence produced during discovery, but ignored by Plaintiffs, demonstrates that, by 2014, IKEA discussed seeking to *increase* the representation of managers over 55 from 7% to over 20%[4]. Consequently, even if the Court indulged Plaintiffs' theory that corporate diversity documents discussing a general interest in seeking to increase the age diversity of its managers were evidence of a "pattern" of discrimination in actual individual promotions (despite the absence of evidence tying these documents to specific promotion decisions), the fact that IKEA was also interested in increasing the representation of employees over age 55 in its management ranks undermines Plaintiffs' assertion that IKEA sought to discriminate against employees over 40 in connection with promotion.

In another "pay no attention to the man behind the curtain" moment, Plaintiffs suggest that because certain corporate diversity documents call for stores to set their own goals for diversity the Court should simply assume that individual stores had, and acted upon, plans to promote younger employees over more qualified older employees. But two facts belie Plaintiffs' claim. First, actual managers in actual stores—including actual *Plaintiffs* who were managers—deny ever receiving such instruction.[5] Second, the evidence reveals that different stores had different diversity focuses that included stores seeking to *increase* the representation of employees over age 40. For instance, IKEA Miami "partner[ed] with agencies to **increase the 45+ group**" and hire

---

[4] *See* Ex. 6, IKEA-048541; Ex. 7, IKEA-068160.

[5] Ex. 8, Ledet Dep., 52:13-20, 30:4-7; Ex. 2, Link Dep., 61:12-21, 163:6-24.

more veterans. Ex. 9, at IKEA-048611 (emphasis supplied). IKEA Bloomington sought to expand outreach to Asian and Hispanic communities and sought more "45+" employees. Ex. 10, IKEA-024971 at 025046. Still other stores, like IKEA Portland, focused only on gender, not age. Ex. 11, at IKEA-102350.

Plaintiffs also erroneously claim "a goal to increase the percentage of those in management positions under 34 necessarily means a goal to decrease the percentage of those over age 34." ECF 388, at 19. Again, this assertion cannot overcome two established facts: store hiring managers making actual employment decisions had no knowledge of, let alone acted upon, corporate diversity documents to promote younger employees over more qualified older candidates. Additionally, Plaintiffs themselves admit that IKEA also focused on employees age 50+. As a matter of simple logic, IKEA *could* increase the percentage of those in manager positions under the age of 34 by not hiring employees age 34-39, and that would not violate the ADEA. But the Court need not get bogged down in logic games. The actual evidence shows that actual store decision makers simply did not consider age when making employment decisions.[6]

## III. CONCLUSION

Plaintiffs mischaracterize the Court's previous ruling and attempt to create fiction by arguing an age-based discriminatory policy or practice of IKEA was considered in actual hiring decisions. Facts still matter, and the laws prohibit discriminatory employment practices, not an abstract policy never recognized or enforced by hiring managers. The Court should deny Plaintiffs' Partial Motion for Summary Judgment.

[6] Because Plaintiffs' Motion for Partial Summary Judgment must be denied, Plaintiffs' request for equitable relief is inappropriate. Nevertheless, the requested equitable relief is based on false presumptions that have no evidentiary support.

Respectfully submitted,


*<u>/s/ Brandon R. Sher</u>*
Paul Lancaster Adams, Esq.
Brandon R. Sher, Esq.
Jennifer G. Betts, Esq.
Emily Santoro, Esq.
Chris R. Pace, Esq. (Admitted *Pro Hac Vice*)
John G. Stretton, Esq. (Admitted *Pro Hac Vice*)
Thomas A. Lidbury, Esq. (Admitted *Pro Hac Vice*)
**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, PC.**
1735 Market Street, Suite 3000
Philadelphia, PA 19103
(215) 995-2840 Telephone
(215) 995-2801 Facsimile
pladams@ogletree.com
brandon.sher@ogletree.com
jenn.betts@ogletree.com
emily.santoro@ogletree.com
chris.pace@ogletree.com
john.stretton@ogletree.com
thomas.lidbury@ogletree.com