**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FRANK DONOFRIO, on behalf of himself individually and on behalf of those similarly situated,<br>Plaintiff,<br>v.<br>IKEA US RETAIL, LLC,<br>Defendant. | CIVIL ACTION NO. 18-599-AB |
| WILLIAM V. ANTONELLI, JR., on behalf of himself individually and on behalf of those similarly situated,<br>Plaintiff,<br>v.<br>IKEA HOLDING US, INC., IKEA US RETAIL, LLC, and IKEA NORTH AMERICA SERVICES, LLC,<br>Defendants. | CIVIL ACTION NO. 19-1286-AB |
| BRANDON PAINE, on behalf of himself individually and on behalf of those similarly situated,<br>Plaintiff,<br>v.<br>IKEA HOLDING US, INC., IKEA US RETAIL, LLC, and IKEA NORTH AMERICA SERVICES, LLC,<br>Defendants. | CIVIL ACTION NO. 19-723-AB |

**DEFENDANTS' OPPOSITION**
**TO PLAINTIFFS' MOTION FOR FINAL CERTIFICATION**

On June 3, 2024, IKEA filed two Motions for Decertification of Collective Action ("Motions to Decertify" or "Defendants' Motions") concerning the three collective actions captioned above—one for the *Donofrio* case and one for the *Paine* and *Antonelli* cases. That same day, Plaintiffs filed a Motion for Final Certification to Proceed as Collective Action ("Motion for

Final Certification" or "Plaintiffs' Motion"), *Donofrio* ECF 389, *Antonelli* ECF 311, *Paine* ECF 340, concerning all three cases. IKEA responds to Plaintiffs' Motion here.

The tone of Plaintiffs' Motion is set when, in the very first sentence, Plaintiffs materially misrepresent Defendants' merits position. Specifically, Plaintiffs claim "there is no dispute" that IKEA "engaged in age discrimination to which every one of them was subject". *Donofrio* ECF 389-1 at 6. But this is ***very much*** in dispute. What follows in the remainder of Plaintiffs' 29-page brief is a series of distortions of the facts and/or case law centered on three theories:

- First, Plaintiffs contend final certification should be granted because the Court found as a sanction for the purposes of second stage certification that IKEA had in place a common employer practice to which its U.S. retail employees were subject of favoring younger employees for leadership development and management level positions. This is incorrect. The Court could have—but did not—grant final certification as part of its sanction ruling. The Court therefore must proceed with evaluating the record in light of relevant legal standards.

- Second, Plaintiffs alternatively assert that all Plaintiffs in ADEA pattern or practice collective actions are similarly situated for the purposes of final certification. This is also wrong; courts who have addressed this question have concluded that merely asserting a pattern or practice claim, and even offering evidence supporting that claim, are not alone sufficient to succeed at the second stage of collective action certification.

- Third, Plaintiffs suggest the facts and their expert support final certification. But, Plaintiffs cherry pick and mischaracterize the record to make these claims. And, as IKEA detailed in its Motion to Exclude the Testimony and Reports of Plaintiffs' Proffered Expert Witness, *Donofrio* ECF 386, *Antonelli* ECF 309, *Paine* ECF 338, Plaintiffs' expert and his report, while lengthy, should not be considered in these cases.

As explained by IKEA in its Motions to Decertify, Third Circuit courts routinely decertify conditionally certified ADEA collective actions where, as here, the cases relate to different hiring decisions by different managers concerning different roles. Plaintiffs make no effort to grapple with controlling final certification/decertification standards and instead ask this Court to do the very thing that courts in this Circuit prohibit: replace the decertification factors with evidence of

a so-called pattern of discrimination. For the reasons described below and in the Motions to Decertify filed previously by IKEA, this action should be decertified.

## I. THE CONTROLLING LEGAL STANDARDS

Plaintiffs and IKEA use different nomenclature in their competing motions. Plaintiff asks the Court to grant "final certification". IKEA asks the Court to decertify. Regardless of which terminology is used, the Court should apply the same legal standard at the second stage of the collective action similarly situated analysis. At the final certification/decertification phase, ***Plaintiffs*** have the burden to prove by a "preponderance of the evidence" that they are ***all*** "similarly situated" such that this case can be tried on a representative basis. *Karlo v. Pittsburgh Glass Works, LLC*, No. 10-1283, 2014 WL 1317595, at *15 (W.D. Pa 2014), *decertification sustained on appeal at* 849 F.3d 61 (3d Cir. 2017); *Andrako v. U.S. Steel Corp.*, 788 F. Supp. 2d 372, 378 (W.D. Pa. 2011) (holding that the plaintiffs bear the burden of proving they are similar to the opt-in plaintiffs, not the defendants); *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). Further, the Supreme Court directs courts to perform a "specific factual analysis" of "each employee's claim" to ensure that the plaintiffs are sufficiently similar so that the court can fairly provide "efficient resolution in one proceeding" of common "fact[s] arising from the same alleged discriminatory activity." *Hoffman La Roche v. Sperling*, 493 U.S. 165, 170 (1989); *Bell v. Reading Hosp. & Med. Ctr*, No. 13-5927, 2016 WL 3902938, at *8 (E.D. Pa. 2016). This is a "rigorous" analysis. *Mueller v. CBS, Inc.*, No. 99-1310, 2002 WL 35669766, at *17 (W.D. Pa. Dec. 9, 2002).

