**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WILLIAM V. ANTONELLI, JR.,<br>*Plaintiff*,<br>v.<br>IKEA HOLDINGS US, INC. *et al.*,<br>*Defendants*. | CIVIL ACTION NO.:<br>2:19-CV-01286-AB |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**CONSOLE MATTIACCI LAW, LLC**

BY: /s/ *Caren N. Gurmankin*
Stephen G. Console
Laura C. Mattiacci
Susan M. Saint-Antoine
Caren N. Gurmankin
Evelyn Kallenbach
Madison Provorny
1525 Locust Street, 9th Fl.
Philadelphia, PA 19102
(215) 545-7676 (phone)
(215) 545-8211 (fax)

Dated: 7/2/2024

*Attorney for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iv

I. INTRODUCTION .......... 1

II. PROCEDURAL BACKGROUND .......... 4

A. Brief Procedural History .......... 4

B. The Sanctions Against IKEA for its Willful and Bad Faith Conduct .......... 6

C. The Parties Each Have Pending Motions Before the Court .......... 8

III. SUMMARY OF FACTS THAT PRECLUDE PARTIAL SUMMARY JUDGMENT .......... 9

A. IKEA'S Conduct Has Prejudiced Plaintiff And Put Its Credibility Squarely In Dispute .......... 8

B. The Court Has Concluded That IKEA's Documents Reflect That It Engaged In Age Discrimination, And IKEA Has Effectively Admitted That It Engaged In Age Discrimination .......... 9

C. A Distinguished Expert Has Concluded That IKEA Discriminated Against Older Employees When Making Promotion Decisions .......... 10

D. IKEA Has An Openly Expressed Corporate Philosophy Of Favoring Younger Employees For Management Positions .......... 10

E. Defendants' Senior Leadership Focused On Promoting And Retaining Younger Talent For The Future of IKEA .......... 11

1. Defendants Assigned Goals To Managers To Increase The Numbers Of Younger Workers In Management And Leadership Roles .......... 12

2. Managers Had Access To The Ages Of Employees .......... 14

3. Defendants' Organization For Growth ("O4G") Reorganization (2016-2017) Was Designed To Remove Older Employees From Management Positions .......... 15

4. IKEA Ignored Complaints Of Age Discrimination And Never Remediated Its Age Discriminatory Conduct .......... 17

5. Defendants Failed To Select Plaintiff For Open Positions For Which He Was Qualified And Instead Selected Younger Employees .......... 18

a. Defendants failed to inform Plaintiff about open positions in the Kitchens Department, for which he had trained and in which he had demonstrated interest ..... 18

b. Defendants failed to select Plaintiff for open Sales Steering and Support Specialist positions to which he applied and was qualified ..... 19

c. Defendants failed to select Plaintiff for the Active Selling Leader position to which he applied and was qualified and instead selected a substantially younger employee ..... 19

IV. ARGUMENT: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED ..... 20

A. Defendants' Motion Addressing Individual Liability Issues Regarding Plaintiff Antonelli Is Not Properly Considered At This Stage Of A Collective Action Where The Jury Has Not Yet Decided Whether A Pattern Or Practice Of Age Discrimination Existed ..... 20

B. Assuming *Arguendo* That The Court May Properly Consider Defendants' Motion At This Stage, Defendants' Motion Should be Denied Because Plaintiff Was Hindered In His Ability to Complete Discovery ..... 22

1. Defendants acted willfully and in bad faith when they violated the Court's April 29, 2022 Order ..... 22

2. Defendants have made material misrepresentations to Plaintiff and to the Court ..... 23

C. Assuming *arguendo* That The Court May Properly Consider Defendants' Motion At This Stage, Defendants' Motion Should Be Denied Because There Is A Disputed Issue Of Material Fact As To Whether IKEA Discriminated Against Plaintiff Because Of His Age ..... 25

1. The credibility of Defendants' witnesses on whose testimony Defendants now rely is squarely in dispute ..... 25

2. There is sufficient evidence of age bias from which a jury could conclude that Defendants failed to promote Plaintiff based on his age ..... 28

3. Plaintiff has set forth record evidence that Defendants discriminated against him prior to the adverse employment action at issue ..... 30

D. Assuming *Arguendo* That The Court May Properly Consider Defendants' Motion At This Stage, Defendants' Motion Should Be Denied Because There Is A Disputed Issue Of Material Fact As To Whether IKEA Retaliated Against Plaintiff Because Of His Complaints Of Age Discrimination....................32

1. Plaintiff has established a causal connection between his complaints and Defendants' adverse employment actions....................33

2. Plaintiff has met his administrative exhaustion requirements in connection with Defendants' removal of his responsibilities following his complaints about age discriminatory comments..............34

V. CONCLUSION....................36

## Table of Authorities

**Cases** **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ..................................................................................... 20

*Andrews v. City of Philadelphia*,
895 F.2d 1469 (3d Cir. 1990) ...................................................................... 32

*Brewer v. Quaker State Oil Refining Corp.*,
72 F.3d 326 (3d Cir. 1995) ..................................................................... 23,29

*Butterbaugh v. Chertoff*,
479 F. Supp. 2d 485 (W.D. Pa. March 20, 2007) ........................................35

*Defrehn v. TJX Co.*,
2022 U.S. Dist. LEXIS 133164 (E.D. Pa. July 26, 2022) ..............................23

*Desert Palace v. Costa*,
539 U.S. 90 (2003) ....................................................................................... 25

*Doe v. C.A.R.S. Protection Plus, Inc.*,
527 F.3d 358 (3d Cir. 2008) ........................................................................ 20

*First, Gross v. FBL Fin. Servs.*,
129 S. Ct. 2343 (2009) ..................................................................................27

*Fogarty v. Univ. of Pittsburgh of the Commonwealth Sys. of Higher Educ.*,
2019 U.S. Dist. LEXIS 181837 (W.D. Pa. Oct. 21, 2019) .............................35

*Freeman v. Package Machinery Co.*,
865 F.2d 1331 (1st Cir. 1988) ...................................................................... 29

*Fuentes v. Perkie*,
32 F.3d 759 (3d Cir. 1994) ........................................................................23,30

*Geltzer v. Virtua W. Jersey Health Sys.*,
804 F.Supp.2d 241 (D.N.J. 2011) ..................................................................27

*Gen. Dynamics Land Sys. v. Cline*,
540 U.S. 581 (2004) ..................................................................................... 28

*Glus v. G.C. Murphy Co.*,
562 F.2d 880 (3d Cir. 1977) .........................................................................34

*Hankins v. Temple Univ. (Health Sciences Ctr.),*
829 F.2d 437 (3d Cir. 1987) ....................25

*Hicks v. ABT Assocs., Inc.*,
572 F.2d 960 (3d Cir. 1978) .................... 35

*Jackson v. Lehigh Valley Physicians Group*,
2010 U.S. Dist. LEXIS 40449 (E.D. Pa. April 20, 2010) .................... 29

*Kopko v. Lehigh Valley Health Network*,
776 F. App'x 768 (3d Cir. 2019) .................... 35

*Lauren W. v. Deflaminis*,
408 F.3d 259 (3d Cir. 2007) ....................33

*Lockhart v. Westinghouse Credit Corp.*,
879 F.2d 43 (3d Cir. 1995) .................... 29

*Marra v. Phila*,
497 F.3d 286 (3d Cir. 2007) .................... 34

*McQueeney v. Wilmington Trust Co.*,
779 F.2d 916 (3d Cir. 1985) .................... 24

*Muldowne v. K-Mart Corp.*,
2013 U.S. Dist. LEXIS 164502 (M.D. Pa. Sept. 24, 2013) ....................4

*Ostapowicz v. Johnson Bronze Co.*,
541 F.2d 394 (3d Cir. 1976) .................... 35

*Reeves v. Sanderson Plumbing Products, Inc.*,
530 U.S. 133 (2000) ....................24

*Scott v. Harris*,
550 U.S. 372 (2007) .................... 24

*Scott v. IBM Corp.*,
196 F.R.D. 233 (D.N.J. 2000) .................... 22, 23

*Sheridan v. E.I. Dupont de Nemours & Co.*,
100 F.3d 1061 (3d Cir. 1996) .................... 24

*Simko v. U.S. Steel Corp*,
992 F.3d 198 (3d Cir. 2021) .................... 34

*Smith v. Pittsburgh Gage & Supply Co.*,
464 F.2d 870 (3d Cir. 1972) ....................20

*St. Mary's Honor Ctr v. Hicks*,
509 U.S. 502 (1993) ....................27

*Stankiewicz v. Pump N' Pantry, Inc.*,
2022 U.S. Dist. LEXIS 1452 (M.D. Pa. Jan. 4, 2022) .................... 30

*Thiessen v. GE Capital Corp.*,
267 F.3d 1095 (10th Cir. 2001) .................... 21,22

*Weldon v. Kraft, Inc.*,
896 F.2d 793 (3d Cir. 1990) ....................32

*Wolf v. Temple Univ.*,
2022 U.S. Dist. LEXIS 66223 (E.D. Pa. April 11, 2022) .................... 32

*Woodson v. Scott Paper Co.*,
109 F.3d 913 (3d Cir. 1997) ....................34

**Statutes**

29 U.S.C. § 621 .................... 28
29 U.S.C. § 623 .................... 8,32
29 U.S.C. § 626 .................... 8

**Other**

Fed. R. Civ. P. 11 .................... 3
Fed. R. Civ. P. 37 ....................6
Fed. R. Civ. P. 56 .................... 20,22

## I. INTRODUCTION

The instant Motion for Summary Judgment filed by Defendants, IKEA Holding US, Inc.; IKEA US Retail, LLC; and IKEA North America Services, LLC ("Defendants" or "IKEA"), on the individual claims of Plaintiff, William Antonelli, *see, generally,* ECF No. 305-2 (Defs.' Br.), should be denied as premature and because IKEA has ignored disputed material facts, including whether IKEA engaged in a pattern or practice of age discrimination.

