IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANK DONOFRIO,<br>*on behalf of himself individually*<br>*and on behalf of those similarly situated,*<br>Plaintiff,<br><br>v.<br>IKEA US RETAIL, LLC<br>Defendant. | CIVIL ACTION<br>No. 2:18-cv-00599-AB |
| WILLIAM V. ANTONELLI, JR.,<br>*on behalf of himself individually*<br>*and on behalf of those similarly situated,*<br>Plaintiff,<br><br>v.<br>IKEA HOLDING US, INC., *et al.*<br>Defendants. | CIVIL ACTION<br>No. 2:19-cv-01286-AB |
| BRANDON PAINE,<br>*on behalf of himself individually*<br>*and on behalf of those similarly situated,*<br>Plaintiff,<br><br>v.<br>IKEA HOLDING US, INC., *et al.*<br>Defendants. | CIVIL ACTION<br>No. 2:19-cv-00723-AB |

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' DOCUMENTED, ITEMIZED REQUEST FOR FEES AND EXPENSES INCURRED IN CONNECTION WITH THEIR MOTION FOR SANCTIONS**

In accordance with the Court's May 6, 2024 Order (*Donofrio* ECF 379)[1] granting Plaintiffs' Motion for Sanctions (ECF 312) and ordering IKEA to pay Plaintiffs' reasonable attorneys' fees, Plaintiffs on June 3, 2024 submitted a documented, itemized request for fees and expenses incurred in connection with the Motion, beginning with Plaintiffs' January 2023 communications with IKEA to attempt to address IKEA's incomplete 2022 productions, and

[1] References to ECF numbers are to the *Donofrio* case.

including the evidentiary hearings held on December 20, 2023 and January 29, 2024, and all subsequent briefing in connection with Plaintiffs' Motion (ECF 387). IKEA submitted an opposition on June 24, 2014 (ECF 392), challenging the reasonableness of the time and rates requested. Plaintiffs submit this brief, timely Reply.

**I. Requested Hourly Rates Are Reasonable.**

IKEA objects to the rates of CML attorneys Steve Console and Laura Mattiacci without addressing in a meaningful way the fact that their then current (2023) rates were: a) approved by the court this year for their exceptional work in *Meigs v. Care Providers Ins. Servs., LLC* No. 21-867, 2024 U.S. Dist. LEXIS 91 (E.D. Pa. Jan. 2, 2024); and b) not objected to this year by defense counsel for their exceptional work in *Phillips v. Starbucks Corp.*, No. 19-cv-19423 (D.N.J.) at ECF 181, at (internal) p. 2, n.2.

In *Meigs*, the court carefully considered and concluded in particular that the requested 2023 hourly rates of Mr. Console and Ms. Mattiacci ($960 and $870, respectively) were reasonable according to the prevailing market rates in the community. *Meigs*, 2024 U.S. Dist. LEXIS 91, at *10-18. The court assessed their experience and skill and compared their rates to the prevailing rates in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Id.* at 10-11. In reaching the court's conclusion, Judge Slomsky recognized the "stellar reputation and expertise in the field of employment matters" of Mr. Console and Ms. Mattiacci. *Id.* at *17. The Court wrote that "enough has been said in court decisions about the reputation and experience of Console and Mattiacci to convince this Court that other judges view them as exceptional lawyers who warrant in 2023 the hourly rate requested in this case."

Moreover, the 2023 rates requested for the work of Mr. Console ($960) and Ms. Mattiacci ($870) were not objected to by defendant Starbucks, represented by the law firm of Holland & Knight, in response to CML's fee petition as the prevailing party in *Phillips v. Starbucks Corp.*, No. 19-cv-19423 (D.N.J.). *See* ECF 181, at (internal) p. 2, n.2. *Starbucks* was a challenging and complex employment matter tried before Judge Slomsky in which CML achieved an extraordinary result (the jury awarded the plaintiff in a race discrimination case a total of $600,000 in compensatory damages and $25,000,000 in punitive damages). *See Meigs,* 2024 U.S. Dist. LEXIS 91, at *18, n.9. The fact that the hourly rates of Mr. Console and Ms. Mattiacci were not challenged by defense counsel is an especially telling indication that they are consistent with prevailing market rates.

Mr. Console requests the same rate ($960) as was specifically approved by the court in *Meigs* and not challenged by defense counsel in *Starbucks*. Ms. Mattiacci requests her 2024 rate ($900), which is less than a 3.5% increase over her 2023 rates that were specifically approved by the court in *Meigis* and not challenged by defense counsel in *Starbucks*. The small increase from her 2023 rates to her 2024 rates is certainly reasonable. *See, e.g.,* See, e.g., *Hesham Ismail v. IHI Power Servs. Corp.*, No. 20-4801, 2023 U.S. Dist. LEXIS 92406, *10 (E.D. Pa. May 25, 2023)(Brody, J)(approving 5% annual increase in attorney hourly rate to account for inflation).

