**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FRANK DONOFRIO, on behalf of himself individually and on behalf of those similarly situated,<br>Plaintiff,<br>v.<br>IKEA US RETAIL, LLC,<br>Defendant. | CIVIL ACTION NO. 18-599-AB |
| WILLIAM V. ANTONELLI, JR., on behalf of himself individually and on behalf of those similarly situated,<br>Plaintiff,<br>v.<br>IKEA HOLDING US, INC., IKEA US RETAIL, LLC, and IKEA NORTH AMERICA SERVICES, LLC,<br>Defendants. | CIVIL ACTION NO. 19-1286-AB |
| BRANDON PAINE, on behalf of himself individually and on behalf of those similarly situated,<br>Plaintiff,<br>v.<br>IKEA HOLDING US, INC., IKEA US RETAIL, LLC, and IKEA NORTH AMERICA SERVICES, LLC,<br>Defendants. | CIVIL ACTION NO. 19-723-AB |

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTIONS FOR DECERTIFICATION OF COLLECTIVE ACTIONS *DONOFRIO* (ECF 383); *ANTONELLI* (ECF 306); *PAINE* (ECF 334)**

As of this filing, there have been 60 pages of briefing submitted by Plaintiffs in support of their effort to avoid decertification. At no point, including their responses to the Motions for

Decertification of Collective Actions filed by IKEA (*Donofrio* ECF 401; *Antonelli* ECF 323; *Paine* ECF 352), do Plaintiffs contest the following:

- Plaintiffs sought scores of different jobs, with different job requirements, posted in different stores;

- Scores of local hiring managers in the 26 different stores at issue in Donofrio, 33 in Paine, and 30 in Antonelli made their own decisions about who is best qualified for posted positions among those who sought the job, *Donofrio* ECF 328-29, Decl. of Stephanie Baker, Ex. A; *Antonelli* ECF 306-3, Baker Decl. ¶ 2, Ex. A;

- There are conflicts in the testimony of the Plaintiffs that cannot be reconciled, and some Plaintiffs competed for the same job, each implicitly asserting that *they* were best qualified, *see Paine* ECF 334-2 at 18-20 (summarizing evidence);

- Some Plaintiffs sought positions awarded to older candidates, some did not; some sought positions they admit they were not qualified for, others claim they were qualified; *Donofrio* ECF 383-2 at 17-18; *Paine* ECF 334-2 at 20-21;

- Some Plaintiffs admit they were not the *best* qualified for the positions they sought, some do not; *Donofrio* ECF 383-2 at 19-20; *Paine* ECF 334-2 at 23-24;

- Some Plaintiffs admit they have no valid claim for age discrimination, some do not, *Donofrio* ECF 383-2 at 23-25; and

- Some Plaintiffs claim they were not promoted for reasons other than age, some do not, *Donofrio* ECF 383-2 at 21-23; *Paine* ECF 334-2 at 25-26.

These differences matter. They, and other facts Plaintiffs left unaddressed, compel decertification. *Karlo v. Pittsburgh Glass Works, LLC*, No. 10-1283, 2014 WL 1317595, at *17 (W.D. Pa. 2014), *decertification sustained on appeal at* 849 F.3d 61, 85-86 (3d Cir. 2017). In responses heavy on rhetoric, but short on authority-supported substance, Plaintiffs sidestep material differences in decision makers, jobs, store locations, qualification levels, and defenses. Instead, they urge the Court to disregard uniform authority by granting final certification of this matter based on a so-called policy of discrimination—a policy the evidence shows no actual decision maker heard of, let alone implemented. The law does not support Plaintiffs' theory. The Court must decertify.

## I. Plaintiffs' Assertion that *Teamsters* and the Tenth Circuit's 2001 Decision in *Thiessen* Trump Actual Decertification Standards has Been Unequivocally Rejected by Courts in this Circuit.

