**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FRANK DONOFRIO,<br>*on behalf of himself individually and on behalf of those similarly situated,*<br>Plaintiff,<br><br>v.<br>IKEA US RETAIL, LLC<br>Defendant. | : | CIVIL ACTION<br>No. 2:18-cv-00599-AB |
| WILLIAM V. ANTONELLI, JR.,<br>*on behalf of himself individually and on behalf of those similarly situated,*<br>Plaintiff,<br><br>v.<br>IKEA HOLDING US, INC., *et al.*<br>Defendants. | : | CIVIL ACTION<br>No. 2:19-cv-01286-AB |
| BRANDON PAINE,<br>*on behalf of himself individually and on behalf of those similarly situated,*<br>Plaintiff,<br><br>v.<br>IKEA HOLDING US, INC., *et al.*<br>Defendants. | : | CIVIL ACTION<br>No. 2:19-cv-00723-AB |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND EQUITABLE RELIEF**

**CONSOLE MATTIACCI LAW, LLC**

BY: */s/ Susan Saint-Antoine*
Stephen G. Console
Laura C. Mattiacci
Susan M. Saint-Antoine
Caren N. Gurmankin
Evelyn Kallenbach
Madison Provorny
1525 Locust Street, 9th Fl.
Philadelphia, PA 19102

Dated: 7/24/2024

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

I. The Court Should Not Permit IKEA To Flout The ADEA ........ 1

A. The ADEA does not condition an employer's compliance on whether or not an employee or a group of employees can successfully litigate a claim(s) for individual relief based on a particular job action(s) ........ 1

B. The Court's jurisdiction to issue declaratory and injunctive relief is broadly stated in the ADEA and is not conditioned upon whether or not an employee or group of employees can successfully litigate a claim(s) for individual relief based on a particular job action(s) ........ 2

C. IKEA's written policy of age discrimination is itself a *per se* violation of the ADEA, actionable independent of success on any individual particular rejection(s) for promotion ........ 3

II. The ADEA Does Not Permit An Employer To Discriminate Against Older Employees By Calling Its Openly Expressed Intent To Discriminate A "Diversity" Policy ........ 8

III. IKEA Essentially Ignores, Thus Concedes, The Issue Of Plaintiffs' Entitlement To Prospective Injunctive Relief ........ 12

IV. CONCLUSION ........ 13

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Cooper v. Federal Reserve Bank,*
467 U.S. 867 (1984) ....................5

*Fischer v. Fed. Express Corp.,*
42 F.4th 366 (3d Cir. 2022) .................... 5

*Gen. Tel. Co. v. Falcon,*
457 U.S. 147 (1982) .................... 4

*General Dynamics Land Systems, Inc. v. Cline,*
540 U.S. 581 (2004) .................... 2

*Hausknecht v. John Hancock Life Ins. Co.,*
334 F. Supp. 3d 665 (E.D. Pa. 2018) .................... 13

*Hazen Paper Co. v. Biggins,*
507 U.S. 604 (1993) .................... 2, 4

*International Bros. of Teamsters v. United States,*
431 U.S. 324 (1977) .................... 7

*Karlo v. Pittsburgh Glass Works, LLC,*
849 F.3d 61 (3d Cir. 2017) .................... 7

*Ky. Ret. Sys. v. EEOC,*
554 U.S. 135 (2008) .................... 4

*Meacham v. Knolls Atomic Power Lab.,*
554 US 84 (2008)(a) .................... 6

*Pierce v. City of Phila.,*
2018 U.S. Dist. LEXIS 217216 (E.D. Pa. Dec. 28, 2018) .................... 10

*Sperling v. Hoffman-LaRoche,*
924 F. Supp. 1346 (D.N.J. 1996) .................... 8

*United States v. Bd. Of Educ. Of School Dist. of Phila.,*
911 F.2d 882, 892-93 (3d Cir. 1990) .................... 8

