**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FRANK DONOFRIO,<br>*on behalf of himself individually*<br>*and on behalf of those similarly situated,*<br>Plaintiff,<br><br>v.<br>IKEA US RETAIL, LLC<br>Defendant. | : | CIVIL ACTION<br>No. 2:18-cv-00599-AB |
| WILLIAM V. ANTONELLI, JR.,<br>*on behalf of himself individually*<br>*and on behalf of those similarly situated,*<br>Plaintiff,<br><br>v.<br>IKEA HOLDING US, INC., *et al.*<br>Defendants. | : | CIVIL ACTION<br>No. 2:19-cv-01286-AB |
| BRANDON PAINE,<br>*on behalf of himself individually*<br>*and on behalf of those similarly situated,*<br>Plaintiff,<br><br>v.<br>IKEA HOLDING US, INC., *et al.*<br>Defendants. | : | CIVIL ACTION<br>No. 2:19-cv-00723-AB |

# PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR FINAL CERTIFICATION

**CONSOLE MATTIACCI LAW, LLC**

BY: /s/ Susan Saint-Antoine
Stephen G. Console
Laura C. Mattiacci
Susan M. Saint-Antoine
Caren N. Gurmankin
Evelyn Kallenbach
Madison Provorny
1525 Locust Street, 9th Fl.
Philadelphia, PA 19102

Dated: 7/24/2024

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. Plaintiffs Have Not Misrepresented Anything, Including What The Court Ordered As A Sanction For IKEA's Spoliation Of Evidence And Willful/Bad Faith Violation Of The Court's Order .......... 1

B. IKEA misstates what is required for final certification and ignores the Third Circuit's definition of what it means to be "similarly situated" .......... 2

C. It is untenable for IKEA to argue that the facts established by the Court's Order (as well as those that the Court concluded in its Memorandum, established by IKEA's admissions, and the documents on their face) do not satisfy the Third Circuit's definition of "similarly situated" as properly defined .......... 3

D. IKEA Is Wrong When It Argues That Plaintiffs Have Produced No Evidence Of Systemic Age Discrimination Or Tries To Minimize Its Significance .......... 7

E. All Plaintiffs Are Similarly Situated In The Most Fundamental Way: Each Was Indisputably Subject To IKEA's Unlawful Age Discriminatory Preference For Younger Employees In Management Positions When Their Application For Promotion To A Management Position Was Rejected .......... 8

III. CONCLUSION .......... 9

**TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Fischer v. Fed. Express Corp.*,
42 F.4th 366 (3d Cir. 2022) .......... 3

*General Dynamics Land Systems, Inc. v. Cline,*
540 U.S. 581 (2004) .......... 4

*Hazen Paper Co. v. Biggins,*
507 U.S. 604 (1993) .......... 4

*International Bros. of Teamsters v. United States,*
431 U.S. 324 (1977) .......... 4

*Pierce v. City of Phila.*,
2018 U.S. Dist. LEXIS 217216 (E.D. Pa. Dec. 28, 2018) .......... 7

*Sperling v. Hoffman-LaRoche,*
924 F. Supp. 1346 (D.N.J. 1996) .......... 5

**Statutes**

29 U.S.C. § 216 .......... 3
29 U.S.C. § 626 .......... 3

**Rules**

Fed.R.Civ.P. Rule 23 .......... 3

# I. INTRODUCTION

Defendants' Opposition To Plaintiffs' Motion For Final Certification (*Donofrio* ECF 399)[1] makes largely the same arguments that IKEA made in support of its own Motions to Decertify the *Donofrio, Paine* and *Antonelli* cases. Plaintiffs opposed Defendants' Motions in those three cases, and for purposes of brevity, incorporate by reference their Opposition Briefs while highlighting briefly below just a few key points. As explained in their moving brief, Plaintiffs through their one Motion under caption of all three cases, has moved for final certification in each of the cases.

# II. ARGUMENT

## A. Plaintiffs Have Not Misrepresented Anything, Including What The Court Ordered As A Sanction For IKEA's Spoliation Of Evidence And Willful/Bad Faith Violation Of The Court's Order.

Contrary to IKEA's assertion, Plaintiffs have not misrepresented the Court's Order or Memorandum on Sanctions. Plaintiffs did not argue in their moving brief that the Court ordered that Plaintiffs were "similarly situated" and that the case was finally certified to proceed to trial as a collective action. What Plaintiffs argued was that the Order <u>established the facts</u> that satisfy the similarly situated requirement <u>as defined</u> by the Third Circuit, and also established <u>the facts</u> sufficient to establish (not just allege) a ”pattern or practice" of age discrimination.

