**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WILLIAM V. ANTONELLI, JR.,<br>Plaintiff,<br>v.<br>IKEA HOLDING US, INC., IKEA US RETAIL, LLC, AND IKEA NORTH AMERICA SERVICES, LLC,<br>Defendants. | CIVIL ACTION<br>NO. 19-1286-AB |

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF 305)**

IKEA presented evidence in its Motion for Summary Judgment that Amy Litterini, the hiring manager for the Active Selling Leader position at issue, (1) determined that a candidate other than Antonelli was the most qualified for the role and (2) never considered applicant ages. Antonelli's Opposition to Defendants' Motion for Summary Judgment dodges these critical undisputed material facts of this case. Antonelli does not dispute the following:

- Litterini did ***not*** consider age as a factor in her hiring decision[1] (ECF 324-1, SOF ¶ 52);
- During Antonelli's interview, it became apparent to Litterini that Antonelli was not prepared for it and had some pretty big opportunities within development[2] (324-1 ¶ 25);

---

[1] Instead, Antonelli challenges Litterini's "credibility" with no evidentiary basis or support. Antonelli mischaracterizes the record by arguing Defendants' Answers to Interrogatories are inconsistent with Litterini's testimony regarding whether Antonelli was qualified for the position. Litterini testified that "**on paper** he was qualified for the position," whereas in its Answers to Interrogatories, IKEA stated Litterini determined Antonelli did "did not meet the 'minimum qualifications' as that phrase is understood by her because he failed to demonstrate he was sufficiently customer centric ***during his interview***—the number one quality she was looking for in a candidate for the position."

[2] Antonelli appears to argue that Litterini could not take his interview performance into consideration because it is "a factor not listed among the consideration criteria set forth in IKEA's

- Antonelli is relying exclusively on his belief and positive feedback he received for claiming he was better qualified than Twyman (*id.* ¶ 48):

> BY MR. PACE:
> Q. Uh, you, you are basing your determination that you were better qualified, uhm, based upon your own belief, not on any other information?
> MS. GURMANKIN: Objection to form.
> THE WITNESS: Yeah. Based upon my own belief and positive feedback I've had from people.
> MR. PACE: Okay.

- The transition into the Active Selling Leader position was a lateral move for Twyman, who was already a Customer Service Leader when she applied for the Active Selling Leader position (*id.* ¶ 41);

- Before applying for the Active Selling Leader position, Antonelli ***never*** held a leadership position at IKEA (*id.* ¶ 13) (the job description explicitly states "Experience of managing and developing a team preferably in retail environment," IKEA-009932 (attached hereto as Exhibit A));

- Twyman worked at IKEA Pittsburgh over four years before Antonelli (*id.* ¶ 38);

- Litterini determined Twyman performed well in her interview for the Active Selling Leader position and liked Twyman's "passion around sales" and her "true desire to want to service customers regardless of what position she was in" (*id.* ¶ 46);

- Antonelli cannot explain why his sales experience was better than Twyman's experience at IKEA (*id.* ¶ 47);

- Antonelli was unaware of how Twyman performed during her interview with Litterini (*id.* ¶ 50);

---

nondiscrimination policy." ECF 324 at 33. This is confusing because it is self-evident an interview can be considered (or else, why would managers interview candidates) and also peculiar that Antonelli believes it needs to be explicitly referenced in a nondiscrimination policy.

- Antonelli believed the fact Litterini and Twyman were friends influenced the hiring decision[3] (*id.* ¶ 51);
- The conversation Litterini had with Antonelli about former Store Manager Terri Noble's alleged statements about age did not factor into Litterini's decision to reject Antonelli for the Active Selling Leader position he applied to over one year later (*id.* ¶ 54).

Rather, Antonelli attempts to flood the otherwise straightforward analysis of this motion by offering an outrageous **271** "Undisputed *Material* Facts In Support [sic] of Defendants' Motion for Summary Judgment." ECF 324-2 (emphasis added). Antonelli's distortions of the evidence are significant. Some of the more significant distortions are discussed in the body of the brief, and the lack of citations to the record in Plaintiff's "Undisputed Material Facts" are telling. The actual record demonstrates summary judgment should be granted.

