**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FRANK DONOFRIO, on behalf of himself individually and on behalf of those similarly situated,<br>Plaintiff,<br>v.<br>IKEA US RETAIL, LLC,<br>Defendant. | CIVIL ACTION<br>NO. 18-599-AB |
| WILLIAM V. ANTONELLI, JR., on behalf of himself individually and on behalf of those similarly situated,<br>Plaintiff,<br>v.<br>IKEA HOLDING US, INC., IKEA US RETAIL, LLC, and IKEA NORTH AMERICA SERVICES, LLC,<br>Defendants. | CIVIL ACTION<br>NO. 19-1286-AB |
| BRANDON PAINE, on behalf of himself individually and on behalf of those similarly situated,<br>Plaintiff,<br>v.<br>IKEA HOLDING US, INC., IKEA US RETAIL, LLC, and IKEA NORTH AMERICA SERVICES, LLC,<br>Defendants. | CIVIL ACTION<br>NO. 19-723-AB |

**DEFENDANTS' SURREPLY**
**TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**
**AND EQUITABLE RELIEF**
**DONOFRIO ECF 388; PAINE ECF 339; ANTONELLI ECF 310**

Saying the same thing loudly and repeatedly does not make it true. There is no evidence in the record that IKEA ***has*** an "open expressed, documented in writing, policy of age distribution, including focus on young potentials and on 50+ with a goal and plan to increase the percentage of employees under the age of 34 in management positions." ECF 411 at 12. Instead, Plaintiffs

merely refer the Court to an email from January **2016** and its attachments (which date back to **2014**). ECF 411 at 15 (citing to Plaintiffs' Exhibit 11). Plaintiffs then incorrectly suggest the burden is on IKEA to prove a negative by offering evidence it has no discriminatory policy currently in effect rather than Plaintiffs demonstrating there is a current policy necessitating enjoinment[1]. That is not the law, and Plaintiffs do not dispute that the ADEA prohibits shifting the burden such that an employer must disprove allegations it intentionally discriminated against an employee. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).[2]

Curiously, not one of Plaintiffs' "Statement of Undisputed Material Facts" in support of their motion establishes that IKEA maintains a current policy they characterize as discriminatory. And for good reason, such a fact would be disputed, requiring Plaintiffs' motion be dismissed. Plaintiffs also sabotage their own motion by admitting it *is* disputed what the "focus on 50+" reflects in the purported policy.[3] *Id.* at 10. Moreover, without permission from the Court, Plaintiffs offer new "page citations" and attach "inadvertently missing IKEA documents" for the Statement of Undisputed Material Facts. They do not get a second bite at the apple.

---

[1] Plaintiffs refer to the Court's sanctions memorandum, in which the Court only stated that a specific document (same as Exhibit 11) "establishes age-based personnel goals were not 'stale' or retracted . . . but rather existed **into the class period**." ECF 378 at 27-28. The latest class period ended on June 1, 2019, more than five years ago.

[2] IKEA moved for partial summary judgment as to the use of the "pattern or practice" method for proving ADEA disparate treatment claims and will not repeat its arguments here. *Donofrio* ECF 385, 408.

[3] With no supporting evidence, Plaintiffs ask the Court to ignore the plain meaning, and instead speculate regarding the meaning of language in IKEA documents that indicates an interest in increasing age diversity in management to include those over the age of 50. Plaintiffs conveniently ignore the description in another document that IKEA would like to focus on young potentials and on 50+ to "[i]ncrease the generational diversity in our salaried exempt positions to be more reflective of the majority of our coworker population." ECF 393 at 99. And they ignore other documents generated by actual IKEA stores expressly noting the desire to ***increase*** the number of employees over 45. *See Donofrio* ECF 398 at 6.

Plaintiffs also argue IKEA took a quote from the Supreme Court's decision in *Kentucky Retirement Systems v. EEOC* "out of context." ECF 411 at 8. Importantly, immediately after indicating that an employer may have relied upon a formal, facially discriminatory policy requiring adverse treatment, the Supreme Court made the point to explain that the employee's age must still have "played a role in that process and had a determinative influence on the outcome." The citation Plaintiffs rely upon fails to support their proposition. Similarly, Plaintiffs endeavor to downplay the Supreme Court's unambiguous conclusion in *Falcon* that federal discrimination laws prohibit discriminatory employment ***practices***, not an abstract policy of discrimination. But Plaintiffs never address how the alleged discriminatory policy at play here is anything but abstract and instead attempt to distract the Court by claiming *Falcon* only addresses the requirements of Rule 23.

**Plaintiffs Have No Evidence of an Ongoing or Future Injury**

It is axiomatic that a party may not rely on "past injuries" to support a claim for injunctive relief—rather, a party must show that injunctive relief would eliminate an "ongoing or future injury." *Roe v. Devereux Found.*, 650 F. Supp. 3d 319, 329 (E.D. Pa. 2023). In short, "an injunction is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat" that the party will be "wronged again." *Burns v. SeaWorld Parks & Entm't Inc.*, No. 22-2941, 2024 WL 1660514, at *7 (E.D. Pa. Apr. 17, 2024).

