**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FRANK DONOFRIO,<br>*on behalf of himself individually and on behalf of those similarly situated,*<br>Plaintiff,<br><br>v.<br>IKEA US RETAIL, LLC<br>Defendant. | : | CIVIL ACTION<br>No. 2:18-cv-00599-AB |
| WILLIAM V. ANTONELLI, JR.,<br>*on behalf of himself individually and on behalf of those similarly situated,*<br>Plaintiff,<br><br>v.<br>IKEA HOLDING US, INC., *et al.*<br>Defendants. | : | CIVIL ACTION<br>No. 2:19-cv-01286-AB |
| BRANDON PAINE,<br>*on behalf of himself individually and on behalf of those similarly situated,*<br>Plaintiff,<br><br>v.<br>IKEA HOLDING US, INC., *et al.*<br>Defendants. | : | CIVIL ACTION<br>No. 2:19-cv-00723-AB |

# PLAINTIFFS' SURREPLY TO DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTIONS FOR SUMMARY JUDGMENT

**CONSOLE MATTIACCI LAW, LLC**

BY: */s/ Caren N. Gurmankin*
Stephen G. Console
Laura C. Mattiacci
Susan M. Saint-Antoine
Caren N. Gurmankin
Evelyn Kallenbach
Madison Provorny
1525 Locust Street, 9th Fl.
Philadelphia, PA 19102
*Attorneys for Plaintiff*

Dated: 8/5/2024

Plaintiffs Frank Donofrio, William Antonelli, Brandon Paine submit this timely Sur-Reply in response to the Reply Brief and Response to Plaintiff's Statement of Additional facts filed by IKEA in each of the three cases.[1] Because IKEA's reply in each of the three cases generally raises common issues, the three Plaintiffs submit this one Sur-Reply brief under all three captions but have also attached a "Sur-Reply Index And Exhibits" unique to each case attaching a few documents that were identified, known and easily accessible to IKEA but not included in plaintiffs' initial oppositions.

**1. IKEA's Replies Fail To Address The Substance And Significance Of The Evidence Of IKEA's Systemic Age Discrimination, Which Creates A Disputed Issue of Material Fact Precluding The Entry Of Summary Judgment In Favor Of IKEA.**

IKEA's replies in each case characterize evidence of its systemic discrimination as irrelevant to the issue of whether IKEA discriminated against in connection with each individual rejection for promotion.[2] This is wrong; such evidence is highly material to the issue of IKEA's intent to discriminate, the heart of a disparate treatment case. Even if the Court were to evaluate now as a matter of law IKEA's liability in connection with particular rejections for promotions absent a determination in the collective action as to the existence of IKEA's pattern or practice of age discrimination (which it should not) and/or even if the Court were to conclude that the

---

[1] *Donofrio v. IKEA US Retail, LLC,* No. 18-599 (AB): Defendant's Reply Brief In Further Support Of Defendant's Motion For Summary Judgment (ECF 413); Defendant's Response to Plaintiff's Statement Of Additional Facts (ECF 413-1).
*Antonelli v. IKEA Holding US, Inc. et al.*, No. 19-1286 (AB): Defendant's Reply Brief In Further Support Of Defendant's Motion For Summary Judgment (ECF 335); Defendant's Response to Plaintiff's Statement Of Additional Facts (ECF 335-2).
*Paine v. IKEA Holding US, Inc. et al.*, No. 19-19-0723 (AB): Defendant's Reply Brief In Further Support Of Defendants' Motion For Summary Judgment (ECF 364); Defendant's Reply To Plaintiff's Statement Of Undisputed Material Facts In Support Of Defendants' Motion For Summary Judgment, a/k/a Defendant's Response To Plaintiff's Statement Of Additional Facts (ECF 364-1)(*see* 364-1 n.1 explaining misnomer).

[2] *See Donofrio*, ECF 413-1 at p.2 ("The volume of "Additional Facts" alone undermines any purported materiality.") This is illogical. See also *Antonelli*, ECF 335-1, at p. 3; *Paine*, 364-1 at p. 2.

burden shifting under the *Teamsters* framework is prohibited by *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167 (2009)(which it should not[3]), whether IKEA engaged in systemic age discrimination favoring younger employees for promotion to management positions is a disputed issue of material fact that prevents the entry of summary judgment against each of the Plaintiffs on an individual basis and which IKEA ignores in its Replies.

