**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FRANK DONOFRIO, on behalf of himself individually and on behalf of those similarly situated,<br>Plaintiff,<br>v.<br>IKEA US RETAIL, LLC,<br>Defendant. | CIVIL ACTION NO. 18-599-AB |
| WILLIAM V. ANTONELLI, JR., on behalf of himself individually and on behalf of those similarly situated,<br>Plaintiff,<br>v.<br>IKEA HOLDING US, INC., IKEA US RETAIL, LLC, and IKEA NORTH AMERICA SERVICES, LLC,<br>Defendants. | CIVIL ACTION NO. 19-1286-AB |
| BRANDON PAINE, on behalf of himself individually and on behalf of those similarly situated,<br>Plaintiff,<br>v.<br>IKEA HOLDING US, INC., IKEA US RETAIL, LLC, and IKEA NORTH AMERICA SERVICES, LLC,<br>Defendants. | CIVIL ACTION NO. 19-723-AB |

**DEFENDANTS' SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR FINAL CERTIFICATION DONOFRIO ECF 389; PAINE ECF 340; ANTONELLI ECF 311**

Circular reasoning does not substitute for evidence. Plaintiffs' arguments in their reply fail to obscure the fatal deficiencies in their collective—there are material differences in decision makers, jobs, store locations, qualification levels, and defenses.

**Plaintiffs' reliance on the sanctions order is unpersuasive and ignores key caselaw within this Circuit.** Plaintiffs try to bypass the decertification factors by brushing them aside as "not material" given the Court's sanctions order. *Donofrio* ECF 412 at 11. Plaintiffs claim IKEA is "invit[ing] the Court to commit reversible error by ignoring the Third Circuit's definition of 'similarly situated' and arguing instead for the applications of a more rigorous analysis" under Rule 23. *Id.* at 5. But, Plaintiffs ignore the seminal case within the Third Circuit analyzing such an argument, *Mueller v. CBS, Incorporated*, No. 99-1310, 2002 WL 35669766 (W.D. Pa. Dec. 9, 2002). There, the plaintiffs pushed the same position as Plaintiffs here—that evidence (or sanction finding) of a pattern or practice of discrimination renders all plaintiffs similarly situated for the purposes of decertification regardless of fundamental differences in the plaintiffs' circumstances and a defendants' varied defenses. 2002 WL 35669766, at *16-*17. *Mueller* reviewed and rejected this argument. And the Third Circuit deemed the *Mueller* court's analysis "well-reasoned and exhaustive." *Ruehl v. Viacom, Inc.* 500 F.3d 375, 388 (3d Cir. 2007),

In *Mueller*, after a detailed analysis, long-time Chief Judge of the Western District of Pennsylvania Donetta Ambrose concluded that evidence of a pattern or practice of discrimination does not justify a court abandoning analysis of decertification factors. In finding that this was not the law in the Third Circuit, Chief Judge Ambrose wrote:

> If Plaintiffs' conclusion that stating a claim of pattern or practice were sufficient to show that opt-in plaintiffs were similarly situated to the extent that the court should automatically proceed to a *Teamsters*-model trial, there would be no need to investigate the circumstances of any individual plaintiff. That is, having established that they satisfied the opt-in criteria, discovery following the opt-in stage would not focus on the individual plaintiffs but on the facts surrounding the corporate policy in order to flesh out the allegations made at the conditional certification stage. But that is clearly not the format used in *Lusardi*, *Mooney*, *Stone* or even *Thiessen*. The discovery period in each of those cases – and in this one – focused on the individual opt-in plaintiffs or a sample thereof, **not merely on the alleged discriminatory pattern or practice**.

*Mueller,* 2002 WL 35669766, at *17 (emphasis added). *Mueller* is not an outlier. The law upon which the *Mueller* court relied is well-supported. *See, e.g.*, *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 85-86 (3d Cir. 2017) (holding common evidence insufficient to sustain certification when there are differences among the plaintiffs).

**Defendants do not seek to substitute a Federal Rule of Civil Procedure analysis for 216(b) Standards.** Plaintiffs argue a Section 216(b) collective action is not subject to a rigorous analysis. ECF 412 at 5. Plaintiffs are mistaken. The case Plaintiffs cite for this proposition, *Fischer v. Federal Express Corporation*, was not about decertification standards, but whether every opt-in plaintiff must establish personal jurisdiction in a collective action. 42 F.4th 366 at 375. The word "decertification" does not appear in *Fischer*. *Mueller* and other courts within the Third Circuits consistently agree that they must look behind the pleadings and actually assess the evidence in the case through the lens of the decertification standards described in Defendants' moving brief for decertification (*Donofrio* ECF 383*). See, e.g., Mueller*, 2002 WL 35669766, at *17; *Bell v. Reading Hosp. & Med. Cntr.*, No. 13-5927, 2016 WL 3902938, at *8 (E.D. Pa. 2016) (holding courts are required to engage in a "specific factual analysis of each employee's claim" at the decertification stage); *Colosimo v. Flagship Resort Dev. Corp.*, No. 17-3969, 2021 WL 1207484, at *3 (D.N.J. March 31, 2021) (holding the "final certification phase of a § 216(b) collective action employs a ***rigid standard*** that requires Plaintiffs to prove by a preponderance of the evidence that members of a proposed collective action are similarly situated") (citing *Zavala*, 691 F.3d at 537) (emphasis added).