It is insufficient to share a common status or be subject to the same policy. *Zavala v. Walmart Stores*, 691 F.3d 527, 538 (3d Cir. 2012). Instead, to determine whether to grant final certification, or, alternatively, to decertify a conditionally certified case, the Court must review:

> whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of

> employment. . . .[and] many other relevant factors: age variance, . . . the company division in which they worked, employment status, supervisors and salaries, factual and employment settings, individual defenses, fairness and procedural considerations.

*Karlo*, 2014 WL 1317595, at *17. Courts also consider whether the challenged employment decisions were made by "different decision-making supervisors." *Mueller*, 2002 WL 35669766, at *10.

Ultimately, the Court must evaluate whether there is common evidence that will show a violation of the law for each individual Plaintiff ***or*** whether individual issues predominate such that it would violate a defendant's due process rights to proceed on a collective basis. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). Indeed, the final factor for consideration by the Court is whether the claimed efficiencies derived from one collective action are outweighed by potential prejudice to a defendant. *Hoffman La Roche*, 493 U.S. at 170. Notably, Plaintiffs' Motion for Final Certification nowhere discusses these legal standards or offers an alternative framework for the Court to apply at final certification.

While Plaintiffs' Motion is remarkably light on controlling legal standards, there is an unmistakable disagreement between the parties about the final certification/decertification analysis that the Court must resolve. Plaintiffs contend that because there is (in their view) a factual basis for a pattern or practice claim here, the Court need conduct no further analysis. Specifically, Plaintiffs rely on a 2001 Tenth Circuit decision, *Thiessen v. GE Capital Corp.*, 267 F.3d 1095 (10th Cir. 2001), to claim that "[w]hen there is a sufficient basis to proceed on an ADEA pattern or practice claim, the plaintiffs are deemed to be similarly situated for purposes of final certification and the case proceeds." (*Donofrio* ECF 389-1 at 17).

Plaintiffs' position is both an oversimplification of *Thiessen* and, equally importantly, not the law in this Circuit.

***First***, *Thiessen* does not stand for the broad proposition Plaintiffs push. In fact, the *Thiessen* Court specifically warned against the very conclusion Plaintiffs draw from the decision, stating, "We do not hold that whenever there is evidence of a pattern-or-practice, a class must be certified. Whether certification or decertification is appropriate depends upon application of the factors we have identified in the ad hoc approach." 267 F.3d at 1108. Thus, Plaintiffs mischaracterize the holding of the case upon which they rely.

***Second***, courts in this Circuit conduct a searching review of individual plaintiff dissimilarities and a defendants' defenses ***regardless*** of whether there is a basis for a claim of a "pattern and practice of age discrimination." *Mueller*, 2002 WL 35669766, at *13, *16, *25 (analyzing *Thiessen* and rejecting the plaintiffs' claims that courts may not evaluate individual differences between the plaintiffs when they have produced evidence of an alleged pattern or practice of discrimination); *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 388 n.17 (3d Cir. 2007) (in pattern and practice case, noting employers may still assert the alleged disparate treatment was based on a reasonable factor other than age). The *Mueller* decision analyzes *Thiessen* and whether it is compatible with the 216(b) certification standards applied in this Circuit. While there was no direct appeal of *Mueller*, the Third Circuit praised the district court's decertification decision as "well-reasoned and exhaustive." *Ruehl*, 500 F.3d at 388. Former Chief Judge of the Western District of Pennsylvania, Donetta Ambrose, in *Mueller* reasoned the following:

> If Plaintiffs' conclusion that stating a claim of pattern or practice were sufficient to show that opt-in plaintiffs were similarly situated to the extent that the court should automatically proceed to a Teamsters-model trial, there would be no need to investigate the circumstances of any individual plaintiff. That is, having established that they satisfied the opt-in criteria, discovery following the opt-in stage would not focus on the individual plaintiffs but on the facts surrounding the corporate policy in order to flesh out the allegations made at the conditional certification stage. But that is clearly not the format used in *Lusardi*, *Mooney*, *Stone* or even *Thiessen*.

2002 WL 35669766, at *17. Also, as the court noted in *Mueller*, in the *Lusardi* case, which sets forth core principals within the Third Circuit for reviewing 216(b) certifications:

> even though the plaintiffs [in *Lusardi*] alleged at the point of decertification that a corporate-wide pattern or practice of discrimination was the underlying cause of the adverse employment decisions affecting them, the district court determined—and the Court of Appeals affirmed the propriety of its analysis—that factual questions must be addressed as well as the claim of a corporate-wide discriminatory policy.

*Id.* at *15. Plaintiffs' position on *Thiessen* is thus fundamentally mistaken and therefore must be rejected.