IKEA's Motion tells this Court, among other things: "Antonelli attempts to create the illusion of age discrimination simply by pointing to his age as the reason for not being selected for the Active Selling Leader ("ASL") position and relying on his subjective belief. The undisputed evidence, however, demonstrates IKEA selected a candidate it believed was more qualified than Antonelli." *Id.* at p. 18. This is astounding, frankly. This Court concluded, after reviewing the smoking gun evidence that IKEA willfully and in bad faith withheld from Plaintiff in violation of the Court's April 29, 2022 Order (*Donofrio*,[1] ECF No. 295): "The documents IKEA belatedly produced in December 2023 **reflected a practice of age discrimination** that was in effect during [January 20, 2016 through June 1, 2019]." *Donofrio*, ECF No. 378 at p. 65. Further, IKEA **admitted during the sanctions proceedings that IKEA had "a goal to increase representation of younger people in management**." *Donofrio*, ECF No. 374 at p. 8.

Furthermore, Plaintiff has set forth ***substantial*** record evidence from two (2) of Defendants' highest-level managers at the Pittsburgh location at which he worked who testified, in detail, to the culture of age discrimination that was established at the very top levels of the company; the corporate focus, and direction to managers across the U.S., on hiring and promoting younger (meaning age twenty-five to thirty) workers into management-level roles; and, the

[1] *Antonelli v. IKEA*, 19-1286, *Donofrio v. IKEA*, 18-599, and *Paine v. IKEA*, 19-723 were consolidated on October 1, 2019. *Donofrio*, ECF No. 90. Unless otherwise specified, citations are to ECF filing numbers in *Antonelli* only.

expressed concern from Defendants' highest-level, corporate managers about the aging workforce at IKEA, virtually all of which Defendants ignored in their present Motion.

IKEA asserts that Plaintiff cannot present "direct evidence" of age discrimination to survive summary judgment. Defs.' Br. at pp.7- 8. That is wrong. IKEA has had a facially age discriminatory diversity policy (on which Plaintiff moved for partial summary judgment and equitable relief, *see* ECF No. 310) and has had an openly declared policy of preferring younger employees for management level positions. And, of course, there is now pending before the Court Plaintiffs' Motion for Final Authorization to Proceed as a Collective Action (ECF No. 311) which, in addition to the Court's May 5, 2024 Order (*Donofrio*, ECF No. 379), is based on ample evidence of IKEA's systemic age discrimination in failing to promote its older employees.

IKEA assumes for purposes of its Motion that Plaintiff can state a *prima facie* case of age discrimination under the familiar *McDonnell Douglas* burden shifting framework for his age discrimination claim based on IKEA's failure to promote him to the ASL position[2] in March 2018 (Defs.' Br. at pp. 9-10) but argues that there is no genuine issue of material fact as to whether its articulated reason for rejecting Plaintiff is pretext. Again, this assertion is both wrong and astounding in light of the evidence already of record in this case. IKEA argues to the Court:

> Similarly, Antonelli cannot establish pretext by pointing to evidence that would allow a factfinder to believe 'that an invidious discriminatory reason was more likely than not a motivating or determinative cause' of the decision not to promote him to the Active Seller Leader position in 2018. … **There is no such evidence in the record**.

*Id*. at p. 12 (case citations omitted, emphasis added). Among many other things, IKEA's US Head of Human Resources ("HR"), Nabeela Ixtabalan, sent an email in January, 2016 directing the

[2] IKEA's Motion ignores its history of denying promotions to Plaintiff Antonelli prior to March 2018. *See* Section III(F)(5)(a-b) below.

recipients, including Recruiters, HR Managers, and Store Managers, to read a) IKEA Group Diversity & Inclusion Approach, which lays out the facially age discriminatory goal to "focus on young potentials" (which, if there were any doubt, its author confirmed means to "promote more young potentials"); and b) the FY US D&I Recap, which states among the US Goals by 2018: "Increase the percentage of coworkers under 34 in salaried exempt positions…" This was IKEA US' FY 18 goal. *Id.* IKEA U.S. locations were aware of these directives and frequently discussed same.

IKEA's Motion also ignores the fact that the Court found that IKEA's willful and in bad faith conduct prejudiced Plaintiff's ability to discover evidence in support of his claims. *Donofrio*, ECF No. 378 at pp. 61-63. The Court specifically found that IKEA's conduct hindered the depositions that were taken. *Id.* Although the Court recognized that the prejudice could be addressed to some extent by Plaintiff's taking additional depositions, IKEA refused Plaintiff's request for dates to do so. (SOAF¶¶ 268-71)[3]

There is a genuine issue of material fact as to whether IKEA has had a common employer practice, or standard operating procedure (other than or in addition to its facially discriminatory diversity policy), to which Plaintiff was subject, of favoring younger employees for leadership development and management level positions. There are also genuine issues of material fact as to whether IKEA rejected Plaintiff for promotion to the position of Active Selling Leader position because of his age and/or in retaliation for complaining of age discrimination.

The credibility of every IKEA witness is squarely in dispute. Furthermore, much of Defendants' arguments in their present Motion relies on and assumes that the deposition testimony of their witnesses (namely Amy Litterini, *i.e.*, hiring manager for the ASL position) is

[3] As described in Section III below, Plaintiff has submitted an accompanying Statement Of Additional Facts ("SOAF") with supporting record citations.

accepted as true[4]; that determination regarding the credibility of the witnesses is ***solely*** the province of the jury at trial in this case. Defendants, the moving parties, cannot rely on their own presentation of evidence where the question of fact at issue turns exclusively on the credibility of their own witnesses. *See, e.g., Muldowne v. K-Mart Corp.,* 2013 U.S. Dist. LEXIS 164502 at *32 (M.D. Pa. Sept. 24, 2013). As such, IKEA's present Motion should be denied.

## II. PROCEDURAL BACKGROUND

### A. Brief Procedural History

Plaintiff filed with the Equal Employment Opportunity Commission ("EEOC") on December 21, 2018 a class pattern or practice charge of age discrimination. ECF No. 1 at ¶27. On March 27, 2019, Plaintiff filed an ADEA putative collection action complaint against IKEA Holding US, Inc.; IKEA US Retail, LLC; and IKEA North America Services, LLC[5] on behalf of himself individually and those similarly situated alleging, *e.g.*, that IKEA's age bias and preference for younger employees is expressed and implemented in its policies and practices, that it communicates to its managers/decision-makers the company's goal of retaining and promoting young employees," that it has since at least January 20, 2016, engaged in a company-wide pattern or practice of age discrimination against its older employees, and that it has since January 20, 2016 denied leadership development opportunities and failed to promote older employees, including himself, because of their age. *See, generally, id*. Plaintiff filed a First Amended Complaint on June 24, 2019 to include claims of retaliation based on Defendants' failure to promote him based on his complaints of age discrimination. *See* ECF No. 15.

---

[4] By way of example only, Defendants argue in their Motion that this Court should grant the same and determine ***as a matter of law*** that Plaintiff was not discriminated against based on his age because Litterini testified that she based her decision "'strictly' on the qualifications of the candidates and if they held IKEA values"; that age was not a factor in the decision-making process; and, that she did not know that the successful candidate for the ASL promotion that Plaintiff was denied was younger than Plaintiff. Defs.' Br. at p. 5.

[5]The *Paine* collective action is brought against the same entities, whereas the *Donofrio* collective action is only against IKEA US Retail, LLC. *See Paine*, ECF No. 1; *Donofrio*, ECF No. 1.

The *Antonelli* Complaint asserted individually and on behalf of similarly situated older employees counts for disparate treatment and disparate impact (since voluntarily dismissed without prejudice)[6] in violation of the ADEA, and a count brought individually only by Plaintiff for retaliation in violation of the ADEA. *Id*. The *Antonelli* Complaint seeks Relief on behalf of all plaintiffs including, without limitation: Declaring the acts and practices complained of to be a violation of the ADEA; enjoining and restraining permanently the violations alleged; awarding compensatory damages to make the plaintiffs whole for past and future economic losses; and granting such other and further relief as this Court deems appropriate. *Id*.

Plaintiff's Complaint includes allegations that IKEA's age bias and preference for younger employees is expressed and implemented in its policies and practices; that IKEA has violated Section 4(a) of the ADEA, 20 U.S.C. § 623(a) (it is not limited to section 4(a)(1)); that IKEA intentionally discriminated against its older employees through "a pattern and practice of age discrimination ..through its policy of promoting younger employees while denying positions to its older employees" and "providing leadership development opportunities to its younger employees while denying such opportunities to it older employees.". *See* ECF No 15 at ¶¶ 30-34, 43-63. Plaintiff asked the Court for declaratory and injunctive relief in addition to an award of monetary damages. *Id*. at p. 25.

On May 15, 2019, the Court conditionally certified the *Donofrio* case."[7] The Court also denied without prejudice IKEA's Motions for Summary Judgment. On January 23, 2020, the

[6] The parties have stipulated to the voluntary dismissal without prejudice of Plaintiffs' disparate impact claims asserted in these cases. *Donofrio* ECF No. 382; *Paine* ECF No. 333; *Antonelli* ECF No. 304.
[7] *See Donofrio*, ECF No. 70 at pp. 2-3 (Court's May 15, 2019 Memorandum citing to the *Donofrio* Complaint).