The reasonableness of Ms. Saint-Antoine's hourly rate in particular was last considered by a court in *Ray v. AT&T Mobility Servs., LLC*, No. 18-3303, 2022 U.S. Dist. LEXIS 73948 (E.D. Pa. Apr. 22, 2022). In *Ray*, Judge Rice praised Ms. Saint-Antoine experience, expertise and skill litigating the age discrimination case and described her, along with Ms. Mattiacci, as having provided exceptional legal work. *Id.* at *24-25. Judge Rice concluded that the $700 rate at the high end of the Community Legal Services ("CLS") fee schedule was appropriate. *Id.*

Notably, the CLS fee schedule has been updated since the time it was considered by Judge Rice in *Ray*. The **2023** CLS fee schedule sets an hourly rate of $735-$850 for attorneys with more than 25 years of experience. Assuming conservatively a 5% increase in rates form 2023, the range of fees for attorney's with more than 25 years experience would be - $771.75 - $892.50. Ms. Saint-Antoine, requested 2024 rate of $860 falls within this range and is reasonable.[2]

The requested rates of attorneys Console, Mattiacci, and Saint-Antoine are reasonable and should be approved.

## II. CML's Hours Spent Were Contemporaneously Recorded, Described Sufficiently To Evaluate Reasonableness, And Necessary To Prevail Against A Defendant Who Engaged In Deceitful Misconduct And Scorched Earth Tactics.

IKEA levels three main criticisms of CML's request for fees: 1) IKEA accuses CML of submitting non-contemporaneous "doctored" billing records thereby impeding their ability to raise objections to them; 2) the block billing entries lack "reasonable correlation between the various activities listed and the time spent performing those tasks, making it impossible to evaluate the reasonableness of time spent on each task;" and 3) the time spent was excessive and the work performed could have been performed by a more junior attorney. Each is not well founded, as explained briefly below.

### A. The time entries submitted by CML were contemporaneously recorded.

IKEA's assertion that the time entries in this case were not contemporaneously recorded and that they are akin to the reconstructed time records at issue in the cases IKEA highlights is completely off the mark. For example, the prevailing plaintiffs in *Rapp v. Cameron*, No. 00-1376, 2002 U.S. Dist. LEXIS 2801(E.D. Pa. Feb. 20, 2022), "did not maintain contemporaneous

---

[2] Judge Rice in *Ray* notably observed that Ms. Mattiacci was an "exceptionally talented trial lawyer" whose expertise justified an hourly rate <u>outside</u> of the CLS fee schedule. *See Ray*, 2022 U.S. Dist. LEXIS 73948, at * 24.

time records" because, they said, it was a contingency fee case. *Id.* at *19, n. 3.[3] CML did maintain contemporaneous time entries and they have been submitted, and scrutinized by IKEA.

CML did not "doctor" or "make backdoor revisions" to the time entries as IKEA accuses. As Plaintiffs' initial submission and Ms. Saint-Antoine's June 3, 2034 Declaration make clear, the contemporaneous time entries were edited to exclude entries for work that was not performed in connection with Plaintiffs' motion for sanctions, and included only those items as ordered by the Court (*see* ECF 379). *See* Saint-Antoine Declaration I (ECF 387) ¶¶16-22; see also Console Declaration ¶25 (attesting to CML policy of keeping contemporaneous time entries).
Ms. Saint-Antoine edited the total time for the work as described in the block entry to deduct from the total an amount she attributed to non-sanctions related work. Saint-Antoine Declaration ¶21. If the entries did not have tasked-based amounts (as some did, which IKEA points out), Ms. Saint-Antoine made the deductions in good faith and based on her personal knowledge of the work being performed by each member of the IKEA Team on Plaintiffs' Motion for sanctions. *See* July 8, 2024 Saint-Antoine Declaration II (submitted herewith as Ex. A) at ¶3. Ms. Saint-Antoine tried to be conservative on what she attributed to sanctions related work and generally tried to "err" on the side of being cautious and underinclusive. *Id.* at ¶4. CML, as officers of the Court, would not seek reimbursement for matters that are not covered by the Court's Order. *See, e.g., Early v. JMK Assocs.*, No. 18-760, 2020 U.S. Dist. LEXIS 66176 (E.D. Pa. Apr. 15, 2020) (explaining that the court takes it as a given that Plaintiff's counsel, as officers of the court, would not attempt to seek the award of attorneys' fees for time expended on an unrelated matter).

[3] Notwithstanding the absence of any contemporaneous time entries, the court in *Rapp* concluded that the "reconstructed records are sufficiently detailed to permit the defendant to challenge specific items." *Id.* at 23.