To avoid decertification, Plaintiffs ask this Court to disregard the law in ***this*** Circuit in favor of a contorted version of the law in the Tenth Circuit. Specifically, Plaintiffs assert that because they seek to try this case under the so-called "pattern and practice" proof template established by the Supreme Court's decision in *International Brotherhood of Teamsters vs. United States*, 431 U.S. 324 (1977), the Court must abdicate its responsibility to assess whether the case may properly proceed to trial under this Circuit's decertification standards. Two flaws in Plaintiffs' logic are insurmountable: (1) *Teamsters* had nothing to do with decertification; and (2) courts in this Circuit have already considered and rejected their proposal.

### A. *Teamsters* is Not a Decertification Case.

*Teamsters* was a non-class case brought under Title VII of the Civil Rights Act by the Equal Employment Opportunity Commission (EEOC). 431 U.S. at 328-29 & n.1. When the EEOC proceeds in its own name, it may seek relief on behalf of a group of allegedly aggrieved non-parties without the requirement to proceed under Federal Rule of Civil Procedure 23. *See Gen. Tel. of the Northwest, Inc. v. EEOC*, 446 U.S. 318 (1980). The *Teamsters* court was not presented with, and did not purport to address, the factors a court must consider in certifying a class action, let alone the different and unique factors a court must consider in decertifying a conditionally certified collective action. Instead, *Teamsters* dealt with how a so-called pattern and practice case brought by the government under Title VII of the Civil Rights Act (not the Age Discrimination in Employment Act (ADEA)) may proceed at trial. 431 U.S. at 358-59. Moreover, as detailed in the Motion for Partial Summary Judgment filed by IKEA, the "pattern or practice" model established

in *Teamsters* is fundamentally incompatible with the ADEA disparate treatment burdens of proof. *Donofrio* ECF 385, 408; *Paine* ECF 335, 359; *Antonelli* ECF 307, 330.

### B. Courts in This Circuit Have Expressly Considered and Rejected Plaintiffs' Assertion that *Teamsters* Displaces Decertification Standards.

Regardless of whether the *Teamsters* model of proof is available in this case, this Court, like other courts within the Third Circuit, should conduct the same searching review of the relevant decertification factors irrespective of the theory of proof proffered by Plaintiffs. The seminal case within the Third Circuit analyzing the intersection of *Teamsters* cases and 216(b) decertification analysis is *Mueller v. CBS, Inc.*, No. 99-1310, 2002 WL 35669766 (W.D. Pa. Dec. 9, 2002). There, the plaintiffs made the same argument that Plaintiffs make here—the claim that evidence of a pattern or practice of discrimination renders all Plaintiffs similarly situated for purposes of decertification regardless of fundamental differences in the plaintiffs' circumstances and a defendant's varied defenses. 2002 WL 35669766, at *16-*17. *Mueller* considered and soundly rejected this argument.

In a detailed analysis, long-time Chief Judge of the Western District of Pennsylvania Donetta Ambrose denied the plaintiffs' invitation to hold that evidence of a pattern or practice of discrimination merits a court abandoning analysis of decertification factors. *Id.* In finding that this was not the law in the Third Circuit, Judge Ambrose wrote:

> If Plaintiffs' conclusion that stating a claim of pattern or practice were sufficient to show that opt-in plaintiffs were similarly situated to the extent that the court should automatically proceed to a *Teamsters*-model trial, there would be no need to investigate the circumstances of any individual plaintiff. That is, having established that they satisfied the opt-in criteria, discovery following the opt-in stage would not focus on the individual plaintiffs but on the facts surrounding the corporate policy in order to flesh out the allegations made at the conditional certification stage. But that is clearly not the format used in *Lusardi*, *Mooney*, *Stone* or even *Thiessen*. The discovery period in each of those cases – and in this one – focused on the individual opt-in plaintiffs or a sample thereof, not merely on the alleged discriminatory pattern or practice.

2002 WL 35669766, at *17. *Mueller* is not an outlier. The law upon which the *Mueller* court relied is well-supported. *See, e.g.*, *Karlo*, 849 F.3d at 85-86 (common evidence insufficient to sustain certification when there are differences among the plaintiffs). And, just as in *Mueller*, this Court contemplated, and the parties pursued, lengthy and onerous discovery concerning the individual opt-in plaintiffs, not merely on the alleged discriminatory pattern or practice. This makes good sense, since it is those individual circumstances that must be reviewed under Third Circuit 216(b) stage two analysis.[1] *See Zavala v. Walmart Stores*, 691 F.3d 527, 538 (3d Cir. 2012); *Karlo*, 214 WL 1317595, at *17.