**Statutes**

29 U.S.C. § 217 .................... 3

29 U.S.C. § 621 .................... 2

**TABLE OF AUTHORITIES**

29 U.S.C. § 623 .......... 2, 5
29 U.S.C. § 626 .......... 3

**Rules**

Fed.R.Civ.P. Rule 23 .......... 5

## I. The Court Should Not Permit IKEA To Flout The ADEA.

IKEA's Opposition to Plaintiffs' Motion for Partial Summary Judgment and Equitable Relief **does not dispute** the existence of its openly expressed, documented in writing, facially age discriminatory "diversity" policy of age distribution, including focus on young potentials and on 50+ with a goal and plan to increase the percentage of employees under the age of 34 in management positions. It would be hard pressed to do so, frankly, in light of IKEA's own admission that throughout the "class period" IKEA adopted age-based personnel goals including to increase representation of younger people in management, as its own FY16 US D&I Recap (*see* Plaintiffs' Ex. 11) cumulatively reflects.[1] Instead, IKEA argues that the Court would be making "new law by holding that it simply needs to find a policy facially discriminatory based on age to prevail on summary judgment." IKEA's Opposition, ECF 398 at p. 3. **That is not new law.** It is the law of the United States protecting those age 40 or over from discrimination in the workplace, *i.e.*, the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (the "ADEA").

### A. The ADEA does not condition an employer's compliance on whether or not an employee or a group of employees can successfully litigate a claim(s) for individual relief based on a particular job action(s).

The ADEA provides that it shall be an unlawful employment practice for an employer:

[1] *See* Defendants' Responses to Plaintiffs' "Statement Of Undisputed Material Facts" ("DRPSF," ECF 398-12) at ¶3; Plaintiffs' Ex. 11 (ECF 393, IKEA-101714, attaching, *e.g.,* IKEA-101724-63). IKEA's DRPSF does not dispute in substance the gist of Plaintiffs' Statement of Undisputed Material Facts. It does, however, dispute a few paragraphs as not supported by record citation because of misstatements regarding particular page numbers or as inadvertently missing a transmittal email or attached document (of which IKEA is indisputably aware as they were produced by IKEA to Plaintiffs in December, 2023). Plaintiffs' Reply to the DRPSF correcting the page citations and attaching the inadvertently missing IKEA documents is attached hereto as Ex. A.

> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
>
> (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age;…

29 U.S.C. § 623 (a). The statute "forbids discriminatory preference for the young over the old," but does not prohibit favoring older employees over younger ones. *General Dynamics Land Systems, Inc. v. Cline*, 540 U.S. 581, 584 (2004). Except to favor older employees over younger ones as per *Cline,* the ADEA requires an employer "to ignore an employee's age (absent a statutory exemption or defense)." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 612 (1993).

There is nothing in the Act that conditions an employer's compliance on whether employee(s) can successfully litigate a claim for individual relief based on a particular job action.

**B. The Court's jurisdiction to issue declaratory and injunctive relief is broadly stated in the ADEA and is not conditioned upon whether or not an employee or group of employees can successfully litigate a claim(s) for individual relief based on a particular job action(s).**

The ADEA vests jurisdiction in the federal district courts to grant such "legal and equitable relief as may be appropriate to effectuate the purposes of this act". 29 U.S.C. § 626(b). The ADEA also incorporates the FLSA provision which vests in federal district courts jurisdiction, for cause shown, to restrain violations of the ADEA. 29 U.S.C. § 626(b), incorporating 29 U.S.C. § 217. The Court's jurisdiction and authority to declare an age discriminatory policy unlawful and issue prospective injunctive relief including enjoining its further use is not conditioned upon whether or not employee(s) can bring successfully litigate a claim(s) for individual relief based on a particular job action(s).

### C. IKEA's written policy of age discrimination is itself a *per se* violation of the ADEA, actionable independent of success on any individual particular rejection(s) for promotion.

Plaintiffs' Motion for Partial Summary Judgment and Equitable Relief requests entry of partial summary judgment and prospective injunctive relief addressing IKEA's unlawful systemic discrimination in the form of its facially age discriminatory "diversity" policy and does not ask for judgment or relief on particular rejections for promotion.[2] IKEA's Opposition focuses only on the latter when it so cavalierly dismisses its openly expressed, documented in writing, facially age discriminatory "diversity" policy of age distribution, including focus on young potentials and on 50+ with a goal and plan to increase the percentage of employees under the age of 34 in management positions, as "an abstract policy of discrimination…" (ECF 398 at p. 3) and when it asserts that "the Court **merely stated** that the 'documents IKEA belatedly produced in December 2023 reflected a practice of age discrimination by IKEA that was in effect during the class period,…'" IKEA's Opposition Brief (ECF 398) at p. 2, n.2 (emphasis added).