That the Court did not order final certification as a sanction for IKEA's spoliation of material evidence and willful/bad faith violation of a Court Order does not mean that each case should not be finally certified to proceed as a collective action, nor does it diminish the significance of what the Court <u>did</u> order.

---

[1] Unless indicated otherwise, citations to ECF numbers are to *Donofrio* docket entries for documents filed under caption of all three cases.

The Court has ordered: "It is established for purposes of second stage certification that IKEA had in place a common employer practice, or standard operating procedure, to which its U.S. retail employees were subject, of favoring younger employees for leadership development and management level positions." Court's May 6, 2024 Order (Donofrio ECF 379). To say that what is established by Court Order for purposes of second stage/final certification may not be disputed for purposes of second stage/final certification is not to "materially misrepresent Defendants' merits position," as IKEA accuses (ECF 399 at p. 2) and upon which they base their Opposition.

All of Defendants' various arguments to the effect that IKEA did *not* have a common employer practice, or standard operating procedure, of favoring younger employees for management level positions to which its US retail employees (which, by definition of the eligibility requirements, indisputably includes all plaintiffs) were subject, are inappropriate and should not be considered for purposes of Plaintiffs' Motion in light of the Court's Order.

**B. IKEA misstates what is required for final certification and ignores the Third Circuit's definition of what it means to be "similarly situated."**

IKEA invites the Court to commit reversible error by ignoring the Third Circuit's definition of "similarly situated" and arguing instead for the application of a more rigorous analysis under Fed.R.Civ.P. 23.

IKEA tells this Court: "At the final certification/decertification phase, **Plaintiffs** have the burden to prove by a 'preponderance of the evidence' that they are **all** similarly situated' such that this case can be tried on a representative basis." IKEA Opposition at p. 3 (emphasis in original). IKEA argues again that "[t]he rigorous analysis the Court must conduct at this stage requires the Court to consider whether there is common evidence to show a legal violation for each individual Plaintiff, or, alternatively, if evidence unique to each Plaintiff is necessary."

IKEA's Opposition at 14. Other than the burden of proof (which Plaintiffs recognized in their Motion), IKEA is wrong.

The ADEA adopts the collective action procedure of the FLSA. 29 U.S.C. § 626(b), incorporating 29 U.S.C. § 216(b). A Section 216(b) collective action binds no one who has not given their written consent to affirmatively opt in, is not representative in nature, and is not subject to the rigorous analysis of a Rule 23 class action. *See, e.g., Fischer v. Fed. Express Corp.*, 42 F.4th 366, 380 (3d Cir. 2022)(in reaching its holding that the district court must have personal jurisdiction over the defendant with respect to each opt-in plaintiff's individual claim, the Third Circuit explained that Section 216(b) collective actions are "fundamentally different than Rule 23 class actions."). The Third Circuit in *Fischer* described a collective action as being nonrepresentative in nature and requiring only that plaintiffs be "similarly situated;" they are not subject to the rigorous analysis of a Rule 23 class action.

Being "similarly situated" for purposes of an ADEA collective action "means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of [the ADEA]." *Donofrio*, ECF 70 (Court's May 15, 2019 Order) at p. 5 (citing *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 538 (3d Cir. 2012). This definition of "similarly situated" as stated in *Zavala* was confirmed by the Third Circuit in *Karlo v. Pittsburgh Glass Works, LLC,* 849 F.3d 61, 85-86 (3d Cir. 2017)(citing *Zavala*, 691 F.3d at 536-37). IKEA's Opposition ignores the Third Circuit's definition and argues based on its own definition instead.

**C. It is untenable for IKEA to argue that the facts established by the Court's Order (as well as those that the Court concluded in its Memorandum, established by IKEA's admissions, and the documents on their face) do not satisfy the Third Circuit's definition of "similarly situated" as properly defined.**

Plaintiffs do not need to show that they will use only common evidence, to be presented on a representative basis, to prove IKEA's liability for each particular rejection. Under the Third Circuit's definition, Plaintiffs need only show that they were subjected to some common employer practice that, if proved, would help demonstrate a violation of the ADEA. The Court's Order establishes – and it cannot be disputed for purposes of this Motion – that IKEA had a common employer practice, or standard operating procedure, of favoring younger employees for management level positions to which each plaintiff was subject when IKEA rejected their application for promotion to a management level position. Of course that helps establish a violation of the ADEA, on both a systemic basis and for each plaintiff's claim for particular rejection for promotion. To argue otherwise belies common sense. Without limitation:

First, IKEA's preference in favor of younger employees for development and management level positions is itself a *per se* violation of the ADEA. *See* Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment and Equitable Relief (incorporated herein by reference). The Supreme Court has stated unequivocally: "The ADEA forbids discriminatory preference for the young over the old." *General Dynamics Land Systems, Inc. v. Cline*, 540 U.S. 581, 584 (2004). Except to favor older employees over younger ones as per *Cline*, the ADEA requires an employer "to ignore an employee's age (absent a statutory exemption or defense.). *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 612 (1993).

Second, IKEA's common employer practice, or standard operating procedure, of favoring younger employees for management level positions establishes a pattern or practice of age discrimination justifying the Court to issue prospective injunction relief, regardless of success in any subsequent proceedings on the individual rejections for promotions. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 361 (1977). According to the

Supreme Court in *Teamsters,* in order to establish that an employer engaged in a pattern or practice of discrimination, plaintiffs must establish "more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts. [They must] establish by a preponderance of the evidence that [age] discrimination was the company's standard operating procedure – the regular rather than the unusual practice.'" *Id.* at 431 U.S. at 336; *see also, e.g., Sperling v. Hoffman-LaRoche,* 924 F. Supp. 1346 (D.N.J. 1996)(applying and quoting *Teamsters* in an ADEA collective action case).

The Court's Order uses this very language of *Teamsters* and establishes these facts. For purposes of second stage/final certification, it is thus established that IKEA has engaged in a pattern or practice of favoring younger employees for management level positions – indisputably in violation of the ADEA -- justifying an award of prospective relief without any further proof. No court has decertified a collective action given facts *not just alleging or even supporting*, but actually establishing, an employer's unlawful pattern or practice of age discrimination in violation of the ADEA.

<u>Third</u>, the establishment of a pattern or practice helps each plaintiff establish a violation of the ADEA in their individual cases because it supports an inference that any particular employment decision was made in support of the employer's common employer practice, or standard operating procedure, of favoring younger employees for favoring management level positions. *See, e.g., Teamsters,* 431 U.S. at 362; *Sperling,* 924 F. Supp. At 1359 (quoting *Teamsters* in support of this proposition). This helps each plaintiff prove that their particular rejection for promotion to a management level position was in violation of the ADEA, regardless even of who will have the burden of proof (an issue on which the parties disagree, but which is not in any event dispositive of plaintiffs' claims).

Fourth, if it is a company's common practice, or standard operating procedure, to prefer younger employees for management level positions to which the employee was subject, it is reasonable to infer that the company followed its common employer practice, or standard operating procedure, in connection with each particular decision regarding the staffing of management positions – the very thing at issue in this case.

Fifth, a company's common practice, or standard operating procedure, of favoring younger employees for management positions in violation of the ADEA is evidence of IKEA's age discriminatory bias and intent to discriminate in connection with the staffing of its management level positions. Intent is the key to a disparate treatment case, and a management level position is the very thing sought by each plaintiff in each case.

Sixth, this Court has already concluded that, even when considered outside of the collective action pattern or practice context, relevant evidence of a pattern or practice of discrimination may be used in support of individual disparate treatment claims of age discrimination against IKEA. *Branson, et al. v. IKEA Holdings US, Inc.*, C.A. No. 2:20-CV-05556-AB, ECF No. 46 at p. 8, LEXIS CITE (citing *Chin v. Port Auth. of N.Y. and N.J.*, 685 F.3d 135, 149 (2d Cir. 2012)("Evidence of an employer's general practice of discrimination may be highly relevant to an individual disparate treatment claim or to a disparate impact claim.").

In sum, it cannot rightly be contested that the Court's Order establishing IKEA's common practice, or standard operating procedure, of favoring younger employees for management level positions does not help Plaintiffs establish a violation of the ADEA, both in connection with Plaintiffs' claims of systemic discrimination and their particular claims of individual rejections for promotions. For purposes of second/final stage certification, it is dispositive on the former and highly probative of the latter. Indeed, if otherwise, the prejudice

IKEA suffered as a result of IKEA's spoliation of evidence and willful/bad faith violation of the he Court's April, 2022 Order would not have been sufficiently addressed.