## I. ARGUMENT

### A. Defendants' Motion is Not Premature.

Antonelli claims Defendants' Motion for Summary Judgment is "premature." ECF 324 at 29. This is not correct. The Court's May 6, 2024 Order set the dispositive motion deadline for June 3, 2024 (ECF 301), and, thus, IKEA filed its motion June 3, 2024. Despite this, Antonelli claims IKEA should not have filed its Motion at this stage, refers to the Tenth Circuit's decision in *Thiessen v. GE Capital Corp.*, 267 F.3d 1095 (10th Cir. 2001), claiming that IKEA "made no argument that they are entitled to summary judgment on the pattern or practice aspect of Plaintiff's Complaint." *Id.* This is, also, not true. IKEA moved for partial summary judgment as to

[3] Antonelli tiptoes around this fatal undisputed fact by claiming it is irrelevant because *Gross* did not alter the plaintiff's burden at summary judgment. Yet, Antonelli does not dispute that *Gross* requires that age must be the "but-for" cause of the employer's adverse decision. In other words, age cannot be the "but-for" cause for Antonelli's rejection if a friendship also influenced the hiring decision. Moreover, Antonelli does not dispute that Litterini was the hiring manager for the position and fails to offer any citation to the record revealing anyone else had input in the final decision. ECF 324-1, ¶¶ 14, 37.

Antonelli's use of the "pattern or practice" method for proving ADEA disparate treatment claims. *See* ECF 307. But, whatever burden standard is applied, IKEA properly filed its Motion for Summary Judgment unequivocally demonstrating Antonelli was rejected for the Active Selling Leader position for a lawful reason—Twyman was categorically the most qualified candidate for the position.

B. **Speculation is Not Evidence.**

Antonelli claims that age must have been the reason he was not selected for the Active Selling Leader role, relying almost entirely on leaps of logic and guesswork. Saying the same thing loudly and repeatedly does not make it true. Facts matter, and Antonelli has **no evidence** connecting his rejection for the Active Selling Leader position with his age.[4] Guesswork cannot avoid summary judgment. *See Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990) (holding that an inference based on speculation or conjecture is insufficient to create a material factual dispute to defeat the entry of summary judgment).

Antonelli curiously contends that IKEA "ignores its history of denying promotions to Plaintiff Antonelli prior to March 2018" and suggests that, somehow, this means that the position at issue was denied Plaintiff due to his age. ECF 324 at 9 n.2. But Marjorie Lapson, a successful candidate for the Sales Steering Support Specialist position Antonelli applied for in September 2017, is approximately ***three years older*** than Antonelli.[5] ECF 324-1, ¶¶ 7-9. This history reveals IKEA has no age animus and does not support Plaintiff's claims.

---

[4] Antonelli bizarrely refers to the publications "The Testament of a Furniture Dealer" and "A Little IKEA Dictionary" but does not even attempt to make any connection between these documents and the hiring decision at issue, let alone demonstrate Litterini was familiar with either.

[5] This position is outside the statute of limitations but is the failed promotion that qualified Antonelli to participate in the *Donofrio* collective action.

Antonelli also highlights the testimony of two former IKEA Pittsburgh managers who were terminated from IKEA more than ***one year before*** Antonelli applied to the Active Selling Leader position, without offering any factual nexus between these individuals and Antonelli's application. ECF 324-1, ¶ 55, ECF 324-2, ¶ 4. This is a distraction from relevant facts. Nevertheless, it is undisputed that hiring manager Litterini never heard anyone in management at IKEA say, nor had she been told, that IKEA was only willing to promote younger employees. ECF 324-1 ¶ 56. Rather, Litterini confirmed when making hiring decisions, it "comes strictly down to" whether the hiring manager believes the applicant is qualified and if they have "a value set for IKEA."[6] *Id.* ¶ 58.

C. **The Record Does Not Support Antonelli's Belief that a Corporate Effort to Implement Age-Based Goals Impacted *His* Application for Promotion.**

Antonelli devotes numerous pages attempting to create a false narrative about a corporate restructure that was implemented in Fall 2017 at IKEA retail stores called Organization for Growth ("O4G"). For instance, Antonelli makes the incendiary statement that O4G was "designed to further accomplish the company's age-based goals" (ECF 324 at 22), yet Antonelli's citations to the record (ECF 324-2 ¶¶ 120, 123) fail to support this false statement, and only indicate:

> 120. Organizing For Growth ("O4G") was an initiative that started around the Fall 2016 involved a change in management approach and resulted in some tasks being removed from the stores and assigning them to the regional offices and eliminating certain positions in the stores. (Exhibit D, Noble Dep. 17:13-18:17).

> 123. O4G involved the elimination of positions within the stores and the creation of new positions within the stores. (Exhibit N, Mohr Dep. 203:14-21).

---

[6] Antonelli asserts generally that "managers had access to the age of employees" (ECF 324 at 21), but notably offers no evidence that Litterini had such access, and for good reason, she did not. Litterini confirmed she had "no idea how old the employees were." ECF 305-11 at 12, Litterini Dep., 174:22-24.