Thus, a party may only obtain injunctive relief if it shows it is subject to an ongoing practice that violates the law. Plaintiffs have made no such claim here. In fact, the documents that Plaintiffs identify as containing "smoking gun evidence" of a "policy of discrimination" are dated years before the end of the latest class period.

**<u>*Pierce* Confirms Diversity Goals Without a Causal Link is Insufficient to Demonstrate Discrimination</u>**

Plaintiffs' effort to minimize this District Court's ruling in *Pierce* fail spectacularly. In *Pierce v. City of Philadelphia*, a case in which Console Mattiacci Law represented the plaintiff, the city articulated a goal of increasing the diversity of its workforce so that it "reflect[ed] the demographics of the City's population." No. 17-05539, 2018 WL 683093, at *1 (E.D. Pa. Dec. 28, 2018). The court, nevertheless, granted summary judgment on one of the promotions claims for the defendant because there was no evidence connecting the goal of its workforce mirroring the City's demographics to the decision at issue. *Id.* at *32-*36.

*Pierce* demonstrates the flaw in Plaintiffs' approach to these cases. There, two positions were at issue and the court granted summary judgment on one, but not the other. Pierce sought to be promoted to two separate positions with the City's Department of Prisons: (1) Human Services Program Administrator ("HSPA") and (2) Community Justice and Outreach Director ("CJO"). The court granted summary judgment for the CJO position, but not the HSPA position precisely because Pierce presented evidence of a direct link between a corporate goal and the HSPA hiring decision. Specifically, multiple emails were sent to the HSPA position's decision maker's supervisor before the position was posted, encouraging him to consider Jennifer Albandoz for a Deputy Commissioner position to increase Hispanic representation. In response, that supervisor wrote, "we will do what we can to promote Latinos within the confines of civil service regulations." *Id.* at *2. Although Albandoz was rejected for the Deputy Commissioner position, she eventually was selected over Pierce for the HSPA. The court held that reasonable jurors could conclude Pierce was not promoted to the HSPA position because she was not Hispanic given the emails specifically recommending Albandoz and the statement of promoting Latinos within the confines of civil service regulations. *Id.* at *10.

For the CJO position, Leroy Pendleton (African American) was selected over Pierce. The court held that unlike in the context of the City's failure to promote Pierce to the HSPA position, the record did not allow reasonable jurors to find that the City's stated reason for not promoting her to the CJO position is pretextual. It noted that while Pierce relied on the fact the City has a goal of creating a diverse workforce that reflects Philadelphia's demographics, and evidence the City has a policy of considering race in personnel decisions, "Pierce makes no attempt, however, to connect this evidence with [the decision maker]'s decision to appoint Pendleton to the CJO Director position." *Id.* at *11. Moreover, the court determined there was "no evidence that anyone asked or urged [the decision maker] to appoint Pendleton to an executive-level position and there is similarly no record evidence [he] felt any pressure to appoint Pendleton specifically because he is African American." *Id.* Here, absent from the record is any evidence that any decisionmaker considered any goal, policy, or practice in making their hiring decisions.

**Plaintiffs Mischaracterize the ADEA**

In their Reply, Plaintiffs confusingly argue ADEA §4(a)(2) makes it unlawful "for an employer to openly express its intent to discriminate against older employees by adopting a written policy that on its face classifies them based on age in a way that would tend to deprive them of employment opportunities." ECF 411 at 10. First, Section 4(a)(2) addresses disparate *impact* claims, not disparate treatment. Here, Plaintiffs have made no effort to prove discrimination under a disparate impact theory and have abandoned such claims. Second, Plaintiffs do not even attempt to explain how focusing on young potentials ***and*** on 50+ with a ***goal*** to increase the percentage of employees under the age of 34 in management positions—a goal the *undisputed* evidence shows no hiring manager considered—actually deprived them of promotion. They are merely guessing it did. Plaintiffs' Motion for Partial Summary Judgment must be denied.

Respectfully submitted,

*/s/ Brandon R. Sher*

Paul Lancaster Adams, Esq.
Brandon R. Sher, Esq.
Jennifer G. Betts, Esq.
Emily Santoro, Esq.
Chris R. Pace, Esq. (Admitted *Pro Hac Vice*)
John G. Stretton, Esq. (Admitted *Pro Hac Vice*)
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PC.**
1735 Market Street, Suite 3000
Philadelphia, PA 19103
(215) 995-2840 Telephone
(215) 995-2801 Facsimile
pladams@ogletree.com
brandon.sher@ogletree.com
jenn.betts@ogletree.com
emily.santoro@ogletree.com
chris.pace@ogletree.com
john.stretton@ogletree.com