Each Plaintiff's complaint seeks equitable and injunctive relief, both in behalf of those similarly situated and individually, for IKEA's systemic age discrimination*, i.e.,* its openly declared and/or facially age discriminatory policy of "age distribution" with a goal to "focus on young potentials" and to increase the number and percentage of younger employees in management positions. If Plaintiff's Motion for Partial Summary Judgement and Equitable Relief is denied, there remains an open and disputed issue of fact as to the existence of IKEA's openly declared policy of age discrimination for which each plaintiff seeks relief.

Second, independent of a pattern or practice "claim," evidence of IKEA's pattern or practice of age discrimination is highly probative of whether IKEA discriminated against each of Frank Donofrio, William Antonelli and Brandon Paine on an individual basis. This Court has already held as much, twice, in these cases involving IKEA. *See Milano v. IKEA Holdings US, Inc.*, No. 20-6307, 2021 U.S. Dist. LEXIS 183979 (E.D. Pa. Sep. 27, 2021)(Brody, J.)(explaining that a private individual plaintiff cannot bring a *Teamsters* pattern or practice "claim" but can use evidence of IKEA's pattern or practice as substantive proof for her disparate treatment claims);

---

[3] IKEA has not moved for summary judgment as to the existence of a pattern or practice of age discrimination by IKEA. IKEA moved for partial summary judgment **only** on the use of the *Teamsters* pattern or practice method of proving disparate treatment to the extent that it shifts the burden of persuasion in connection with individual rejections for promotion. See *Donofrio,* ECF 385.

*Branson, et al. v. IKEA Holdings US,* No. 20-5556, 2021 U.S. Dist. LEXIS 180616 (E.D. Pa. Sep. 22, 2021)(same).

**2. IKEA's Replies Demonstrate The Existence Of Disputed Issues Of Material Fact That Preclude The Entry Of Summary Judgment In Favor Of IKEA, Notwithstanding IKEA's Attempt To Characterize The Statements Of Fact As Unsupported Or Worse.**

In each of these cases, IKEA accuses Plaintiffs of trying to "distract" the Court or "confuse" the record with their additional statements of fact that preclude summary judgment or that the facts are unsupported by record support (or worse). The facts asserted are material because they include evidence that is probative of IKEA's systemic discrimination in addition to facts addressing in particular the individual rejections for promotion. They are voluminous because there is a lot of evidence of IKEA's bias and intent to discriminate against older employees, which is probative of the common issue of IKEA's systemic discrimination.

There are several instances in which IKEA does not dispute or deny the statement of additional fact, but fails to address it in substance because, they assert, it is not supported by the record evidence. For example, in *Antonelli,* Defendants wrongly assert that, as Plaintiff did not attach "Certification of Caren N. Gurmankin" in his Opposition Brief, his citations as to the ages of the successful candidates for the Sales Steering and Support Specialist position fail to support these statements. (*See* ECF 335-2 at ¶¶ 214-216.) First, in each of those Paragraphs, Plaintiff supported his assertions by citing to a specific document (2241) (a document that Defendants are well aware refers to a database that they produced in this case containing the dates of birth of employees, including the successful candidates for this position). Second, and even if Defendants were correct about Plaintiff's citations to the record, Plaintiff has, separately, set forth that two of the candidates for this position were both in their twenties (and, as such, far younger than he was); Defendants did not dispute the same. (*See* ECF 335-2, Defendants'

Response to Plaintiff's Statement of Undisputed Material Facts at ¶ 219.) As such, Plaintiff has sufficiently set forth (and cited to the record) the ages of the successful candidates for this position.

There are several instances in which IKEA does not actually deny the statement of fact, but says it is "disputed as stated" or a "mischaracterization," or "not supported" by the cited evidence when, in fact, the statements are fully supported in whole or material part or when read in the light most favorable to plaintiffs, as they must be for purposes of summary judgment. For example only (and without limitation), IKEA disputed that "IKEA's high ranking HR professionals tracked diversity metrics in connection with a goal to increase representation of younger people in management." See Donofrio ECF 413-1, ¶5. IKEA's sanctions brief admitted this. *See also* Paine, ECF 364-1, ¶*194;* Antonelli, ECF 335-2, ¶260.