***Pierce* confirms diversity goals without a causal link to an adverse action are insufficient to demonstrate discrimination.** Plaintiffs' effort to minimize this District Court's ruling in *Pierce* fails. In *Pierce v. City of Philadelphia*, a case in which Console Mattiacci Law

represented the plaintiff, the city articulated a goal of increasing the diversity of its workforce so that it "reflect[ed] the demographics of the City's population." No. 17-05539, 2018 WL 683093, at *1 (E.D. Pa. Dec. 28, 2018). The court, nevertheless, granted summary judgment on one of the promotions claims for the defendant because there was no evidence connecting the goal of its workforce mirroring the City's demographics to the decision at issue. *Id.* at *32-*36.

*Pierce* demonstrates the flaw in Plaintiffs' approach to these cases. There, two positions were at issue and the court granted summary judgment on one, but not the other. Pierce sought to be promoted to two separate positions with the City's Department of Prisons: (1) Human Services Program Administrator ("HSPA") and (2) Community Justice and Outreach Director ("CJO"). The court granted summary judgment for the CJO position, but not the HSPA position precisely because Pierce presented evidence of a direct link between a corporate goal and the HSPA hiring decision. Specifically, multiple emails were sent to the HSPA position's decision maker's supervisor before the position was posted, encouraging him to consider Jennifer Albandoz for a Deputy Commissioner position to increase Hispanic representation. In response, that supervisor wrote, "we will do what we can to promote Latinos within the confines of civil service regulations." *Id.* at *2. Although Albandoz was rejected for the Deputy Commissioner position, she eventually was selected over Pierce for the HSPA. The court held that reasonable jurors could conclude Pierce was not promoted to the HSPA position because she was not Hispanic given the emails specifically recommending Albandoz and the statement of promoting Latinos within the confines of civil service regulations. *Id.* at *10.

For the CJO position, Leroy Pendleton (African American) was selected over Pierce. The court held that unlike in the context of the City's failure to promote Pierce to the HSPA position, the record did not allow reasonable jurors to find that the City's stated reason for not promoting

her to the CJO position is pretextual. It noted that while Pierce relied on the fact the City has a goal of creating a diverse workforce that reflects Philadelphia's demographics, and evidence the City has a policy of considering race in personnel decisions, "Pierce makes no attempt, however, to connect this evidence with [the decision maker]'s decision to appoint Pendleton to the CJO Director position." *Id.* at *11. Moreover, the court determined there was "no evidence that anyone asked or urged [the decision maker] to appoint Pendleton to an executive-level position and there is similarly no record evidence [he] felt any pressure to appoint Pendleton specifically because he is African American." *Id.* In this case, there is no evidence that any decisionmaker considered any goal, policy, or practice in making their ***selections for promotion***. Plaintiffs do not, and could not, claim otherwise.

**The record does not reflect evidence of discriminatory employment decisions**. Plaintiffs contend they have produced evidence of systemic age discrimination. Yet, in their Reply, they do not cite a single piece of evidence in support. ECF 412 at 10. Plaintiffs spotlight instead the Court's sanctions order. And then take poetic license with it. Specifically, Plaintiffs assert the Court's sanctions order found something more than an abstract policy of discrimination (although they never explain how) and that the order is "dispositive" in connection with Plaintiffs' claims of systemic discrimination.[1] ECF 412 at 9. But, what matters in these cases is *selection for promotion*. And the Court declined to enter a sanction finding IKEA ***selected*** employees for promotion based on age. Plaintiffs attempt to re-litigate the sanctions order by claiming it would be insufficient for it to result in anything less than final certification. Plaintiffs also ignore the

[1] Plaintiffs claim "it is reasonable to infer that the company followed its common employer practice, or standard operating procedure, in connection with each particular decision regarding the staffing of management positions." ECF 412 at 9. Plaintiffs, however, do not even attempt to substantiate this "inference" with a citation to the record.

*Mueller* decision. But this Court's role at this stage in the proceeding is to assess the facts and evidence established in discovery. That evidence, when viewed in light of the decertification factors, dictates one conclusion—this case is not appropriate for collective treatment.

**Plaintiffs are irredeemably dissimilar in the areas that count at decertification.** Plaintiffs remarkably concede their arguments for why Plaintiffs are similarly situated are "not specifically supported by citation." ECF 412 at 12. Despite the dozens and dozens of pages of briefing and dueling motions, Plaintiffs have the chutzpah to ask the Court to rely on their unsupported allegations or have an "opportunity to supplement their submission." *Id.* If Plaintiffs had such evidence, now (or some time over the last few months of briefing) was the time to present it. It is absent from the record. There is no real debate that Plaintiffs are dissimilar necessitating decertification.

## CONCLUSION

Plaintiffs fail to accurately convey the Third Circuit's standard for final certification. And, the Court's sanction order is ***not*** an independent basis for final certification. Plaintiffs' attempt to distinguish *Pierce* does not pass muster and highlights the lack of any connection to the actual hiring decisions at issue in these cases. Finally, as conceded by Plaintiffs, they have no evidence to support any argument Plaintiffs are similarly situated other than the Court's sanctions order. The Court must decertify these cases.

Respectfully submitted,

/s/ Brandon R. Sher

Paul Lancaster Adams, Esq.
Brandon R. Sher, Esq.
Jennifer G. Betts, Esq.
Emily Santoro, Esq.
Chris R. Pace, Esq. (Admitted *Pro Hac Vice*)
John G. Stretton, Esq. (Admitted *Pro Hac Vice*)
**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, PC.**
1735 Market Street, Suite 3000
Philadelphia, PA 19103
(215) 995-2840 Telephone
(215) 995-2801 Facsimile
pladams@ogletree.com
brandon.sher@ogletree.com
jenn.betts@ogletree.com
emily.santoro@ogletree.com
chris.pace@ogletree.com
john.stretton@ogletree.com

Date: August 5, 2024