Further, and although not directly necessary for resolution of the parties' competing motions concerning final certification/decertification, IKEA also notes that there is an equally critical legal doctrinal question the Court must resolve in this matter. As IKEA detailed in its June 3, 2024 Motion for Partial Summary Judgment, the "pattern or practice" method of proof (a.k.a. the *Teamsters* method) cannot be used in an ADEA disparate treatment case. (*Donofrio* ECF 385, *Paine* ECF 335, *Antonelli* ECF 307). As detailed in that motion, the Supreme Court has made clear that the ADEA prohibits shifting the burden of persuasion to a defendant in a case alleging intentional age discrimination. *See* 29 U.S.C. 623(a)(1); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). Because the *Teamsters* method does just that—*i.e.*, shift the burden of persuasion to the defendant—it is not available in these cases.

## II. FACTUAL BACKGROUND

Plaintiffs argue that "all relevant factors" weigh in favor of final certification. Yet they fail to cite deposition transcripts, discovery responses, or declarations/affidavits from Opt-in Plaintiffs or management deponents. This is because the facts developed during extensive discovery demonstrate the claims of the Plaintiffs are each unique. IKEA summarized this evidence in its Motions to Decertify and compiled for the Court a detailed factual record. (*Donofrio* ECF 383,

*Paine* ECF 334, *Antonelli* ECF 306). To avoid burdening an already lengthy record, IKEA will not re-state this evidence in its entirety here. Identified below, however, are some key factual evidence and distinctions:

| **THE HIRING PROCESS** | |
|---|---|
| **Evidence** | **Record Support** |
| Promotion and hiring decisions at the more than 45 IKEA stores throughout the country are made by individual managers in individual stores. | Ex. 1, Blackburn Dep., 10:2-14; Ex. 2, Stephani Dep., 99:20-23; *Donofrio* ECF 383-7, ¶ 3. |
| IKEA expects its managers to make a hiring decision based on their own assessments of qualifications for a role, choosing the most qualified candidate who applied for a position. | Ex. 3, Mayo Dep., 16:6-15; Ex. 4, Rausert Dep., 39:4-7. |
| The assessment of which employee is most qualified for a role includes review of that candidate's experience and job interview performance. | Ex. 3, Mayo Dep., 18:6-13; Ex. 1, Blackburn Dep., 32:15-20; Ex. 5, Klecka Dep., 83:5-10; Ex. 4, Rausert Dep., 15:14-19. |
| IKEA has widely available policies prohibiting discrimination. None of the Plaintiffs who are managers, nor any deposed by Plaintiffs, testified they were instructed to disregard the company's anti-discrimination policies and consider age during promotion selections. | Ex. 6, IKEA Anti-Discrimination Policy; Ex. 7, Link. Dep., 163:6-24; Ex. 8, Ledet Dep., 52:13-20, 30:4-7. |
| Indeed, testimonial evidence concerning consideration of age in hiring decisions was that managers were expressly instructed ***not*** to consider it. | Ex. 9, Spencer Dep., 111:21-112:4. |

| **MANAGER AGE DISTRIBUTION** | |
|---|---|
| **Evidence** | **Record Support** |
| Between January 2016 and the end of 2017, the average age of IKEA managerial employees ***increased*** and the proportion of employees in this group over the age of 40 increased from 35.5% to 38.31%. | Ex. 10, Report of Dr. Thornton at 15. |

| THE UNIQUE CIRCUMSTANCES OF PLAINTIFFS | |
|---|---|
| **Evidence** | **Record Support** |
| There are 35 Plaintiffs in *Donofrio*, 30 Plaintiffs in *Paine*, and 21 Plaintiffs in *Antonelli*. | Ex. 11, Decl. of Stephanie Baker, ¶ 2, Ex. A; Ex. 12, Baker Decl., ¶ 2, Ex. A |
| The decisions of 57 hiring managers are challenged in *Donofrio*. The decisions of 68 managers are challenged in *Paine* and *Antonelli*. | *Id.* |
| The 35 Plaintiffs in *Donofrio* sought more than 65 different jobs. The 30 Plaintiffs in *Paine* and 21 Plaintiffs in *Antonelli* sought more than 75 different jobs. | *Id.* |
| The *Donofrio* case involves 26 different stores and more than 35 different job titles. The *Paine* and *Antonelli* cases involve 33 different stores and more than 30 different job titles. | *Id.* |
| The *Donofrio* Plaintiffs range in age from 39.1 to 71 at the time of the applications at issue. The *Paine* and *Antonelli* Plaintiffs range in age from 40.1 to 70.3 at the time of the applications at issue. | *Id.* |
| 17 *Donofrio* hiring managers were older than the respective Plaintiff at the time of their applications. 17 *Paine* and *Antonelli* hiring managers were older than the respective Plaintiff at the time of their applications. | *Id.* |
| 11 individuals selected for the promotions at issue in *Donofrio* were ***older*** than the respective Plaintiff at the time of their applications. Nine individuals selected for the promotions at issue in *Paine* and *Antonelli* were ***older*** than the respective Plaintiff at the time of their applications. | *Id.* |
| Plaintiffs assert different claims. For example, Plaintiff Donofrio claims it is older men discriminated against, while Plaintiff Gaston claims he was discriminated against because of his ethnicity/race. | Ex. 13, IKEA-012700 to IKEA-012701; Ex. 14, Gaston Dep., 26:9-14 |