Court conditionally certified the *Antonelli* collective action based upon the stipulation of the parties.[8] *See* ECF No. 36.

There are twenty-one (21) plaintiffs in *Antonelli*, some of whom are also opt-ins in either or both of the *Donofrio* and *Paine* cases. *See Donofrio*, ECF No. 389-1 at p. 14.

**B. The Sanctions Against IKEA for its Willful and Bad Faith Conduct.**

On May 4, 2023, Plaintiffs filed a Motion for Sanctions against IKEA for its violation of the Court's April 2022 Order pursuant to Fed. R. Civ. P. 37(b)(2) and for spoliation of evidence pursuant to Fed. R. Civ. P. 37(e)(2). *Donofrio*, ECF No. 312. On December 12, 2023 (less than two (2) weeks before the scheduled hearing on the Motion and after the close of discovery), IKEA produced to Plaintiffs 830 documents, including smoking gun documents relating to IKEA's "age-based personnel goals." *Donofrio*, ECF No. 378 (Court's Memorandum on Sanctions) at p. 57. After a two-day evidentiary hearing, the parties submitted proposed findings of fact/conclusions of law and several briefs.[9] At the hearing and in its briefs, IKEA posited that its deletion of emails and late production of the "December documents" was not prejudicial to Plaintiffs because it was cumulative of evidence of age discrimination that it had already produced. IKEA set out in detail and with specific references the many documents IKEA produced which, it contended, already evidenced what was in the FY 16 Recap, which states IKEA's 2018 goal to increase the percentage of younger employees in management positions. (*See* Defendants' Response to Plaintiffs' Breakdown of Attorney's Fees, *Donofrio*, ECF No. 374

[8] The *Paine* collective action was also conditionally certified on this date and by stipulation. *See Paine*, ECF No. 45. The *Donofrio* ADEA collective action was conditionally certified by the Court months earlier, on May 15, 2019. *See Donofrio,* ECF Nos. 70, 71. In doing so, the Court noted, among other things, that Plaintiffs have alleged that IKEA intentionally discriminated against its older employees through "a pattern and practice of age discrimination . . . through its policy of promoting younger employees while denying positions to its older employees" and "providing leadership development opportunities to its younger employees while denying such opportunities to its older employees." *Donofrio,* ECF No. 71 at pp. 2-3.

[9] *See Donofrio*, ECF Nos. 370-377.

at pp. 3-11; Defendants' Proposed Findings of Fact and Conclusions of Law, *Donofrio*, ECF No. 372 at pp. 30-45).

The Court on May 6, 2024, granted Plaintiffs' Motion for Sanctions. *Donofrio,* ECF No. 378, 379. The Court found that IKEA "acted willfully and in bad faith to deprive Plaintiffs of key responsive documents in 2022, and these documents would likely never have seen the light of day had the Court not scheduled an evidentiary hearing on Plaintiffs' Motion for Sanctions." *Donofrio*, ECF No. 378 at p. 58. The Court found that IKEA's deletion of the emails of Nabeela Ixtabalan, Sari Brody, Kristie Olafsson, and Christof Stein prejudiced Plaintiffs in the presentation of their cases. *Donofrio*, ECF No. 378 (Court's May 6, 2024 Memorandum on Plaintiff's Motion for Sanctions) at pp. 51-45. The Court also found that IKEA's conduct prejudiced Plaintiffs' ability to conduct written discovery on IKEA's age-based personnel goals and hindered the depositions that were taken. *Id*. at pp. 61-63. In discussing the appropriate sanction, **the Court concluded: "The documents IKEA belatedly produced in December 2023 reflected a practice of age discrimination by IKEA that was in effect during the class period,** and it is therefore appropriate for the facts established by those documents to form the basis for the sanction here." *Id*. at p. 65 (emphasis added). The Court ordered: "It is established for purposes of second stage certification that IKEA had in place a common employer practice, or standard operating procedure, to which its U.S. retail employees were subject, of favoring younger employees for leadership development and management level positions." *Donofrio*, ECF No. 379.

Although the Court recognized that the prejudice could be addressed to some extent by Plaintiff's taking additional depositions, IKEA refused Plaintiff's request for dates to do so and said that Plaintiff would need to file a motion with the Court to be able to do so. (SOAF¶¶ 268-

71) Plaintiff intends to move the Court for leave to take the depositions before trial and, at trial, to ask for an adverse inference instruction.

**C. The Parties Each Have Pending Motions Before the Court.**

On June 3, 2024 (per the Court's Order, *Donofrio*, ECF No. 379), Plaintiffs filed under the same caption in *Donofrio, Paine* and *Antonelli*:

- Motion for Partial Summary Judgment and Equitable Relief in *Donofrio*, *Paine* and *Antonelli* (*Donofrio*, ECF No. 388) on the grounds that IKEA's facially age discriminatory policy of "age distribution, focus on young potentials and 50+" with a goal and plan to increase the percentage of employees under the age of 34 in management positions violated the ADEA, 29 U.S.C. § 623(a) and seeking equitable, including injunctive relief under 29 U.S.C. § 626(b), (c).

- Motion For Final Certification To Proceed As Collective Actions (*Donofrio*, ECF No. 389).

- Plaintiffs' Documented, Itemized Request For Fees And Expenses Incurred In Connection With Their Motion For Sanctions (*Donofrio*, ECF No. 387).

On June 3, 2024, IKEA filed:

- Motion to Exclude the Testimony and Reports of Plaintiffs' Proffered expert under separate caption in *Donofrio*, *Paine* and *Antonelli*.[10] (*Donofrio*, ECF No. 386; *Paine*, ECF No. 338; *Antonelli*, ECF No. 309).

- Motion for Partial Summary Judgment as the Use of The "Pattern Or Practice" Method For Proving ADEA Disparate Treatment Claims" under same caption for all three cases (*Donofrio*, ECF No. 385).

- Motions for decertification under separate caption in *Donofrio*, *Paine*, and the instant one (*Donofrio*, ECF No. 383; Paine, ECF No. 334; *Antonelli*, ECF No. 306).

- Unique Motions for summary judgment under separate captions in *Donofrio, Paine*, and the instant one (as well as in *Branson v. IKEA,* 20-5556, ECF No. 92) (*Donofrio*, ECF No. 384; *Paine* ECF No. 336; Defs.' Br.).

[10] The Court's Order, and the most recent Scheduling Order that preceded it (*Donofrio*, ECF No. 310), did not set pretrial deadlines beyond dispositive motions, including for *Daubert* motions.

IKEA did <u>not</u> file a motion for summary judgment arguing there was no disputed issue of material fact as to whether it has engaged in a pattern or practice of age discrimination.

## III. SUMMARY OF FACTS THAT PRECLUDE PARTIAL SUMMARY JUDGMENT[11]

### A. IKEA'S Conduct Has Prejudiced Plaintiff And Put Its Credibility Squarely In Dispute.

Throughout litigation, IKEA tried to cover up evidence of its age bias by falsely denying for years the existence of age goals, withholding "smoking gun" evidence of its age bias in violation of Court Order, and, indeed, making misrepresentations to the Court. (SOAF¶¶ 252-56) Plaintiff has been significantly prejudiced by Defendants' conduct. (SOAF¶¶ 252-56) The Court found that IKEA acted willfully and in bad faith, and that it lacked candor in its communications with the Court. (SOAF¶¶ 252-56) IKEA's past history of dishonesty with Plaintiff and the Court calls into serious question the credulity of everything IKEA represents to the Court its credibility for purposes of the present motion. (SOAF¶¶ 252-56)

### B. The Court Has Concluded That IKEA's Documents Reflect That It Engaged In Age Discrimination, And IKEA Has Effectively Admitted That It Engaged In Age Discrimination.

In its Memorandum on its Sanctions Order, the Court concluded that the documents IKEA "[t]he documents IKEA belatedly produced in December 2023 reflected a practice of age discrimination by IKEA that was in effect during the class period…"). (SOAF¶ 257) IKEA has itself admitted that it adopted age-based personnel goals during the period from January 20, 2016 through June 1, 2019 and that its high ranking HR professionals tracked diversity metrics in

[11] Plaintiff has submitted an accompanying Response To Defendants' Statement Of Undisputed Material Facts ("PRDF") and a Statement Of Additional Facts That Preclude Partial Summary Judgment ("SOAF"), both of which contain specific citations to supporting evidence in the record and are incorporated herein. The material facts pertaining to Plaintiff's claims are summarized below, with citations to the paragraphs of PRDF, SOAF, or directly to the record.

connection with a goal to increase representation of younger people in management. (SOAF¶¶ 258-60)

**C. A Distinguished Expert Has Concluded That IKEA Discriminated Against Older Employees When Making Promotion Decisions.**

David Neumark, Ph.D. is a Distinguished Professor of Economics at the University of California – Irvine and is an expert labor economist. (SOAF¶ 261) He reviewed the personnel and application data produced by IKEA in these collective actions and concluded: "[I]t is my professional opinion to a reasonable degree of certainty as a labor economist that the statistical analysis (and data reviewed) supports the conclusion that IKEA discriminated against older retail workers in the United States, based on their age, when making promotion decisions from January 1, 2016, to June 30, 2019. (SOAF¶ 261; Ex. W (Dr. Neumark's report))

**D. IKEA Has An Openly Expressed Corporate Philosophy Of Favoring Younger Employees For Management Positions.**

The self-described "essence of [IKEA's] values" that IKEA says will never change are expressed in The Testament of a Furniture Dealer and its accompanying "A Little IKEA Dictionary," both of which were written by IKEA's founder and distributed to every IKEA employee upon the start of their employment. (SOAF¶¶ 262-63) The Testament of a Furniture Dealer calls "experience" a "dangerous word" and says "we have to . . . give young co-workers responsibility." (SOAF¶ 264) A Little IKEA Dictionary states:

> We often must have the **courage to promote people who show potential** even before they have any documented experience. We encourage those who have the desire and the courage to take responsibility when given a relatively free hand. We could give many examples of **young co-workers** who have taken responsibility and reached a position which would never have been possible in any other company.