IKEA's complaint that CML did not provide it with the unedited records is not well founded, and IKEA has not articulated any way in which not having the unedited entries for which CML does not seek reimbursement hindered their ability to challenge the reasonableness of the time for which CML does seek reimbursement. First, IKEA recognizes that the descriptions of time spent on this on-going litigation are privileged and not properly subject to disclosure at this time during an on-going litigation. *See* ECF 392 at p. 34. Any unedited versions of the time entries would, except for time, be completely redacted. Second, the entries that have been edited from the time submitted are all irrelevant; they are not for matters for which Plaintiffs seek reimbursement and would shed no light on the reasonableness of time spent on the matters for which Plaintiffs seek their fees. Notably, when IKEA's counsel had a question about whether a particular entry related to the motion for sanctions, Plaintiffs' counsel answered it, confirmed with explanation that the time was spent in connection with the motions for sanctions, and invited IKEA to let them know if they had other questions regarding whether entries were related to the motion for sanctions.[4] Third, the entries describing work for which CML does not seek its fees are not necessary. IKEA has, in fact, objected to a great many of the entries for which CML seeks its fees. The reasonableness of the time expended is an inquiry that stands on its own.

**B. The Time Entries Describe The Work Sufficiently To Evaluate Reasonableness.**

**1. Block billing entries are permissible.**

---

[4] *See* ECF 392-2 (June 13, 2024 Saint-Antoine letter to Sher (explaining that the February 29, 2024 entry was in connection with the motion for sanctions and inviting IKEA to send particular questions regarding entries for response); 392-4 (June 20, 2024 Saint-Antoine letter to Sher explaining that April 26, 2023 entry was in connection with the motion for sanctions). Notwithstanding the explanation it received, IKEA still objects and tells this Court that the February 29, 2024 entry (no. 198 on its chart) "has absolutely nothing to do with Plaintiffs' Motion for Sanctions."

IKEA recognizes that block billing entries are permissible and reimbursable in the Third Circuit. ECF 392 at p. 14. Its brief states: "Courts are permitted to award fees for clock-billing 'so long as there is a reasonable correlation between the various activities listed in the block and the time spent completing those tasks.'" *Id.* (citing *Middlebrooks v. Teva Pharms. USA, Inc.*, No. 17-412, 2019 U.S. Dist. LEXIS 30530, *15 (E.D. Pa. Feb. 26, 2019)). Notwithstanding this recognition that it is permissible when determining the amount of a fee award to look at a day's total work for which fees are requested (rather than by individual task) and the reasonableness of the total amount requested (rather than the amount for each individual task), IKEA objects to many entries on the same repeated grounds that it is "impossible to evaluate the reasonableness of time spent on each task."[5] This objection, too, is off the mark. The inquiry does not focus on the time spent on an individual task. That would not be "block billing."

Further, it would be patently unreasonable and contrary to Third Circuit law to exclude from recovery all entries in a block because one of them might be objectionable, as IKEA requests. For example, IKEA objects to Ms. Saint-Antoine's entry of 9.5 hours on December 19, 2023 (the day before Day 1 of the evidentiary hearing) for work described as "Finalize exhibit list; prepare for evidentiary hearing at home and in NJ office with LCM; email Frank Donofrio; emails team; review IKEA's revised exhibit list." IKEA asks the Court to exclude the entire entry because, they say, it is "impossible to evaluate the reasonableness of time spent on each task." Evaluating each task is not necessary; the entire entry of 9.5 to prepare for the hearing is clearly reasonable. The fact that Ms. Saint-Antoine provided <u>more</u> detail than required is not good grounds to discount the entire entry. IKEA's approach simply does not make sense.

---

[5] IKEA repeats many times overs the same objection: There is no reasonable correlation between the various activities listed in this block-billed entry and the time spent performing those tasks, making it impossible to evaluate the reasonableness of time spent on each task."

Further, the objection that Ms. Saint-Antoine "may have billed" for travel time is pure speculation by IKEA (and it is not the case). In any event, it certainly is not grounds to discard the whole entry.

**C. CML expended the effort necessary to prevail against a party engaging in willful misconduct to keep critical evidence from them.**

There is a good reason why, as IKEA's opposition acknowledges, "[i]t is not uncommon for CML to try cases, win cases, and be awarded attorneys' fees." ECF 392 at p. 18. The firm staffs its cases and does what is necessary to provide excellent representation to its clients and win.

This case – involving three ADEA collective action in which the firm had devoted enormous resources – required the effort that CML put into it. It was especially important in light of the fact that it involved IKEA's deletion of key evidence from its Head of Human Resources, critical to proving IKEA's systemic age discrimination. It was especially challenging in light of the fact that IKEA engaged in willful misconduct and obfuscation to try to keep Plaintiffs (and the Court) from discovering what it had done. It was especially drawn out and time consuming in light of IKEA's scorched earth tactics.

It takes a lot of gall for IKEA to cheat, and then complain that Plaintiffs spent too much time and effort doing what was necessary to catch them. IKEA's objections that the work was excessive and not efficiently staffed should not be accepted.

**Respectfully submitted,**

**CONSOLE MATTIACCI LAW, LLC**

BY: */s/ Susan M. Saint-Antoine*
Stephen G. Console
Laura C. Mattiacci
Susan M. Saint-Antoine
Caren N. Gurmankin
Evelyn Kallenbach

Madison Provorny
1525 Locust Street, 9th Fl.
Philadelphia, PA 19102
(215) 545-7676 (phone)
(215) 545-8211 (fax)

Dated: 7/8/2024

Attorneys for Plaintiffs