The facts of *Mueller* are strikingly similar to those of this matter and the case counsels for decertification here. Recognizing this, Plaintiffs try and fail to discount it. First, they assert that *Mueller* was "unpublished"—apart, that is, from publication in Westlaw and Lexis—and should, therefore, be wholly ignored. But the Third Circuit has not ignored *Mueller*. In *Ruehl vs. Viacom, Inc.*, 500 F.3d 375 (3d Cir. 2007), in a portion of that decision discussing 216(b) decertification standards, the court wrote:

> The district court explained in its well-reasoned and exhaustive opinion decertifying the *Mueller–Bellas* class, that its conditional certification under the ADEA had been granted because there was sufficient evidence of age-based discrimination to proceed with notice and initial discovery. *Mueller v. CBS, Inc.*, No. 99–1310, at 6 (W.D. Pa. Dec. 9, 2002) (App. at 194); *see also Sperling v. Hoffmann–La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988) (explaining that at the initial notice stage, plaintiffs need only make "substantial allegations" that they were collectively "the victims of a single decision, policy, or plan infected by discrimination."). The court remarked that at the "notice stage" the standard for conditional certification is "comparatively liberal." (App. at 194.) On reconsideration, however, the district court decertified the *Mueller–Bellas* class, applying the factors set out in *Plummer v. General Electric Co.*, 93 F.R.D. 311 (E.D. Pa.1981), and *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). Based

[1] Notably, even *Thiessen v. General Electric Capital Corporation* requires courts within the Tenth Circuit to analyze decertification factors in the context of pattern or practice cases. *See Thiessen*, 267 F.3d 1095, 1108 (10th Cir. 2001).

> on these factors, the court concluded that the class members were not "similarly situated."

500 F.3d. at 388-89. *Ruehl* shows that the Third Circuit believes Judge Ambrose got it right in *Mueller*. This Court should conclude the same. Indeed, there is no case within the Third Circuit disagreeing with *Mueller's* analysis of the interaction of *Teamsters* and the second stage certification analysis.

Next, Plaintiffs urge the Court to ignore *Mueller* because, they claim, it was decided under Rule 23 standards, which require a "rigorous analysis" of class certification motions. Plaintiffs are again mistaken. First, the case Plaintiffs cite for this proposition, *Fischer v. Federal Express Corp.*, was not about decertification standards, but whether every opt-in plaintiff must establish personal jurisdiction in a collective action. 42 F.4th 366 at 375. The word "decertification" does not even appear in *Fischer*. Second, the *Mueller* court's use of the phrase "rigorous analysis" in the context of decertification plainly refers to looking behind the pleadings and actually assessing the evidence in the case. *Mueller*, 2002 WL 35669766, at *17. This is what all district courts are obligated to do at the decertification stage—assess the actual evidence in the case through the lens of the decertification standards described in Defendants' moving brief *(Donofrio* ECF 382). *See*, *e.g.*, *Bell v. Reading Hosp. & Med. Cntr.*, No. 13-5927, 2016 WL 3902938, at *8 (E.D. Pa. 2016) (holding courts are required to engage in a "specific factual analysis of each employee's claim" at the decertification stage); *Colosimo v. Flagship Resort Dev. Corp.*, No. 17-3969, 2021 WL 1207484, at *3 (D.N.J. March 31, 2021) (holding the "final certification phase of a § 216(b) collective action employs a ***rigid*** standard that requires Plaintiffs to prove by a preponderance of the evidence that members of a proposed collective action are similarly situated") (citing *Zavala*, 691 F.3d at 537) (emphasis added). Finally, if Judge Ambrose had committed such a fundamental

error in *Mueller*, the Third Circuit would not have praised her decertification analysis as "well-reasoned and exhaustive." *Mueller* is good law. The Court should follow it.