Contrary to IKEA's entire basis for opposing Plaintiffs' Motion, proving that IKEA's policy had a determinative influence on particular rejections for promotion is not before the Court and is not necessary for the Court to enter partial summary judgment declaring IKEA's policy to be in violation of the ADEA and issue the prospective injunctive relief requested. IKEA's openly expressed, documented in writing, facially age discriminatory "diversity" policy of age distribution, including focus on young potentials and on 50+ with a goal and plan to

[2] As Plaintiffs expressly noted in their opening Brief, the latter "is a matter to be addressed at a later stage of trial proceedings and is not the subject of this Motion. In that regard, Plaintiffs have also filed today a Motion in each case for Final Certification of Collective Action to Proceed to Trial." ECF 388-1, p.1, n.1.

increase the percentage of employees under the age of 34 in management positions, is itself a *per se* violation of the ADEA independent of success on any individual particular rejection for promotion. IKEA's argument to the contrary is untenable for several reasons. Briefly:

First, the Supreme Court has called it a "rule" that a policy that facially discriminates based on age suffices to show disparate treatment under the ADEA. *Ky. Ret. Sys. v. EEOC*, 554 U.S. 135, 142 (2008). The statement quoted out of context by IKEA and attributed to the Supreme Court's decision in *Ky. Ret. Sys.,*[3] does not stand for the proposition that it is permissible for an employer to adopt a facially age discriminatory policy. The quote is actually from the Supreme Court's decision in *Hazen Paper Co. v. Biggins* 507 U.S. 604 (1993), which addressed a policy that facially discriminated on the basis of pension status (not age) and discussed the situation in which pension status might serve as a proxy for age. *Ky. Ret. Sys.,* 554 U.S. at 141.

The other Supreme Court case which IKEA quotes out of context[4], to suggest that it is somehow permissible for an employer to announce a facially discriminatory policy, *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 159 n. 15 (1982), likewise does not stand for IKEA's proposition

[3]IKEA asserts at p. 3 of its Opposition (ECF 398): "The Supreme Court, however, has held"'[w]hatever the employer's decisionmaking process," a plaintiff alleging disparate treatment cannot succeed unless the employee's age '*actually played a role in that process and had a determinative influence on the outcome*.'" *Ky. Ret. Sys. v. EEOC*, 554 U.S. 135, 142 (2008)(emphasis in original)."

[4] The quotation in full from *Gen. Tel.* is: "Significant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through entirely subjective decisionmaking processes. In this regard it is noteworthy that Title VII prohibits discriminatory employment *practices,* not an abstract policy of discrimination. The mere fact that an aggrieved private plaintiff is a member of an identifiable class of persons of the same race or national origin is insufficient to establish his standing to litigate on their behalf all possible claims of discrimination against a common employer."

and is not something that Plaintiffs "dodge." *See* IKEA Opposition (ECF 398) at p.3. *Gen. Tel.* did not involve a facially discriminatory policy; it considered whether a named plaintiff met the commonality and typicality requirements of Fed.R.Civ.P. Rule 23 (which the Third Circuit has held would be error to apply to a Section 216(b) collective action;[5]), and, as explained by the Supreme Court,[6] hinged upon the critical distinction between class-wide relief and injunctive relief – which IKEA's Opposition ignores.

Second, IKEA ignores the plain language of ADEA Section 4(a)(2), 29 U.S.C. § 623(a)(2). Section 4(a)(2) states that it is an "unlawful practice" for an employer to "…classify his employees in any way which would … tend to deprive any individual of employment opportunities ….because of such individual's age." IKEA's openly expressed, documented in writing, facially age discriminatory "diversity" policy of age distribution, including focus on young potentials and on 50+ with a goal and plan to increase the percentage of employees under the age of 34 in management positions, on its face and whether viewed in whole or by individual part (age distribution/focus on young potentials/goal to increase percentage of managers under 34) does exactly that. It is standing alone an "unlawful practice" under the ADEA, which the ADEA specifically grants the Court authority to enjoin.