**D. IKEA Is Wrong When It Argues That Plaintiffs Have Produced No Evidence Of Systemic Age Discrimination Or Tries To Minimize Its Significance.**

IKEA's argument that Plaintiffs have produced no evidence of systemic age discrimination or that it is not significant for purposes of final certification is off the mark.

IKEA does not minimize the significance of the Court's Order on Sanctions by cavalierly dismissing it as establishing "abstract policy of discrimination." There is nothing "abstract" about it. On the contrary, the Court's Order establishes IKEA's common practice, or standard operating procedure of, <u>favoring younger employees for management positions</u> – indisputably in violation of the ADEA – <u>to which all plaintiffs were subject</u>. IKEA likewise does not minimize the significance of the Court's Sanctions Memorandum by asserting that it "merely stated" that IKEA's December, 2023 documents "reflected a practice of age discrimination by IKEA that was in effect during the class period." IKEA may not openly flout the ADEA.

IKEA does not minimize the significance of its own admissions or the openly declared, documented in writing, facially age discriminatory policy of age distribution, including focus on young potentials and on 50+ with a goal and plan to increase the percentage of employees under the age of 34 in management positions, by calling it a "diversity" policy. *See generally* Plaintiffs' Motion for Partial Summary Judgment And Equitable Relief and supporting opening and reply briefs, which Plaintiffs incorporate herein by reference.

IKEA is wrong when it asserts: "As a matter of law, documents that identify a 'stated goal of a [] diverse workforce … that reflects the demographics' of the population are not evidence of discriminatory decisions. *See Pierce v. City of Philadelphia Pierce v. City of Phila.*,

No. 17-95539, 2018 WL 6832093, at *1, 11 (E.D. Pa. Dec. 28, 2018)."[2] ECF 399 at p. 12. As Plaintiffs point out in detail in their Reply Brief in support of their Motion for Equitable Relief and Partial Summary Judgment, *Pierce* does not support this sweeping and erroneous statement of the law. Further, and contrary to IKEA's assertion, the diversity policy in *Pierce* is not at all like IKEA's facially discriminatory policy. IKEA's policy classifies its employees on the basis of age in a way that would tend to deprive them of employment opportunities; speaks in ageist stereotypes; indicates IKEA's conclusion that there are too many older employees in management positions and not enough younger ones; states a specific goal to increase the number and percentage of younger employees in management positions; and lays out a plan to integrate its unlawful diversity policy and age discriminatory goals into all aspects of its workforce, including specific steps involving distribution of a Best Practices toolkit, performance evaluations, training, and tracking.

### E. All Plaintiffs Are Similarly Situated In The Most Fundamental Way: Each Was Indisputably Subject To IKEA's Unlawful Age Discriminatory Preference For Younger Employees In Management Positions When Their Application For Promotion To A Management Position Was Rejected.

Fundamentally, the differences that IKEA focuses on are not material to the key focus at the second/final certification phase of a pattern or practice case: IKEA's systemic age discrimination. The different stores, different locations and so on are not material in light of the **national** and company-wide scope of what is established and cannot be disputed: IKEA had in place a common employer practice, or standard operating procedure, to which all plaintiffs were subject of favoring younger employees for management level positions.

[2] Plaintiffs' citations are to the LEXIS version of this case: 2018 U.S. Dist. LEXIS 217216 (E.D. Pa. Dec. 28, 2018).

Several other similarities (such as asserting the same claims and seeking the type of relief), have also been set forth by Plaintiffs. To the extent they are not specifically supported by citation, it is because it is Plaintiffs' understanding that they are not disputed, established by eligibility definition, or previously considered in the record on conditional certification. If that is insufficient or challenged, Plaintiffs request the opportunity to supplement their submission.

## III. CONCLUSION.

For all of the foregoing reasons, as well as those stated in their opening brief and in opposition to Defendants' Motion for Decertification, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and enter the proposed Order previously submitted.

Respectfully submitted,

**CONSOLE MATTIACCI LAW, LLC**

BY: */s/ Susan Saint-Antoine*
Stephen G. Console
Laura C. Mattiacci
Susan M. Saint-Antoine
Caren N. Gurmankin
Evelyn Kallenbach
Madison Provorny
1525 Locust Street, 9th Fl.
Philadelphia, PA 19102
(215) 545-7676 (phone)
(215) 545-8211 (fax)

Attorneys for Named Plaintiffs,
Frank Donofrio, Brandon Paine and William Antonelli (*on behalf of themselves individually and on behalf of those similarly situated*)

July 24, 2024