While Antonelli liberally references the testimony of former Store Manager Terri Noble and Human Resources Manager Susan Nasci throughout his Opposition, Antonelli fails to tell the Court that Noble testified that it would be "**impossible**" for IKEA Pittsburgh to consider age when making hiring **decisions**.[7] ECF 324-4, Ex. D, Noble Dep., 47:13-24 (emphasis added). Similarly, Noble confirmed that she ***never*** implemented ***any*** age-based personnel goals communicated to her and Susan Nasci at IKEA Pittsburgh. *Id.* at 48:21-24. Nasci further confirmed that IKEA Pittsburgh always hired the most qualified candidate. ECF 324, Exhibit E, Nasci Dep., 165:2-20.

D. **IKEA Did Not Obstruct Antonelli from Getting Timely Depositions.**

Antonelli contends IKEA refused to present witnesses for depositions. ECF 324 at 29. This is misleading. In reality, on May 9, 2024, more than ***eight months*** after discovery closed, Antonelli's counsel requested the depositions of eight corporate witnesses, none of whom would have any knowledge about Antonelli's application and rejection. As explained to Antonelli's counsel, the Court never reopened discovery. IKEA inquired if Antonelli's counsel believed this was an oversight by the Court, and if so, suggested Antonelli move for clarification of the Court's May 6, 2024 Order. Antonelli chose not to move for clarification or to reopen discovery, and now seeks to weaponize his own decision not to pursue the discovery he thought he needed. Antonelli deposed the hiring manager, successful candidate, and recruiter for the one position at issue, so his argument that he was unable to "discover evidence in support of his claims" is belied by the record.

---

[7] Antonelli's provocative statement that the "increased focus on younger workers was not just a discussion point, but was undisputedly, put into action in Pittsburgh" (ECF 324 at 19) is demonstrably false. Moreover, the citations to the record in support of that statement likewise fail to support it.

E. **Antonelli Does Not Have Direct (or Circumstantial) Evidence of Age Discrimination.**

Antonelli argues he can present "direct evidence" of age discrimination because "IKEA had a facially age discriminatory diversity policy," but fails to present such evidence. Instead, Antonelli relies on documents that identify a "stated goal of a [] diverse [] workforce . . . that reflects the demographics" of the population, but such documents are not evidence of discriminatory ***decisions*** as a matter of law. *See Pierce v. City of Phila.*, No. 17-05539, 2018 WL 6832093, at *1, *11 (E.D. Pa. Dec. 28, 2018). In *Pierce*, where Console Mattiacci Law represented the plaintiff, the city articulated a goal of increasing the diversity of its workforce so that it "reflect[ed] the demographics of the City's population." *Id.* at *1. The court, nevertheless, granted summary judgment on a promotion claim for the defendant **because there was no evidence connecting the goal of its workforce mirroring the City's demographics to the decision at issue**. *Id.* at *11.

*Pierce* demonstrates the flaw in Antonelli's approach to this case. There, two positions were at issue and the court granted summary judgment on one, but not the other. Pierce sought to be promoted to two separate positons with the City's Department of Prisons: (1) Human Services Program Administrator ("HSPA") and (2) Community Justice and Outreach Director ("CJO"). The court granted summary judgment for the CJO position, but not the HSPA position because Pierce presented evidence of a direct link between a corporate goal and the HSPA hiring decision. Specifically, multiple emails were sent to the HSPA position's decision maker's supervisor before the position was posted, encouraging him to consider Jennifer Albandoz for a Deputy Commissioner position to increase Hispanic representation. In response, that supervisor wrote, "we will do what we can to promote Latinos within the confines of civil service regulations." *Id.* at *2. Although Albandoz was rejected for the Deputy Commissioner position, she eventually was

selected over Pierce for the HSPA. The court held that reasonable jurors could conclude Pierce was not promoted to the HSPA position because she was not Hispanic given the emails specifically recommending Albandoz and the statement of promoting Latinos within the confines of civil service regulations. *Id.* at *10.

For the CJO position, Leroy Pendleton (African American) was selected over Pierce. The court held that unlike in the context of the City's failure to promote Pierce to the HSPA position, the record did not allow reasonable jurors to find that the City's stated reason for not promoting her to the CJO position is pretextual. It noted that while Pierce relied on the fact the City has a goal of creating a diverse workforce that reflects Philadelphia's demographics, and evidence the City has a policy of considering race in personnel decisions, "Pierce makes no attempt, however, to connect this evidence with [the decision maker]'s decision to appoint Pendleton to the CJO Director position." *Id.* at *11. Moreover, the court determined there was "no evidence that anyone asked or urged [the decision maker] to appoint Pendleton to an executive-level position and there is similarly no record evidence [he] felt any pressure to appoint Pendleton specifically because he is African American. *Id.*

The same is true here. Litterini unequivocally testified that when making hiring decisions, it "comes strictly down to" whether the applicant is qualified and if they have "a value set for IKEA." Absent from the record is any evidence that Litterini considered any diversity goal, policy, or practice in making her hiring decision or felt any pressure to hire Twyman. To the contrary, the undisputed record reveals Litterini found compelling Twyman's "passion around sales" and her "true desire to want to service customers regardless of what position she was in."