There are many instances in IKEA's Reply Brief where IKEA falsely claims a complete lack of supporting evidence to support plaintiff's assertions when the evidence exists, but is just not stated in that particular paragraph. For example, and without limitation, IKEA asserts that there is no support for its assertion in *Paine* that the identified decision-maker for the 2019 rejection for promotion to the Sales Manager in Norfolk was Tiffin Mohr. ECF 364-1, ¶27. But IKEA itself set forth this very fact as an undisputed fact in support of its motion for summary judgment against Paine. ECF 336-3, ¶78.

What IKEA notably does not do is actually deny the facts that establish (or at least create a genuine issue in dispute regarding) IKEA's systemic age discrimination, including its openly declared and/or facially age discriminatory policy of "age distribution" with a goal to "focus on young potentials" and to increase the number and percentage of younger employees in

management positions. By way of example only, IKEA's Responses to Plaintiffs' Statement of Additional Facts admit or do not dispute, without limitation:

- Former HR Manager Laurie Gorbeck testified that during a meeting to discuss the business plan 2015, the then Head of US HR (Jacqueline DeChamps) told HR managers from across the United States that they wanted to hire young potential regardless of competence. ECF 413-1, ¶52.

- The US Business Plan FY17-19 Business Plan included a strategy to "Anchor and implement the IKEA Group Diversity & Inclusion Approach nationally and locally in every unit" and that the IKEA US Business Plan/Great Place to Work states Diversity & Inclusion Goals of "Age distribution & engagement, including focusing on young potential and on 50+." ECF 413-1, ¶55.

- Sari Brody (former US Talent Manager and then Global Head of Diversity) and Ms. Gorbeck testified that part of the US Succession strategy was to recruit and develop and promote young "high potentials." ECF 413-1, ¶63.

- The US Store Succession Planning Process (IKEA-030691-714) (Ex. 41) was a uniform template with an approach, sent to all stores, to create a succession planning process that is aligned with US goals. Each store is committed to achieving the US goal. ECF 413-1, ¶60.

- Ms. Brody testified that the Global commitment of "focus on young potentials, and on 50+" means to promote more young potentials (and she assumed that meant employees under 30) and people 50 plus. ECF 413-1, ¶76. She testified further that in order to "focus on young potential," IKEA could take a look at age as part of the selection process for promotion. ECF 413-1, ¶64.

- Age data (including year of employees' year of birth contained in the talent databases, TMS and TFA) was exchanged between the Service Office and the store HR and Store Managers in connection with the Management Review. ECF 413-1, ¶68 (and see also ¶67).

- IKEA had a diversity & inclusion document entitled "Generations (IKEA-023029-42, Ex. 66) the purpose of which "is to offer a systematic approach that describes the way to implement diversity and inclusion" and "should be used to introduce, develop and implement a generational component into an organization's Diversity and Inclusion strategy. The document sets forth age-biased stereotypes. It discusses the challenges faced by different generations in IKEA's workforce and contrasts the challenge of a glass ceiling hindering the promotion of a "young potential" versus the challenge presented by an employee

age 50+ who is not expected to retire. Ms. Brody testified that the "focus on 50+" could be read to mean accommodate their physical challenges in some way. ECF 413-1, ¶95.

  - Former Head of US Diversity Rafael Fantauzzi testified that IKEA used the term "generations" mean the same thing as age. ECF 413-1, ¶95.

- Then Head of HR, Ms. Ixtabalan, sent an email directing recipients (including Stephani (Lewis) Conner, IKEA's labor counsel now General Counsel, and the Director of Succession, Cathy Blair) to read, e.g., the Group Diversity & Inclusion Approach (IKEA-101764-83, Ex. 70) and FY 16 US D&I Recap (IKEA-101724-63)(Ex. 20). The FY 16 D&I Recap, without limitation, discusses the "aging population" and challenges of a "multigenerational workplace," states as a Key Takeaway:"…We need to spot and prioritize potential and move them faster through our development pipeline, increase the number of coworkers under 34 in exempt management;" and states among the US Goals by 2018: "Increase the percentage of coworkers under 34 in salaried exempt positions to be more reflective of the under 34 coworker population in out stores." ECF 413-1, ¶ 104.

- The FY 16 D&I Recap states that among the steps in FY 15 that IKEA took to develop a local action plan was providing a Best Practice tool kit to the stores The FY 16 D&I Recap states that as part of the Six Steps, all store managers received diversity goals on their performance evaluations. The FY16 D&I Recap stated that it would ""[r]oll out Global diversity trainings." ECF 413, ¶¶104-107.