## III. LEGAL ARGUMENT

A comprehensive analysis of the bases for the Court to decertify these collective actions is provided in the Motions to Decertify filed by IKEA at *Donofrio* ECF 383, *Paine* ECF 334, and

*Antonelli* ECF 306. Stated simply, the evidence necessary to prove age discrimination in the challenged promotion decisions is ***not*** common, and individualized issues predominate. IKEA focuses in this Brief on responses to Plaintiffs' arguments in their Motion for Final Certification.

### A. The Court's Sanction Order is Not an Independent Basis for Final Certification.

In an ADEA case focused on hiring/promotion decisions, the Court must analyze whether the employer, IKEA, engaged in a discriminatory employment action or *practice*. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 159 n. 15 (1982). An "abstract policy of discrimination" is not enough. *Id.* Plaintiffs contend in these collective actions that they were denied promotions because of their age. Thus, to succeed, Plaintiffs must establish that IKEA discriminated against them on the basis of their age in promotion decisions.

Plaintiffs believe that the Court's May 6, 2024 Order granting sanctions against IKEA "satisfies the similarly situated requirement as defined by the Third Circuit." (ECF 389-1 at 16). Not so. In its Order, the Court granted certain sanctions requested by Plaintiffs and rejected other requested sanctions. For example, the Court granted the language below, but rejected the struck-through text:

> that IKEA had in place a common employer practice, or standard operating procedure, to which ~~all of~~ its U.S. retail employees were subject, of favoring [not *"selecting",* as Plaintiffs had requested] younger employees for leadership development and management level positions ~~which was considered by IKEA in selection decisions for its management level positions, including applications for promotions.~~

ECF 378 at 66. The Court also rejected Plaintiffs' requests: (a) to issue a finding that IKEA "had in place age-based personnel goals," (b) to find that IKEA has a "corporate policy" favoring younger employees; and (c) to conclude that IKEA had a "pattern or practice of age discrimination." ECF 378 at 35-36 (requests 3-6). Thus, on its face, the Court's sanctions intentionally do not extend as far as Plaintiffs argue.

Moreover, and critically, there is no evidence tying the alleged practice of "favoring" employees to any challenged *selection* decisions—which is what is at issue in these collective actions and about which the Court rejected Plaintiffs' request to enter a finding. Plaintiffs turn a blind eye to the reality that their circumstances and allegations differ substantially. As detailed in the Motions to Decertify and highlighted above, these cases involve 57 unique Plaintiffs, 26 stores in *Donofrio* and 25 stores in *Paine/Antonelli*, 57 decision-makers in *Donofrio* and 68 decision-makers in *Paine/Antonelli*, more than 150 total positions, and numerous individualized defenses that apply only to some, but not all, Plaintiffs. The Court's establishment, as a sanction, that IKEA had in place a "common employer practice" of favoring younger employees for management level positions does not somehow inoculate this case from any final certification review. Nor does it substitute as evidence that each of the challenged promotion decisions is sufficiently similar to be tried together. *Mueller* and similar cases from courts in this Circuit require the Court to assess the decertification factors identified above. The sanctions order does not change this doctrinal imperative. As IKEA detailed in its Motions to Decertify, those factors compel decertification.

### B. Final Certification Cannot be Granted Merely Because Plaintiffs Proceed on a Pattern or Practice Theory.

As discussed above, Plaintiffs urge that because they believe they have evidence of a pattern or practice of discrimination, the Court's analysis of final certification/decertification should start and stop there. This position warps the holding of *Thiessen* and, as the Court should definitively conclude, is not the law in this Circuit. Instead, decertification case law in this Circuit counsels courts to consider and weigh evidence of dissimilarities amongst the Plaintiffs regardless of the nature or theory of the case. *See Lusardi*, 118 F.R.D. 351; *Lugo v. Farmer's Pride, Inc.*, 737 F. Supp. 2d 291, 299 (E.D. Pa. 2010); *Prise v. Alderwoods Grp., Inc.*, 817 F. Supp. 2d 651, 677 (W.D. Pa. 2011); *Mueller*, 2002 WL 35669766, at *16-*17. As such, this Court should

consider, and weigh heavily, evidence of differences between Plaintiffs when assessing the parties' competing motions regardless of proffered pattern-or-practice evidence. *Id.*

**C. Plaintiffs' Claim of "Compelling Evidence of Systematic Discrimination" is Wrong, and, In any Event, Does Not Address the Specific Factual Analysis Required at This Stage.**

Plaintiffs further claim IKEA had an "openly declare[d]" "intent to discriminate" relying on four items: (1) the Court's sanction order; (2) alleged "admissions" by IKEA; (3) "openly declared" "business plan[s]" and goals; and (4) expert statistical analysis. (*Donofrio* ECF 389-1 at 18-20). None of the above are evidence, let alone compelling evidence, of systemic discrimination. Moreover, none addresses the decertification/final certification analysis this Court must conduct, which focuses on the individual claims of each of the Plaintiffs and whether they are similarly situated with respect to the employment decisions challenged in a case.