(Emphasis added.) (SOAF¶ 265)

IKEA has expressed that it was concerned about biases <u>against younger employees</u> and that a "glass ceiling" kept them from getting promoted. (SOAF¶ 266)

### E. Defendants' Senior Leadership Focused On Promoting And Retaining Younger Talent For The Future Of IKEA.

Defendants' present Motion ignores virtually all of the ***substantial*** record evidence of age discrimination at the company's highest levels for years (leading up to their failure to promote Plaintiff into positions for which he was qualified and to instead select younger employees). *Compare* Defs.' Br. *with* SOAF; PRDF. Two of the highest-level managers at the Pittsburgh location at which Plaintiff worked testified, in detail, to the culture of age discrimination from the very top levels of the company; the focus on hiring and promoting younger (meaning age twenty-five to thirty) workers into management-level roles; and the expressed concern from corporate about the aging workforce at IKEA. (SOAF ¶¶ 6-37, 41-120, 127-37, 140-45) Terri Noble was the Store Manager, and the highest-level employee, at the Pittsburgh location from 2007 through 2017 (when she was terminated at age fifty-four). (SOAF ¶¶ 1-3) Susan Nasci was the Store HR Manager at the Pittsburgh location from 2000 through 2017 (when she was terminated at age sixty-one).[12] (SOAF ¶¶ 4-5) Both Nasci and Noble were members of the Store Steering Group ("SSG"), the team of each store's highest-level managers. (SOAF ¶¶ 3-4) According to Noble and Nasci, IKEA's age discriminatory conduct, including goals of promoting younger workers, was rampant and blatant in the years leading right up to their respective terminations in March 2017. (SOAF ¶¶ 96, 100, 131-32)

[12] Both Noble and Nasci, who were terminated along with a fifty (50)-year-old Manager at the Pittsburgh location, testified that they believed that age was a factor in their terminations, generally because of the company shift over the few years prior to their terminations to focusing on promoting younger workers into management-level positions and the corporate concerns over the company's aging workforce.

According to Noble, there was a change in the company in the 2015-2016 time frame in which corporate was pressuring the Store Managers across the U.S. to ensure they had "young talent" to secure the future of IKEA on their management teams. (SOAF ¶¶ 12-18, 20-23) She testified this shift in focus was driven by Country HR Manager Nabeela Ixtabalan, and continued through her termination (in March 2017). (SOAF ¶¶ 18-19) Defendants' top-level executives repeatedly expressed concern during meetings about the company's aging workforce. (SOAF ¶¶ 26, 35-37, 73, 130-132)

Noble was in meetings (in 2015-2016) with other store managers and store HR managers across North America when Ixtabalan talked about the shift from senior talent to younger talent to secure the future of IKEA. (SOAF ¶¶ 20-25) In succession planning meetings that Noble and Nasci had with IKEA Presidents (Mike Ward, and then Rob Olson), and Cathy Blair, U.S. Talent and Succession Manager, a topic of discussion was the company's aging population and the need to focus on developing and retaining younger talent. (SOAF ¶¶ 26-27) Nasci confirmed that in those succession planning meetings, facilitated by Blair, she and Noble went over a spreadsheet that included each employee, where they were in their roles, their next steps, whether there were named successors, and the ages of each employee. (SOAF ¶ 26) Based on the messaging in these meetings with senior leadership, and the way that her performance was measured, Noble believed that ***Defendants*** believed that older employees were going through the motions and that people in their twenties (20s) had fresh ideas. (SOAF at ¶¶ 103-04, 145)

**1. Defendants Assigned Goals To Managers To Increase The Numbers Of Younger Workers In Management And Leadership Roles.**

The increased focus on younger workers was not just a discussion point, but was, undisputedly, put into action in Pittsburgh. (*See, e.g.,* ¶¶ 24, 89-93) Noble understood from the meetings with Ixtabalan, as well as other store managers and store HR managers, that the store

managers were required to ensure that there were more younger people being hired and promoted into manager and leadership positions at the store. (SOAF ¶¶ 20-21) She heard from Ixtabalan and other top leadership at the Service Office (corporate headquarters), including Blair and Sari Brody, Global Head of Equality, Diversity, and Inclusion, that Store Managers' success would be measured on ensuring there were more younger people being hired and promoted into manager and leadership positions. (SOAF ¶¶ 16-17, 22-23, 25)

According to Nasci, Noble attended meetings with Store Managers from around the world in which documents, including store goals, were introduced. (SOAF ¶ 87) Noble would bring back the documents to the Pittsburgh store to review the same. (*Id.*) One document Noble brought back from one of those Store Managers' meetings was titled, "US Goals," which set forth age distribution and succession goals for SSG members to hire younger external candidates and identify younger Coworkers as "high potential," all of whom could be developed and promoted into management positions, allowing for the retirement of older Coworkers. (SOAF ¶¶ 88-91). SSG members and other Store HR Managers who saw this document, and who had to track age in connection with their successors, believed that Defendants' "US management team created an atmosphere where older managers were disfavored and younger managers, employees, and applicants were given preference based on their age."[13] (SOAF ¶ 98) According to Nasci, it was a "bit of a shock" to her and other store HR managers with whom she spoke "how blatantly obvious it was they were communicating the need to hire younger people, way younger, 25 to 30." (SOAF ¶ 100) As Nasci described, "it was all of the store steering group's

[13] As part of Noble's job, she conveyed to the leadership team in the Pittsburgh store the directive to hire and promote younger people and focus on younger people for managerial and leadership positions. (SOAF ¶¶ 39-40)

responsibility to develop talent and to look for ***young***, bright, enthusiastic employees who wanted to grow, stay, grow and stay with the company." (emphasis added).[14] (SOAF ¶ 94)

These goals were in place at least through the time that Noble and Nasci were terminated in March 2017. (SOAF ¶¶ 96, 101) Nasci did not recall ever being told that the US goal to put successors in place under twenty-five (25) and under thirty (30) on the Steering group were no longer in effect. (SOAF ¶ 96) Nasci sent demographic information, including birth years for each employee, as well as a Fiscal Year 2015 goal of the Pittsburgh location stating "[w]e will remain focused on developing our younger co-workers into the future leaders of IKEA," to a member of the U.S. HR team who was responsible for recruitment and succession strategies and initiatives. *Id.* at ¶ 30. Demographic data was also stored on a "common drive" and accessible to, *inter alia*, Store Managers, Store HR Managers, the succession team, and anyone on management review calls. *Id.* at ¶ 31. Defendants tracked the age distribution of the employees in each store. *Id.* at ¶¶ 41-42, 99, 114, 116-17, 258, 267.

**2. Managers Had Access To The Ages Of Employees.**

Noble and Nasci both had access to the ages of employees in the Pittsburgh store. *Id.* at ¶¶ 106-12. In particular, as Store Manager, Noble had access to the ages of employees in connection with promotion decisions, and she and Nasci had final approval of those decisions. *Id.*; *see also id.* at ¶ 118. According to Noble, SSG members had the same access that she did to the ages of employees in the store, including the Coworkers. *Id.* at ¶ 113. Under Noble, the Pittsburgh store reported the ages of their managers to the corporate office, including employees who were being promoted. *Id.* at ¶ 111. Noble testified that one of the things that she looked at in

[14] Nasci testified to "a lot of recruiting going on on [college] campuses trying to find talent" among recent graduates who were typically "23 to 24 years old." She was not aware of any corporate or US goals to put employees over forty (40) or over fifty (50) into management level or Steering Group positions. (SOAF ¶92)

connection with employment decisions and consideration of candidates was, based on what corporate was telling her, the age of the employee. *Id.* at ¶¶ 80, 115.

### 3. Defendants' Organization For Growth ("O4G") Reorganization (2016-2017) Was Designed To Remove Older Employees From Management Positions.

The Organization For Growth ("O4G") restructuring/transformation (that was introduced in the Fall 2016) was designed to further accomplish the company's age-based goals. *Id.* at ¶¶ 120, 123. O4G was an initiative involving a change in management approach and resulted in some tasks being removed from the stores and being assigned to the regional offices, eliminating certain positions in the stores. *Id.* O4G was implemented by Country HR Manager Ixtabalan (who sent the January 2016 email referenced above regarding IKEA's facially discriminatory goal to "focus on young potentials" and who, according to Pittsburgh Store Manager Noble, really shifted the company's focus to young talent). *Id.* at ¶¶ 18-2320, 121. Ixtabalan was ultimately responsible for the implementation of O4G; she was the champion of O4G and "really the brains behind the reorganization and leading it." *Id.* at ¶ 121.

According to Noble and Nasci, it was "heavily implied" that Defendants were focused on young talent as the future of the company in connection with the O4G rollout and that, as part of O4G, IKEA was not going to consider employees in their forties and fifties for promotion and wanted people in their twenties. *Id.* at ¶¶ 127-29, 134-35. Noble discussed the same with other store managers who all agreed Defendants were going down a dangerous path. *Id.* at ¶ 135. By "dangerous path," Noble testified that she meant,

> A: Well, . . . because ageism, it shouldn't be a thing, just like sexual discrimination or gender discrimination. I mean, we just all knew that it was wrong, but the way that it was presented was very convincing, you know. It's about, you know, this company was built on people that had tenure. We now really needed, all of us were going to retire at some point soon, we needed to pass on that knowledge to

> the young folks and, you know, we needed to start to cultivate that kind of young talent, and that's not a bad thing.
>
> I mean certainly, yes, we absolutely felt like, you know, that is absolutely the right thing to do, of course it was the right thing to do, however, the way they played it out, um, was a different story.