* * *

Put simply, Plaintiffs are incorrect that the method of proof under which they wish to proceed eliminates their burden to show they are ***all*** similarly situated. The Court should follow the Supreme Court's direction that it perform a "specific factual analysis" of "each employee's claim" to ensure that Plaintiffs are sufficiently similar so that the Court can fairly provide "efficient resolution in one proceeding" of common "fact[s] arising from the same alleged discriminatory activity." *Hoffman La Roche v. Sperling*, 493 U.S. 165, 170 (1989).

## II. An Abstract Policy of Discrimination is Not Enough to Survive Decertification.

In law school, many lawyers-in-training are taught the adage that "if you have the facts on your side, pound the facts; if you have the law on your side, pound the law; if you have neither the facts nor the law, pound the table." Plaintiffs enthusiastically and repeatedly pound the proverbial table with two mistaken theories: (1) a common employer practice is sufficient to move a case past decertification; and (2) the Court found as a sanction a "common employer practice" of "favoring" younger workers, so this case must proceed as a collective. Third Circuit authority says otherwise.

**A common employer practice is insufficient to merit final certification.** As IKEA has previously briefed, the Supreme Court holds that an "abstract policy of discrimination" is not enough for legal liability—rather, in an ADEA case focused on hiring/promotion decisions, Plaintiffs must establish that IKEA discriminated against them on the basis of their age in the challenged promotion decisions. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 159 n.15 (1982). Despite this authority, Plaintiffs selectively quote language from *Zavala v. Walmart Stores*, 691 F.3d 527, to argue that a common employer practice insulates them from decertification. *Zavala* says the

opposite. The full quotation, which was misleadingly truncated in Plaintiffs' brief, reads as follows:

> Being similarly situated does not mean simply sharing a common status, like being an illegal immigrant. Rather, it means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the [statute]. And, indeed, Plaintiffs' allegation of a common scheme to hire and underpay illegal immigrant workers provides some common link among the proposed class. . . . And such a scheme potentially demonstrates Wal–Mart's willfulness in violating the [statute]. But these common links are of minimal utility in streamlining resolution of these cases. Liability and damages still need to be individually proven. . . . Considering the numerous differences among members of the proposed class in light of the alleged common scheme's minimal utility in streamlining resolution of the claims, we conclude that the Plaintiffs have not met their burden of demonstrating that they are similarly situated.

691 F.3d at 538 (sustaining decertification in light of differences among the plaintiffs). Thus, under *Zavala,* it is the burden of the plaintiffs to show that they were, in fact, ***subject to*** a common practice and, further, the court must still consider individualized defenses despite a common practice. *See also Karlo*, 849 F.3d at 85-86 (citing *Zavala* for proposition that common links are insufficient to sustain certification when there are differences among plaintiffs).

*Mueller* addresses the need for evidence tying a corporate "policy" of favoring younger workers to an actual adverse employment action taken against older workers. In that case, the plaintiffs produced evidence that the CEO was aware of how age demographics impacted management and that he discussed a "'regeneration gap,' i.e., a problem arising from the fact that the top two or three layers of corporate managers were all approximately the same age and that few younger employees had been groomed to move up into those levels." 2002 WL 35669766, at *20 & n. 24. The plaintiffs in *Mueller* also produced evidence described by the court as follows:

> [a] "now infamous" Chairman's Initiative sessions between Jordan [the CEO] and the top 200 corporate managers at which the participants allegedly discussed a centralized policy of getting rid of older 'blockers' and of identifying 'high potentials' – individuals earmarked as promotable at least two levels within a short period of time, a definition which allegedly excluded all but a few older workers. The 'Leadership Development Process' identified outstanding individuals for

> inclusion in a program designed to groom them for higher level positions as part of an effort to resolve the 'regeneration gap' problem.

*Id.* at n.25. Acknowledging that this was some evidence of age bias at the corporate level, the court nevertheless noted the lack of evidence that this general policy was tied to any termination decision. Judge Ambrose wrote "I have not been directed to [any evidence] that would support a conclusion that lists of blockers were compiled for use in making termination decisions." *Id.* at *21 (emphasis supplied).