That the scope of employment practices covered by ADEA Section 4(a)(2) "extends" to cover facially neutral employment practices that would "otherwise adversely affect his status as

[5] *See Fischer v. Fed. Express Corp.*, 42 F.4th 366 (3d Cir. 2022)(explaining that a collective action under FLSA Section 216(b) is not representative in nature like a Rule 23 class action).
[6] *See Cooper v. Federal Reserve Bank*, 467 U.S. 867, 874-77 (1984)(explaining that *Gen. Tel.* is based on the critical distinction between class relief addressing systemic discrimination and individual relief).

an employee" (*i.e.*, a disparate impact claim[7]), does not negate the fact that it is also an unlawful practice under Section 4(a)(2) for an employer to openly express its intent to discriminate against older employees by adopting a written policy that on its face classifies them based on age in a way that would tend to deprive them of employment opportunities.

Third, the Supreme Court has stated unequivocally: "The ADEA forbids discriminatory preference for the young over the old." *Cline*, 540 U.S. at 584. The facially discriminatory preference for young potentials and/or employees under age 34 expressed by IKEA's policy is not made lawful by the addition of "focus on 50+" (the meaning of which is disputed and which the evidence suggests reflects accommodating – not promoting -- those 50+ based on the age-biased stereotype that they are physically impaired[8]) or by "age distribution" that might even favor some older workers.[9] An employer's preference in favor of older employees to the detriment of younger ones is not prohibited by the ADEA and neither does it cure an employer's unlawful preference favoring younger employees over older ones. *See Karlo v. Pittsburgh Glass Works, LLC* , 849 F.3d 61, 72-73 (3d Cir. 2017)(explaining that the ADEA does not permit the victim of a discriminatory policy to be told that they have not been wronged because other persons aged 40 or over were preferred).

---

[7] *See Meacham v. Knolls Atomic Power Lab.*, 554 US 84, 95 (2008)(stating that the Supreme Court in *Smith v. City of Jackson, Miss.*, 544 U.S. 228 (2005) "confirmed that the prohibition in § 623(a)(2) extends to practices with a disparate impact,…").

[8] *See, e.g.,* IKEA's FY16 US D&I Recap (Plaintiffs' Ex. 11) at IKEA- 101728.

[9] IKEA's assertion that it also "discussed" seeking to increase the representation of managers over age 55 (see ECF 398 at p. 6) is likewise immaterial to the unlawfulness of the facially discriminatory "diversity" policy adopted by IKEA as reflected in the FY16 US D&I Recap (Ex. 11, IKEA-101714, attaching IKEA-101724-63). The unidentified document IKEA cites (its Ex. 6, IKEA-04851) is (per its metadata) a "working doc" from 2014. Even if it had been actually adopted and did not precede IKEA's facially discriminatory "diversity" policy at issue, it still would not "cure" it.

Fourth, an employer's openly declared policy of unlawful discrimination in and of itself causes harm to the employees that are subject to it. No employee should have to suffer the indignity and hostility of having to show up and work every day for an employer that openly expresses its intent to discriminate against them. Further, an employer's announced discriminatory policy is recognized as a deterrent to protected employees from seeking the job opportunity addressed by the policy. *See, e.g., International Bros. of Teamsters v. United States,* 431 U.S. 324, 365 (1977) (stating that "[i]f an employer should announce his policy of discrimination by a sign reading 'Whites Only' on the hiring-office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs.")

The issue in *Teamsters* was the award of make-whole equitable relief for non-applicants. The idea that, absent proof of individual causation, a federal district court would not be authorized to issue prospective injunctive relief to ensure that the company would not continue its announced discriminatory policy is simply beyond the ken.

Fifth, the proof sequence in a pattern or practice case distinguishes between an employer's liability for the systemic discrimination – its "pattern or practice" of discrimination -- and employer's liability for particular decisions. *E.g., International Brotherhood of Teamsters v. United States,* 431 U.S. 324 (1977). The Supreme Court in *Teamsters* stated:

> At the initial, "liability" stage of a pattern-or-practice suit the Government is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy. Its burden is to establish a prima facie case that such a policy existed.