F. **Plaintiff's Efforts at Raising Credibility Disputes to Show Pretext Fall Flat.**

Antonelli incorrectly suggests that IKEA is relying only on "their own presentation of evidence where the question of fact at issue turns exclusively on the credibility of their own

witnesses." ECF 324 at 11. This argument both misstates the evidence and misunderstands the controlling standards for summary judgment. As this Court is well aware, to defeat a motion for summary judgment, a plaintiff's evidence must allow a factfinder to believe the defendant's non-discriminatory reason "was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Plaintiff has not pointed to any "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered legitimate reason for the hiring actions. *Id.* Rather: (1) Antonelli's own testimony establishes he is relying exclusively on his subjective belief and is merely guessing; (2) there is no sufficient ground for impeachment that would place the facts to which Litterini testified in legitimate dispute; and (3) the documented internal applicant feedback form contemporaneously prepared in connection with Antonelli's interview for the Active Selling Leader position indicates Antonelli's opportunities for development included giving clear direction towards a goal, focusing on being customer centric ("**the customer was not mentioned as much as desired during this interview for this position**"), finding resolution or moving forward without direction, and time management (ECF 324-2 ¶ 239).

### G. The Evidence Does Not Support Antonelli's Retaliation Claim.

Antonelli mischaracterizes the record relating to his retaliation claim. For instance, Antonelli confirmed at deposition that nothing prevented him from applying to any of the open, posted positions in the Kitchens Department in mid-2017. ECF 324-4, Ex. A, Antonelli Dep., 72:13-16. Litterini had no duty to notify him of them, and any failure to do so is not a cognizable legal claim. Nevertheless, Antonelli did not file a Charge of Discrimination until December 31, 2018 (ECF 15 ¶ 27), and consequently the 300-day "lookback" period (February 24, <u>**2018**</u>) would not cover such a claim. Likewise, Antonelli offers no evidence that the decision maker for the Sales Steering Support Specialist position had any knowledge that Antonelli engaged in any type

of protected activity, and again, this position is outside the applicable statute of limitations as the successful candidates were selected in September 2017 (ECF 324-1 ¶ 8).

The undisputed record establishes that, for the only timely promotion decision challenged by Plaintiff, Litterini selected Twyman over Antonelli strictly based on qualifications and interview performance. Antonelli's vague assertion that IKEA "failed to investigate or take remedial and/or corrective action regarding Plaintiff's complaints of discrimination" is unsupported by the record and not relevant. (ECF 324 at 41.)

### H. Plaintiff Does Not Seriously Dispute That He Failed to Exhaust Administrative Remedies on Certain Claims.

Antonelli cannot escape the reality that he failed to exhaust his administrative remedies relating to alleged removal of his job duties as a result of filing the Charge of Discrimination. In *Simko*, the Third Circuit noted that where a plaintiff experienced a change in circumstances that formed the basis of a new, distinct claim, after filing a charge of discrimination, a new charge must be filed. 992 F.3d 198, 213 (3d Cir. 2021). The EEOC could not predict the future and investigate a new distinct claim, i.e. something that did not allegedly occur until *after* IKEA learned of the Charge of Discrimination. Indeed, the Charge of Discrimination does not mention job duties or any specific conduct that Antonelli deemed retaliatory. (ECF 305-13). Moreover, with no citation to the record, Antonelli contends he "set forth the names of those individuals who were involved in his treatment." (ECF 324 at 42.) A simple reading of the Charge of Discrimination demonstrates that statement is inaccurate. The Court should grant summary judgment on this claim in favor of IKEA.

## II. CONCLUSION

Antonelli's Opposition Brief is designed to mislead the Court regarding the hiring decision at issue here. The record establishes Antonelli has no evidence to support his contentions of age

discrimination and retaliation other than his own subjective belief based on unproven allegations. The Court should grant Defendants' Motion for Summary Judgment.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, PC.**

*/s/ Brandon R. Sher*
Paul Lancaster Adams, Esq.
Brandon R. Sher, Esq.
Jennifer G. Betts, Esq.
Emily Santoro, Esq.
Chris R. Pace, Esq. (Admitted *Pro Hac Vice*)
1735 Market Street, Suite 3000
Philadelphia, PA 19103
(215) 995-2840 Telephone
(215) 995-2801 Facsimile
pladams@ogletree.com
brandon.sher@ogletree.com
jenn.betts@ogletree.com
emily.santoro@ogletree.com
chris.pace@ogletree.com

Date: July 26, 2024

*Attorneys for Defendants*