  - The "Best Practices" document referred to in the FY D&I Recap describes "tracking the demographic makeup" of the store for years and says: "The diversity data is broken down at a department level so managers have an overview of their staff. Managers know where they are regrading HL's tenure, **age,** race and gender within their department and **can take this information into consideration as they are making hiring decisions.**" ECF 413-1, ¶106.

    - At IKEA, "Hiring" refers to both internal and external candidates. ECF 413-1, ¶8.

  - The "diversity" goals on the Store Managers performance evaluations included points awarded to Store Managers across the United States based on % increase of, e.g., age within management team from the year before. The US Head of Human Resources distributed the data with year-to-year percentage comparisons by age group to all Deputies (Regional Directors) across the United States, with IKEA's US CEO (Lars Peterson) copied. ECF, 413-1, ¶106HR managers were evaluated on diversity goals. ECF

413-1, ¶90. Lower level managers were also evaluated on diversity. ECF 413-1, ¶91.

- IKEA-022582-677 (Ex. 23) is a global training document. It lays out the "Six Steps for Integrating Diversity And Inclusion Into Our Business." The training document emphasizes that diversity is a "commitment from IKEA's top management and restates the Global Goal and "Global commitment on Age": "Age distribution, including focus on young potentials and 50+. It states as an example goal for D&I/area we will focus on, it states: **"Age – promote leaders under 30 years old."** ECF 413-1, ¶110.

- The IKEA Diversity & Inclusion Approach was widely communicated throughout IKEA. It states the Global Commitment of "Age distribution, including focus on young potentials and on 50+, integrate diversity into business practices, measure the percentage of successors based on age, measure the percentage of promotions from different ages." ECF 413-1, ¶121.

- When IKEA talks about "diversity," it means age "balance" in its workforce, i.e., having the average age of the managers match the average age of the younger non-manager coworkers. ECF 413-1, ¶126.

- IKEA considered "diversity" in "everything" they did. ECF 413-1, ¶128.

In response to damning evidence of its intent to discriminate against older employees In *Antonelli*, IKEA repeatedly asserts that Store Manager Terri Noble testified that it would be "impossible" to consider age in hiring decisions. This is not true. IKEA failed to cite her testimony in full, which addresses IKEA's explicit corporate directives to consider age – specifically young talent and younger employees – when hiring and promoting. Noble Dep. at 46:17-50:6; 137:6-12. In fact, before the record citation, Noble specifically testified that as part of her job as store manager, she conveyed to the leadership team in Pittsburgh IKEA's directive to hire and promote young people and focus on younger people for managerial leadership positions. *See Antonelli* ECF 324-2 (¶40).

Similarly, In *Donofrio*, IKEA repeatedly states that "IKEA disputes that it made the hiring decision based on impermissible age discrimination." This is not a denial that IKEA favored younger employees over older ones when making selection decisions for management level positions**.** **This is not a denial that IKEA made hiring decisions based on age.** On the contrary, it suggests that IKEA did consider age and that not all age discrimination is "impermissible."

IKEA accuses Mr. Paine of making misleading claims with a nefarious motive. ECF 364 at p. 9. This *ad hominem* attack is ludicrous. Plaintiffs' occasional citation to the wrong paragraph in their Statement of Additional Facts was clearly inadvertent. For example, the erroneous citations in Paine's opposition to the paragraph numbers in his statement of additional facts that IKEA highlights (see ECF 364at p. 9) are Plaintiff's citations to the Court's Memorandum on Sanctions or IKEA's admissions made in its own Sanctions briefs. IKEA is obviously aware of these documents, regardless of the wrong paragraph number cited. Plaintiffs' failure to attach a few exhibits to their Oppositions or some type-0s in citation to the record was likewise inadvertent. For example, in *Antonelli*, plaintiff asserted the age of a younger successful candidate (Twyman) but accidently left out the year of birth. He cited, though, to her deposition testimony in which she testified that she was born in June, 1987. See ECF 335-2, ¶234.