**1. The Court Did Not Conclude that IKEA Engaged in Systemic Age Discrimination.**

Plaintiffs take out of context and mischaracterize a phrase from the Court's Sanctions Motion Memorandum. There, the Court merely stated that the "documents IKEA belatedly produced in December 2023 reflected a practice of age discrimination by IKEA that was in effect during the class period, and it is therefore appropriate for the facts established by those documents to form the basis for the sanctions here." *Donofrio* ECF 378, at p. 65. Documents, however, do not make hiring decisions. Instead, hiring managers make such decisions, and no manager—including managers that are Plaintiffs—indicated they applied (or even knew about) any practice or policy that disfavored employees age 40+ in making decisions about who to promote. *See infra* p. 14. Thus, this statement in the Court's Memorandum cannot be a basis for final certification.

2. **An Employer's Goals are Not, as a Matter of Law, Evidence of Discriminatory Employment Decisions.**

Plaintiffs claim IKEA has made admissions that amount to evidence of systemic age discrimination, relying on statements in briefing acknowledging the existence of corporate-level goals to increase representation of younger people in management, along with other dimensions of diversity. Plaintiffs' argument is a misdirection. As a matter of law, documents that identify a "stated goal of a [] diverse [] workforce . . . that reflects the demographics" of the population are not evidence of discriminatory decisions. *See Pierce v. City of Phila.,* No. 17-05539, 2018 WL 6832093, at *1, *11 (E.D. Pa. Dec. 28, 2018). In *Pierce,* the city articulated a goal of increasing the diversity of its workforce so that it "reflect[ed] the demographics of the City's population." *Id.* at *1. However, the court granted summary judgment on a promotion claim for the defendant because there was no evidence connecting the goal of its workforce mirroring the City's demographics to the decision at issue. *Id.* at *11. The same is true here. The purported policies or practices of discrimination relied on by Plaintiffs are almost ***identical*** to type of goal to reflect the diversity of a population that *Pierce* found to not reflect discriminatory ***decisions***. Accordingly, representations about these documents do not weigh in favor of final certification.

3. **The Business Plans and Goals Relied on By Plaintiffs Do Not Reflect Evidence of Discriminatory Employment Decisions.**

Instead of offering the Court evidence upon which to engage in the specific factual analysis required at this stage, Plaintiffs cherry pick a series of business plans and diversity recap reports, some of which significantly predate the operative class periods in this case. All of these documents speak of goals. For example, framing as a goal increasing the "generational diversity in our salaried exempt positions to be more reflective of the majority of our coworker population." Ex. 15, IKEA 047091 at IKEA-047100. These "smoking guns" lack bullets.

***First***, none of the evidence Plaintiffs proffer shows a national, stores-wide practice of age discrimination. At worst, these documents state a general interest on the part of IKEA to have its management population reflect the demographics of the community or other coworkers. But, as noted, a goal of a diverse workforce reflecting the population is not evidence of discriminatory decisions. *Pierce,* 2018 WL 6832093, at *11. Moreover, these goal documents actually show that IKEA discussed ***increasing*** the representation of managers over age 50. Plaintiffs acknowledge this focus, but brush it off as mere lip service and irrelevant. But, the focus by IKEA on hiring and promotion of employees over age 50 illustrates there was no uniform policy disfavoring employees over age 40 and underscores the lack of commonality in the collective actions. Indeed, many Plaintiffs were in the 50+ age group when they sought promotion. *See*, *e.g.*, *Donofrio* ECF 383-29 (chart depicting Plaintiffs' ages when applying for promotions).

***Second***, when these documents are actually reviewed they reveal that IKEA allowed stores to "set local goals for diversity." *See*, *e.g*., Ex. 16, IKEA-101724 at 101733, 101736. And the record evidence shows that different stores in fact had different diversity focuses. For example:

- Miami "partner[ed] with agencies to increase the 45+ group" and hire more veterans. Ex. 17, at IKEA-048611.
- Bloomington sought to expand outreach to Asian and Hispanic communities and sought more "45+" employees. Ex. 18, IKEA-024971 at 025046.
- Portland focused only on gender, not age. Ex. 31, IKEA-102342 at 102350.

Thus, contrary to Plaintiffs' theory of a global "policy" of favoring employees under age 40, the record evidence demonstrates distinct and unique diversity focuses amongst the stores—undermining Plaintiffs' contention of common practices.