Q: Can you tell me what you mean by that?

A: Well, I mean that the, you know, we're talking about a company that went from admiring, when we used to start meetings at IKEA, we would first go around the table and we would talk about our careers and, you know, there was a lot of oo's and ah's when you would have people that had had a 35, 40-year career with IKEA. I started as a cart guy, I started in food service and now I'm the, you know, CEO of the company. There was a lot of that. There was a lot of admiration for these folks including myself who had focused on and really helped develop IKEA in our various different countries.

> That was no longer, that – that was no longer seen as, if you said you were with the company for 30 years, . . . I felt that it was more of a detriment to me than a bonus that I had had all of this skill and experienced. It's like, oh, well, that's nice, push aside, . . . what can this person bring to the table, you know. And I understand there needs to be a balance, but I just felt that a lot of us after, you know, being admired and promoted because of our skill and our ability and our loyalty to the company, I felt that that change was so drastic.
>
> When I say it was threatening, that's how I really felt. I felt quite threatened by it and I never felt threatened. I always felt competent, capable, embraced and had a good reciprocal relationship with IKEA and good dialogue with IKEA, but I did not feel it was of 2015, '16, '17 for sure. It was a completely different animal than I was used to.

*Id*. at ¶ 136.

In connection with the O4G rollout, Noble held meetings at the Pittsburgh store to discuss the same. *Id*. at ¶ 140. When she said that it was a good opportunity for younger people to have more chances to move up in the company, Plaintiff (forty-six years old at that time, around January 2017) asked her whether someone in their mid-40s who was not able to relocate would still have opportunities to move up in the company. *Id*. at ¶¶ 141-44. Noble responded to Plaintiff that Defendants were not going to look at people in their forties and fifties because

they're just going through the motions and that they wanted to look at people in their twenties with fresh ideas. *Id*. (Nasci had heard Noble make similar comments. *Id*. at ¶ 145.)[15]

### 4. IKEA Ignored Complaints Of Age Discrimination And Never Remediated Its Age Discriminatory Conduct

IKEA failed to take any steps to remedy and/or correct age discriminatory conduct. Plaintiff complained to multiple managers, including Amy Litterini (his then-supervisor), about Noble's comments in the O4G meeting that Defendants were not going to look at people in their forties and fifties because they're just going through the motions and that they wanted to look at people in their twenties with fresh ideas.[16] (SOAF ¶¶ 148, 156-63) He specifically told Litterini that the same made him feel as though he would not have chances for advancement at Defendants. (SOAF ¶¶ 157, 165) Litterini admitted that (at some point prior to Noble leaving in March 2017) Plaintiff complained to her about Noble's comment about Defendants only being willing to promote younger employees. (SOAF ¶¶ 170, 172)

Litterini, who told Plaintiff that she had heard Noble make similar comments previously about Defendants only being willing to promote younger employees (and who said that she had heard that from other employees at the store), did not take any action regarding Plaintiff's complaints other than (according to her) talking to Noble about the same. (SOAF ¶¶ 164, 166, 168, 176-77) She acknowledged that she should have done so.[17] (SOAF at ¶¶ 172-75) Despite

---

[15] Consistent with Noble's and Nasci's testimony about the purpose of O4G, in Spring 2017, Plaintiff saw an article posted on IKEA's intranet, IKEA Inside, and written by a manager in the Service Office about the O4G reorganization. *Id*. at ¶ 138. The article included that the company wanted its leadership to become younger during the O4G reorganization. *Id*.

[16] All of management at the store, not just the SSG, was aware of and discussing (for quite some time, according to Litterini) Noble's comment about IKEA only being willing to promote younger employees. *Id*. at ¶ 178.

[17] No one at Defendants ever asked Litterini about Plaintiff's allegations in his complaint about Noble's comments and his complaints about the same to Litterini. (SOAF at ¶ 173) She was never disciplined or issued any kind of write-up for failing to discuss Plaintiff's complaint about Noble's comment (with anyone other than Noble) and for failing to document the same. (SOAF at ¶ 175)

that, according to Litterini, all of management (and not just SSG members) were aware of, and discussing, Noble's comments about Defendants' intentions, Defendants failed to take action regarding the same. *Id*. at ¶¶ 178-79. No one from IKEA talked to Plaintiff about the allegations that he made in his EEOC Charge or his Court Complaints. (SOAF at ¶ 250) To Plaintiff's knowledge, no one from the company has sent out any type of communication or done anything to address the allegations of age discrimination that Plaintiff and the other named Plaintiffs have made in these cases. (SOAF at ¶ 251)[18]

**5. Defendants Failed To Select Plaintiff For Open Positions For Which He Was Qualified And Instead Selected Younger Employees[19]**

**a. Defendants failed to inform Plaintiff about open positions in the Kitchens Department, for which he had trained and in which he had demonstrated interest.**

Plaintiff had expressed interest to Litterini in advancing his career with Defendants, in particular in the Kitchens Department that she managed. (PRDF at ¶ 23; SOAF at ¶¶ 197, 200-204). He worked to develop his skills beyond his then-position, and he understood from Litterini that she was working with him to develop a position for him in Kitchens. (SOAF at ¶ 199) Despite the same, in Spring 2017, Litterini withheld from Plaintiff the fact that there were open Kitchen Planner positions to which he could apply. (SOAF at ¶ 200) To Plaintiff's information and belief, Defendants hired substantially younger employees to fill those Kitchen Planner positions.

---

[18] It was not just Plaintiff's age discrimination complaints that Defendants ignored. No one at Defendants ever talked to Noble about a complaint that was made in February 2017, while she was still employed, alleging that she did not plan to bring anyone over the age of forty into management, or even informed her of the same. (SOAF at ¶182)

[19] Plaintiff was born in October 1970. (SOAF ¶ 183) He started working at IKEA's Pittsburgh store in June 2015. (SOAF ¶ 184) Plaintiff consistently demonstrated excellent performance, including focusing, always, on the customer; establishing "great relationships" with everyone in the store; and, demonstrating a willingness "to help anyone." (SOAF ¶¶ 185-96. According to Amy Litterini, Plaintiff's supervisor in 2016/2017, Plaintiff performed well, and he was the kind of employee whom IKEA would want to invest in and develop. (SOAF ¶ 196)

**b. Defendants failed to select Plaintiff for open Sales Steering and Support Specialist positions to which he applied and was qualified.**

On September 23, 2017, Plaintiff applied for the position of Sales Steering and Support Specialist ("SSSS"), for which he was, undisputedly, qualified. (SOAF at ¶ 208). Plaintiff was ultimately interviewed by the hiring manager for the same. (SOAF at ¶¶ 210-11)

Defendants rejected Plaintiff for the three (3) open SSSS positions. *Id.* at ¶ 212. They filled the same with two (2) substantially younger employees (twenty-one (21) and twenty-four (24) years younger than Plaintiff) and one (10 employee who, while similar in age to Plaintiff, had had never complained of age discriminatory comments at IKEA, unlike Plaintiff. *Id.* at ¶¶ 213-17. When Defendants informed Plaintiff that he was not selected for any of the SSSS positions, he questioned whether the same was because of his age, given Noble's comments (earlier in 2017). *Id.* at ¶ 221. While the hiring manager denied the same,[20] he did inform Plaintiff about employees who were on Defendants' "radar" for management-level jobs and who were younger. *Id.* at ¶¶ 221-22. Plaintiff also complained to Litterini that he was not selected based on his age. *Id.* at ¶ 223. Again, no one at Defendants took action to investigate Plaintiff's expressed concerns that he was not selected for any of the SSSS jobs based on his age. *Id.* at ¶ 224.[21]

**c. Defendants failed to select Plaintiff for the Active Selling Leader position to which he applied and was qualified and instead selected a substantially younger employee.**

---

[20] It is incredible that the hiring manager would have been unaware of Noble's comments that IKEA did not want to promote employees in their forties (40s) and fifties (50s) and that they would look at people in their twenties (20s) with fresh ideas given Litterini's testimony that all of management at the store, not just the SSG, was aware of, and discussing, the same. *Id.* at ¶ 178.

[21] Plaintiff also complained to another management-level employee (either at the Pittsburgh store or at the service office) that he was being passed over based on his age and his complaints of discrimination. Again, Defendants failed to take any remedial and/or corrective action regarding the same. As Plaintiff testified, his complaints were not going to change anything "because I felt that the bias was coming from higher up." (SOAF at ¶¶ 247-249)

In March 2018, Plaintiff applied to the Active Selling Leader position. *Id.* at ¶ 225. According to the hiring manager, he was qualified for the same. *Id.* at ¶¶ 226, 228. Yet, IKEA rejected him and selected instead a thirty (30)-year-old employee[22] whose "energy and drive" was admired by the senior recruiter who conducted the initial interview.[23] *Id.* at ¶¶ 232, 234-35.

## IV. ARGUMENT: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

Summary judgment under Fed. R. Civ. P. 56 may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). If there are any genuine issues of material fact such that a reasonable jury could return a verdict for the plaintiff, summary judgment should be denied. *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008).

At the summary judgment stage, the role of the trial judge is to determine whether or not there is a genuine dispute of material fact, as "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). On a motion for summary judgment, a "district court must resolve all inferences, doubts, and issues of credibility against the moving party." *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 874 (3d Cir. 1972) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970)).