Plaintiffs cite a spattering of authority in support of their claim that evidence of an alleged abstract policy of discrimination insulates them from decertification scrutiny. But *Kentucky Retirement Systems. v. EEOC* notes that it is employer "action" (not an abstract policy) that is "actually motivated" by age that is prohibited by the law. 554 U.S. 135, 155 (2008). *Trans World Airlines, Inc. v. Thurston*, 496 US 111 (1985), examined an airline policy to allow pilots disqualified for reasons other than age to transfer into a flight engineer position, but pilots who were forced out of a pilot position because they were 60 years old were prohibited from transferring. There, it was the prohibition of the ability to transfer—an actual employment action—that constituted the act of discrimination. *DiBiase v. SmithKline Beecham*, 48 F.3d 719 (3d. Cir. 1995), also does not stand for the proposition that a discrimination plaintiff is relieved of showing that they suffered an adverse job action. *DiBiase* did not (and could not have) purport to disregard the Supreme Court's teaching in *Falcon* that an abstract policy of discrimination is not enough to establish liability. Instead, in *DiBiase,* the court noted that a "facially discriminatory" policy *may* relieve a party of proving intent, depending on "the explicit terms of the discrimination." *DiBiase,* 48 F.3d at 726 (citations omitted). But the *DiBiase* court certainly did not suggest an abstract policy, *any* abstract policy, is enough to establish liability. Nor did it say anything at all about the

standards the court must employ at the decertification stage of a conditionally certified ADEA collective action.

Finally, Plaintiffs cite the dissent in *Massarksy v. General Motors*, 706 F.2d 111 (3d Cir. 1983). But, in that case, there was no dispute that the plaintiff was challenging his termination, an obvious adverse employment action, and even the dissent does not purport to say that one need only show an abstract policy to support a *prima facie* disparate treatment case.

None of the cases relied upon by Plaintiffs alter the teaching of *Falcon* and the position of courts in this Circuit that an abstract policy is not enough to prove discriminatory decisions, nor is it enough to defeat decertification.

Plaintiffs also fail to address authority that an abstract policy aspiring to greater demographic diversity is not unlawful. In their Response, Plaintiffs conspicuously ignore *Pierce v. City of Philadelphia*, No. 17-05539, 2018 WL 6832093 (E.D. Pa. Dec. 28, 2018), a case Plaintiffs' counsel litigated and thus surely is familiar with, in which the court acknowledged that documents that identify a "stated goal of a [] diverse workforce . . . that reflects the demographics of the City's population." 2018 WL 6832093, at *1, *11. The documents that Plaintiffs claim are "smoking guns" and upon which the Court based its sanction order, are nearly identical to those discussed in *Pierce*. *Id*. at *11. Plaintiffs do not even argue otherwise.

**There is no evidence to tie an alleged practice of "favoring" younger employees to the challenged decisions in these cases.** The authority offered by Plaintiffs does not alter the teachings of *Falcon*, *Zavala*, *Karlo*, and *Mueller* that an abstract policy of favoring one group is not independently unlawful, let alone sufficient to mandate final certification of a conditionally certified collective action. So Plaintiffs offer a fallback: they assert that the Court's sanction order found something more than an abstract policy of discrimination (although they never explain how).

But what matters in these cases is *selection* for *promotion*. And the Court declined to enter a sanction finding IKEA ***selected*** employees for promotion based on age. Specifically, the Court established for purposes of second-stage certification:

> that IKEA had in place a common employer practice, or standard operating procedure, to which ~~all of~~ its U.S. retail employees were subject, of favoring [not *"selecting"*, as Plaintiffs had requested] younger employees for leadership development and management level positions ~~which was considered by IKEA in selection decisions for its management level positions, including applications for promotions.~~

Order, *Donofrio* ECF 378 at 66 (struck-through text was requested by Plaintiffs but not accepted by the Court). The Court declined various other Plaintiffs' requests: (1) to enter a sanction finding that IKEA ***considered*** employee age in selection decisions; (2) to issue a finding that IKEA "had in place age-based personnel goals;" (3) to include a finding that IKEA has a "corporate policy" favoring younger employees or a "pattern or practice of age discrimination." At best, then, the Court's sanction order is a finding, for decertification purposes only, of an abstract policy of favoring younger employees. Since, however, an abstract policy is not enough to avoid decertification, this cannot carry the day for Plaintiffs.