*Id.* at 360. A finding of an employer's pattern or practice of discrimination authorizes prospective injunctive relief regardless of success in any subsequent proceedings on particular employment decisions. *See, e.g., id.* at 361 ("Without any further evidence from the Government, a court's finding of a pattern or practice justifies an award of prospective relief);

*Sperling v. Hoffman-LaRoche,* 924 F. Supp. 1346 (D.N.J. 1996)(ADEA collective action explaining that liability in first stage proceedings establishing an employer's pattern or practice of age discrimination justifies the issuance of prospective injunctive relief).

Sixth, the Third Circuit recognizes that an openly declared discriminatory policy standing alone warrants equitable relief. The district court in *Sperling* discussed at length the use of the *Teamsters* pattern or practice framework, and explained that a "'pattern or practice' is a consistent policy of purposeful discrimination, the elimination of which requires the use of the court's broad equitable powers.'" *Id.* at 1358 (citing *Teamsters*, 431 U.S. at 361 n.47). The *Sperling* court explained: "Such a policy of discrimination may be demonstrated by showing either a consistent history of discriminatory decisionmaking in an employer's employment practices or by showing that the employer has an openly declared discriminatory policy." *Id.* (emphasis added, citing to, *e.g., United States v. Bd. Of Educ. Of School Dist. of Phila.*, 911 F.2d 882, 892-93 (3d Cir. 1990)). The court further noted that the Third Circuit held in *United States v. Bd. Of Educ.* that "where the allegedly discriminatory policy is openly declared…**then proof that the policy was actually being followed consistently is not necessary in order to obtain an injunction against subsequent implementation**'" *Id.* In *U.S. v. Bd. of Educ.,* the Third Circuit explained that if the policy itself is in conflict with Title VII, the district court erred in failing to enjoin its enforcement by the employer. 911 F.2d at 892.

## II. The ADEA Does Not Permit An Employer To Discriminate Against Older Employees By Calling Its Openly Expressed Intent To Discriminate A "Diversity" Policy.

IKEA does not dispute the existence of its openly expressed, documented in writing, policy of age distribution, including focus on young potentials and on 50+ with a goal and plan to increase the percentage of employees under the age of 34 in management positions. Instead,

IKEA appears to suggest that it is not unlawful because IKEA calls it a "diversity" policy. IKEA tells this Court: "As a matter of law, documents that identify a "stated goal of a [] diverse workforce … that reflects the demographics" of the population are not evidence of discriminatory decisions." ECF 398 at p. 3 (quoting *Pierce v. City of Phila.*, No. 17-95539, 2018 WL 6832093, at *1, 11 (E.D. Pa. Dec. 28, 2018).[10] *Pierce* does not support this sweeping and erroneous statement of the law. IKEA further argues that "the document that Plaintiffs' claim 'openly expressed, and actually documented in writing, its intent to discriminate against its older employee' (ECF 388-1, at 5) is almost identical to type of goal to reflect the diversity of a population that the *Pierce* court found to be lawful." ECF 398 at 3. IKEA's argument is off the mark for many reasons.

First, the *Pierce* decision did not hold that, "as a matter of law, documents that identify a 'stated goal of a [] diverse workforce… that reflects the demographics' of the population are not evidence of discriminatory decisions." ECF 398 at p. 3 (citing *Pierce*). On the contrary, the court in *Pierce* denied the defendant employer/City's motion for summary judgment on the failure to promote claim where she argued that the City favored the other candidate because of their race[11] on the grounds that reasonable jurors could conclude that plaintiff was not promoted because of her race based on evidence that included the goal of building a racially diverse workforce. *Pierce,* 2018 U.S. Dist. Lexis 217216, at *30 ("Reasonable jurors could conclude

[10] Plaintiffs' citations are to the LEXIS version of this case: 2018 U.S. Dist. LEXIS 217216 (E.D. Pa. Dec. 28, 2018).