All documents were identified in plaintiffs' opposition briefs or statements of additional facts, known to and easily accessible by IKEA (in fact, most are documents produced by IKEA). For purposes of completeness of the record, Plaintiffs have filed separately with this Brief a document entitled "Sur Reply Index And Exhibits" unique to each case that attaches documents that IKEA has identified in its replies as having been omitted in Plaintiff's Oppositions. The documents are few, identified, known and easily accessible to IKEA but not included in

plaintiffs' initial oppositions. Plaintiffs will send to the Court, copy to IKEA counsel, a flash drive containing a complete set of corrected exhibits in each case, including all documents that were incorporated by reference in *Donofrio* (see ECF 402 at p. 8, ECF 402-2 at p. 1).[4]

**3. Calling a policy of age discrimination a "diversity policy" does not make it lawful under the ADEA.**

As in its other briefings, IKEA does not deny the existence of documents reflecting that IKEA has an openly declared, facially age discriminatory policy favoring younger employees in management level positions. Instead, IKEA asserts for the for the first time in all if its Reply Brief: "Critical to the present motion, documents that identify a 'stated goal of a [] diverse [] workforce … that reflects the demographics' of the population are not evidence of discriminatory decisions as a matter of law. *See Pierce v. City of Phila.,* 17-05539, 2018 WL 6832093, at *1, *11 (E.D. Pa. Dec. 28, 2018)." *Donofrio,* ECF 413 at p. 5; *Antonelli,* 335 at p. 7 *Paine*, ECF 364 at p. 12. *Pierce* does not support this sweeping and erroneous statement of the law, its analysis of a race discrimination claim is inapplicable to a claim under the ADEA, and IKEA's openly declared, facially age discriminatory policy is not at all like the policy in *Pierce.*

First, *Pierce* does not support the proposition for which it is offered. It did not hold that a stated goal that reflects the demographics of the population are not evidence of discriminatory decisions as a matter of law.

*Second*, **the ADEA is not the same as Title VII, and race discrimination is not treated the same as age discrimination.** *Pierce* was a so-called "reverse discrimination" case in which the plaintiff alleged that the employer unlawfully considered race to disfavor a member of a

[4] As has been the practice and per the parties' Stipulated Confidentiality Order, because many of the documents have been marked by IKEA as confidential, IKEA will file all of the documents on the electronic docket upon IKEA's consent or failure to file a motion to seal within the fourteen days of receipt of the flash drive.

group not historically discriminated against in favor of a member of a group that was. The ADEA does not make unlawful the consideration of age when it favors older employees to the detriment of younger ones, but it is unlawful to favor younger ones over older ones. The idea that it would be lawful for a company to have a goal of age distribution or a "diverse" workforce that had more younger people in management positions is contrary to the ADEA.

*Third*, the documents in this case do far more than identify a "stated goal of a [] diverse [] workforce … that reflects the demographics' of the population." IKEA had a policy to "focus on young potential" – which its author testified meant to promote younger people – with a goal to increase the number of younger employees in management positions. **The documents lay out IKEA's specific goal of "age distribution" in all levels (including management positions), specific goal to focus on "young potentials," which the author testified meant to promote younger employees, the company's specific goal to increase the number and percentage of employees under the age of 34 in management positions, and a specific strategy and plan to achieve that unlawful goal favoring younger employees.** That strategy and plan was implemented in every store, and included the distribution of "Best Practices," directing managers to consider age in its decisions; evaluating Store Managers, lower level managers, and HR managers at every level on their achieving diversity goals; and training managers that IKEA was committed to the goal of "age distribution" and "focus on young potentials," and specifically gave as an example "promoting employees" under 30."

Finally, if IKEA's openly declared and/or facially age discriminatory policy of "age distribution" with a goal to "focus on young potentials" and to increase the number and percentage of younger employees in management positions was lawful, as IKEA now asserts,

why did IKEA falsely deny for years that it had age-based personnel goals? Why did IKEA obfuscate and violate the Court's Order to produce the documents evidencing them?

**CONSOLE MATTIACCI LAW, LLC**

BY: /s/ Susan Saint-Antoine

Stephen G. Console
Laura C. Mattiacci
Susan M. Saint-Antoine
Caren N. Gurmankin
Evelyn Kallenbach
Madison Provorny
1525 Locust Street, 9th Fl.
Philadelphia, PA 19102
(215) 545-7676 (phone)
(215) 545-8211 (fax)

Attorneys for Named Plaintiffs, Frank Donofrio, Brandon Paine and William Antonelli (*on behalf of themselves individually and on behalf of those similarly situated*)

August 5, 2024