***Third***, and perhaps most critically, every single hiring manager deposed by Plaintiffs testified they had no knowledge of, and were never asked to act upon, any age-related goals with respect to hiring. For example, Plaintiff Eedah Link, who held the second-highest ranking manager

position in the IKEA Las Vegas store, denied being directed to consider employee age when making hiring decisions. *Donofrio* ECF 383-47, 3 (61:12-21). Plaintiff Olivia Ledet, a store Operations Manager, was never instructed to consider a candidate's age and doing so never even crossed her mind. *Donofrio* ECF 383-61, at 4 (52:5-20). This is not surprising since IKEA maintains and circulates a policy prohibiting discrimination. All hiring managers testified, consistently with that policy, that they sought to select employees for promotion based on merit, not age.

In short, and despite Plaintiffs' trumpeting of goals documents, years of discovery reveals no evidence that a single store promoted employees under age 40 over older, more qualified candidates. Instead, the evidence shows dissimilarity in diversity focus from store to store.

4. **Plaintiffs' Expert Statistical Evidence is Profoundly Flawed.**

Finally, Plaintiffs rely on an expert report from Dr. David Neumark. IKEA has filed a separate motion detailing why Dr. Neumark's report is flawed and should be excluded. (*Donofrio* ECF 386, *Paine* ECF 338, *Antonelli* ECF 309). The uncontested statistical evidence shows that the average age of IKEA managers and the number of managers over age 40 increased during the period at issue in these cases. Ex. 10, Report of Dr. Thornton, at 14-15. Further, Plaintiffs' own expert concedes that when he analyzed the actual promotion decisions at issue in this lawsuit, employees over 40 had a *higher* promotion rate than their younger colleagues. ECF 383-56 at 45.

* * *

The rigorous analysis the Court must conduct at this stage requires the Court to consider whether there is common evidence to show a legal violation for each individual Plaintiff, or, alternatively, if evidence unique to each Plaintiff is necessary. Plaintiffs' Motion for Final Certification fails to grapple with such evidence. Instead, Plaintiffs ask the Court to grant final certification of these collective actions based on a theory of discrimination based not an actual

promotion decisions, but rather on an alleged "abstract policy of discrimination." This is not sufficient as a matter of law to move past this stage of the proceedings. Decertification should be granted.

### D. The Relevant Final Certification/Decertification Factors Weigh Against Final Certification.

Plaintiffs close their request for final certification by summarily stating that "all relevant factors"—which factors Plaintiffs do not identify—weigh in favor of final certification. Plaintiffs then list purported facts with no citation to anything at all. Because attorney representations are not evidence, this section of Plaintiffs' briefing should be disregarded. Nevertheless, the decertification factors established within the Third Circuit, as IKEA has detailed exhaustively in its Motions to Decertify, compel decertification. Among other factors:

✓ **The Claims Involve Different Local Hiring Managers.**

When analyzing final certification/decertification, courts within the Third Circuit evaluate whether the challenged employment decisions are made by different decisionmakers. *See Mueller*, 2002 WL 35669766, at *9. This is because in disparate treatment cases, such as these, decision-maker intent is key. Here, Plaintiffs complain about promotion decisions made by scores of management team members: 57 different decision-makers in *Donofrio* and 68 different decision-makers in *Paine* and *Antonelli*. And, based on the testimony of Plaintiffs in these cases, the theory concerning these decision-makers is not uniform. For example, some Plaintiffs even admit that they did not believe the relevant decision-maker on their challenged hiring decision discriminated against them. *See*, *e.g.*, Ex. 19, Logue Dep., 95:19-23; Ex. 20, De Torres Dep., 79:24-80:1; Ex. 21, Greske Dep. 60:15-24. Given the lack of commonality of decisionmakers, this factor weighs against final certification.

✓ **The Claims Involve Unique Factual Circumstances for Each Challenged Hiring Decision.**

Nearly all of the Plaintiffs conceded during discovery that the assessment of a particular promotion decision required an examination of all relevant circumstances, most prominently the qualifications and experience of all candidates and how each candidate for a role performed during their interviews. *See*, *e.g.*, Donofrio Dep., ECF 383-13 at 4 (26:8-17) (conceding that to determine the most qualified candidate for promotions, IKEA would need to consider individual circumstances); Davis Dep., ECF 383-21 at 3 (62:1-4) (same); Ex. 20, De Torres Dep., 55:20-56:10 (same); Ex. 2, Stephani Dep., 54:23-55:10 (same); Ex. 22, Marrone Dep., 72:15-73:2 (senior manager plaintiff testifying that some candidates who interview well despite not having all the necessary qualifications on paper may have an advantage); Ex. 23, Baer Dep., 22:21:23-16 (manager plaintiff testifying that performance in interview is considered along with background and experience); *see also* ECF 383-33, Chart of Deposition Excerpts related to sincerity of Hiring Manager's Qualification Decisions. Some of the roles which Plaintiffs claim they were denied closed with *no* candidate hired, and, in other circumstances, Plaintiffs acknowledge that the roles at issue were not even leader jobs or promotions. Ex. 1, Blackburn Dep., ECF 383-4 at 12 (145:3-15, 148:1-24). The factual circumstances thus vary by Plaintiff and require an individualized analysis for each and every hiring decision at issue, weighing against final certification.