### A. Defendants' Motion Addressing Individual Liability Issues Regarding Plaintiff Antonelli Is Not Properly Considered At This Stage Of A Collective Action Where The Jury Has Not Yet Decided Whether A Pattern Or Practice of Age Discrimination Existed.

[22] That employee had been identified as "high potential." *Id.* at ¶ 234.
[23] Senior Recruiter Amy Haggblom testified that she was aware of the general proposition that younger people have more energy, or are more energetic, than older people. *Id.* at ¶ 233.

Plaintiff's Complaint alleges that IKEA engaged in a pattern or practice of age discrimination against him and older Coworkers through its policy of promoting younger employees while denying positions to its older employees, and that IKEA engaged in a pattern or practice of age discrimination against Plaintiff and older Coworkers through its policy of providing leadership development opportunities to its younger employees while denying such opportunities to its older employees.

A motion for summary judgment addressing whether Plaintiff is entitled to relief is not properly considered at this stage of the litigation in light of Plaintiffs' pending Motion For Final Certification To Proceed As Collective Actions (*Donofrio*, ECF No. 387), as well as their Motion For Partial Summary Judgment And Equitable Relief (ECF No. 388). *See, e.g., Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1109 (10th Cir. 2001) (questioning whether it is proper for a court to consider summary judgment motions regarding second stage issues (*i.e.,* whether individual plaintiff is entitled to relief) before resolving pattern or practice issues). Plaintiff has set forth compelling basis for the Court to grant both of Plaintiffs' Motions.

The Court in *Thiessen* explained that in the first stage of a pattern or practice case, plaintiff's burden is to demonstrate that unlawful discrimination has been a regular policy followed by an employer, and a plaintiff is not required to offer evidence on the individual claim. *Thiessen*, 267 F.3d at 1106 (citing *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 360 (1977)).[24] Therefore, a summary judgment motion during the first stage of a pattern or practice collective action may focus solely on whether there is sufficient evidence demonstrating that the defendant had in place a pattern or practice of discrimination during the relevant time period. *Id.*

[24] In a pattern or practice case, if a plaintiff meets its burden, there is a rebuttable presumption that the defendant discriminated against the individual plaintiff. If a plaintiff cannot establish a pattern-or-practice of discrimination, then the plaintiff may still prove his case using individual methods of proof, including the familiar *McDonnell Douglas* burden shifting framework. *Thiessen*, 267 F.3d at 1106.

at 1109 (citing *Teamsters*, 431 U.S. 357-61). Here, Defendants have made no argument that they are entitled to summary judgment on the pattern or practice aspect of Plaintiff's Complaint.

The Court in *Thiessen* further held that even assuming *arguendo* that Defendants' Motion may properly be considered, it would be improper to analyze it under the familiar *McDonnell-Douglas* burden shifting framework. *Id.* Instead, it would have to be considered "under the presumption that (1) defendant[] had in place a pattern or practice of discrimination, and (2) all employment decisions regarding the class plaintiffs were made pursuant to that pattern or practice." *Id.* Defendants' present motion fails to assess Plaintiff's claim under this framework. Under the proper framework at this stage, it must be presumed that Defendants' decision to deny Plaintiff promotion to the ASL position was made pursuant to its pattern or practice of age discrimination. IKEA's present motion is premature and should be denied.

### B. Assuming *Arguendo* That The Court May Properly Consider Defendants' Motion At This Stage, Defendants' Motion Should Be Denied Because Plaintiff Was Hindered In His Ability To Complete Discovery

#### 1. Defendants acted willfully and in bad faith when they violated the Court's April 29, 2022 Order

IKEA's misconduct during litigation, including its refusal to present witnesses for depositions and its spoliation of evidence, is evidence of pretext that precludes summary judgment. *See* Fed. R. Civ. P. 56 (d)(1) ("If a nonmovant shows . . . that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may . . . deny it":); *Scott v. IBM Corp.*, 196 F.R.D. 233, 246 (D.N.J. 2000) (denying a motion for summary judgment after finding the company had destroyed documents, "giv[ing] rise to a 'spoliation inference' which could be found by a reasonable jury to cast doubt on [the defendant's] proffered legitimate reasons for discharge, and thus establishing pretext for both plaintiff's Title VII and ADEA claims," without imposing further sanctions since "a reasonable

factfinder could also conclude that the absence of these documents is innocent"); *see also Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995) ("[T]he trier of fact generally may receive the fact of the . . . nonproduction or destruction [of relevant evidence] as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him."); *Defrehn v. TJX Co.*, 2022 U.S. Dist. LEXIS 133164, *7-8 (E.D. Pa. July 26, 2022) (in a slip and fall case, summary judgment was denied after the defendant store failed to preserve surveillance video that would have established its notice of the spill, a material fact relevant to the plaintiff's negligence claim).

Importantly, in *Scott*, the Court found "that a jury could find pretext" even where "there [wa]s no evidence that [the defendant's] conduct in any way hindered plaintiff's ability to bring this suit." 196 F.R.D. at 249-50. Here, the Court has already found just that, particularly with regard to how incomplete discovery hindered Plaintiff's ability to take depositions. *See Donofio*, ECF No. 378 at pp. 53-55, 62-63. In further contrast to *Scott*, here, the Court has already issued sanctions to IKEA for "gross[] negligen[ce] in its deletion of the four mailboxes and . . . [the] significant prejudice [resulting] from the deletions," as well as "IKEA's conduct and strategy of delay and obfuscation since . . . January 2023." *Id.* at p. 64. Such a finding permits the Court to deny Defendants' present motion and, consequently, allow Plaintiff to present IKEA's misconduct throughout litigation to a jury as circumstantial evidence of its desire to cover up its age discriminatory animus.

**2. Defendants have made material misrepresentations to Plaintiff and to the Court**

Other evidence of pretext precluding summary judgment includes introducing evidence from which a jury could reasonably conclude that the employer's proffered reason is a fabrication. *See Fuentes v. Perkie*, 32 F.3d 759, 763 (3d Cir. 1994). Thus, evidence of an

employer's lies, or evidence that calls into question the truthfulness of an employer, precludes summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000) (an employer's dishonesty about material facts can be considered by the factfinder as affirmative evidence of guilt); *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 921-22 (3d Cir. 1985) (internal quotations omitted) ("It has always been understood – the inference indeed is one of the simplest in human experience – that a party's falsehood or *other fraud* in the preparation and presentation of his cause, his fabrication or suppression of evidence by bribery or spoliation, is receivable against him as an indication of his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit."); *Sheridan v. E.I. Dupont de Nemours & Co.*, 100 F.3d 1061, 1069 (3d Cir. 1996) (quoting *Binder v. Long Island Lighting Co.*, 57 F.3d 193, 200 (2d Cir. 1995)) ("Resort to a pretextual explanation is, like flight from the scene of a crime, evidence indicating consciousness of guilt, which is, of course, evidence of illegal conduct."). Even if the evidence only demonstrates that the employer's reasoning has no basis in fact, that is sufficient evidence of pretext to preclude summary judgment. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment.").

IKEA denied the existence of age goals in this case for more than five years, before they finally admitted to it during the course of the sanctions proceedings. IKEA has not only made unsupported denials and told a different side of the story than Plaintiff, but it has demonstrated a history of untruthfulness to the Court. *See, generally,* ECF No. 312 (Plaintiff's May 2023 Motion for Sanctions); *see also Donofrio*, ECF No. 378 at p. 64 (where, in issuing sanctions to IKEA, the

Court recognized its decision to do so was, in part, due to IKEA's "lack of candor" which the Court found to be "offensive"). IKEA has demonstrated time and again that what it says is not worthy of credence, and such a lack of credibility must preclude a grant of summary judgment.

### C. Assuming *arguendo* That The Court May Properly Consider Defendants' Motion At This Stage, Defendants' Motion Should Be Denied Because There Is A Disputed Issue Of Material Fact As To Whether IKEA Discriminated Against Plaintiff Because Of His Age.

Defendants have moved for summary judgment on Plaintiff's claim that he was denied promotion to the ASL position because of his age in violation of the ADEA.[25] In an employment discrimination case, the Court must ascertain "whether . . . there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ. (Health Sciences Ctr.)*, 829 F.2d 437, 440 (3d Cir. 1987). Evidence probative of discrimination may be of *any* sort, direct or circumstantial. *See, e.g., Desert Palace v. Costa*, 539 U.S. 90, 99-100 (2003).

Defendants have assumed for purposes of their Motion that Plaintiff establishes a *prima facie* case. Defs.' Br. at pp. 9-10. As such, their Motion is based on their (baseless) argument that Plaintiff cannot demonstrate pretext. Defendants' arguments rely on assertions of fact that are clearly in dispute. Moreover, their assertions are undermined by the record evidence from which a jury could disbelieve Defendants' asserted reasons for failing to promote Plaintiff and conclude that the same was based on his age and/or his complaints of discrimination.

#### 1. The credibility of Defendants' witnesses whose testimony Defendants now rely on is squarely in dispute

[25] Plaintiff's claim regarding Defendants' failure to promote him into the SSSS positions is timely through his participation as an opt-in plaintiff. *See Donofrio*, ECF No. 1. Defendants did not address this claim in their present Motion, and they did not move for dismissal on the individual opt-in claims. *See Donofrio*, ECF No. 384.