Plaintiffs make no effort to connect the challenged employment decisions in these cases to the abstract policy or practice the Court found as a sanction. This is not surprising because the record evidence shows no link. For example, in their Responses, Plaintiffs do not dispute:

- ✓ IKEA policy prohibits discrimination in selection decisions.
- ✓ No store manager actually charged with making promotion decisions has testified that they disregarded the non-discrimination policy.
- ✓ Those Plaintiffs who held management positions never saw any directive to consider age in the hiring process.

There is no evidence of a link between corporate documents discussing age diversity and a single promotion decision at issue in these cases.

Ultimately, while the sanctions order issued by this Court makes the circumstances of this case unique, they are not without parallel. *Mueller* considered evidence of corporate age bias and concluded that age-related discrimination in the air—de-linked to any challenged employment decisions—was insufficient to justify second stage certification in the face of voluminous evidence of material factual differences between the plaintiffs and individualized defenses. The same result should occur here.

### III. Plaintiffs are Irredeemably Dissimilar in the Areas That Count at Decertification.

In their Responses, Plaintiffs ignore the myriad differences between them. Courts in this Circuit have been uniform in their description of the factors considered upon decertification. Plaintiffs ignore them, too. Application of those decertification factors, described by *Karlo*, 2014 WL 1317595, to the unrefuted record evidence compels decertification:

| ***Karlo* Factor** (2014 WL 1317595 at *17) | **Undisputed Evidence** |
|---|---|
| "[W]hether the plaintiffs are employed in the same . . . location." | *Donofrio:* sought positions in 26 different locations. *Donofrio* ECF 383-29, at 5-18.<br>*Antonelli* and *Paine:* sought positions in 33 different locations. *Antonelli* ECF 306-3 at 5-16. |
| "[W]hether [the plaintiffs] advance similar claims" | Many Plaintiffs acknowledge age was not a factor in the promotions they unsuccessfully sought, *e.g. Donofrio* ECF 383-2 at 23-24. But the reasons they claim they did not get the positions range from "prior experience working at Starbucks," *Paine* ECF 334-2 at 25; "store politics," *Donofrio* ECF 383-2 at 22. |
| "[W]hether [the plaintiffs] have the [same] circumstances of employment" | *Donofrio:* Plaintiffs occupied 21 different jobs, *Donofrio* ECF 383-2 at 9;<br>*Antonelli:* Plaintiffs occupied 10 different jobs, Antonelli ECF 306-3 at 5-16;<br>*Paine:* Plaintiffs occupied 17 different jobs, Paine ECF 334-3 at 5-16. |
| Whether there are "age variances" among plaintiffs | *Donofrio:* Plaintiffs ranged in age from 39.9 to 71 on the day they sought promotion, *Donofrio* ECF 383-2 at 9.<br>*Antonelli* and *Paine:* Plaintiffs ranged in age from below 40 to over 70, *Paine* ECF 334-2 at 29. |

| ***Karlo* Factor** (2014 WL 1317595 at *17) | **Undisputed Evidence** |
|---|---|
| Whether the plaintiffs have the same supervisors | *Donofrio:* Plaintiffs complain about 80+ hiring decisions made by 57 managers. *Donofrio* ECF 383-2 at 9; *Antonelli* and *Paine:* Plaintiffs complain about decisions made by nearly 70 hiring managers and 75 different hiring decisions. *Paine* ECF 334-2 at 3. |
| Whether the defendant has individualized defenses[2] | Some Plaintiffs assert that they were denied a promotion for multiple reasons, not simply their age, and hence the question of but-for causation, as required by, *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 176 (2009), must be addressed on a highly-individualized basis. *See Donofrio* ECF 383-2 at 21-23; *Antonelli* and *Paine, Paine* ECF 334-2 at 25-26. |

Plaintiffs nowhere dispute these fundamental differences. Additionally, courts consider whether there is conflict between opt-in plaintiffs, *Mueller*, 2002 WL 35669766, and there is substantial conflict among some Plaintiffs in these cases. *Antonelli* ECF 306-2 at 19-20. Plaintiffs do not claim otherwise.