[11] The plaintiff in *Pierce* brought claims on two rejections for promotion. The court granted the employer's motion for summary judgment only on the claim which, it noted, plaintiff's counsel tacitly acknowledged was weak and where the employer did not favor race. *Pierce*, 2018 U.S. Dist. LEXIS 217216, at *33, n.15. In any event, even on this claim, the court did not hold as a matter of law that the diversity policy is not evidence of discriminatory decisions. It held that the record did not allow reasonable jurors to find that the City's stated reason for not promoting plaintiff was pretextual. *Id.* at *33.

that Pierce was not promoted to the HSPA position because unlike Albandoz, she is not Hispanic. The record shows that the City, including the PDP, has a goal of building a racially diverse municipal workforce that reflects the city's demographics, and Mayor Kenny instructed Carney to implement this "unwritten policy" in the PDP once she became commissioner.")

Second, the *Pierce* decision did not hold that the city's diversity policy was "lawful." On the contrary, in its discussion of plaintiff's Section 1981 claim, the court in *Pierce* stated: "On the evidence presented, a reasonable jury could find that Carney applied a discriminatory policy within the PDP by making promotional decisions on the basis of race in an effort to build a workforce in the PDP that reflects the demographics of the City." *Id.* at *51.

Third, Pierce was a race discrimination case and the diversity policy had a goal of a "racially diverse workforce that reflects the demographics of the City's population." IKEA omitted this distinction from its quotation from *Pierce* and ignores its significance. Race is not the same as age, and the ADEA is not exactly the same as Title VII. Congress enacted the ADEA to promote the interest of older workers, even to the detriment of younger ones. IKEA's policy is straightforward discrimination prohibited by statute, period. IKEA's goal of "age distribution" may not trump United States law.

Fourth, the *Pierce* opinion discusses only plaintiff's claim for individual relief, not prospective injunctive relief to address systemic discrimination.

Finally, the "diversity" policy in *Pierce* is not "nearly identical" to IKEA's openly expressed, documented in writing, facially discriminatory "diversity" policy of age distribution, including focus on young potentials and on 50+ with a goal and plan to increase the percentage of employees under the age of 34 in management positions. In contrast to *Pierce*, IKEA's policy as it pertains to age and without limitation:

- Is documented in writing (*see, e.g.*, Ex. 11).

- Explicitly classifies its employees on the basis of age and in a way that would tend to deprive them of employment opportunities (*id.* at IKEA-101748-101749).

- Speaks of the "aging workforce" using the exact sort of stereotype the ADEA is intended to address. Ex. 11 at IKEA-101728 ("The aging population in developed countries requires accommodations in the workplace to meet the needs that come with age.").

- Indicates IKEA's determination that there are not enough younger employees in management positions and too many older ones. *See* Ex. 11 at IKEA-101748 (stating as a "**Key Takeaway:** Millennials continue to dominate our coworker base accounting for 60% of coworkers but only 30% of exempt managers. The average tenure of exempt managers is 6-10 years with IKEA. We need to spot and prioritize potential and move them faster through our development pipeline, increase the number of coworkers under 34 in exempt manager."); *see also* Ex. 11 at IKEA-101749 (stating the same thing as one of its "Key Diversity Opportunities").

- Contains a specifically stated goal to increase the number and the percentage of a non-protected group (employees under 34) in management positions (*id.* at IKEA-101757) and states "Our Goals" in a section entitled "WHERE DO WE WANT TO BE Diversity & Inclusion in the US" (Ex. 11 at IKEA-101756-101757). The Goal for Age is: "Age distribution & engagement, including focusing on young potential and on 50+"; and the Goal "by 2018" is: "Increase the percentage of coworkers under 34 in salaried exempt positions to be more reflective of the under 34 coworker population in our stores." Ex. 11 at IKEA-101757.

- Sets out a specific plan to integrate "diversity" into all aspects of its business. and achieve its unlawful goals. *See* Ex. 11 at IKEA-101758-62. It identifies specific steps that were taken in the past. *See* Ex. 11 at IKEA-101733-39, including the distribution of a Best Practices document. It lays out specific steps to take in the future to achieve its age discriminatory goal. For example, it lays out a plan entitled, "HOW DO WE GET THERE Diversity & Inclusion in the US" that includes Six Steps for Integrating diversity and Inclusion into Our Business." Ex. 11 at IKEA-101758-62. The Six Steps Plan includes Store Manager performance evaluation goals; trainings; and measuring recruitment and succession goals by age. *Id.*