✓ **The Claims Involve Different Jobs at Different Stores.**

Courts also analyze whether the plaintiffs in a conditionally certified action work within the same corporate division, location, and have the same supervisors and employment settings. *See Karlo*, 2014 WL 1317595, at *17. Plaintiffs in these collective actions worked in dozens of stores, and sought dozens of different types of jobs at different stores all across the United States.

*See* Ex. 11, Baker Decl. ¶ 2, Ex. A; Ex. 12, Baker Decl. ¶ 2, Ex. A. This factor, too, thus weighs against final certification.

✓ **There Are Material Factual Conflicts Between Plaintiffs.**

Courts also closely review conflicts among Plaintiffs. *Mueller*, 2002 WL 35669766, at *30. There are many in these cases. For example, one Plaintiff in the *Paine* matter claims that she was denied a job due to age discrimination even though the challenged job was awarded to another *Paine* Plaintiff—if this case were to proceed as a collective, Plaintiffs' counsel would thus need to argue that one Plaintiff (who was over 40 at the time selected) was not qualified for a role while the other Plaintiff was. *See Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 698 (3d Cir. 1995) (requiring an age discrimination plaintiff to show that a similarly qualified or less qualified and younger employee sought a position in question). There are many other examples of such conflicts in each of the cases, which are summarized in the Motions to Decertify filed by IKEA. This factor thus, also weighs against final certification.

✓ **IKEA Will Present Different, Individualized Defenses to Plaintiffs' Claims.**

Courts also consider at the second stage of certification whether there are unique individual defenses to some, but not all, of Plaintiffs' claims. *Mueller*, 2002 WL 35669766, at *17. Many individualized defenses will be asserted by IKEA:

- Some, but not all, Plaintiffs were denied promotions where selected candidates were ***older*** than Plaintiffs. *See*, *e.g.*, Ex. 24, Messmer Dep.44:21-23, 47:17-48:4; Ex. 25, Evenson Dep. 199:5-203:9. In such cases, IKEA has a defense to Plaintiffs' claims because an ADEA plaintiff must show that they sought a position for which they were qualified, but lost the position to someone materially younger. *Robinson v. Matthews*, 368 F. App'x 301, 304 (3d Cir. 2010); *White v. Baptist Mem'l Health Care Corp.*, No. 08-2478, 2011 WL 1883959, at *5 (W.D. Tenn. May 17, 2011). *Lugo*, 737 F. Supp. 2d at 303 (decertifying in part because the evidence showed that some opt-ins had valid claims while some did not).

- Some, but not all, Plaintiffs lost roles to candidates that were only a few years younger than they were. Ex. 11, Baker Decl., ¶ 4, Ex. C; Ex. 12, Baker Decl., ¶ 4, Ex. C. In such cases, IKEA can assert a defense to Plaintiffs' claims because the

Supreme Court has held that an inference of age discrimination cannot be drawn from the replacement of one worker with another worker insignificantly younger. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996); *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 307 (3d Cir. 2004) (concluding that a five year difference can be sufficient and a one year difference cannot).

- Some, but not all, Plaintiffs were denied promotions by hiring managers who were older than they were. *See* Ex. 26, Antonelli Dep. 77:18-78:12; Ex. 27, Taylor Dep. 151:2-154:10; Ex. 28, Horan Dep. 214:15-216:11. In such cases, IKEA has a defense to Plaintiffs' claims because it is difficult to raise an inference of age discrimination when the person accused of making the discriminatory decision is older than the plaintiff. *Ziegler v. Del. Cnty. Daily Times*, 128 F. Supp. 2d 790, 811 n.47 (E.D. Pa. 2001).

- Some, but not all, Plaintiffs admit that they were less qualified than the selected applicant. *See*, *e.g.*, Ex. 29, Lewis Dep. 28:5-14, 36:1-7, 59:10-61:3; Ex. 30, Areizaga Dep. 189:3-13; Ex. 32, Hughes Dep. 138:19-140:22. Where this evidence exists, IKEA has a defense to Plaintiffs' claims because an ADEA plaintiff does not state a viable claim for discrimination if the decision-maker honestly believed that the successful candidate was better qualified, even if that belief is mistaken. *See Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).

- Some, but not all, Plaintiffs contended during discovery that there were not promoted for reasons unrelated to their age, like gender, race, or store politics. *See* Ex. 1, Blackburn Dep., 43:23-44:11, 114:15-115:18; Ex. 14, Gaston Dep., 26:9-14. For example, the lead Plaintiff in the Donofrio case believes that white males are disadvantaged by IKEA. Ex. 13, IKEA-012700 to IKEA-012701. These non-age related reasons are inconsistent across Plaintiffs and conflict with one another, presenting the kinds of individualized defenses weighing in favor of decertification. *See Mueller*, 2002 WL 35669766, at *30. Additionally, under the Supreme Court's decision in *Gross v. FBL Fin. Servs,* 557 U.S.167, 176 (2009), age must be the but-for cause of the alleged adverse action. IKEA has a dispositive defense against the claims of those Plaintiffs who assert they were denied promotion for multiple reasons. *Id.*

In its Motions to Decertify, IKEA details these and other highly individualized defenses revealed by discovery. The factual situations of Plaintiffs in these cases show that there were highly individual decisions that impacted individual plaintiffs in individual ways. As a result, the Plaintiffs are not similarly situated and decertification should be granted. *See Mueller*, 2002 WL 35669766, at *16 (holding the defendants must be able to raise "individualized defenses to each

such plaintiff's claims" in ADEA collective action, even when the plaintiffs assert a "pattern and practice of discrimination").