Defendants' credibility, and the credibility of the witnesses upon whom they rely, is in dispute. First, discovery has revealed inconsistencies, weaknesses, and implausibilities in Defendants' position (and between the testimony of their own witnesses and documents). By way of example only, according to Defendants, Litterini, the (alleged) "ultimate decision-maker,"[26] based her decision on Plaintiff's interview performance—a factor <u>not</u> listed among the consideration criteria set forth in IKEA's nondiscrimination policy. *Id.* at p. 10. Also, Litterini testified that Plaintiff ***was*** qualified for the ASL position while Defendants (in their verified Answers to Plaintiff's Interrogatories) asserted that Litterini determined that Plaintiff did ***not*** meet the minimum qualifications for the position (as a result of his interview).[27]

Additionally, while Defendants assert that it was Litterini's decision as to who to promote into the ASL position (an asserted based on Litterini's own testimony), Amy Haggblom, the Senior Recruiter involved in the selection process for this position, testified that she had "debrief" conversations with the hiring managers as part of the selection process. (SOAF ¶ 237) Moreover, according to Defendants' corporate representative, and per Defendants' own policies, HR had a role in the selection process. According to Pittsburgh Store Manager Noble and HR Manager Nasci, they had final approval over promotions (at least through their March 2017 terminations. (SOAF ¶ 118)

Second, Defendants, incredibly, ask this Court to conclude as a ***matter of law*** that age was not a factor in the ASL promotion decision because, at least in part, Litterini testified that it was not. When Litterini was asked those questions at her deposition, she denied the same. A jury should determine whether her denials are credible, especially in light of the substantial evidence

[26] Defs.' Br. at p. 10.
[27] Defendants failed to address, or even bring to the Court's attention, this material factual dispute in their present Motion.

undermining her (and IKEA's) credibility, and the substantial evidence of age discrimination at the highest levels of not only Plaintiff's store location, but also the company at large.

If the factfinder disbelieves Litterini and Defendants' other witnesses who deny that age (or Plaintiff's complaints of discrimination) played a role in the decision not to select him for the ASL role, it may conclude on that basis alone that Defendants discriminated and/or retaliated against Plaintiff and find for him. *St. Mary's Honor Ctr v. Hicks*, 509 U.S. 502, 511 (1993). The Court should not conclude as a matter of law that the jury would believe IKEA's and their witnesses' testimony.

Moreover, Defendants' asserted reasons as to why Plaintiff was not selected for the ASL position are in dispute. As noted herein, the SSG was directed, per corporate, to focus on recruiting and promoting younger (*i.e.*, twenty-five (25) to thirty (30) years old) employees. (SOAF ¶¶ 88-91) For FY 2015, goals of the Pittsburgh location included as an action to be taken "remain focused on developing our younger co-workers into the future leaders of IKEA." (SOAF ¶¶ 30, 32) According to Nasci, and Store Manager Noble, the goals of hiring and promoting younger employees, and the focus on young talent, remained in effect at least up until their terminations (in March 2017). (SOAF ¶¶ 96, 101) Defendants were tracking the age distribution of employees in the stores across the U.S. Whether Defendants had already determined that Plaintiff, then-forty-seven (47) years old, was not going to get a management-level position because of his age but gave him an interview anyway (as they had no legitimate reason to deny him the same, especially considering that he was, undisputedly, qualified for the position), is a material fact in dispute. The jury should determine whether, when Plaintiff was interviewed by recruiter Haggblom and Litterini,[28] he was actually in the running for the position. The Court should not accept as a matter

[28] Defendants imply that Plaintiff's testimony that Litterini and the successful candidate, Twyman, were friends and that the same may have influenced Litterini's hiring decision precludes Plaintiff's age discrimination claim in

of law the testimony of Litterini on this point. Even assuming *arguendo* that it had not been predetermined that Plaintiff was not going to get the job, it is a material issue of disputed fact as to whether he was rejected because of his age. Plaintiff has put forth compelling evidence of Defendants' age bias. The Court should not conclude as a matter of law that a jury would believe Defendants' explanation.

**2. There is sufficient evidence of age bias from which a jury could conclude that Defendants failed to promote Plaintiff based on his age**

IKEA, as a company, and from the top down has openly expressed its preference and intent to have younger employees in management positions. IKEA explicitly communicated its age discriminatory "age distribution goals," favoring young employees in management roles; took no steps to take them back or clean up their taint; and tracked them well after the decision to reject Plaintiff for the ASL position was made.

IKEA has communicated to every store its desire as a company to develop "young talent," or "young potentials," in leadership positions. IKEA is a company that openly flouts the ADEA when it advertises in the United States for its "Young Talent" programs. 29 USCS § 623(e). IKEA as a company has violated the ADEA when, under the guise of its "diversity" strategy, it sets goals to have younger employees in management positions and/or promotes age "balance" in the workforce. Affirmative action in favor of the young is the <u>exact opposite</u> of what the ADEA requires. 29 U.S.C. § 621(b) ("It is therefore the purpose of this Act [...] to promote employment of older persons based on their ability rather than age."); *Gen. Dynamics Land Sys. v. Cline*, 540

---

connection with that position. *See* Defs.' Br. at p. 14. Defendants are wrong. First, *Gross v. FBL Fin. Servs.*, 129 S. Ct. 2343, 2351 (2009) did not alter the plaintiff's burden at summary judgment. *See Geltzer v. Virtua W. Jersey Health Sys.*, 804 F.Supp.2d 241 (D.N.J. 2011). Second, Plaintiff has set forth record evidence that undermines Defendants' portrayal of Litterini as the sole and/or lone decision-maker. Third, Plaintiff testified to his belief that Defendants did not select him for this position because of his age and/or his complaints of age discrimination.

U.S. 581, 584, 600 (2004) (the ADEA does not prohibit discrimination against young employees and thus does not prohibit treating older workers more favorably than younger ones).

Courts have consistently found that evidence of bias raises a material issue as to whether reasons given for an adverse action are pretextual, even when comments reflecting age bias were not directly related to the decision pertaining to plaintiff and/or were remote in time from the same, as they reflect corporate culture and atmosphere. *See Ryder*, 128 F.3d at 132-33 (a memorandum by CEO containing ageist comments can make the existence of an improper motive for plaintiff's termination more probable, albeit not being directly related to the termination decision and being made approximately one year after the same); *Brewer*, 72 F.3d at 333-34 (CEOs statements in the company newsletter that new executives were "two of our star young men in their mid-40s [and][t]hat age group is our future," may be considered by the jury as evidence of corporate culture in which the employment decision was made); *see also Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1343 (1st Cir. 1988) (on a post-trial Motion involving evidence of pretext in an ADEA disparate treatment claim, the Court noted that "[t]he inquiry into a corporation's motives need not artificially be limited to the particular officer who carried out the action. . . . The battle plan of the admiral is a valid datum in assessing the intentions of the captain of a single ship in the flotilla."); *Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43, 54 (3d Cir. 1995) ("everybody listens" to the executive of a major company).

IKEA's repeated failure to investigate Plaintiff's complaints of discrimination in the context of its broader pattern of discrimination is also indicative of its discriminatory intent, which is sufficient to defeat summary judgment. *See Jackson v. Lehigh Valley Physicians Group*, 2010 U.S. Dist. LEXIS 40449, *49-50 (E.D. Pa. April 20, 2010) (the Court denied summary judgment on the employee's race discrimination claim after looking at "all of the evidence in context,"

including, the plaintiff's protected characteristic and the employer's "lopsided investigations"—which the Court considered may have been motivated by racial bias—among other facts); *Stankiewicz v. Pump N' Pantry, Inc.*, 2022 U.S. Dist. LEXIS 1452 (M.D. Pa. Jan. 4, 2022) (on a motion to dismiss, the employer's motion to dismiss was denied since its failure to investigate was part of a broader pattern of behavior that could support an inference of discrimination when combined with other evidence).[29]

This evidence of age bias is sufficient basis for a jury to conclude Defendants discriminated against Plaintiff because of his age when they rejected his application for the ASL position.

**3. Plaintiff has set forth record evidence that Defendants discriminated against him prior to the adverse employment action at issue**

Evidence that Defendants discriminated against Plaintiff in the past is also a sufficient basis from which a jury could conclude that Defendants discriminated against Plaintiff because of his age when it rejected his application for the ASL position. As Defendants note in their brief, "to prove invidious intent was a determinative cause of an employer's action, a 'plaintiff can show, for example, that the defendant had previously subjected the same plaintiff to unlawful discriminatory treatment, that it had treated other similarly situated persons not of his protected class more favorably, or that it had discriminated against other members of his protected class.'" Defs.' Br. at p. 13; *Fuentes*, 32 F.3d at 765.

Here, Defendants completely ignore that Plaintiff was denied multiple Kitchen Planner and SSSS positions in 2017 as evidence of their corporate culture of age bias. For the three open SSSS positions, Defendants selected two employees who were substantially younger than Plaintiff (by

---

[29] Defendants not only failed to investigate Plaintiff's complaints of age discrimination, but they also failed to investigate complaints made by other employees. Although a complaint was made alleging that Noble did not plan to bring anyone over 40 years old into management, no one at IKEA ever talked to Noble about the same. (SOAF at ¶ 182)

twenty-one years and twenty-four years).[30] Despite the fact that Plaintiff's manager, Litterini, knew that Plaintiff was interested in advancing in the Kitchens Department (and that, on his own initiative, he worked to develop his skills beyond his then-current position, and that Litterini made him understand that she was working with him to develop a position in Kitchens), she failed to inform him when there were open positions in the Department and, instead, hired substantially younger individuals into the same.