District courts are required to consider fairness and procedural considerations at the decertification stage. This factor requires the court to "determine whether it can coherently manage

[2] Plaintiffs state it is a "whopper" for IKEA to argue "Frank Donofrio claims that IKEA disfavors *white men*". *Donofrio* ECF 401-1 at 5. In his own words, Donofrio says otherwise:

> I BELIEVE THAT I HAVE BEEN TREATED IN A DISRESPECTF MANER AND IT IS PART OF A CULMINATION OF EVENTS AND NUANCES THAT HAVE BEEN TAKING PLACE AT IKEA CONSHOHOCKEN. THERE IS AN ANTI-WHITE MALE (OLDER) SENTIMENT THAT HAS BEEN PERPETUATED BY IKEA'S CONSTANT PANDERING AND ELEVATION OF SPECIFIC GROUPS. IT IS COMMON KNOWLEDG THAT ALL GROUPS ARE PROTECTED AT IKEA EXCEPT WHITE OLDER MALES.

*Donofrio* ECF 383-3 at 2.

the class in a manner that will not prejudice any party," *Mueller*, 2002 WL 35669766, at *9, keeping in mind "the very real possibility that the unique circumstances surrounding one or two Plaintiffs could bias the jury" in its assessment of each Plaintiffs' claims. *Id.* at *25. Where, as here, there are substantial disparities between Plaintiffs and defenses that vary from Plaintiff to Plaintiff, the court should decertify the case. *Bell*, 2016 WL 3902938, at *12.

In their Response, Plaintiffs do not truly dispute the arguments made by IKEA concerning fairness and procedural considerations. Instead, they complain that those Plaintiffs who had not timely filed their own charges of discrimination would be left without a remedy if the Court decertifies. But this is not an appropriate consideration. In *Ruehl v. Viacom*, 500 F.3d at 387-89, the former opt-in plaintiffs of a decertified collective action made similar equity-based arguments. The Third Circuit rejected those claims, noting that employees generally have an obligation to file their own charges of discrimination and exhaust their own administrative remedies and the piggy-backing rule is a limited, judge-made exception to this requirement. *Id.* When a court decertifies such a case, it is necessarily finding that the claims of the plaintiffs are too dissimilar to warrant collective trial, and thus too dissimilar for the court to excuse a plaintiff's failure to file a charge under the limited, judge-made "piggybacking" exception. *Id.* If this were not the case, then no case could ever be decertified and the obligation to exhaust administrative remedies would be meaningless. But that is plainly not the law in this or any other Circuit.

Moreover, Plaintiffs discount the very real constitutional problem posed by denying decertification: courts in this Circuit hold that the Seventh Amendment requires the same jury to hear both a "liability" and "damages" phase of a *Teamsters*-type trial. *Miller v. Hygrade Food Prods. Corp.*, 198 F.R.D. 638, 644 (E.D. Pa. 2011); *Mueller*, 2002 WL 35669766, at *26; *Reap v. Cont'l Cas. Co.*, 199 F.R.D. 536, 550 (D. N.J. 2001). As explained in Defendants' moving papers,

this would create an unmanageable morass. *Donofrio* ECF 383-2 at 44-45; *Antonelli* ECF 306-2 at 44-45. Plaintiffs' only answer to this dilemma is the invocation of non-Third Circuit authority. But authority from this Circuit clearly instructs courts to consider Seventh Amendment concerns when considering decertification. *Miller*, 198 F.R.D. at 644.

As detailed by IKEA in its Motions to Decertify and in its Response in Opposition to Plaintiffs' Motion for Final Certification, ***all*** of the decertification factors weigh in favor of decertification of this action. As a result, this case should be decertified.