Contrary to IKEA's outlandish assertion (ECF 398 at p. 5), Plaintiffs do not admit that IKEA's openly declared, facially age discriminatory policy played no role in the individual

rejections for promotions. Plaintiffs most definitely do contend that IKEA's policy of age discrimination and preference favoring younger employees in management positions played a role and had a determinative influence on each plaintiff's individual rejection. Indeed, and by way of example only, the Court entered a finding of fact in its Sanctions Memorandum that the FY16 D&I Recap (Ex. 11) was sent in 2016 by email from Nabeela Ixtabalan, then the head of IKEA US Human Resources, to many recipients nationwide including Kishorn Henry, then a Human Resources Business Partner at IKEA's Conshohocken store who, in 2016, was directly involved in the hiring of the management position at issue in Plaintiff Donofrio's ADEA claim. ECF 378 at p. 28. Plaintiffs have not introduced evidence on this point in support of their Motion for Partial Summary Judgment and Equitable Relief in recognition that: i) the facts establishing causation as to particular job actions are disputed and not appropriately resolved by the Court as a matter of law at the summary judgment stage; and ii) resolution of any plaintiffs' particular claims as to individual rejections is not necessary to the Court's declaring IKEA's policy unlawful and issuing prospective injunctive relief, including enjoining its further use.

## III. IKEA Essentially Ignores, Thus Concedes, The Issue Of Plaintiffs' Entitlement To Prospective Injunctive Relief.

IKEA falsely denied for nearly six years having age-based personnel goals. *See* Court's Memorandum (ECF 378) at p. 27-28 (making a finding of fact that IKEA-101714, with attached FY16 US D&I Recap (IKEA-101724-63) establishes that age-based personnel goals were not "stale" or retracted as IKEA previously claimed). IKEA willfully and in bad faith withheld evidence of those age-based personnel goals as stated in its facially age discriminatory "diversity" policy in violation of Court Order. *See* ECF 378 at 58, 60, 64. Having now been caught red-handed, IKEA cannot deny the existence of its facially discriminatory policy so, instead, tries to get the Court to ignore it by focusing exclusively on the issue of whether

particular decisions were made in furtherance of its policy. That is a matter not now before this Court.

But whether the Court should issue prospective injunctive relief to ensure that IKEA does not continue to violate the ADEA is a matter now before the Court by Plaintiffs' Motion. IKEA does not dispute the existence of its openly expressed, documented in writing, facially discriminatory "diversity" policy of age distribution, including focus on young potentials and on 50+ with a goal and plan to increase the percentage of employees under the age of 34 in management positions. IKEA offers no evidence that it has taken any steps to remediate or even stop what it so cavalierly dismisses as it "abstract policy of age discrimination" evidenced by documents that "merely" reflect its practice of age discrimination.

IKEA's Opposition essentially ignores the matter before the Court. See ECF 398 at p. 7, n.6. By doing so, IKEA concedes it. *See, e.g.*, *Hausknecht v. John Hancock Life Ins. Co.*, 334 F. Supp. 3d 665, 682 (E.D. Pa. 2018) (holding that a party who selectively responds to only some arguments made in a motion concedes the arguments ignored).

## IV. Conclusion.

The ADEA explicitly vests jurisdiction in the federal district courts to grant equitable relief to effectuate its purposes and to issue prospective injunctive relief to restrain a company's further violation of the Act. This Court should not abide IKEA's openly flouting the ADEA.

For the foregoing reasons and those stated in its opening brief, Plaintiffs respectfully request that the Court exercise its authority, grant Plaintiffs' Motion, and enter the proposed Order previously submitted by Plaintiffs (ECF 388-3).

Respectfully submitted,

**CONSOLE MATTIACCI LAW, LLC**

BY: *<u>/s/ Susan Saint-Antoine</u>*

Stephen G. Console
Laura C. Mattiacci
Susan M. Saint-Antoine
Caren N. Gurmankin
Evelyn Kallenbach
Madison Provorny
1525 Locust Street, 9th Fl.
Philadelphia, PA 19102
(215) 545-7676 (phone)
(215) 545-8211 (fax)

Attorneys for Named Plaintiffs,
Frank Donofrio, Brandon Paine and William Antonelli (*on behalf of themselves individually and on behalf of those similarly situated*)

July 24, 2024