✓ **Fairness and Due Process Considerations Outweigh Any Efficiencies Derived by Common Presentation of Evidence.**

The Court must also balance the claimed efficiency of proceeding in one action against the potential detriment to the defendant and any possible judicial inefficiency. *See Hoffman La Roche*, 493 U.S. at 170. This analysis requires the court to "determine whether it can coherently manage the class in a manner that will not prejudice any party," *Mueller,* 2002 WL 35669766, at *9, keeping in mind "the very real possibility that the unique circumstances surrounding one or two Plaintiffs could bias the jury" in its assessment of other Plaintiffs' claims. *Id.* at *25. It would be unfair to IKEA for this matter to proceed to trial on a collective basis.

Given the various unique factual circumstances of the Plaintiffs and the various defenses to liability asserted by IKEA that are not common to all Plaintiffs coupled with the disparate factual and employment settings of individual Plaintiffs, the Court would be forced to hold dozens of mini trials which would create potential unfairness to both Plaintiffs and IKEA. *See Lugo*, 737 F. Supp. 2d at 303 (concluding in an FLSA matter that this factor weighed in favor of decertification because "[i]f the present case were tried collectively and a verdict reached for defendant, this result would be unfair to those plaintiffs who may have been denied pay owed to them . . .; similarly, if a verdict were reached for plaintiffs, this would be unfair to defendant, who would be deemed liable as to the entire collective class when it may not have undercompensated all individual members").

All of the unique factual circumstances and admissions of Plaintiffs matter in these ADEA cases where *Gross* requires a showing of but-for causation. The differences identified by IKEA in its Motions to Decertify must be fully evaluated by the trier of fact to avoid violating the due

process rights of IKEA. *Mueller,* 2002 WL 35669766, at *5 (concluding that failing to permit a defendant from raising particularized defenses would deprive the defendant of the Fifth Amendment right to due process); *Ruehl*, 500 F.3d at 388 n.17 (in so-called "pattern and practice case," noting employers are entitled to assert that challenged employment decisions were made for reasonable factors other than age); *see also Prise*, 817 F. Supp. 2d at 677 (decertifying FLSA collective because "various defenses to liability asserted by [the defendant] that are not common to all plaintiffs and the disparate factual and employment settings of individual plaintiffs" would cause the court to hold multiple "mini-trials on liability, which would create potential for unfairness to plaintiffs and defendant"); *Martin v. Citizens Fin. Grp., Inc.*, No. 10-260, 2013 WL 1234081, at *8 (E.D. Pa. 2013) (decertifying FLSA collective action because of need to assess manager truthfulness and holding that "fairness and procedural considerations [] require" decertification").

In short, this case would be unmanageable if permitted to proceed as a collective. This is particularly so because the Seventh Amendment requires the same jury to hear the liability and damages portions of this case. *Mueller*, 2002 WL 35669766, at *25-*26 (recognizing the hopeless morass created by seeking to combine a large number of disparate ADEA claims into one trial). *See Miller v. Hygrade Food Prods. Corp.*, 198 F.R.D. 638, 644 (E.D. Pa. 2001) (concluding that the Seventh Amendment requires the same jury to hear the two phases of a bifurcated case). This final factor thus, also, weighs in favor of decertification.

## IV. CONCLUSION

Plaintiffs' claims cannot fairly and manageably be tried as collective actions. No court in this Circuit has let such a case proceed to trial on a collective basis, regardless of whether Plaintiffs pursue a "pattern and practice" theory of discrimination. The Court must decertify these cases.

Respectfully submitted,

*/s/ Brandon R. Sher*

Paul Lancaster Adams, Esq.
Brandon R. Sher, Esq.
Jennifer G. Betts, Esq.
Emily Santoro, Esq.
Chris R. Pace, Esq. (Admitted *Pro Hac Vice*)
John G. Stretton, Esq. (Admitted *Pro Hac Vice*)
Thomas A. Lidbury, Esq. (Admitted *Pro Hac Vice*)
**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, PC.**
1735 Market Street, Suite 3000
Philadelphia, PA 19103
(215) 995-2840 Telephone
(215) 995-2801 Facsimile
pladams@ogletree.com
brandon.sher@ogletree.com
jenn.betts@ogletree.com
emily.santoro@ogletree.com
chris.pace@ogletree.com
john.stretton@ogletree.com
thomas.lidbury@ogletree.com

Date: July 2, 2024