In looking at the ages of those who were selected for those openings—most in their twenties (20s) and thirties (30s)—and Noble and Nasci's testimony about the clear directives from corporate about hiring and promoting younger employees, Defendants' concrete plan to make IKEA's concerning "aging workforce" younger, complete with age-based goals, is clear. Furthermore, Defendants' dismissal in their Motion of Noble's comment to Plaintiff in the O4G meeting (that IKEA was not going to promote employees in their forties or fifties and that the company would look at those in their twenties with the fresh ideas) as nothing more than a "stray remark"[31] is reflective of the corporate culture and age-biased environment in which they failed to promote forty-seven (47)-year-old Plaintiff. Indeed, Defendants' utter failure to address at all in their Motion, or to even to bring to this Court's attention, the substantial record evidence of age bias from the very top levels of the company to which the highest-level manager at Plaintiff's location testified, is alone reflective of its culture of blatant age discrimination.[32] In *Robinson v. Southeastern Pa. Transp. Auth.*, the Third Circuit upheld the District Court's finding that the

---

[30] Defendants filled the third position with an employee who, while just a couple years older than Plaintiff, had, unlike him, never complained of age discrimination; the same is addressed in more detail in connection with Plaintiff's retaliation claims. *See* Section IV(D).

[31] Defs.' Br. pp. 13-14.

[32] By way of example, while Defendants assert to this Court that Litterini "never heard of anyone in IKEA management, nor had she ever been told, that IKEA was only willing to promote younger employees" (Defs.' Br. at p. 14), they fail to mention Litterini's testimony that she had heard from others at the Pittsburgh location that Noble had made a comment about IKEA being only willing to promote younger employees, as well as Plaintiff's testimony that Litterini told him that she had heard Noble make comments about the management team being too old.

employer had discriminated against the plaintiff "over the course of two years," after considering evidence such as the "constant barrage of written and verbal warnings . . ., inaccurate point totalings, and disciplinary action, all of which occurred soon after plaintiff's initial complaints and continued until his discharge [two years later]." 982 F.2d 892, 894-895 (3d Cir. 1993); *see also Andrews v. City of Philadelphia*, 895 F.2d 1469, 1484 (3d Cir. 1990) ("A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario."). Such a pattern of antagonism exists here.

Finally, Plaintiff's testimony as to the comments that he heard and the environment in which he worked alone is sufficient to create a genuine issue of fact. *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir. 1990) (concluding that the district court erred in granting summary judgment because plaintiff's uncorroborated deposition testimony is sufficient to create a genuine issue on the question of discriminatory intent).

### D. Assuming *Arguendo* That The Court May Properly Consider Defendants' Motion At This Stage, Defendants' Motion Should Be Denied Because There Is A Disputed Issue Of Material Fact As To Whether IKEA Retaliated Against Plaintiff Because Of His Complaints Of Age Discrimination

The ADEA prohibits employers from retaliating against employees who oppose unlawful discrimination. 29 U.S.C. § 623(d). "Under the *McDonnell Douglas* framework, a plaintiff asserting a retaliation claim must establish a *prima facie* case by showing: '(1) [that she engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'" *Wolf v. Temple Univ.*, 2022 U.S. Dist. LEXIS 66223, *18-19 (E.D. Pa. April 11, 2022) (quoting *Daniels v. Sch. Dist. Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (internal citations omitted)). Here, Defendants,

wrongly, assert that Plaintiff cannot show a causal connection between his complaints of age discrimination and Defendants' failure to select him for (any of) the SSSS positions or the ASL position. Defendants also (vaguely and wrongly) argue that Plaintiff cannot proceed with his claim that Defendants retaliated against him by removing from his previously assigned responsibilities that would have helped him advance his career at Defendants.

**1. Plaintiff has established a causal connection between his complaints and Defendants' adverse employment actions**

A plaintiff may rely on a "broad array of evidence" to demonstrate a causal link between his protected activity and the adverse action taken against him. *Marra*, 497 F.3d at 302. As IKEA notes in its motion, a plaintiff may establish a causal link in a retaliation case by showing either an unusually suggestive temporal proximity between the protected activity and the retaliatory action, or a pattern of antagonism coupled with timing to establish a causal link. Defs.' Br. at p. 15; *Lauren W. v. Deflaminis*, 408 F.3d 259, 267 (3d Cir. 2007).

Following Plaintiff's protected activity[33], Defendants subjected Plaintiff to ***multiple*** retaliatory acts, including Defendants failing to notify Plaintiff of open positions in the Kitchens Department (despite the involved manager, Litterini, being well aware of Plaintiff's interest in, and training for, the same; Defendants failing to select Plaintiff for open SSSS positions (for which he was undisputedly qualified); Defendants failing to select him for the ASL position (again an act in which Litterini, well aware of his complaints, was involved); and, Defendants removed certain of his job responsibilities (that would help him advance at IKEA). Defendants' position that this Court should find as a ***matter of law*** that they did not retaliate against Plaintiff given these facts is outrageous and should be rejected.

[33] Defendants do not dispute the same. (SOAF ¶¶ 172, 176)

Second, Defendants undisputedly failed to investigate or take remedial and/or corrective action regarding Plaintiff's complaints of discrimination. (SOAF ¶¶ 171, 179-181) Litterini did not even bring the same to the attention of HR, despite her being aware that Noble had previously made comments about the management team being too old. (SOAF ¶ 172) Defendants' failure to investigate Plaintiff's complaints of discrimination demonstrates hostility towards Plaintiff and is evidence from which a reasonable jury could infer causation. *See, e.g.*, *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 304 (3d Cir. 20007) (evidence of hostility suggests a causal link).

The same evidence of pretext set forth in Section IV(C) above applies to the Court's review as to whether a genuine issue of material fact exists that would permit a reasonable juror to disbelieve IKEA's stated reason for denying Plaintiff promotion. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997) (retaliation claims that proceed under a "pretext" theory follow the *McDonnell Douglas* framework).

**2. Plaintiff has met his administrative exhaustion requirements in connection with Defendants' removal of his responsibilities following his complaints about age discriminatory comments.**

In connection with this claim, Defendants wrongly assert that Plaintiff failed to administratively exhaust this claim and to identify the specific actors involved.[34] *Id.* Administrative exhaustion requirements serve to: (1) put the employer on notice that a complaint has been filed against it; and (2) give the administrative agency notice of the alleged violation. *See Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977). Because "[t]he exhaustion inquiry is highly fact specific," where genuine issues of material fact exist, it is a question that should be reserved for a jury not decided on summary judgment. *Simko v. U.S. Steel Corp*, 992 F.3d 198, 207 (3d Cir. 2021). Should the Court decide to undertake the analysis, however, it will look at

[34] Defendants do not dispute that the removal of job duties constitutes an adverse action. Defs.' Br. pp. 17-18.

"whether the allegations in the judicial complaint are reasonably related to those in the administrative charge" and, in doing so, is "not limited to the four corners of the administrative charge." *Kopko v. Lehigh Valley Health Network*, 776 F. App'x 768, 773 (3d Cir. 2019) (citing *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984); *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 967 (3d Cir. 1978); *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 399 (3d Cir. 1976)); *see also Fogarty v. Univ. of Pittsburgh of the Commonwealth Sys. of Higher Educ.*, No. 2:19-CV-00173-MJH, 2019 U.S. Dist. LEXIS 181837, at *12 (W.D. Pa. Oct. 21, 2019) ("courts liberally interpret the administrative filing"); *Butterbaugh v. Chertoff*, 479 F. Supp. 2d 485, 498 (W.D. Pa. March 20, 2007) ("the use of a single term—'abusive atmosphere'—was sufficiently precise to bring the subsequent sexual harassment claim within the scope of the administrative charge"). Thus, where a plaintiff's allegations of age retaliation are reasonably related to the claims of age discrimination set forth in his administrative charge, the retaliation claim may be considered exhausted. *Contra. Kopko*, 776 Fed. Appx. at 774 (explaining that, since the plaintiff's administrative charge did not demonstrate that she had "opposed age discrimination against [the defendant's] employees . . ., the administrative agency would have had no reason to investigate any potential age retaliation.").

The removal of Plaintiff's job duties is fairly encompassed by, and stems from, his claims of age discrimination and retaliation exhausted in his EEOC Charge and the act of filing the Charge itself. In his Charge, Plaintiff clearly indicated that he was being discriminated and retaliated against; he did not limit his allegations about the same to those specifically set forth in the Charge (nor is he required to). (PRDF ¶ 64) Plaintiff also set forth the names of those individuals who were involved in his treatment. As such, Plaintiff administratively exhausted his retaliation claim regarding Defendants' removal of his responsibilities.

## V. CONCLUSION

For all of the foregoing reasons, Defendants' Motion should be denied in its entirety.

**CONSOLE MATTIACCI LAW, LLC**

BY: *__/s/ Caren N. Gurmankin__*
Stephen G. Console
Laura C. Mattiacci
Susan M. Saint-Antoine
Caren N. Gurmankin
Evelyn Kallenbach
Madison Provorny
1525 Locust Street, 9th Fl.
Philadelphia, PA 19102
(215) 545-7676 (phone)
(215) 545-8211 (fax)

Dated: 7/2/2024

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 2nd day of July 2024, the foregoing Plaintiff's Opposition to Defendants' Motion for Summary Judgment was electronically filed, via ECF, and is available for viewing and downloading to all counsel of record:

**CONSOLE MATTIACCI LAW, LLC**

BY: *<u>/s/ Caren N. Gurmankin</u>*
Stephen G. Console
Laura C. Mattiacci
Susan M. Saint-Antoine
Caren N. Gurmankin
Evelyn Kallenbach
Madison Provorny
1525 Locust Street, 9th Fl.
Philadelphia, PA 19102
(215) 545-7676 (phone)
(215) 545-8211 (fax)