### IV. Plaintiffs' Current Claim That They Are Entitled to Injunctive Relief Does Not Prevent Decertification.

In a somewhat new angle, Plaintiffs suggest that the Court should not decertify this case because they have sought injunctive relief. Plaintiffs offer the Court with no authority to support this novel theory. Equally importantly, they have not identified any current alleged policy of discrimination that they seek to enjoin and, in any event, a request for injunctive relief does not prevent decertification.

It is axiomatic that a party may not rely on "past injuries" to support a claim for injunctive relief—rather, a party must show that injunctive relief would eliminate an "ongoing or future injury." *Roe v. Devereux Found.*, 650 F. Supp. 3d 319, 329 (E.D. Pa. 2023). Therefore, it is irrelevant if the party seeking injunctive relief "suffered a previous injury" as "an injunction is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat" the party will be "wronged again." *Burns v. SeaWorld Parks & Entm't Inc.*, No. 22-2941, 2024 WL 1660514, at *7 (E.D. Pa. Apr. 17, 2024).

Thus, a party may only obtain injunctive relief if it shows that it is subject to an ongoing practice that violates the law. Plaintiffs have made no such claim here. In fact, the documents that

Plaintiffs identify as containing "smoking gun evidence" of a "policy of discrimination" are dated years before the end of the latest class period:

- IKEA-100002, attaching IKEA-100005 is an email from January 10, 2014,
- KEA-100005 is a document titled "Cornerstone 2: People" dated as a working copy on January 7, 2014.
- IKEA-101714, attaching IKEA-101716, IKEA-101724, and IKEA-101764, is an email dated January 12, 2016.
- IKEA-101145, including IKEA-101159 and IKEA-101161, are board meeting minutes from 2015.
- IKEA-101200 is a "Local Diversity Sourcing Plan" for the year 2015.
- IKEA-029431, including IKEA-029445, is document titled "The IKEA Group Diversity & Inclusion Approach" dated 2015.

Even if these types of corporate diversity documents were, on their face, illegal—and *Pierce v. City of Philadelphia* shows that they are not—Plaintiffs have offered the Court no evidence that IKEA continues to have these types of age diversity goals in the United States. As a result, Plaintiffs have not met their burden of identifying an ongoing policy threatening future injury that may be enjoined.

Further, even if there were ongoing age diversity goals—and Plaintiffs have not attempted to prove that there are—the "named" plaintiffs in these cases do not need a finally certified collective action to obtain injunctive relief. If the named plaintiffs were to prevail, and if they were able to show an ongoing practice of discrimination, they would seek the same injunction every current opt-in Plaintiff would seek. Stated differently, a collective is not a prerequisite to injunctive relief, and a request for injunction certainly does not impede decertification.

In short, Plaintiffs' reliance on their request for injunctive relief as a basis to avoid decertification is likewise misplaced.

## CONCLUSION

Plaintiffs' claims cannot fairly and manageably be tried as collective actions. No court in this Circuit has let such a case proceed to trial on a collective basis, regardless of whether Plaintiffs pursue a "pattern and practice" theory of discrimination. The Court must decertify these cases.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, PC.**

*/s/ Brandon R. Sher*
Paul Lancaster Adams, Esq.
Brandon R. Sher, Esq.
Jennifer G. Betts, Esq.
Emily Santoro, Esq.
Chris R. Pace, Esq. (Admitted *Pro Hac Vice*)
John G. Stretton, Esq. (Admitted *Pro Hac Vice*)
Thomas A. Lidbury, Esq. (Admitted *Pro Hac Vice*)
1735 Market Street, Suite 3000
Philadelphia, PA 19103
(215) 995-2840 Telephone
(215) 995-2801 Facsimile
pladams@ogletree.com
brandon.sher@ogletree.com
jenn.betts@ogletree.com
emily.santoro@ogletree.com
chris.pace@ogletree.com
john.stretton@ogletree.com
thomas.lidbury@ogletree.com

*Attorneys for Defendants*

Date: July 24, 2024